**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* Ex Parte Application of<br><br>ELEMENT SIX TECHNOLOGIES LIMITED,<br><br>　　*Applicant,*<br><br>For an Order Pursuant to 28 U.S.C. § 1782 | Case No. |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782</u>**

**PROSKAUR ROSE LLP**

Steven M. Bauer, Esq.
Russell T. Gorkin, Esq.
Eleven Times Square
New York, NY 10036-8299
Tel. (212) 969-3000
Fax. (212) 969-2900
sbauer@proskauer.com
rgorkin@proskauer.com

**MCDONNELL BOEHNEN
HULBERT & BERGHOFF LLP**

Paul H. Berghoff, Esq. (*pro hac vice to be filed*)
Joshua R. Rich, Esq. (*pro hac vice to be filed*)
George T. Lyons III, Esq. (*pro hac vice to be filed*)
300 South Wacker Drive
Chicago, Illinois 60606-6709
Tel: (312) 913-0001
Fax: (312) 913-0002
berghoff@mbhb.com
rich@mbhb.com
lyons@mbhb.com

*Attorneys for Element Six Technologies Limited*

Element Six Technologies Limited ("Element Six") applies to the Court *ex parte* for an order pursuant to 28 U.S.C. § 1782 granting leave to issue subpoenas directing Pure Grown Diamonds, Inc. ("PGD") to produce documents and provide testimony for use in foreign patent infringement litigation pending in Singapore. Element Six tried to ascertain this information by seeking discovery from the defendant in the Singapore court, IIa Technologies Pte. Ltd. ("IIa"). IIa argued that Element Six should seek the discovery from PGD in the United States, and the Singapore court agreed it would be a more direct and effective course of action. Thus, neither the opposing party in Singapore nor the Singapore Court oppose this request, but instead suggested it.

## I. BACKGROUND

Element Six is a global leader in the design, development, and production of synthetic diamond supermaterials, and operates worldwide with its head office registered in London. Element Six's innovation capability is unrivalled and relentless - it harnesses the power of synthetic diamond to create specific commercial solutions to meet the needs of its customers and their end-users. The innovative synthetic diamond solutions delivered by Element Six's research and development are robustly protected by intellectual property rights, particularly patents. Element Six currently owns over 1000 granted patents and approximately 500 pending patent applications worldwide, covering all of its businesses.

Included among the patents granted to Element Six are Singapore Patent Nos. 115872 ("the '872 Patent") and 110508 ("the '508 Patent"). Both patents relate to synthetic diamond material for use, for example, as gemstones. The '872 Patent claims, among other things, chemical vapor deposition ("CVD") single crystal diamond material having specific optical characteristics. Those characteristics include a low optical birefringence – the optical property of

a material having a refractive index that depends on the polarization and propagation direction of light. The '508 Patent claims, among other things, a method of producing CVD single crystal diamond of a desired color, including the steps of providing colored single crystal CVD diamond and heat treating the diamond under conditions suitable to produce the desired color.[1]

Element Six sued IIa in Singapore on January 12, 2016, accusing IIa of infringing the '872 and '508 Patents (the "Suit"). (*See* Pang Decl. ¶ 3.) The lawsuit is based in part on several product samples purchased through IIa's retailers in the United States, since IIa did not sell its synthetic diamond gemstones through Singapore retailers. (*See* Pang Decl. ¶¶ 6-7 and 12.) One sample, identified as Sample 1 in the Suit, was purchased from the Gemesis Diamond Company ("Gemesis"). Later, Gemesis entities, apparently including Gemesis itself, rebranded themselves as Pure Grown Diamonds, Inc. ("PGD"). (*See* Lyons Decl. ¶¶ 3-5.) Element Six purchased the sample identified as Sample 3 in the Suit from PGD. (*See* Pang Decl. ¶ 6.) Through testing, Element Six has shown that Samples 1 and 3 infringe both the '872 and '508 Patents. (*See* Pang Decl. Ex. 3, at 15 and 25.)

To date, IIa has argued that it did not make Samples 1 and 3, and – despite being owned by the same corporate parent as PGD and sharing directors and executives – does not know where PGD (and its predecessor-in-interest) obtained those samples. (*See* Pang Decl. ¶ 9.) Element Six sought the information through discovery in the Singapore action; IIa refused to provide it and argued Element Six should obtain it directly from PGD. (Pang Decl. ¶ 27.) So Element Six is here now, seeking the issuance of subpoenas to PGD to collect information about the infringing samples that it (and its predecessor-in-interest) sold to purchasers buying on

---

[1] One of the desired colors that would fall within the scope of the claims is the traditional "colorless" (or "near colorless").

behalf of Element Six.

Notably, IIa and PGD are more than sister companies under the same corporate umbrella, they are family-owned companies with substantial crossover in directors and executives. Suraj Mehta is an executive and director at PGD and a director at IIa. His brother, Vishal Mehta, is an executive and director at IIa. And their mother, Sonia Mehta, is also a director at IIa. (*See* Pang Decl. ¶ 14.) Thus, IIa's executives and directors know what goes on at PGD and PGD's executives and directors know what goes on at IIa.

Element Six has a pressing need for this information. Trial in the Singapore action is scheduled for March 2019, and Element Six needs to obtain information concerning Samples 1 and 3 so that it can adequately prepare for the upcoming trial. IIa appears to have successfully prevented the Singapore court from enforcing interrogatories served in that proceeding, based on the breadth of the requests rather than the substance. Element Six does not seek the same breadth of discovery from PGD in this application, but instead seeks only targeted discovery related the specific infringing samples and Singapore litigation. Thus, Element Six respectfully asks this Court to issue the proposed Order attached hereto as Exhibit A.

## II.   ARGUMENT

### A.   Legal Standard

Section 1782 is a discovery mechanism that allows federal courts to assist foreign tribunals and parties to foreign proceedings in gathering evidence from people and entities residing in the United States. Specifically, § 1782 provides that "[t]he district court of the district in which a person resides or is found may order him to ... produce a document ... for use in a proceeding in a foreign or international tribunal" upon the application of "any interested

person" or request made by a foreign or international tribunal. 28 U.S.C. § 1782(a). The Second Circuit has held that "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte." *Gushlak v. Gushlak,* 486 F. App'x 215, 217 (2d Cir. 2012) (Summary Order).

The statute sets forth three requirements: "(1) the person from whom discovery is sought must reside or be found in the district in which the application was made, (2) the discovery must be for use in a foreign proceeding before a foreign tribunal, and (3) the applicant must be either a foreign tribunal or an interested person." *In re Accent Delight Int'l Ltd.,* 869 F.3d 121, 128 (2d Cir. 2017) (internal quotation marks omitted); *see* 28 U.S.C. § 1782(a).

The Supreme Court has further explained that once a court determines that these statutory requirements are met, it should consider the following additional factors in deciding whether to grant § 1782 discovery: (1) whether the requested discovery could be obtained in the foreign proceedings; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 264-65 (2004).

### B. Element Six's Application Satisfies § 1782's Requirements.

Element Six's application satisfies all three of the statutory requirements under § 1782, and therefore this Court has the authority to grant Element Six's request for discovery.

### 1. PGD Resides in and Is Found in this District

PGD, the entity from whom discovery is sought, "resides or is found" in the Southern District of New York. 28 U.S.C. § 1782(a). "Professor Hans Smit, the drafter of § 1782, has explained that insofar as the word 'found' is applied to corporations, 'it may safely be regarded as referring to judicial precedents that equate systematic and continuous local activities with presence." *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (quoting Hans Smit, American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited, 25 Syracuse J. Int'l L. & Com. 1, 10 (1998)) (Rakoff, J.). Most fundamentally, a corporation is found where it is incorporated or headquartered. *Id.* (citing *In re Kolomoisky*, 2006 WL 2404332, at *1 (S.D.N.Y. 2006); *In re Gemeinschcaftspraxis*, 2006 WL 3844464 (S.D.N.Y. 2006)).

PGD is found in the Southern District of New York. In a 2014 press release, PGD indicated that it had "rebranded" itself from Gemesis Inc. and other Gemesis entities, including Gemesis Diamond Company, to PGD and that it is a privately held company based in New York, NY. (*See* Lyons Decl. ¶¶ 3-5.)

In a more recent press release, PGD announced with some fanfare that it had moved into a new facility in the heart of New York City's "Diamond District to gain accessibility to retail and vendor partners." (*See* Lyons Decl. ¶ 6.) In that same press release, PGD indicated that its new New-York-City-based facility is a "state-of-the art sales and distribution center that will help position the company with greater efficiency, while allowing for sustainable growth." (*See* Lyons Decl. ¶ 7.)

PGD has many of the other indicia of being "found" in the Southern District. It is licensed to do business in New York. (*See* Lyons Decl. ¶ 9.)   And on its website, PGD holds

6

itself out as having its only listed office at 45 W. 45th Street, 5th Floor, in New York, NY 10036. (*See* Lyons Decl. ¶ 8.)  Thus, PGD has repeatedly held itself out as being located in, and doing business from, New York City.  (*See* Lyons Decl. ¶¶ 3-9.)

Accordingly, for the purposes of Element Six's application to this Court under 28 U.S.C. § 1782, PGD is "found" in the Southern District of New York and the first element of § 1782 is satisfied. (*See, e.g.*, Lyons Decl. ¶¶ 4 and 6-9.)

### 2. Element Six Seeks Discovery for Use in a Proceeding Before a Foreign Tribunal

The discovery that Element Six seeks is "for use in a proceeding in a foreign ... tribunal." 28 U.S.C. § 1782(a); *see also Mees v. Buiter,* 793 F.3d 291, 298 (2d Cir. 2015) (§ 1782's requirement that discovery be "for use" in a foreign proceeding is satisfied when the information sought "will be employed with some advantage or serve some use in the proceeding").  Element Six seeks the discovery for use in proving up patent infringement in the High Court of Singapore, in the case it has brought against IIa.  Specifically, proof of the provenance of Samples 1 and 3 will help demonstrate that they were made of diamond material manufactured by PGD's sister company, IIa, and overcome the denials asserted by IIa.  The discovery will therefore be directly relevant to the issues in dispute in the Singapore court.

In determining whether evidence is "for use" in a foreign tribunal, the court should not consider either the discoverability or admissibility of the evidence in that tribunal.  *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012).  Nonetheless, as the Declaration of Melvin Pang filed herewith establishes, the discovery sought will be important in the Singapore proceedings.  The documents that Element Six seeks should also be admissible, as they are business records related to Samples 1 and 3, subject to a hearsay exception similar to the "Records of a Regularly Conducted Activity" hearsay exception in Federal Rule of Evidence

803(6).  (*See* Pang Decl. ¶¶ 32-34.)  The testimony that Element Six seeks will serve to substantiate the applicability of the exception, as well as providing a basis for interlocutory relief (including seeking additional discovery in Singapore).  (*See* Pang Decl. ¶¶ 32-39)  Thus, the discovery sought in this § 1782 application is unquestionably "for use" in the Singapore case.

### 3. Element Six Is an "Interested Person"

Finally, Element Six is an "interested person."  28 U.S.C. § 1782(a).  Element Six is the plaintiff in the Singapore litigation and the owner of the asserted patents.  (*See* Pang Decl. ¶¶ 3-5.)  "No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782."  *Intel,* 542 U.S. at 256 (holding that an "interested person" includes an entity with "participation rights" in the foreign proceeding).  Thus, Element Six satisfies the final requirement of § 1782.

### C. The Supreme Court's *Intel* Factors Strongly Favor Granting Element Six's Application

Not only does this Court have the *authority* to grant Element Six's request for discovery, as it satisfies all three of the statutory requirements under § 1782, all four factors in the Supreme Court's *Intel* decision all weigh strongly in favor of the Court exercising its *discretion* to do the same.  First, Element Six has not been able to obtain the requested discovery through foreign proceedings.  Second, the Singapore Court is receptive to the discovery being sought.  Third, Element Six's requests do not circumvent any limitations on discovery imposed in Singapore.  Fourth, and finally, Element Six's requests in present application do not impose an undue burden on PGD as they are narrowly tailored to directly relevant material that Element Six has not been able to otherwise obtain.

Furthermore, courts in this District routinely permit discovery under § 1782 where, as here, the applicant has satisfied the three statutory requirements, as well as all four of the

*Intel* factors support granting the requested relief.  *See, e.g., In re Bloomfield Inv. Res. Corp.,* 315 F.R.D. 165 (S.D.N.Y. 2016); *In re Republic of Kaz.,* 110 F. Supp. 3d 512 (S.D.N.Y. 2015); *La Suisse, Societe d'Assurances Sur La  Vie v. Kraus,* 62 F. Supp. 3d 358 (S.D.N.Y. 2014); *In re Gemeinshcaftspraxis Dr. Med. Schottdorf,* No. CIV. M19-88 BSJ, 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006); *In re Servicio Pan Americana  de Proteccion,* 354 F. Supp. 2d 269 (S.D.N.Y. 2004).

### 1. The Requested Discovery Has Not Been Available in the Singapore Proceedings

The first *Intel* factor considers whether the requested discovery could be obtained in the foreign proceedings. *Intel,* 542 U.S. at 264; *see also Gorsoan Ltd. v. Bullock,* 652 F. App'x 7, 9 (2d Cir. 2016) (Summary Order) (explaining that district courts must "consider whether the requested discovery is within the foreign tribunal's jurisdictional reach").

Here, Element Six requested some of the information it seeks here through discovery in the Singapore case.  Although it is part of the same corporate group as PGD, IIa argued that the discovery should be sought directly from PGD in the United States.  (*See* Pang Decl. ¶ 27.)  The supervising Assistant Registar of the Singapore Supreme Court accepted IIa's argument and expressed that it would be more direct and effective to obtain the discovery directly from PGD.  (*See* Pang Decl. ¶ 27.)  As a result, according to opposing counsel and the court overseeing this matter, a § 1782 request for PGD's information regarding the Samples is Element Six's best option for obtaining this information to support its infringement claims based on Samples 1 and 3.

Thus, here, the first *Intel* factor strongly favors Element Six.

### 2. Element Six Seeks Relevant Information that Will Assist the Singapore Court

The second *Intel* factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel,* 542 U.S. at 264.  This factor also weighs heavily in favor of granting Element Six's requested discovery.

Element Six's patent infringement claims against IIa are proceeding in the High Court of Singapore.  (*See* Pang Decl. ¶ 3.)  Element Six has asserted that IIa infringed its patents by, among other things, making and selling the CVD single crystal diamond material that was eventually sold by United States retailers to Element Six's buyers as Samples 1 and 3.  (*See* Pang Decl. ¶¶ 5-7.)  The provenance of Samples 1 and 3 are critical issues in the infringement litigation.  (*See* Pang Decl. ¶¶ 6-10.)  The discovery from PGD should be able to establish whether IIa made the material that was polished into the gems sold by its sister companies as Samples 1 and 3.  (*See* Pang Decl. ¶¶ 6-10.)  Thus, the discovery goes to a critical issue in the Singapore litigation.  *See London v. Does,* 279 F. App'x 513, 515 (9th Cir. 2008) (affirming order granting § 1782 discovery where proof sought was "critical" in light of the "nature and character of the foreign case"); *In re Bayer AG,* 146 F.3d 188, 196 (3d Cir. 1998) (documents relevant to the foreign proceedings are "presumptively discoverable" under § 1782).

Moreover, as explained in the declaration of Melvin Pang, the Singapore court hearing Element Six's patent infringement claims is receptive to discovery obtained under § 1782.  (*See* Pang Decl. ¶¶ 27 and 38-43.)  This has also been recognized by courts evaluating requests under § 1782 to support litigation in Singapore. *See, e.g.*, *In re Savan Magic Ltd.*, No. 217CV01689JCMNJK, 2017 WL 6454240 (D. Nev. Dec. 18, 2017).

Thus, the second *Intel* factor similarly weighs in Element Six's favor.

### 3. No Foreign Discovery Restrictions Bar Element Six's Requested Discovery

The third *Intel* factor is whether the § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel,* 542 U.S. at 264-265. This factor places a burden on the party opposing discovery to show that the foreign court would refuse to accept the discovery being sought. "[O]nly upon authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of section 1782, should a district court refrain from granting the assistance offered by the act." *Esses v. Hanania,* 101 F.3d 873, 876 (2d Cir. 1996) (internal quotations omitted; emphasis in original); *see also Euromepa,* 51 F.3d at 1100-01.

Notably, this factor does not require that the documents sought be discoverable in the foreign courts. *Intel,* 542 U.S. at 260-62. Nor does this require that the requesting party first try and fail to obtain the discovery in the foreign courts. In fact, the Second Circuit has rejected such a "quasi-exhaustion" requirement mandating that parties seek discovery in a foreign court before moving for assistance from the United States court, explaining that it "finds no support in the plain language of the statute and runs counter to its express purposes." *See Mees,* 793 F.3d at 303 (citation omitted); *see also In re Bloomfield Inv. Res. Corp.,* 315 F.R.D. at 167.

But here, again, Element Six started the process by seeking discovery from IIa in the Singapore court. ***In response, IIa argued that Element Six should seek the discovery from PGD in the United States, and the Singapore court agreed it would be a more direct and effective course of action***. (*See* Pang Decl. ¶ 27.)  That is, far from placing a restriction on proof-gathering procedures that would prohibit obtaining discovery through § 1782, the Singapore Court (and opposing counsel) suggested it.  And while the Singapore court may quash certain interrogatories served in Singapore, that is due to the breadth of those requests rather than

11

the substance. (*See* Pang Decl ¶ 28.) Again, Element Six is seeking substantially narrower discovery here.

Therefore, the third *Intel* factor also weighs in Element Six's favor.

### 4. Element Six's Discovery Is Narrowly Tailored to Avoid Undue Burden

The fourth *Intel* factor is whether the requested discovery is narrowly tailored to avoid an undue burden. *Intel,* 542 U.S. at 265; *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG,* 673 F.3d 76, 81 (2d Cir. 2012); *In re Gemeinshcaflspraxis Dr. Med. Schottdorf,* 2006 WL 3844464, at *8.

Element Six is seeking only narrowly-focused discovery related to the Samples sold in the United States by IIa's sister companies. (*See* Pang Decl. ¶¶ 6-10.) It is not seeking discovery regarding PGD's suppliers or sales generally, only the evidence directly related to these companies that goes to Element Six's proof of infringement in the Singapore litigation. (*See* Pang Decl. ¶¶ 6-10.)

Regardless, in order to further assuage concerns of any potential burden on these parties, Element Six would also be willing to agree to maintain the confidentiality of those documents – if any – under the terms of an appropriate protective order to allow their use in the Singapore litigation. *In re Gemeinshcaftspraxis Dr. Med. Schottdorj,* 2006 WL 3844464, at *8 (determining that a confidentiality agreement could remedy concerns about the intrusiveness of the requests).

Finally, based on IIa's own requests, it is clear that Element Six's request is not a vehicle for harassment. To the contrary, it is the discovery process suggested by PGD's sister company in the Singapore litigation, and Element Six has a legitimate interest in protecting its intellectual property rights in Singapore. (*See* Pang Decl. ¶¶ 27.)

Accordingly, the fourth factor also therefore weighs in favor of granting discovery.

### 5. Granting Element Six's § 1782 Request Would Promote Efficient Discovery

In addition to the *Intel* factors, courts have also considered other evidence suggesting that the discovery sought accomplishes the goals of § 1782, such as whether the requested discovery "provid[es] efficient means of assistance to participants in international litigation in our federal courts." *Brandi-Dohrn,* 673 F.3d at 81 (internal quotation omitted).

Here, both IIa and the Singapore court have endorsed Element Six seeking discovery in the United States, and § 1782 provides an effective means for obtaining the discovery it seeks. Thus, discovery under § 1782 is appropriate for this reason as well.

## III. CONCLUSION

Pursuant to 28 U.S.C. § 1782, Element Six seeks narrowly tailored discovery of a clearly defined set of documents for use in patent litigation pending in Singapore. Because Element Six's application satisfies the statutory requirements of 28 U.S.C. § 1782 and because the *Intel* factors strongly weigh in favor of granting the application, Element Six respectfully requests that this Court issue the proposed order attached as Exhibit A, which authorizes the issuance of a subpoenas for documents and testimony substantially the same form as Exhibit B.

[*The remainder of this page is intentionally left blank*]

Dated: September 7, 2018
New York, New York

Respectfully submitted,

**PROSKAUER ROSE LLP**

/s/ Russell T. Gorkin
Steven M. Bauer, Esq.
Russell T. Gorkin, Esq.
Eleven Times Square
New York, NY 10036-8299
Tel. (212) 969-3000
Fax. (212) 969-2900
sbauer@proskauer.com
rgorkin@proskauer.com

**MCDONNELL BOEHNEN HULBERT & BERGHOFF LLP**

Paul H. Berghoff, Esq. (*pro hac vice to be filed*)
Joshua R. Rich, Esq. (*pro hac vice to be filed*)
George T. Lyons, III, Esq. (*pro hac vice to be filed*)
300 South Wacker Drive
Chicago, Illinois 60606-6709
Tel: (312) 913-0001
Fax: (312) 913-0002
berghoff@mbhb.com
rich@mbhb.com
lyons@mbhb.com

*Attorneys for Element Six Technologies Limited*