IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

*In re* Ex Parte Application of

ELEMENT SIX TECHNOLOGIES LIMITED,

    *Applicant,*

For an Order Pursuant to 28
U.S.C. § 1782 Granting Leave to
Obtain Discovery from Pure
Grown Diamonds, Inc. for Use
in Foreign Proceedings.

---

## DECLARATION OF MELVIN PANG

I, Melvin Pang, declare:

1. I am an associate director in Amica Law LLC, with an office address at 30 Raffles Place, #14-01 Chevron House, Singapore 048622. I have been admitted to the practice of law in Singapore since 2009. I studied Law in the National University of Singapore (2005-2008). My practice focuses on intellectual property litigation in Singapore.

2. I submit this declaration in support of Element Six Technologies Limited's ("Element Six") application to this Court under 28 U.S.C. § 1782. I make this declaration based on my personal knowledge, except where noted otherwise. If called on to testify to the matters set forth herein, I could and would do so.

3. Element Six initiated patent infringement proceedings against IIa Technologies Pte. Ltd. ("IIa") in Singapore on 12 January 2016 in the High Court of the Republic of Singapore, Suit No. HC/S 26/2016 ("the Suit"). Attached hereto as **Exhibit "1"** is a true and correct copy of the Writ of Summons in the Suit. The latest versions of the parties' pleadings (following multiple rounds of amendments) are as follows, true and correct copies of which are attached hereto as **Exhibit "2"**:

1

      i. Statement of Claim (Amendment No.1) filed on 12 April 2016 ("SOC")

      ii. Defence and Counterclaim (Amendment No.4) filed on 18 April 2018 ("DCC")

      iii. Particulars of Objections (Amendment No.4) filed on 18 April 2018 ("PO")

      iv. Reply and Defence to Counterclaim (Amendment No.4) filed on 21 May 2018 ("RDCC")

4. As one of the counsel representing Element Six in the Suit in Singapore, I am familiar with the proceedings in the Singapore Court. I am also well-acquainted with the progress of discovery in the Suit.

5. In the Suit, Element Six is asserting that IIa has infringed two patents: Singapore Patent Nos. 115872 ("SG872") and 110508 ("SG508") (collectively "the Patents").

6. Element Six's case is based in part on diamond samples manufactured by IIa that were purchased from US entities, including:

      i. Sample 1, which was purchased from Gemesis Diamond Company (formerly known as the Gemesis Corporation) ("Gemesis").

      ii. Sample 2, which was purchased from Microwave Enterprises, Limited ("Microwave").

      iii. Sample 3, which was purchased from Pure Grown Diamonds, Inc. ("PGD").

*See* pp. 9-15 of Ex. 2 (SOC).

7. Although Samples 1-3 were obtained from third party retailers and not IIa itself, there is strong evidence indicating that IIa had made them in Singapore.

8. Samples 1-3 form an important and highly relevant part of Element Six's case. Element Six's asserts that all three Samples infringe claims of SG872 and that Samples 1 and 3 infringe claims of SG508.

9. IIa has denied any infringement of the SG872 and SG508 patents. In relation to Samples 1-3, IIa has pleaded that it has no knowledge of Samples 1-3, and that Samples 1-3 were not made from diamond material grown by IIa in Singapore.

10. In spite of this denial, there is strong evidence that Samples 1-3 were made from CVD (chemical vapour deposition) diamond material synthesized by IIa in Singapore. The evidence includes, but is not limited to, common ownership and control of Gemesis, PGD, and IIa by IIa Holdings Group, as well as the potential ownership and/or control of Microwave by IIa[1].

11. I am informed by Element Six and believe that Sample 3 was purchased from PGD in or around October 2015 by a contact of Element Six. The purchase was made under instructions by Element Six. The purchase is evidenced by, *inter alia*, PGD Invoice No. SA-1510-00178 dated 27 October 2015 and an International Gemological Institute ("IGI") Report No. LG10226420[2]. By way of background, IGI is an independent diamond and jewelry certification organization which operates one of the largest gemological laboratory worldwide. In the industry, it is typical for gemstones to be accompanied by independent certification (such as an IGI certificate), so that both the buyer and the seller can have confidence as to the characteristics of the specified gemstone.

12. The reason that Element Six had Sample 3 purchased from PGD rather than directly from IIa was because, to our buyer's understanding, IIa had no direct retail channel offering synthetic diamond gemstones for sale in Singapore or elsewhere. Given this,

---

[1] See pp. 19-29 of the 14th Affidavit of Susan Fletcher Watts, a true and correct extract of which is attached hereto as **Exhibit "3"**.
[2] See pp. 267-268 of Ex. 3 (the 14th Affidavit of Susan Fletcher Watts).

Element Six chose to approach IIa's distributors and retailers in the United States to make the purchases.

13. Two gemstones were purchased pursuant to PGD Invoice No. SA-1510-00178, "LG10226420" and "LG10172714". These codes are based on the corresponding IGI report numbers. Sample 3 is the gemstone that is the subject of IGI Report No. LG10226420.

14. With regard to Sample 3 specifically, there is evidence that sample was made from CVD diamond material synthesized by IIa in Singapore, including but not limited to[3]:

   i. PGD and IIa are both owned and controlled by the Mehta family. This is evidenced by the 2013 and 2014 Annual Franchise Tax Reports for PGD. In the 2013 report (which was filed on 26 February 2014), Suraj Mehta is listed as the sole director. According to the Singapore Accounting and Corporate Regulatory Authority (ACRA), Suraj Mehta is also a director of IIa. Another member of the Mehta family (Suraj Mehta's brother), Vishal Mehta, is currently also a director and the CEO of IIa. Sonia Mehta, Suraj and Vishal's mother, is also a director of IIa.

   ii. As admitted by IIa at paragraph 4 of the DCC, IIa and PGD are both part of the IIa Holdings Group.

   iii. The official Facebook page of IIa at https://www.facebook.com/IIaTech/ actively advertises for and runs articles on PGD.

   iv. In an article dated 11 February 2015 and entitled "MetroWest Jewelry Store Selling Lab Grown Diamonds", PGD is stated to create its diamonds in a Singapore lab.

   v. In an article dated 23 December 2014 entitled "S'pore firm shines with lab-grown diamonds", PGD is stated to be the sister company of IIa.

---

[3] See pp. 28-29 of Ex. 3 (the 14th Affidavit of Susan Fletcher Watts).

    vi. In an article dated 17 March 2015 and entitled "IIa Technologies Unveils World's Largest Diamond Greenhouse in Singapore", as well as an article dated 19 March 2015 and entitled "World's largest diamond factory opens in Singapore", PGD is stated to be a "part of IIa Holdings Group". IIa is also stated to be a part of "IIa Holdings Group".

    vii. In a post on PGD's Facebook page dated 2 April 2015, PGD diamonds were described as "being grown in the world's largest diamond greenhouse facility in Singapore", with a "learn more" hyperlink to a Diamonds.net press release dated 18 March 2015 entitled "IIa Technologies Opens Diamond Greenhouse in Singapore"[4].

    viii. In a Business Insider article dated 17 October 2016, it was reported that "a company called Pure Grown Diamonds told Business Insider that it can take anywhere from 10 to 12 weeks to bake up a batch of substantially-sized diamonds in its Singapore lab"[5].

15. I am informed by Element Six and believe that the distribution chain in the synthetic diamond gem industry is generally opaque. This is why Element Six has been unable to independently obtain further information on the supply of diamond material from IIa to PGD. To further complicate matters, it may be that there are one or more intermediaries between IIa and PGD. Such intermediaries may, for example, be involved in the cutting and polishing of as-grown diamond material made by IIa, before providing the final gemstones to PGD for retailing.

16. IIa has denied any infringement of the Patents. Further, IIa has pleaded at paragraph 5(b)(xiv)-(xviA) of the DCC that:

    i. It has no knowledge of Sample 3;

---

[4] True and correct copies of these are attached hereto as **Exhibit "4"**.
[5] True and correct copies of these are attached hereto as **Exhibit "5"**.

  ii. Sample 3 was not made from diamond material grown by IIa in Singapore; and

  iii. Even if the diamond material which Element Six eventually designated as Sample 3 originated from IIa (which IIa strongly denies), IIa "*has no knowledge of whether the condition and/or characteristics of the Sample 3 had changed from the time it left IIA's possession, power and/or custody by, for example, cutting, polishing, annealing, doping, metallisation, irradiation or otherwise*".

17. Discovery in the Suit commenced in or around October 2016. On 7 October 2016, Element Six and IIa served their respective "Lists of Documents", which I understand is a requirement akin to the U.S. federal courts' initial disclosures. On 16 December 2016, IIa served a Supplementary List of Documents. Attached hereto as **Exhibit "6"**, are true and correct copies of IIa's List of Documents and Supplementary List of Documents.

18. The documents enumerated in IIa's List of Documents and Supplementary List of Documents pertain mainly to IIa's attack on the validity of the Patents. IIa has failed to disclose any documents on, *inter alia*, its manufacturing process and the provenance of the Samples (save those already disclosed by Element Six).

19. Element Six thus approached IIa for further discovery for, *inter alia*, documents relating to the provenance of Sample 3. A summary of the correspondence between the parties can be found at paragraph 10 of the 14th Affidavit of Susan Fletcher Watts filed in the Suit.[6]

20. In the context of Sample 3, Element Six's application for further discovery in the Singapore Court seeks:

---

[6] See Exhibit "3".

      i. documents (e.g. sales invoices, marketing materials, product specifications) relating to single crystal CVD diamond material supplied by IIa to PGD and from which it is possible to making a gemstone having the same characteristics of Sample 3;

      ii. documents containing the phrases "LG*10226420" or "1510*00178" ("*" indicates a single wildcard character), which are product codes/invoice numbers referenced in documents arising from Element Six's purchase of Sample 3 from PGD.

21. IIa declined, *inter alia*, Element Six's requests for further discovery in relation to the provenance of Sample 3, which necessitated Element Six's filing of a formal application in the Singapore Court for further discovery. Element Six's formal application was made by way of summons and supported by the 14th Affidavit of Susan Fletcher Watts referenced above. A true and correct copy of the summons for discovery is attached hereto as **Exhibit "7"**.

22. To date, IIa has continued to deny any knowledge of Sample 3 notwithstanding that Suraj Mehta, who is a director in PGD, also concurrently sits on the board of directors for IIa[7] and would be intimately aware of and acquainted with the facts of the Singapore litigation. His brother, Vishal Mehta, is the CEO of IIa and has been personally involved in the Singapore litigation, serving as the main factual deponent in the affirmation of more than 20 affidavits since the litigation commenced in 2016.

23. Concurrent with Element Six's application for further discovery, Element Six also filed interrogatories against IIa in the Singapore Courts, which I understand is a procedural mechanism akin to the U.S. federal courts' interrogatories. Under Singapore procedure, Element Six is entitled to file interrogatories on IIa twice without having to first

---

[7] True and correct copies of the annual filing returns of IIa from 2014-2017 showing the composition of the board of directors are attached hereto as **Exhibit "8"**.

seek leave of the Singapore Court. If IIa declines to answer the interrogatories, it must file a formal application in Court to withdraw the same. True and correct copies of IIa's application to withdraw the interrogatories and an extract of Element Six's response affidavit are attached hereto as **Exhibit "9"**.

24. The annexure to the summons for the withdrawal of interrogatories contains the actual interrogatories sought by Element Six. Paragraphs 11 and 13-16 of the annexure relate to the provenance of Sample 3. In general, the interrogatories are focused on the relationship between IIa and PGD, rather than IIa's dealings with Sample 3.

25. IIa declined to answer paragraphs 11 and 13-16, save for an unhelpful and evasive answer to paragraph 11(a). A true and correct copy of IIa's answer to interrogatories is attached hereto as **Exhibit "10"**.

26. Element Six's application for further discovery and IIa's application to withdraw the interrogatories were heard by the learned Assistant Registrar Justin Yeo ("AR Yeo") of the Singapore Supreme Court on 4 and 7 June 2018.

27. During the aforementioned hearings, one of the issues raised was that Element Six's discovery request for documents to establish the provenance of samples including Sample 3 would have been better made against the third party retailers directly. ***Both IIa's counsel and AR Yeo expressed the view that it would be more direct and effective for Element Six to obtain discovery from these third party retailers (e.g. from PGD in relation to Sample 3) as these were the retailers who sold Samples 1-3 to Element Six's purchasers.***

28. AR Yeo has since rendered two oral decisions on discovery issues. First, on 14 August 2018, he allowed IIa's application to withdraw (or quash) the interrogatories. Second, on 27 August 2018, he allowed in part Element Six's application for further discovery. The parties are still awaiting the issuance of AR Yeo's written grounds for his decisions in the interrogatories and discovery applications.

29. However, AR Yeo had noted during the interrogatories hearing that the requests for interrogatories were too broadly formulated and were not adequately confined to the pleaded samples in issue. Unlike the requests here, those interrogatories were not specifically linked to Samples 1-3; rather, they were related to various attributes for **_all_** IIa-produced diamond material. Given that IIa had denied any knowledge of Samples 1-3 as well as the corresponding invoice and product codes associated with these samples (which were issued by the respective third party retailers), it was unavoidable that the requests would have to be more broadly crafted. Nonetheless, AR Yeo's decision appears not to have been on the basis of the substance of the interrogatories, but instead on the breadth. Element Six does not seek that same breadth of discovery from PGD.

30. This view is further reinforced by AR Yeo's decision to allow part of Element Six's application for further discovery. The discovery requests allowed against IIa were those that related specifically to Samples 1 – 4, whereas the more broadly crafted requests relating to various attributes or characteristics for all IIa-produced diamond material or manufacturing methods were denied. Notwithstanding the granted discovery requests, given IIa's pleaded averment that it has no knowledge of Sample 3, and that Sample 3 was not made from diamond material grown by IIa in Singapore in any event, it is unlikely that all necessary discovery will be obtained from them.

31. Consequently, in light of IIa's arguments and AR Yeo's views, Element Six has now decided to take the appropriate steps to obtain further evidence from PGD in relation to the provenance of Sample 3.

**Receptivity of the Singapore Courts to Evidence Obtained Through**

**§1782 Discovery**

32. I have also been asked to comment on the Singapore legal system, in particular the receptivity of the Singapore courts to evidence obtained through §1782 discovery and

9

depositions. Among other things, I have been asked whether it would be contrary to Singapore law or policy to submit documents and information obtained by using discovery available in the United States.

33. In Singapore, the main statute governing the admissibility of evidence is the Evidence Act (Cap. 97) ("EA"). Section 5 of the EA states that *"Evidence may be given in any suit or proceeding of the existence or non-existence of every fact in issue and of such other facts as are hereinafter declared to be relevant, and of no others."*[8]

34. Like U.S. law, Singapore evidence law includes a rule on hearsay evidence, but also like U.S. law, it includes exceptions to that hearsay rule. For present purposes, it is only necessary to consider the exception statutorily provided for in §32(1)(b) EA. Section 32(1)(b) EA provides that documentary records kept in the course of business are admissible in proceedings and is reproduced below:

*32.—(1) Subject to subsections (2) and (3), statements of relevant facts made by a person (whether orally, in a document or otherwise), are themselves relevant facts in the following cases:*

...

*or is made in course of trade, business, profession or other occupation;*

*(b) when the statement was made by a person in the ordinary course of a trade, business, profession or other occupation and in particular when it consists of—*

---

[8] A true and correct copy of the relevant provisions of the EA are attached hereto as **Exhibit "11"**.

10

> *(i) any entry or memorandum in books kept in the ordinary course of a trade, business, profession or other occupation or in the discharge of professional duty;*
>
> *(ii) an acknowledgment (whether written or signed) for the receipt of money, goods, securities or property of any kind;*
>
> *(iii) any information in market quotations, tabulations, lists, directories or other compilations generally used and relied upon by the public or by persons in particular occupations; or*
>
> *(iv) a document constituting, or forming part of, the records (whether past or present) of a trade, business, profession or other occupation that are recorded, owned or kept by any person, body or organisation carrying out the trade, business, profession or other occupation,*
>
> *and includes a statement made in a document that is, or forms part of, a record compiled by a person acting in the ordinary course of a trade, business, profession or other occupation based on information supplied by other persons[.]*

35. Thus, evidence obtained through §1782 discovery would be admissible under this provision. Such evidence would relate to statements made by a person connected to Gemesis, Microwave, and/or PGD (e.g. past or current employees) in the ordinary course of trade or business. These statements would typically be any of the four categories of documents described in §32(1)(b) EA. For example, sale and purchase agreements, purchase invoices, and delivery receipts etc. would be considered admissible "business records" under Singapore law.

36. Further, such evidence would be regarded by the Singapore Court as being useful insofar as it elucidates the respective and combined relationships between Gemesis, Microwave, PGD, and IIa, as well as whether Sample 3 originated from diamond material made by IIa in Singapore—particularly because IIa has disputed the provenance of Sample 3 and left Element Six with no other recourse to obtain this information.

### Receptivity of the Singapore Courts to Evidence Obtained Through § 1782 Depositions

37. Under Singapore law, depositions may be used for the purposes of interlocutory proceedings. O 41 r 5 of the Singapore Rules of Court (rev ed 2014) ("ROC") states[9]:

> *(1) Subject to the other provisions of these Rules, an affidavit may contain only such facts as the deponent is able of his own knowledge to prove.*
>
> *(2) An affidavit sworn for the purpose of being used in interlocutory proceedings may contain statements of information or belief with the sources and grounds thereof.*

38. Therefore, O 41 r 5 ROC expressly permits affidavits filed for interlocutory proceedings to contain hearsay evidence (e.g. a transcript of a deposition obtained under §1782).

39. For the purpose of this rule "those applications only are considered interlocutory which do not decide the rights of parties, but are made for the purpose of keeping things in status quo till the rights can be decided, or for the purpose of obtaining some direction of the court as to how the cause is to be conducted, as to what is to be done in

---

[9] A true and correct copy of the relevant provisions of the Rules of Court are attached hereto and marked **Exhibit "12"**.

the progress of the cause of the purpose of enabling the court ultimately to decide upon the rights of the parties"[10].

40. Depositions obtained under §1782 would be relevant to and support an application for further discovery (by Element Six from IIa) in the Singapore Court.

41. Applications for further discovery are a type of interlocutory proceeding under Singapore law, as they do not decide the rights of parties but rather seek direction from the court as to what is to be done in the progress of the cause of the purpose of enabling the court ultimately to decide upon the rights of the parties.

42. The procedure for an application for further discovery is governed by O 24 r 5 ROC[11]. Under this rule, the Singapore Court may at any time, on the application of any party to a cause or matter, make an order requiring any other party to make an affidavit stating whether any document specified or described in the application or any class of document so specified or described is, or has at any time been, in his possession, custody or power, and if not then in his possession, custody or power, when he parted with it and what has become of it.

43. An application for an order under this rule must be supported by an affidavit stating the belief of the deponent that the party from whom discovery is sought under this rule has, or at some time had, in his possession, custody or power, the document, or class of document, specified or described in the application and that it falls within one of the descriptions in O 24 r 5(3) ROC. But this is not sufficient unless a *prima facie* case is made out for (1) possession, custody or power, and (2) relevance of the specified documents; this

---

[10] See *Singapore Civil Procedure Volume I* (Sweet & Maxwell, 2018 ed) at [41/5], a true and correct copy of which is attached hereto and marked **Exhibit "13"**.
[11] See Exhibit "12".

case may be based merely on the probability arising from the surrounding circumstances or in part on specific facts that arise from the opportunity to depose the subpoenaed party[12].

44. A deposition under §1782 of a person having knowledge of the relationship between Gemesis, Microwave, PGD, and IIa, as well as the source of diamond materials sold by Gemesis, Microwave, and PGD would be highly relevant and probative on the issue of whether the documents sought are in the possession, power, and custody of IIa.

45. For example, the deponent may state that Gemesis, Microwave, and/or PGD obtain their diamond materials from IIa, which would suggest that IIa possesses invoices etc. evidencing its supply of diamond material to Gemesis, Microwave, and/or PGD. Such statements could then be adduced in an affidavit to support Element Six's application for further discovery for PGD (and potentially Gemesis and Microwave). The Singapore Court would find such evidence very useful, and it will be difficult for IIa to argue that the documents sought are not in its possession, power, or custody.

46. For completeness, I note that although there may be some eventual difficulty in admitting depositions obtained under §1782 at trial, this has no effect on the instant request as it does not apply to interlocutory proceedings.

I declare under penalty of perjury under the laws of the United States of America and the State of New York that the foregoing is true and correct.

Executed this 6th day of September, 2018, Singapore.



Melvin Pang

---

[12] See *Singapore Civil Procedure Volume I* (Sweet & Maxwell, 2018 ed) at [24/5/1], a true and correct copy of which is attached hereto and marked **Exhibit "14"**.