# Exhibit 2

IN THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

HC/S 26/2016

Between

Amended as deleted and underlined in black pursuant to Order 20 Rule 3(1) of the Rules of Court.

Dated this 12th day of April 2016.

Solicitors for the Plaintiff
Amica Law LLC

**ELEMENT SIX TECHNOLOGIES LIMITED
(REG NO. 08206603)**

...Plaintiff

And

**IIa TECHNOLOGIES PTE. LTD.
(REG. NO.  200516961K)**

...Defendant


**STATEMENT OF CLAIM (AMENDMENT NO. 1)**


**The Plaintiff**


1.      The Plaintiff is a company incorporated in the United Kingdom with its registered address at Global Innovation Centre, Fermi Avenue, Harwell Oxford, Didcot, Oxfordshire OX11 0QR, United Kingdom.  The Plaintiff is part of the Element Six Group, a manufacturer of super-hard materials including synthetic diamond materials for industrial applications.  Element Six is a subsidiary of the De Beers Group, a diamond mining company and supplier of rough natural diamonds to the gem industry, which in turn is a subsidiary of Anglo American plc, a global mining company.

2. The Plaintiff is the proprietor of Singapore Patent No. 115872 [WO2004/046427] in respect of an optical quality synthetic single crystal chemical vapour deposition ("**CVD"**) diamond material and the method for its production (the "'**872 Patent**"). The CVD diamond material produced according to the '872 patent has a lower optical birefringence and lower optical absorption which can be used in a variety of industrial applications requiring the extreme performance properties of diamond, in particular optical applications such as components for lasers and infrared spectroscopy. It may also be used for lab-grown synthetic diamond gems for the jewellery industry.

3. The Plaintiff is also the proprietor of Singapore Patent No. 110508 [WO2004/022821] in respect of a method of producing CVD diamond of a desired colour including the steps of heat treating the diamond under conditions suitable to produce the desired colour (the "'**508 Patent**"). This includes converting the colour of a single crystal CVD diamond of undesirable colour, typically brown, into any one of a number of desirable colours including colourless and near colourless.

**The Defendant**

4. The Defendant is a company incorporated in Singapore with its registered address at 65 Chulia Street #38-02/03 OCBC Centre Singapore 049513. Established in 2005, the Defendant deals in the manufacture and growth

of CVD diamonds which are used in the mechanical, manufacturing and aerospace industries as well as in the gems and jewellery industry. The Defendant is a part of IIa Holdings Group, which also owns New York-based retailer-distributor, Pure Grown Diamonds, Inc. (formerly known as Gem Company and Gemesis US Corporation)., Inc.).

5.    The Defendant has since the issuance of the '872 Patent and '508 Patents (collectively the "**Patents**") and before the issuance of the Writ in this action infringed the Patents in the manner appearing in the **Particulars of Infringement (Amendment No. 1)** annexed.

6.    The Defendant threatens and intends unless restrained by this Honourable Court to continue to infringe the Patent in the manner alleged in the **Particulars of Infringement (Amendment No.1)**.

7.    The Defendant's infringement has caused loss and damage to the Plaintiff and is calculated to cause further loss and damage.

**AND THE PLAINTIFF CLAIMS:**

(1)    A declaration that the '872 Patent and the '508 Patent are valid and have been infringed by the Defendant.

(2)    An injunction to restrain the Defendant, whether by themselves, their directors, officers, servants, agents or any of them or otherwise howsoever from (a) making, disposing of, offering to dispose of, using, importing and/or keeping whether for disposal or otherwise products which infringe the '872 Patent and/or the '508 Patent, and/or (b) using or offering for use in Singapore processes which infringe the '872 Patent and/or the '508 Patent;

(3)    An inquiry as to damages or alternatively at the Plaintiff's option an account of profits made by the Defendant arising from the infringement of the '872 Patent and/or the '508 Patent;

(4)    An order for the delivery up and/or destruction, to be verified on oath, of all products or articles which infringe the '872 Patent and/or the '508 Patent;

(5)    Costs;

(6)    Interests; and

(7)    Such further or other relief as this Honourable Court shall deem appropriate.

~~Dated the 12th day of January 2016.~~

Re-dated the 12th day of April 2016.

**AMICA LAW LLC**

<u>**SOLICITORS FOR THE PLAINTIFF**</u>

## **PARTICULARS OF INFRINGEMENT (AMENDMENT NO.1)**

Amended as deleted and
underlined in black pursuant
to Order 20 Rule 3(1) of the
Rules of Court.

Dated this 12th day of April
2016.

*Amica*

Solicitors for the Plaintiff
Amica Law LLC

1.      Subsequent to the grant of the '872 Patent and prior to the issuance of the
        writ herein, the Defendant has infringed the '872 Patent, specifically, the
        following claims of the '872 Patent.

        a)      Claim 1(ii);

        b)      Claim 1(iii);

        c)      Claim 16(ii);

        d)      Claim 19;

        e)      Claim 35;

        f)      Claims 41-43;

        g)      Claims 47-50;

**h)**     Claims 52-53;

**i)**     Claims 57-60;

**j)**     Claims 62-72; and

**k)**     Claims 75-78

All of the dependent Claims of the '872 Patent the Defendant has infringed should be taken to rely on each and every possible permutation of the preceding Claims as enumerated in this paragraph. Additionally, without prejudice to the foregoing, dependent Claim 52 relies on Claim 51 and dependent Claim 53 relies on Claims 51 and/or 52.

**2.**     Subsequent to the grant of the '508 Patent and prior to the issuance of the writ herein, the Defendant has infringed the '508 Patent, specifically, the following claims of the '508 Patent.

**a)**     Claims 1-3;

**b)**     Claims 5-10;

**c)**     Claims 12-18;

**d)**     Claims 24-25;

**e)** Claims 38-41; and

**f)** Claims 44-45.

<u>All of the dependent Claims of the '508 Patent the Defendant has infringed should be taken to rely on each and every possible permutation of the preceding Claims as enumerated in this paragraph.</u>

**3.** The acts of infringement comprise the following:

**a)** making,

**b)** disposing of or offering to dispose of,

**c)** importing,

**d)** using, and/or

**e)** keeping whether for disposal or otherwise,

products comprising Claims 1(ii), 1(iii), 16(ii), 19, 35, 41-43, 47-50, 52, 53, 57-60, 72 and 75-78 of the '872 Patent;

**f)** using, and/or

**g)** offering for use;

processes comprising Claims 62-71 of the '872 Patent and/or Claims 1-3, 5-10, 12-18, 24-25, 38-41 and 44-45 of the '508 Patent, when the Defendant knows, or it is obvious to a reasonable person in the circumstances, that its use without the consent of the Plaintiff would be an infringement of the Patents; and/or

**h)** disposing of or offering to dispose of,

**i)** using,

**j)** importing, and/or

**k)** keeping whether for disposal or otherwise,

products obtained directly by means of the processes comprising Claims 62-71 of the '872 Patent and/or Claims 1-3, 5-10, 12-18, 24-25, 38-41 and 44-45 of the '508 Patent.

**4.** In particular, the Plaintiff complains of the following acts:

**a)** The manufacture, use, importing, disposal, offer to dispose of and/or keeping whether for disposal or otherwise of, synthetic single crystal CVD diamonds, which infringe the above stated claims of the Patents, within Singapore by the Defendant, which is subsequently exported to various customers and/or distributors in a variety of

countries. Pending further discovery and/or interrogatories, the above is presently supported by the following evidence:

*Infringement of the '508 and '872 Patents*

i.   The trap purchase of a CVD diamond sample ("**Sample 1**") from Gemesis ~~US~~Diamond Company (formerly known as The Gemesis Corporation with product code LG10061905 ~~(now known as Pure Grown Diamonds)~~) via their website at www.gemesis.com by a Mr. Chuiguan Ng as instructed by the Plaintiff's Singapore counsel and evidenced by invoice number INV-REF/~~Q4~~01-JAN-12/31 dated 16 Apr 2012.

There is evidence ~~pointing to this~~that Sample 1 was made from CVD diamond ~~sample being obtained from and/or manufactured~~material synthesized by the Defendant in Singapore, including but not limited to:

(A) The fact that both The Gemesis ~~US~~ Corporation (now known as ~~Pure Grown Diamonds~~Gemesis Diamond Company) and the Defendant are both owned and controlled by the ~~Jatin~~ Mehta family.

(B) ~~At the material time, the main website of the Defendant~~<u>From 16 April 2013 or earlier to at least 24 March 2016, the website of the Defendant at http://2atechnologies.com/2a-diamond-properties/gem-quality-diamonds/</u> stated that "*Jewellery using diamonds grown by IIa Technologies are available through our partner Gemesis at <u>www.gemesis.com</u>.*"

(C) <u>The invoice issued by Gemesis Diamond Company for Sample 1 (Invoice number INV-REF/01-JAN-12/31 dated 16 Apr 2012) lists Gemesis Diamond Company as the vendor and www.gemesis.com as the contact email.</u>

(D) <u>At least as of 24 March 2016, the website of Gemesis Diamond Company, www.gemesis.com, redirects to the website of Pure Grown Diamonds, Inc., www.puregrowndiamonds.com. Both the Defendant and Pure Grown Diamonds, Inc. are part of the IIa Holdings Group.</u>

(E) <u>The product code of Sample 1 (LG10061905) has an identical format to the product code for Sample 3 (LG10226420) which was obtained from Pure Grown Diamonds, Inc. (see below).</u>

*Infringement of the '872 Patent*

ii. The purchase of a CVD diamond sample ("**Sample 2**") from Microwave Enterprises ("**ME**") with product code 2PCVD303004N evidenced by invoice number 3086 dated 12 May 2014.

There is evidence ~~pointing to this~~that Sample 2 was made from CVD diamond ~~sample being obtained from and/or manufactured~~material synthesized by the Defendant in Singapore, including but not limited to:

(A) The sales quote from ME (MWE Quote # 13-2051, IIa Quote #1314-121 dated 24 February 2014) for the sale of the diamond sample expressly states that: "*The following quotation is for Lab Grown, CVD single crystal diamond plates, ~~producted~~produced by IIa Technologies Pte Ltd.*"

(B) The ~~main~~ website of ME at www.mwe-ltd.com contains numerous references ~~to the fact~~ that its CVD diamond material ~~is manufactured~~was synthesized by ~~and obtained from~~ the Defendant in Singapore, including the following:

"*Our manufacturing partner is the industry leader in grown diamond technology and manufacturing capability, IIa Technologies Pte Ltd, located in Singapore.*"

"*[ME] provides the US market with CVD diamond material produced by IIa Technologies, Pte [sic]. IIa Technologies host the largest CVD diamond manufacturing facility in the world, where they have transitioned from producing type IIa rough diamond for the gem market to similar material, produced and finished for the industrial and scientific communities.*"

"*In 2013, the company teamed with one of our customers and the largest producer of lab grown diamond materials in the world, IIa Technologies. Under the collaboration, [ME] now distributes and sells lab grown diamond materials in the North American market place.*"

(C) Subsequent to the filing of the action, as of 24 March 2016, the above references to the supply of diamond material from the Defendant in ME's website have either been removed or amended to include other suppliers.

(D) The product code of Sample 2 (2PCVD303004N) has an identical format to the product code for Sample 4 (2PCVD505005N) which was obtained directly from the Defendant (see below).

*Infringement of the '508 and '872 Patents*

iii. The purchase of a CVD diamond sample ("**Sample 3**") from Pure Grown Diamonds, Inc. with product code LG10226420 evidenced by invoice number SA-1510-00178 dated 27 October 2015.

There is evidence ~~pointing to this diamond sample being obtained from and/or manufactured~~that Sample 3 was made from CVD diamond material synthesized by the Defendant in Singapore, including but not limited to:

(A) The fact that both Pure Grown Diamonds ~~(previously known as Gemesis US Corporation)~~, Inc. and the Defendant are both owned and controlled by the ~~Jatin~~ Mehta family. From 26 February 2014 or earlier up to as late as 6 January 2015, Suraj Mehta was the sole director of Pure Grown Diamonds, Inc. (then known as Gemesis, Inc.).

(A)(B)  The Defendant is a part of IIa Holdings Group, which also owns Pure Grown Diamonds (formerly known as Gemesis US Corporation)., Inc..

(B)(C)  The official Facebook page of the Defendant at https://www.facebook.com/IIaTech/ actively advertises for and runs articles on Pure Grown Diamonds., Inc..

*Infringement of the '872 Patent*

iv.      The purchase of a CVD diamond sample ("**Sample 4**") directly from the Defendant in Singapore with product code 2PCVD505005N as evidenced by quotation number IIa/QT/1516-124 dated 23 October 2015.

b)      The use and/or offer to use within Singapore by the Defendant of the method of manufacture specified in Claims 62-71 of the '872 Patent and/or Claims 1-3, 5-10, 12-18, 24-25, 38-41 and 44-45 of the '508 Patent. Pending further discovery and/or interrogatories, the Plaintiff is not aware of any other methods of manufacture other than those taught in the Patents capable of producing synthetic CVD diamonds possessing the same optical qualities and colour as those manufactured by the Defendant.

Further, pending further discovery and/or interrogatories, to the best of the Plaintiff's knowledge, the only manufacturing facility for CVD diamonds owned or operated by the Defendant is located within Singapore.

5.   It is common knowledge in the synthetic diamond and gemological trades that the Plaintiff is the registered proprietor of the Patents. ~~The~~Further, the International Search Report dated 22 July 2009 issued in respect of the Defendant's own patent application (PCT/SG2009/000218) cited the US equivalent of the Plaintiff's '872 Patent (US 2004/0229464). As such, the Defendant knew or ought reasonably to have known that, at all material times, the Patents were valid and subsisting and that they belonged to the Plaintiff such that the use of the Patents in Singapore without the Plaintiff's consent would be an infringement.

6.   The Plaintiff is unable to give full particulars of all the acts of infringement of the Patents by the Defendant until after discovery and/or interrogatories but will claim damages or an account of profits in respect of each and every such infringement.

~~Dated this 12th day of January 2016~~

Re-dated the 12th day of April 2016.

**AMICA LAW LLC**

<u>**SOLICITORS FOR THE PLAINTIFF**</u>

HC/S 26/2016

Amended as deleted and underlined in black pursuant to Order 20 Rule 3(2) of the Rules of Court.

Dated this 13th day of May 2016

*Drewen Napier*

Solicitors for the Defendant
Drew & Napier LLC

Amended as deleted and underlined in red pursuant to Order of Court dated 16 November 2016.

Dated this 22nd day of November 2016

*Drewen Napier*

Solicitors for the Defendant
Drew & Napier LLC

Amended as deleted and underlined in green pursuant to Order of Court dated 14 June 2017

Dated this 23rd day of June 2017

*Drewen Napier*

Solicitors for the Defendant
Drew & Napier LLC

Amended as deleted and underlined in green pursuant to Order of Court dated 18 April 2018

Dated this 25th day of April 2018

*Drewen Napier*

Solicitors for the Defendant
Drew & Napier LLC

Between

**ELEMENT SIX TECHNOLOGIES LIMITED**

(United Kingdom Registration No. 08206603)

… Plaintiff

And

**IIa TECHNOLOGIES PTE. LTD.**

(Singapore UEN No. 200516961K)

… Defendant

**DEFENCE AND COUNTERCLAIM (AMENDMENT NO 4)** ("**Amended DCC**")

Unless stated otherwise, the terms and definitions used in the Plaintiff's Statement of Claim (Amendment No.1) ("**Amended Statement of Claim**") are adopted herein.

**<u>DEFENCE</u>**

1.     Save it is admitted that the Plaintiff is a company incorporated in the United Kingdom with its registered address at Global Innovation Centre, Fermi Avenue, Harwell Oxford, Didcot, Oxfordshire OX 111 0QR, United Kingdom, paragraph 1 of the Amended Statement of Claim is denied and the Plaintiff is put to strict proof thereof.

2.     Paragraph 2 of the Amended Statement of Claim is admitted insofar as the facts pleaded in respect of the '872 Patent match those maintained on the register of the Intellectual Property Office of Singapore.

3.     Paragraph 3 of the Amended Statement of Claim is admitted insofar as the facts pleaded in respect of the '508 Patent match those maintained on the register of the Intellectual Property Office of Singapore.

4.     As regards paragraph 4 of the Amended Statement of Claim:

(a)     The Defendant was formerly known as The Gemesis Company (S) Pte. Ltd. On 14 November 2012, the Defendant changed its name to IIa Technologies Pte. Ltd.

(b)     It is admitted that the Defendant is a company incorporated in Singapore with its registered address at 65 Chulia Street #38-02/03 OCBC Centre Singapore 049513.

(c)     It is admitted that the Defendant was incorporated in 2005 and deals in the manufacture and growth of CVD diamonds which are used in the

mechanical and manufacturing industries as well as in the gems and jewellery industry.

(d)    It is admitted that the Defendant is a part of IIa Holdings Group.

(e)    It is admitted that IIa Holdings Group owns New York-based retailer-distributor, Pure Grown Diamonds, Inc..

(eA)   It is admitted that Pure Grown Diamonds, Inc. was formerly known as Gem Company and Gemesis, Inc..

(f)    Save as expressly admitted above, paragraph 4 of the Amended Statement of Claim is denied and the Plaintiff is put to strict proof thereof. In particular:

    i.    It is denied that the Defendant deals in the manufacture and growth of CVD diamonds which are used in the aerospace industry.

5.    Paragraphs 5 and 6 of the Amended Statement of Claim, as well as each and every allegation of infringement of the '872 Patent and the '508 Patent pleaded in paragraphs 1 to 6 of the Amended Particulars of Infringement ("**Amended Particulars of Infringement**"), are denied and the Plaintiff is put to strict proof thereof.

**Particulars relating to the '872 Patent**

(a)    As regards paragraph 1 of the Amended Particulars of Infringement:

i.      Paragraph 1(a) of the Amended Particulars of Infringement is
        denied and the Plaintiff is put to strict proof thereof.

ii.     Paragraph 1(b) of the Amended Particulars of Infringement is
        denied and the Plaintiff is put to strict proof thereof.

iii.    Paragraph 1(c) of the Amended Particulars of Infringement is
        denied and the Plaintiff is put to strict proof thereof. Further, this
        pleading is embarrassing because claim 16(ii) of the '872 Patent
        is a dependent claim for "*A CVD single crystal diamond material
        according to any one of the preceding claims…*" and the Plaintiff
        has not specified each and every possible permutation of the
        relevant preceding claim(s) pleaded in paragraph 1 of the
        Amended Particulars of Infringement it is relying on.

iv.     Paragraph 1(d) of the Amended Particulars of Infringement is
        denied and the Plaintiff is put to strict proof thereof. Further, this
        pleading is embarrassing because claim 19 of the '872 Patent is
        a dependent claim for "*A CVD single crystal diamond material
        according to any one of claims 16 to 18…*" and the Plaintiff has
        not specified each and every possible permutation of the relevant
        claim(s) pleaded in paragraph 1 of the Amended Particulars of
        Infringement it is relying on.

v.      Paragraph 1(e) of the Amended Particulars of Infringement is
        denied and the Plaintiff is put to strict proof thereof. Further, this
        pleading is embarrassing because claim 35 of the '872 Patent is
        a dependent claim for "*A CVD single crystal diamond material*

*according to any one of the preceding claims...*" and the Plaintiff has not specified each and every possible permutation of the relevant preceding claim(s) pleaded in paragraph 1 of the Amended Particulars of Infringement it is relying on.

vi.   Paragraph 1(f) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof. Further, this pleading is embarrassing because:

A.   Claim 41 of the '872 Patent is a dependent claim for "*A CVD single crystal diamond material according to any one of the preceding claims...*" and the Plaintiff has not specified each and every possible permutation of the relevant preceding claim(s) pleaded in paragraph 1 of the Amended Particulars of Infringement it is relying on.

B.   Claim 42 of the '872 Patent is a dependent claim for "*A CVD single crystal diamond material according to claim 41...*". Paragraph 5(a)(vi)(A) herein is repeated and adopted.

C.   Claim 43 of the '872 Patent is a dependent claim for "*A CVD single crystal diamond material according to claim 42...*". Paragraph 5(a)(vi)(B) herein is repeated and adopted.

vii.     Paragraph 1(g) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof. Further, this pleading is embarrassing because:

     A.     Claim 47 of the '872 Patent is a dependent claim for "*A CVD single crystal diamond material according to any one of the preceding claims...*" and the Plaintiff has not specified each and every possible permutation of the relevant preceding claim(s) pleaded in paragraph 1 of the Amended Particulars of Infringement it is relying on.

     B.     Claim 48 of the '872 Patent is a dependent claim for "*A CVD single crystal diamond material according to any one of the preceding claims...*" and the Plaintiff has not specified each and every possible permutation of the relevant preceding claim(s) pleaded in paragraph 1 of the Amended Particulars of Infringement it is relying on.

     C.     Claim 49 of the '872 Patent is a dependent claim for "*A CVD single crystal diamond material according to any one of the preceding claims...*" and the Plaintiff has not specified each and every possible permutation of the relevant preceding claim(s) pleaded in paragraph 1 of the Amended Particulars of Infringement it is relying on.

     D.     Claim 50 of the '872 Patent is a dependent claim for "*A CVD single crystal diamond material according to claim*

*49…*". Paragraph 5(a)(vii)(C) herein is repeated and adopted.

viii.    Paragraph 1(h) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof. Further this pleading is embarrassing because:

   A.    Claim 52 of the '872 Patent is a dependent claim for "*A CVD single crystal diamond material according to claim 51…*" and the Plaintiff has not specified each and every permutation of the claims that the Plaintiff is asserting against the Defendant where Claim 52 relies on Claim 51.

   B.    Claim 53 of the '872 Patent is a dependent claim for "*A CVD single crystal diamond material according to Claim 51 or Claim 52…*" and the Plaintiff has not specified each and every permutation of the claims that the Plaintiff is asserting against the Defendant where Claim 53 relies on Claim 51; where Claim 53 relies on Claim 52; and where Claim 53 relies on Claims 51 and 52.

ix.    Paragraph 1(i) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof. Further, this pleading is embarrassing because:

   A.    Claim 57 of the '872 Patent is a dependent claim for "*A CVD single crystal diamond material according to any*

*one of the preceding claims...*" and the Plaintiff has not specified each and every possible permutation of the relevant preceding claim(s) pleaded in paragraph 1 of the Amended Particulars of Infringement it is relying on.

B.     Claim 58 of the '872 Patent is a dependent claim for "*A CVD single crystal diamond material according to claim 57...*". Paragraph 5(a)(ix)(A) herein is repeated and adopted.

C.     Claim 59 of the '872 Patent is a dependent claim for "*A CVD single crystal diamond material according to any one of the preceding claims...*" and the Plaintiff has not specified each and every possible permutation of the relevant preceding claim(s) pleaded in paragraph 1 of the Amended Particulars of Infringement it is relying on.

D.     Claim 60 of the '872 Patent is a dependent claim for "*A CVD single crystal diamond material according to claim 59...*". Paragraph 5(a)(ix)(C) herein is repeated and adopted.

x.     Paragraph 1(j) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof. Further, this pleading is embarrassing because:

A.     Claim 62 of the '872 Patent is a dependent claim for "*A method of producing a CVD diamond material suitable*

*for optical applications and according to any one of the preceding claims…*" and the Plaintiff has not specified each and every possible permutation of the relevant preceding claim(s) pleaded in paragraph 1 of the Amended Particulars of Infringement it is relying on.

B.      Claim 63 of the '872 Patent is a dependent claim for "*A method according to claim 62…*". Paragraph 5(a)(x)(A) herein is repeated and adopted.

C.      Claim 64 of the '872 Patent is a dependent claim for "*A method according to claim 63…*". Paragraph 5(a)(x)(B) herein is repeated and adopted.

D.      Claim 65 of the '872 Patent is a dependent claim for "*A method according to any one of claims 62 to 64…*". Paragraphs 5(a)(x)(A) – (C) herein are repeated and adopted.

E.      Claim 66 of the '872 Patent is a dependent claim for "*A method according to claim 65…*". Paragraph 5(a)(x)(D) herein is repeated and adopted.

F.      Claim 67 of the '872 Patent is a dependent claim for "*A method according to any one of claims 62 to 66…*". Paragraphs 5(a)(x)(A) – (E) herein are repeated and adopted.

G.    Claim 68 of the '872 Patent is a dependent claim for "*A method according to any one of claims 62 to 67...*". Paragraphs 5(a)(x)(A) – (F) herein are repeated and adopted.

H.    Claim 69 of the '872 Patent is a dependent claim for "*A method according to any one of claims 62 to 68...*". Paragraphs 5(a)(x)(A) – (G) herein are repeated and adopted.

I.    Claim 70 of the '872 Patent is a dependent claim for "*A method according to claim 69...*". Paragraph 5(a)(x)(H) herein is repeated and adopted.

J.    Claim 71 of the '872 Patent is a dependent claim for "*A method according to any one of claims 62 to 70...*". Paragraphs 5(a)(x)(A) – (I) herein are repeated and adopted.

K.    Claim 72 of the '872 Patent is a dependent claim for "*A CVD single crystal diamond material produced by a method according to any one of claims 62 to 71*". Paragraphs 5(a)(x)(A) – (J) herein are repeated and adopted.

xi.    Paragraph 1(k) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof. Further, this pleading is embarrassing because:

A. Claim 75 of the '872 Patent is a dependent claim for "*A CVD single crystal diamond material according to any one of claims 1 to 61 which meets the requirements of any one of claims 1 to 61...*" and the Plaintiff has not specified each and every possible permutation of the relevant claim(s) pleaded in paragraph 1 of the Amended Particulars of Infringement it is relying on.

B. Claim 76 of the '872 Patent is a dependent claim for "*A CVD single crystal diamond material according to claim 75 which meets the requirements of any one of claims 1 to 61...*". Paragraph 5(a)(xi)(A) herein is repeated and adopted.

C. Claim 77 of the '872 Patent is a dependent claim for "*A CVD single crystal diamond material according to claim 75 which meets the requirements of any one of claims 1 to 61...*". Paragraph 5(a)(xi)(A) herein is repeated and adopted.

D. Claim 78 of the '872 Patent is a dependent claim for "*A CVD single crystal diamond material according to claim 75 which meets the requirements of any one of claims 1 to 61...*". Paragraph 5(a)(xi)(A) herein is repeated and adopted.

**Particulars relating to the '508 Patent**

(b)      As regards paragraph 2 of the Amended Particulars of Infringement:

      i.      Paragraph 2(a) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof.

      ii.      Paragraph 2(b) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof. Further, this pleading is embarrassing because:

      A.      Claim 5 of the '508 Patent is a dependent claim for "*A method according to any one of claims 2 to 4…*" and the Plaintiff has not specified each and every possible permutation of the relevant claim(s) pleaded in paragraph 2 of the Amended Particulars of Infringement it is relying on.

      B.      Claim 6 of the '508 Patent is a dependent claim for "*A method according to claim 5…*". Paragraph 5(b)(ii)(A) herein is repeated and adopted.

      C.      Claim 7 of the '508 Patent is a dependent claim for "*A method according to claim 6…*". Paragraph 5(b)(ii)(B) herein is repeated and adopted.

      D.      Claim 8 of the '508 Patent is a dependent claim for "*A method according to any one of the preceding claims…*" and the Plaintiff has not specified each and every

possible permutation of the relevant preceding claim(s) pleaded in paragraph 2 of the Amended Particulars of Infringement it is relying on.

E. Claim 9 of the '508 Patent is a dependent claim for "*A method according to claim 8...*". Paragraph 5(b)(ii)(D) herein is repeated and adopted.

F. Claim 10 of the '508 Patent is a dependent claim for "*A method according to claim 8...*". Paragraph 5(b)(ii)(D) herein is repeated and adopted.

iii. Paragraph 2(c) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof. Further, this pleading is embarrassing because:

A. Claim 12 of the '508 Patent is a dependent claim for "*A method according to any one of claims 8 to 11...*" and the Plaintiff has not specified each and every possible permutation of the relevant claim(s) pleaded in paragraph 2 of the Amended Particulars of Infringement it is relying on.

B. Claim 13 of the '508 Patent is a dependent claim for "*A method according to any one of claims 8 to 11...*" and the Plaintiff has not specified each and every possible permutation of the relevant claim(s) pleaded in

paragraph 2 of the Amended Particulars of Infringement it is relying on.

C.      Claim 14 of the '508 Patent is a dependent claim for "*A method according to any one of claims 8 to 11...*" and the Plaintiff has not specified each and every possible permutation of the relevant claim(s) pleaded in paragraph 2 of the Amended Particulars of Infringement it is relying on.

D.      Claim 15 of the '508 Patent is a dependent claim for "*A method according to any one of the preceding claims...*" and the Plaintiff has not specified each and every possible permutation of the relevant preceding claim(s) pleaded in paragraph 2 of the Amended Particulars of Infringement it is relying on.

E.      Claim 16 of the '508 Patent is a dependent claim for "*A method according to claim 15...*". Paragraph 5(b)(iii)(D) herein is repeated and adopted.

F.      Claim 17 of the '508 Patent is a dependent claim for "*A method according to claim 15...*". Paragraph 5(b)(iii)(D) herein is repeated and adopted.

G.      Claim 18 of the '508 Patent is a dependent claim for "*A method according to any one of the preceding claims...*" and the Plaintiff has not specified each and every

possible permutation of the relevant preceding claim(s) pleaded in paragraph 2 of the Amended Particulars of Infringement it is relying on.

iv. Paragraph 2(d) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof. Further, this pleading is embarrassing because:

A. Claim 24 of the '508 Patent is a dependent claim for "*A method according to any one of claims 1 to 18...*" and the Plaintiff has not specified each and every possible permutation of the relevant claim(s) pleaded in paragraph 2 of the Amended Particulars of Infringement it is relying on.

B. Claim 25 of the '508 Patent is a dependent claim for "*A method according to any one of claims 1 to 18...*" and the Plaintiff has not specified each and every possible permutation of the relevant claim(s) pleaded in paragraph 2 of the Amended Particulars of Infringement it is relying on.

v. Paragraph 2(e) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof. Further, this pleading is embarrassing because:

A. Claim 38 of the '508 Patent is a dependent claim for "*A method according to any one of the preceding claims...*"

and the Plaintiff has not specified each and every possible permutation of the relevant preceding claim(s) pleaded in paragraph 2 of the Amended Particulars of Infringement it is relying on.

B.    Claim 39 of the '508 Patent is a dependent claim for "*A method according to any one of the preceding claims...*" and the Plaintiff has not specified each and every possible permutation of the relevant preceding claim(s) pleaded in paragraph 2 of the Amended Particulars of Infringement it is relying on.

C.    Claim 40 of the '508 Patent is a dependent claim for "*A method according to any one of the preceding claims...*" and the Plaintiff has not specified each and every possible permutation of the relevant preceding claim(s) pleaded in paragraph 2 of the Amended Particulars of Infringement it is relying on.

D.    Claim 41 of the '508 Patent is a dependent claim for "*A method according to claim 39 or claim 40...*". Paragraphs 5(b)(v)(B) and 5(b)(v)(C) are repeated and adopted.

vi.    Paragraph 2(f) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof. Further, this pleading is embarrassing because:

A.    Claim 44 of the '508 Patent is a dependent claim for "*A method according to any one of the preceding claims…*" and the Plaintiff has not specified each and every possible permutation of the relevant preceding claim(s) pleaded in paragraph 2 of the Amended Particulars of Infringement it is relying on.

B.    Claim 45 of the '508 Patent is a dependent claim for "*A method according to claim 44…*". Paragraph 5(b)(vi)(A) herein is repeated and adopted.

vii.    As regards paragraph 3 of the Amended Particulars of Infringement:

A.    Paragraphs 3(a) – (e) of the Amended Particulars of Infringement are denied and the Plaintiff is put to strict proof thereof.

B.    Paragraphs 3(f) and (g) of the Amended Particulars of Infringement are denied and the Plaintiff is put to strict proof thereof. In particular, the Defendant does not know, nor is it obvious to a reasonable person in the circumstances, that using or offering for use the processes comprising Claims 62 – 71 of the '872 Patent and/or Claims 1 – 3, 5 – 10, 12 – 18, 24 – 25, 38 – 41 and 44 – 45 of the '508 Patent in Singapore, without the consent of the Plaintiff, would be an infringement of the Patents. Further, the Plaintiff has not specified each and

every permutation of the claims that the Plaintiff is asserting against the Defendant comprising Claims 62-71 of the '872 Patent and each and every permutation of the claims that the Plaintiff is asserting against the Defendant comprising Claims 1 – 3, 5 – 10, 12 – 18, 24 – 25, 38 –41 and 44 – 45 of the '508 Patent.

C.     Paragraphs 3(h) – (k) of the Amended Particulars of Infringement are denied and the Plaintiff is put to strict proof thereof.

viii.     As regards paragraph 4(a) of the Amended Particulars of Infringement:

A.     Paragraph 4(a) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof.

B.     Paragraph 4(a)(i) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof.

I.     The Defendant has no knowledge of Sample 1 which was allegedly obtained via trap purchase by Mr Chuiguan Ng under the instructions of the Plaintiff's Singapore counsel.

II.    The Defendant has no knowledge of alleged invoice number INV-REF/Q1-JAN-12/31 dated 16 Apr 2012 which was allegedly for Sample 1.

III.    It is not admitted that Sample 1 was purchased by Mr Chuiguan Ng from Gemesis Diamond Company (formerly known as The Gemesis Corporation). Further, Gemesis Diamond Company was and is at all material times, separate from the Defendant.

IV.    It is denied that Sample 1 was made from CVD diamond material grown by the Defendant in Singapore.

V.    Even if (which is denied) Sample 1 was originally made from CVD diamond material grown by the Defendant in Singapore, the Defendant has no knowledge of whether the condition and/or characteristics of Sample 1 had changed from the time it left the Defendant's possession, power and/or custody by, for example, cutting, polishing, annealing, doping, irradiation or otherwise.

ix.    Paragraph 4(a)(i)(A) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof. Reference to the Mehta family is scandalous, frivolous or vexatious and in any event, irrelevant to whether Sample 1 was made from CVD diamond material grown by the Defendant in Singapore.

x.      Paragraph 4(a)(i)(B) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof. As pleaded in paragraph 4(a) herein, the Defendant changed its name to IIa Technologies Pte. Ltd. on 14 November 2012. (It was formerly known as The Gemesis Company (S) Pte. Ltd.) The Defendant's main website went live only in March 2013. The alleged trap purchase supposedly took place on 16 April 2012. Therefore, the Plaintiff's allegation that at the material time, the Defendant's main website stated that "*Jewellery using diamonds grown by IIa Technologies are available through our partner Gemesis at www.gemesis.com*" is wrong. Further and in any event, at the material time, the website at *www.gemesis.com* was not managed or controlled by the Defendant and in any event, the page at *http://2atechnologies.com/2a-diamond-propertis/gem-quality-diamonds* is not accessible by any of the hyperlinks appearing on the Defendant's main website at *http://2atechnologies.com.*

xA.      Paragraph 5(b)(viii)(B)(II) is repeated and adopted. Save that the Plaintiff lists the details that appear on Invoice number INV-REF/01-JAN-12/31, Paragraph 4(a)(i)(C) of the Amended Particulars of Infringement  is denied and the Plaintiff is put to strict proof thereof. Further, Gemesis Diamond Company was and is at all material times, separate from the Defendant.

xB.      Paragraph 4(a)(i)(D) of the Amended Particulars of Infringement is denied insofar as the Plaintiff is attempting to draw a link

between Gemesis Diamond Company and Pure Grown Diamonds, Inc. Gemesis Diamond Company was and is at all material times separate from the Defendant and Pure Grown Diamonds Inc. Further and/or in the alternative, even if there is any redirection, such redirection of the website is irrelevant to whether Sample 1 was made from CVD diamond material grown by the Defendant in Singapore.

xC.     Paragraph 4(a)(i)(E) of the Amended Particulars of Infringement is denied insofar as the Plaintiff is attempting to draw a link between Gemesis Diamond Company and Pure Grown Diamonds, Inc. Gemesis Diamond Company was and is at all material times separate from the Defendant and Pure Grown Diamonds, Inc. Further the codes in the format "LGxxxxxxxx" is a standard International Gemological Institute (IGI) certificate number and is irrelevant to whether Sample 1 was made from CVD diamond material grown by the Defendant in Singapore.

xi.     Paragraph 4(a)(ii) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof.

A.     The Defendant has no knowledge of Sample 2.

B.     The Defendant has no knowledge of alleged invoice number 3086 dated 12 May 2014 which was allegedly for Sample 2.

C.    It is denied that Sample 2 was made from CVD diamond material grown by the Defendant in Singapore.

D.    Even if (which is denied) Sample 2 was originally made from CVD diamond material grown by the Defendant in Singapore, the Defendant has no knowledge of whether the condition and/or characteristics of Sample 2 had changed from the time it left the Defendant's possession, power and/or custody by, for example, cutting, polishing, annealing, doping, metallisation, irradiation or otherwise.

xii.    Paragraph 5(b)(xi)(B) is repeated and adopted. Save that the Plaintiff lists the details that appear on MWE Quote #13-2051 dated 24 February 2014, paragraph 4(a)(ii)(A) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof.

xiii.    Paragraph 4(a)(ii)(B) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof.

xiiiA.    Paragraph 4(a)(ii)(C) of the Amended Particulars of Infringement is not admitted. Microwave Enterprises is not controlled or managed by the Defendant. In any event, the Plaintiff's allegation at paragraph 4(a)(ii)(C) is irrelevant to whether Sample 2 was made from CVD diamond material grown by the Defendant in Singapore.

xiiiB.   Paragraph 4(a)(ii)(D) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof. The Defendant has no knowledge of the product codes used by Microwave Enterprises and the Plaintiff's allegation is, in any event, irrelevant to whether Sample 2 was made from CVD diamond material grown by the Defendant in Singapore.

xiv.   Save that the Plaintiff lists the details that appear on the invoice number SA-1510-00178 dated 27 October 2016, paragraph 4(a)(iii) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof.

A.   The Defendant has no knowledge of Sample 3.

B.   The Defendant has no knowledge of the invoice number SA-1510-00178 dated 27 October 2015 which was allegedly for Sample 3.

C.   It is denied that Sample 3 was made from CVD diamond material grown by the Defendant in Singapore.

D.   Even if (which is denied) Sample 3 was originally made from CVD diamond material grown by the Defendant in Singapore, the Defendant has no knowledge of whether the condition and/or characteristics of Sample 3 had changed from the time it left the Defendant's possession, power and/or custody by, for example, cutting, polishing, annealing, doping, irradiation or otherwise.

xv.     Paragraph 4(a)(iii)(A) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof. Reference to the Mehta family is scandalous, frivolous or vexatious and in any event, irrelevant to whether Sample 3 was made from CVD diamond material grown by the Defendant in Singapore.

xvA.    Paragraph 4(a)(iii)(B) is admitted but this is irrelevant to whether Sample 3 was made from CVD diamond material grown by the Defendant in Singapore.

xvi.    Paragraph 4(a)(iii)(C) of the Amended Particulars of Infringement is admitted insofar as the Defendant has a Facebook page accessible at *https://www.facebook.com/IIaTech/*, and there are articles on the page that relate to Pure Grown Diamonds, Inc.. However, the aforesaid is irrelevant to whether Sample 3 was made from CVD diamond material grown by the Defendant in Singapore.

xviA.   Save that the Plaintiff lists the details that appear on Quotation number IIa/QT/1516-124 dated 23 October 2015, paragraph 4(a)(iv) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict proof thereof.  Even if (which is denied) Sample 4 was obtained from the Defendant in Singapore, the Defendant has no knowledge of whether the condition and/or characteristics of Sample 4 had changed from the time it left the Defendant's possession, power and/or custody by, for example,

cutting, polishing, annealing, doping, metallisation, irradiation or otherwise.

xvii.     As regards paragraph 4(b) of the Amended Particulars of Infringement:

A.     It is admitted that the Defendant's only manufacturing facility for CVD diamonds is located within Singapore.

B.     The first sentence of paragraph 4(b) of the Amended Particulars of Infringement is unclear and embarrassing and the Defendant is unable to plead as to it. Further, the Plaintiff has not specified each and every permutation of the claims that the Plaintiff is asserting against the Defendant comprising Claims 62-71 of the '872 Patent and each and every permutation of the claims that the Plaintiff is asserting against the Defendant comprising Claims 1 – 3, 5 – 10, 12 – 18, 24 – 25, 38 –41 and 44 – 45 of the '508 Patent Claims.

C.     The second sentence of paragraph 4(b) of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict Proof thereof.

D.     Further and in any event, the Defendant is not using any method of manufacture that is taught in the Patents.

E.  The Defendant's method of manufacture is a manufacturing and/or commercial secret and it would not be reasonable for the Defendant to disclose its manufacturing and/or commercial secrets to the Plaintiff, which is a direct competitor of the Defendant.

xviii.  Paragraph 5 of the Amended Particulars of Infringement is denied and the Plaintiff is put to strict Proof thereof. The Defendant did not know, and there was no reason why the Defendant ought reasonably to have known of the existence of the Patents. As for the Plaintiff's reference to the International Search Report dated 22 July 2009, the Defendant would not have known if the Plaintiff's US 2004/0229464 had an equivalent patent in Singapore. In any event the Patents were not valid and subsisting for the reasons set out in paragraphs 1 to 159, and 161 to 306 of the Amended Particulars of Objections served herewith.

**_Lack of clarity in the '872 Patent_**

(c)  Claim 62 of the '872 Patent lacked clarity on the date of its publication in the international phase, such that a skilled addressee would not have been able to determine the scope of claim 62.

**<u>Particulars</u>**

i.  Prior to the application to make post-grant amendments lodged by the Plaintiff on 13 August 2015 (and as pointed out by the International Preliminary Examining Authority ("**IPEA**") in an International Preliminary Examination Report ("**IPER**") dated 31

August 2004), the term "*substrate substantially free of crystal defects*" in claim 62 of the '872 Patent did not clearly define the matter for which protection was sought.

ii.       In particular, from a reading of pages 16 and 17 of the description of the '872 Patent, the exact state of the substrate prior to Chemical Vapour Deposition appears to be an essential feature of the claimed method.

iii.      From the term "*substrate substantially free of crystal defects*" in the unamended claim 62 of the '872 Patent, it is not clear how free of defects the substrate needs to be in order to be considered "*substantially*" free of defects.

(d)       Notwithstanding the application (to make post-grant amendments to the '872 Patent) filed by the agents acting for the Plaintiff on 13 August 2015, a skilled addressee is still not able to determine the scope of claim 62 of the '872 Patent.

**Particulars**

i.        After the post-grant amendments were accepted by the Intellectual Property Office of Singapore on 1 December 2015, claim 62 of the '872 Patent still lacks clarity.

ii.       In particular, the term "*substrate substantially free of crystal defects*" remains unclear. It is still not clear how free of defects the substrate needs to be in order to be considered "*substantially*" free of defects. Although claim 62 has been

amended to reflect a density (or quantity) of defects at the surface of the substrate as being "*below 5 x 10$^3$/mm$^2$*", it does not define what the standards are for the acceptable size and type of each defect within the specified maximum density (or quantity) of defects.

iii. Further, the expression "*wherein the level of nitrogen is selected to be sufficient to prevent or reduce local strain generating defects whilst being low enough to prevent or reduce deleterious absorptions and crystal quality degradation*" is unclear.

A. The level of nitrogen which is to be "*selected to be sufficient*" has not been defined, and it is not clear if it needs to be different from the "*300 ppb to 5 ppm nitrogen*" range earlier recited in claim 62.

B. What is "*low enough*" to prevent or reduce deleterious absorptions and crystal quality degradation has not been defined in qualitative or quantitative terms, and is thus unclear.

(e) Accordingly, claim 62 of the '872 Patent lacks clarity both prior to and/or after the filing of amendments on 13 August 2015.

(f) Accordingly and in addition to the above, claims 1(ii), 1(iii), 16(ii), 47, 58, 71, 75 – 77 and 78 also lacks clarity for the reasons set out in the Amended Particulars of Objections served herewith.

**Lack of clarity in the '508 Patent**

(g)     Claim 1 of the '508 Patent lacked clarity on the date of its publication in the international phase, such that a skilled addressee would not have been able to determine the scope of claim 1.

<p align="center"><u>Particulars</u></p>

i.      As pointed out by the IPEA in an IPER dated 27 September 2004 and in any event, the term "*under conditions suitable to produce the desired colour*" in claim 1 of the '508 Patent does not clearly define the matter for which protection is sought. This is because claim 1 attempts to define the subject matter in terms of the result to be achieved, which merely amounts to a statement of the underlying problem, without providing the technical features necessary for achieving this result.

ii.     The term "*under conditions suitable to produce the desired colour*" remains within claim 1 of the '508 Patent despite the opinion rendered in the IPER.

iiA.    The term "*providing single crystal diamond which is coloured*" is also vague and unclear.

iii.    Accordingly and as per reasons set out in the Amended Particulars of Objections served herewith, all the dependent claims in the '508 Patent that rely upon claim 1 which do not specify either the terms "*providing single crystal diamond which is coloured*", "conditions suitable" (i.e. the actual conditions required

in order to be suitable) or "the desired colour" (i.e. a particular colour, including colourless) also lack clarity.

6.      The '508 Patent and/or the '872 Patent are and have at all material times been invalid for the reasons set out in the Amended Particulars of Objections served herewith. The Defendant relies on the aforesaid invalidity of the Patents as a defence to the Plaintiff's allegations of infringement of the Patents.

7.      [this paragraph is intentionally left blank]

8.      Paragraph 7 of the Amended Statement of Claim is denied and the Plaintiff is put to strict proof thereof. For the reasons set out herein and in the Amended Particulars of Objections served herewith, the Plaintiff is not entitled to the reliefs sought in the Amended Statement of Claim or any relief at all.

**_Late payments of renewal fees for the '872 Patent and the '508 Patent_**

9.      If, which is denied, the Defendant had committed any alleged infringement of the '872 Patent, the Defendant will say as follows:

(a)     As maintained on the register of the Intellectual Property Office of Singapore:

i.      Renewal for the '872 Patent was due on 20 November 2008;

ii.     The late renewal application for the '872 Patent, together with the relevant fees, was lodged on 3 March 2009; and

(b)     Inasmuch as any alleged infringement of the '872 Patent (which is denied) was committed after 20 November 2008 and before 3 March 2009, the Plaintiff should not be awarded any damages, account of profits or any other relief in respect of anything done by the Defendant during the aforesaid period.

10.     If, which is denied, the Defendant had committed any alleged infringement of the '508 Patent, the Defendant will say as follows:

(a)     As maintained on the register of the Intellectual Property Office of Singapore:

i.     Renewal for the '508 Patent was due on 5 September 2008;

ii.     The late renewal application for the '508 Patent, together with the relevant fees, was lodged on 25 February 2009; and

(b)     Inasmuch as any alleged infringement of the '508 Patent (which is denied) was committed after 5 September 2008 and before 25 February 2009, the Plaintiff should not be awarded any damages, account of profits or any other relief in respect of anything done by the Defendant during the aforesaid period.

***Non-registration of transfer of ownership of the '508 Patent***

11.     If, which is denied, the Defendant had committed any alleged infringement of the '508 Patent, the Defendant will say as follows:

(a)     As maintained on the register of the Intellectual Property Office of Singapore:

       i.        On 31 December 2013, Element Six Limited assigned the '508 Patent to the Plaintiff;

       ii.       The aforesaid assignment was registered on 22 July 2014; and

(b)      Inasmuch as any alleged infringement of the '508 Patent (which is denied) was committed after 30 June 2014 (being 6 months after the date of the aforesaid assignment) and before 22 July 2014, the Plaintiff should not be awarded any damages or account of profits in respect of anything done by the Defendant during the aforesaid period.

***Amendments to the '872 Patent not framed in good faith or with reasonable skill and knowledge***

12.     [this paragraph is intentionally left blank]

13.     If, which is denied, the aforesaid amendments were validly allowed, the Defendant will say that the specification of the '872 Patent as published was not framed in good faith or with reasonable skill and knowledge, and that no damages, account of profits or any other relief (including, but not limited to, an injunction) should be awarded to the Plaintiff in respect of anything done by the Defendant before judgment in this action. Paragraph 160 of the Amended Particulars of Objections is repeated and adopted. Pending discovery, interrogatories, and/or the provision of further information by the Plaintiff, the Defendant is unable to give full particulars.

***Specifications of the '872 Patent and the '508 Patent not framed in good faith or***
***with reasonable skill and knowledge***

14.     If, which is denied, each of the Patents is not wholly invalid but only partially
        invalid, the Defendant will say that the specification of each of the Patents was
        not framed in good faith or with reasonable skill and knowledge, and that no
        damages, costs or expenses should be awarded to the Plaintiff in respect of
        anything done by the Defendant before judgment in this action. Pending
        discovery, interrogatories, and/or the provision of further information by the
        Plaintiff, the Defendant is unable to give full particulars. Paragraphs 160, 305 and
        306 of the Amended Particulars of Objections are repeated and adopted.

**COUNTERCLAIM**

15.     The '872 Patent and the '508 Patent are and have at all material times been
        invalid for the reasons set out in the Amended Particulars of Objections served
        herewith.

16.     In the exercise of the Registrar's discretion, the post-grant amendments to the
        '872 Patent filed on 13 August 2015 and accepted on 1 December 2015 should
        not have been allowed for reasons, as set out in the Amended Particulars of
        Objections served herewith.

**AND THE DEFENDANT CLAIMS:**

(1)     A declaration that the '872 Patent has not been infringed by the Defendant;

(2)     A declaration that the '872 Patent is and has always been invalid;

(3)     An order that the '872 Patent be revoked;

(4)     [this prayer is intentionally left blank]

(5)     A declaration that the '508 Patent has not been infringed by the Defendant;

(6)     A declaration that the '508 Patent is and has always been invalid;

(7)     An order that the '508 Patent be revoked;

(8)     Costs; and

(9)     Such further order and/or relief as this Honourable Court deems fit.


Dated this 25th day of April 2018


**DREW & NAPIER LLC**

**Solicitors for the Defendant**

**IN THE HIGH COURT OF THE REPUBLIC OF SINGAPORE**

HC/S 26/2016

<div style="display: flex;">
<div style="width: 45%;">

Amended as deleted and underlined in black pursuant to Order 20 Rule 3(2) of the Rules of Court.

Dated this 16th day of May 2016

*Drewen Napin*

Solicitors for the Defendant
Drew & Napier LLC

Amended as deleted and underlined in red pursuant to Order of Court dated 16 November 2016.

Dated this 22nd day of November 2016

*Drewen Napin*

Solicitors for the Defendant
Drew & Napier LLC

Amended as deleted and underlined in green pursuant to Order of Court dated 14 June 2017

Dated this 23rd day of June 2017

*Drewen Napin*

Solicitors for the Defendant
Drew & Napier LLC

Amended as deleted and underlined in green pursuant to Order of Court dated 18 April 2018

Dated this 25th day of April 2018

*Drewen Napin*

Solicitors for the Defendant
Drew & Napier LLC

</div>
<div style="width: 55%;">

Between

**ELEMENT SIX TECHNOLOGIES LIMITED**

(United Kingdom Registration No. 08206603)

… Plaintiff

And

**IIa TECHNOLOGIES PTE. LTD.**

(Singapore UEN No. 200516961K)

… Defendant

</div>
</div>

**PARTICULARS OF OBJECTIONS (AMENDMENT NO 4)**

The following are the Particulars of Objections (Amendment No 4) of Singapore Patent No. 115872 (the "**'872 Patent**") and Singapore Patent No. 110508 (the "**'508**

1

**Patent**") referred to in the Defence and Counterclaim (Amendment No 4) ("**Amended DCC**") herein upon which the Defendant will rely:

## THE '872 PATENT

### A. The alleged inventions in the '872 Patent are not patentable inventions

1.    The alleged inventions in Claims 1(ii), 1(iii), 16(ii), 19, 35, 41 to 43, 47 to 50, 52, 53, 57 to 60, 62 to 72, and 75 to 78 of the '872 Patent are not patentable inventions. Particulars for these Claims are as follows:

### 1)    INDEPENDENT CLAIMS IN THE '872 PATENT

2.    Claims 1(ii) and (iii) of the '872 Patent are Independent Claims.

*Claim 1(ii) of the '872 Patent*

3.    The priority date of Claim 1(ii) of the '872 Patent is 21 November 2002.

### Lack of Novelty

4.    The alleged invention in Claim 1(ii) of the '872 Patent was not new.

### Particulars

(a)    The alleged invention in Claim 1(ii) of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 1(ii), been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents such as:

    (A)     A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

    (B)     US 5,474,021 grant published on 12 December 1995;

    (C)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* by J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

    (D)     A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

    (E)     A paper entitled: 'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamond' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; Science, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

    (F)     JP 07-277890A published on 24 October 1995;

    (G)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

    (H)     WO 01/96634 published on 20 December 2001;

(I) WO 01/96633 published on 20 December 2001; and

(J) Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(K) Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii) The following prior users:

(A) The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

5. The subject matter of each of the documents and prior users stated in paragraph 4(a)(i) and 4(a)(ii) were at all material times common general knowledge.

## Lack of Inventive Step

6. The alleged invention in Claim 1(ii) of the '872 Patent involved no inventive step.

## Particulars

(a) The alleged invention in Claim 1(ii) of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 1(ii) of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i) All the documents and prior users referred to in paragraphs 4(a)(i) and 4(a)(ii) above;

(ii)    The following further documents:

    (A)    US 5,451,430 grant published on 19 September 1995;

    (B)    US 4,465,932 grant published on 14 August 1984;

    (C)    A paper entitled: *'Crystalline perfection of high purity synthetic diamond crystal'* – H. Sumiya, N. Toda, Y. Nishibayashi & S. Satoh, Journal of Crystal Growth, Vol. 178, Issue 4, pp. 485-494, 2 July 1997;

    (D)    A paper entitled: *'Differences between counting and non-counting diamonds – Part II: birefringency and luminescence'* – G.P. Freeman & H.A. van der Velden, Physica, Vol. 18, Issue 1, pp. 9-19, January 1952;

    (E)    A paper entitled *'Dosimetry with a Diamond operating as a resistor'* – E.A. Burgemeister, Physics in Medicine and Biology Vol. 26, Issue 2, pp. 269-275, 1981;

    (F)    US 6,162,412 grant published on 19 December 2000;

    (G)    EP 0594994 grant published on 10 March 1999;

    (H)    A paper entitled: '*Flame Deposition and characterisation of Large Type IIa Diamond Single Crystal'*, by JJ Schermer, WJP van Enckvort and LP Gilling; Diamond and Related Materials; Vol 3; Issues 4-6, Pages 408-416; April1994;

    (I)    US 5,335,245 grant published on 2 August 1994; and


(iii)   The common general knowledge.


## Lack of Clear and Complete Disclosure

7.    The alleged invention in Claim 1(ii) of the '872 Patent lacks clear and complete disclosure.

(a)     The specification of the '872 Patent does not disclose the invention clearly and
        completely enough for it to be performed by a person skilled in the art.

**Particulars**

(i)     The material part of Claim 1 of the '872 Patent recites:

        *A CVD single crystal diamond material which shows at least one of the
        following characteristics, when measured at room temperature (nominally
        20°C):*
        *ii) a low optical birefringence, indicative of low strain, such that in a
        sample of a specified thickness of at least 0.5mm and measured in a
        manner described herein over a specified area of at least 1.3 mm x 1.3
        mm, the modulus of the sine of the phase shift, |sin δ|, for at least 98% of
        the analysed area of the sample remains in first order (δ does not exceed
        π/2) and the |sin δ| does not exceed 0.9;*

        *iii) a low optical birefringence, indicative of low strain, such that in a
        sample of a specified thickness of at least 0.5mm and measured in a
        manner described herein over a specified area of at least 1.3 mm x 1.3
        mm, for 100% of the area analysed, the sample remains in first order (δ
        does not exceed π/2), and the maximum value of $\Delta n_{[average]}$, the average
        value of the difference between the refractive index for light polarised
        parallel to the slow and fast axes averaged over the sample thickness,
        does not exceed $1.5 \times 10^{-4}$.*

(ii)    "A CVD single crystal diamond material..." as stated in Claim 1 does not
        clearly and sufficiently define the product of the invention. It is known to
        the person skilled in the art that diamonds are of different types and can

6

be of different origins. However, the '872 Patent fails to disclose whether the phrase "*A CVD single crystal diamond material*" as stated in claim 1 includes all the different types of diamonds, or is limited to only to specific types of diamonds. Further, the claim fails to disclose which method(s) of CVD growth results in the product of the invention as there are several methods to grow CVD diamonds, all of which are known to the person skilled in the art.

(iii)    The requirement for measurement of characteristics of the claim such as birefringence and refractive index is explained as "...*over a specified area of at least 1.3 mm x 1.3 mm, ... for at least 98% of the analysed area...*" and "...*over a specified area of at least 1.3 mm x 1.3 mm, ... for 100% of the analysed area...*" respectively. It is not clear from these requirements and the examples specified in the description, how the terms "a specified area" and "the analysed area" are related. Further, it is also not clear from the specification how the measurement should be performed in order to achieve 100% or even at least 98% of the analysed area.

(iv)    Claims 1(ii) and (iii) states "...*measured in a manner described herein...*". This description even if read in its entirety along with the rest of the claim and/or the specification remains unclear and fails to identify the claimed product.

(v)    The characteristics of the claim such as birefringence and refractive index relate to features that are temperature dependent. However, the claim does not specify what the temperature was accurately enough for these claimed values to be determined.

(vi)     Claim 1 states that the temperature was "nominally" 20°C but this term is unclear as it could include a list of possible temperature values. Some of the characteristics in the claim are quoted to very high degrees of accuracy which implies that they were measured within a very narrow temperature window.

(vii)    Specifically, it is unclear whether "nominally 20°C" means room temperature, or whether it refers to a range of values such as 19.5 to 20.5°C.

(viii)   The failure to accurately define a temperature value or a range of temperature values means that the claim lacks clear and complete disclosure, as it is not certain whether the claimed characteristics can be shown by a diamond made by the described method Claim 62 given the potentially broad range of temperatures included by the vague claim language in Claim 1.

(ix)     The method of measurement as disclosed in the '872 Patent fails to enable a person skilled in the art to identify a diamond that, when "*measured in a manner described herein over a specified area of at least 1.3 mm x 1.3 mm*" has a "*low optical birefringence, indicative of low strain*" where "*the modulus of the sine phase shift, |sin δ|, for at least 98% of the analysed area of the sample remains in the first order (δ does not exceed π/2) and the |sin δ| does not exceed 0.9*".

(x)      Insofar as claim 1(ii) claims any diamond that has a birefringence value of |sin δ| < 0.9, claim 1(ii) has no lower limit and would encompass any diamond material having or approaching |sin δ| = 0. Neither the method

of growth nor the method of measurement as disclosed in the '872 Patent teach a person skilled in the art how to grow or measure a diamond with birefringence value of $|\sin \delta| = 0$ or approaching $|\sin \delta| = 0$. Accordingly, claim 1(ii) of the '872 Patent cannot be performed by a person skilled in the art throughout the breadth of the entire claim in light of the insufficient disclosure of the specifications of the '872 Patent.

*Claim 1(iii) of the '872 Patent*

8.      The priority date of Claim 1(iii) of the '872 Patent is 20 November 2003.


## **Lack of Novelty**

9.      The alleged invention in Claim 1(iii) of the '872 Patent was not new.


## **Particulars**

(a)     The alleged invention in Claim 1(iii) of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 1(iii), been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:


(i)     Documents published in various scientific publications, journals and patent documents, including but not limited to the following:

(A)     A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(B)     US 5,474,021 grant published on 12 December 1995;

(C)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(D)     A paper entitled *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

(E)     A paper entitled: *'Diamond Solid Etalons for High-Stability DWDM Wavelength-Lockers'* by E.P. Houwman, H.P. Godfried, C.E. Hall, J. Fraser, L. Daykin, S.J. Pope & K. Mullaney presented at the ECOC-IOOC 2003, 29th European Conference on Optical Communication & 14th International Conference on Integrated Optics and Optical Fibre Communication held in Rimini, Italy between the 21-25 September 2003;

(F)     A paper entitled: '*High Carrier Mobility in Single-Crystal Plasma-Deposited Diamond'* – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; Science, Vol. 297, Issue 5587, pp. 1670-1672, 6th September 2002;

(G)     JP 07-277890A published on 24 October 1995;

(H)     A chapter in the textbook entitled: '*Electric Refractory Materials'* edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(I)     WO 01/96634 published on 20 December 2001;

(J) A paper entitled: '*Chemical Vapor Deposited Diamond Maturity and Diversity* ' – James E. Butler; The Electrochemical Society Interface, pp. 22-26, published in Spring 2003;

(K) WO 01/96633 published on 20 December 2001;

(L) Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(M) Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii) The following prior users:

(A) The Plaintiff, who has provided disclosures of diamond etalons on its website since or around 19 September 2003; and

(B) The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

10. The subject matter of each of the documents and the prior users stated in 9(a)(i) to 9(a)(ii) were at all material times common general knowledge.

## Lack of Inventive Step

11. The alleged invention in Claim 1(iii) of the '872 Patent involved no inventive step.

## Particulars

(a) The alleged invention in Claim 1(iii) of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged

invention in Claim 1(iii) of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents and prior users referred to in paragraphs 9(a)(i) to 9(a)(ii) above;

(ii)    The following further documents:

    (A)     US 4,465,932 grant published on 14 August 1984;

    (B)     US 5,451,430 grant published on 19 September 1995;

    (C)     A paper entitled *'Dosimetry with a Diamond operating as a resistor'* – E.A. Burgemeister, Physics in Medicine and Biology Vol. 26, Issue 2, pp. 269-275, 1981;

    (D)     A paper entitled: *'Crystalline perfection of high purity synthetic diamond crystal'* – H. Sumiya, N. Toda, Y. Nishibayashi & S. Satoh, Journal of Crystal Growth, Vol. 178, Issue 4, pp. 485-494, 2 July 1997;

    (E)     A paper entitled: *'Differences between counting and non-counting diamonds – Part II: birefringency and luminescence'* – G.P. Freeman & H.A. van der Velden, Physica, Vol. 18, Issue 1, pp. 9-19, January 1952;

    (F)     US 6,162,412 grant published on 19 December 2000;

    (G)     EP 0594994 grant published on 10 March 1999;

    (H)     A paper entitled: '*Flame Deposition and characterisation of Large Type IIa Diamond Single Crystal*', by JJ Schermer, WJP van Enckvort and LP Gilling; Diamond and Related Materials; Vol 3; Issues 4-6, Pages 408-416; April1994;

    (I)     A paper entitled: *'Two Near-Colourless General Electric Type-IIA Synthetic Diamond Crystals'* – James E. Shigley, Emmanuel

Feritsch & Hene Reinitz, Gems & Gemology, Vol. 29, Issue 3, pp. 191-197, Fall 1993;

(J)    US 5,335,245 grant published on 2 August 1994; and

(iii)    The common general knowledge.


## Lack of Clear and Complete Disclosure

12.    The alleged invention in Claim 1(iii) of the '872 Patent lacks clear and complete disclosure. Paragraph 7 is repeated and adopted.


12A.    Further, insofar as claim 1(iii) claims any diamond that has a birefringence value of $\Delta n_{average} < 1.5 \times 10^{-4}$, claim 1(iii) has no lower limit and would encompass any diamond material having or approaching $\Delta n_{average} = 0$. Neither the method of growth nor the method of measurement of birefringence as disclosed in the '872 Patent teach a person skilled in the art how to grow or measure a diamond with birefringence value of $\Delta n_{average} = 0$ or approaching $\Delta n_{average} = 0$. Accordingly, claim 1(iii) of the '872 Patent cannot be performed by a person skilled in the art throughout the breadth of the entire claim in light of the insufficient disclosure of the specifications of the '872 Patent.


*Claim 1(ii) in combination with Claim 1(iii) of the '872 Patent*

13.    The priority date of Claim 1(ii) in combination with Claim 1(iii) of the '872 Patent is 20 November 2003.


## Lack of Novelty

14.    The alleged invention in Claim 1(ii) in combination with Claim 1(iii) of the '872 Patent was not new. The particulars listed in paragraphs 9(a) to 10 are repeated and adopted.

**Lack of Inventive Step**

15.    The alleged invention in Claim 1(ii) in combination with Claim 1(iii) of the '872 Patent involved no inventive step. The particulars listed in paragraphs 11(a)(i) to 11(a)(iii) are repeated and adopted.

**Lack of Clear and Complete Disclosure**

16.    The alleged invention in Claim 1(ii) in combination with Claim 1(iii) of the '872 Patent lacks clear and complete disclosure. The particulars listed in paragraphs 7 and 12A are repeated and adopted.

**2)    DEPENDENT CLAIMS IN THE '872 PATENT:**

17.    Claims 16(ii), 19, 35, 41 to 43, 47 to 50, 52 to 53, 57 to 60, 62 to 72, and 75 to 78 of the '872 Patent are either directly or indirectly dependent upon Claim 1(ii) or Claim 1(iii), or a combination of Claim 1(ii) and 1(iii).

17A.    Insofar as these dependent claims must be read with either claim 1(ii) or claim 1(iii) or both, any combination of claims that depends on claim 1(ii) and/or claim 1(iii) is insufficient as a result of the insufficiency of claim 1(ii) and/or claim 1(iii). The particulars listed in paragraphs 7 and 12A repeated and adopted.

*Claim 16(ii) of the '872 Patent*

18.    If the invention claimed in Claim 16(ii) of the '872 Patent is directly or indirectly dependent upon Claim 1(ii) and not Claim 1(iii), the priority date of Claim 16(ii) of the '872 Patent is 21 November 2002.

19.     If the invention claimed in Claim 16(ii) of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) and not Claim 1(ii), or a combination of Claim 1(ii) and Claim 1(iii), the priority date of Claim 16(ii) of the '872 Patent is 20 November 2003.

## Lack of Novelty

20.     The alleged invention in Claim 16(ii) of the '872 Patent was not new on 21 November 2002 and/or 20 November 2003.

## Particulars

(a)     The alleged invention in Claim 16(ii) of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 16(ii), been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents, such as:

(A)     A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(B)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(C)     JP 07-277890A published on 24 October 1995;

(D)     US 5,474,021 grant published on 12 December 1995;

(E)     A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamond'* – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(F)     A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

(G)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(H)     WO 01/96634 published on 20 December 2001;

(I)     WO 01/96633 published on 20 December 2001; and

(J)     Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(K)     Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and


(ii)    The following prior users:

(A)     The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

21.     The subject matter of each of the documents and prior users stated in paragraph 20(a)(i) and 20(a)(ii) were at all material times common general knowledge.

## Lack of Inventive Step

22.     The alleged invention in Claim 16(ii) of the '872 Patent involved no inventive step on 21 November 2002 and/or 20 November 2003.

## Particulars

(a)     The alleged invention in Claim 16(ii) of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 16(ii) of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents and prior users referred to in paragraphs 20(a)(i) and 20(a)(ii) above;

(ii)    The following further documents:

(A)    A paper entitled: *'Diamond windows for IR applications in adverse environments'* – Claude A. Klein, Diamond and Related Materials, Vol. 2, Issues 5-7, pp. 1024-1032, 13 April 1993;

(B)    A paper entitled: *'Characterization of single-crystal diamond grown by chemical vapour deposition processes'* – G. Janssen, W.J.P van Enckevort, W. Vollenberg & L.J. Giling, Diamond and Related Materials, Vol. 1, Issue 7, pp. 789-800, 1 May 1992;

(C)    US 5,270,028 A published on 14 Dec 1993;

(D)    US 5,335,245 grant published on 2 August 1994; and

(iii)    The common general knowledge.

<u>Claim 19 of the '872 Patent</u>

23.    If the invention claimed in Claim 19 of the '872 Patent is directly or indirectly dependent upon Claim 1(ii) not Claim 1(iii), the priority date of Claim 19 of the '872 is 21 November 2002.

24.    If the invention claimed in Claim 19 of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) not Claim 1(ii), or a combination of Claim 1(ii) and Claim 1(iii), the priority date of Claim 19 of the'872 is 20 November 2003.

**Lack of Novelty**

25.    The alleged invention in Claim 19 of the '872 Patent was not new on 21 November 2002 and/or 20 November 2003.

**Particulars**

(a)    The alleged invention in Claim 19 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 19, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)    Documents published in various scientific publications, journals and patent documents, such as:

(A)    A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(B)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(C)     JP 07-277890A published on 24 October 1995;

(D)     US 5,474,021 grant published on 12 December 1995;

(E)     A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(F)     A paper entitled: *'Development of large size diamond synthesis process*' by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000.

(G)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(H)     WO 01/96634 published on 20 December 2001;

(I)     WO 01/96633 published on 20 December 2001;

(J)     Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(K)     Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii)    The following prior users:

(A)    The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

26.    The subject matter of each of the documents and prior users stated in paragraph 25(a)(i) and 25(a)(ii) were at all material times common general knowledge.

**Lack of Inventive Step**

27.    The alleged invention in Claim 19 of the '872 Patent involved no inventive step on 21 November 2002 and/or 20 November 2003.

**Particulars**

(a)    The alleged invention in Claim 19 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 19 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)    All the documents and prior users referred to in paragraphs 25(a)(i) and 25(a)(ii) above;

(ii)    The following further documents:

(A)    A paper entitled: *'Diamond windows for IR applications in adverse environments'* – Claude A. Klein, Diamond and Related Materials, Vol. 2, Issues 5-7, pp. 1024-1032, 13th April 1993;

(B)   A paper entitled: *'Characterization of single-crystal diamond grown by chemical vapour deposition processes'* – G. Janssen, W.J.P van Enckevort, W. Vollenberg & L.J. Giling, Diamond and Related Materials, Vol. 1, Issue 7, pp. 789-800, 1 May 1992;

(C)   A paper entitled: *'Crystalline perfection of high purity synthetic diamond crystal'* – H. Sumiya, N. Toda, Y. Nishibayashi & S. Satoh, Journal of Crystal Growth, Vol. 178, Issue 4, pp. 485-494, 2nd July 1997;

(D)   US 5,335,245 grant published on 2 August 1994; and

(iii)   The common general knowledge.

*Claim 35 of the '872 Patent*

28.   If the invention claimed in Claim 35 of the '872 Patent is directly or indirectly dependent upon Claim 1(ii) not Claim 1(iii), the priority date of Claim 35 of the '872 Patent is 21 November 2002.

29.   If the invention claimed in Claim 35 of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) not Claim 1(ii), or a combination of Claim 1(ii) and Claim 1(iii), the priority date of Claim 35 of the '872 Patent is 20 November 2003.

**Lack of Novelty**

30.   The alleged invention in Claim 35 of the '872 Patent was not new on 21 November 2002 and/or 20 November 2003.

**Particulars**

(a)   The alleged invention in Claim 35 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 35,

been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)    Documents published in various scientific publications, journals and patent documents, such as:

    (A)    US 5,474,021 grant published on 12 December 1995;

    (B)    A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

    (C)    A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

    (D)    A paper entitled: *'Development of large size diamond synthesis process*' by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000.

    (E)    A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002; JP 07-277890A published on 24 October 1995

    (F)    JP 07-277890A published on 24 October 1995;

(G)      A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(H)      WO 01/96634 published on 20 December 2001;

(I)      WO 01/96633 published on 20 December 2001;

(J)      Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(K)      Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii)      The following prior users:

(A)      The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

31.      The subject matter of each of the documents and prior users stated in paragraph 30(a)(i) and 30(a)(ii) were at all material times common general knowledge.

## Lack of Inventive Step

32.      The alleged invention in Claim 35 of the '872 Patent involved no inventive step on 21 November 2002 and/or 20 November 2003.

## Particulars

(a)      The alleged invention in Claim 35 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged

invention in Claim 35 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents and prior users referred to in paragraphs 30(a)(i) and 30(a)(ii) above;

(ii)    The following further documents:

(A)    A paper entitled: *'Very high growth rate chemical vapour deposition of single-crystal diamond'* – Chih-shiue Yan, Yogesh K. Vohra, Ho-kwang Mao & Russell J. Hemley, Proceedings of the National Academy of Sciences of the United States of America, Vol. 99, Issue 20, pp. 12523-12525, 1 October 2002; and

(iii)   The common general knowledge.

<u>Claim 41 of the '872 Patent</u>

33.    The priority date of Claim 41 of the '872 Patent is 20 November 2003.

## Lack of Novelty

34.    The alleged invention in Claim 41 of the '872 Patent was not new.

## Particulars

(a)    The alleged invention in Claim 41 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 41, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents, such as:

(A)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(B)     US 5,474,021 grant published on 12 December 1995;

(C)     A paper entitled: "*High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(D)     A paper entitled: *'Diamond Solid Etalons for High-Stability DWDM Wavelength-Lockers'* by E.P. Houwman, H.P. Godfried, C.E. Hall, J. Fraser,  L. Daykin, S.J. Pope & K. Mullaney presented at the ECOC-IOOC 2003, 29th European Conference on Optical Communication & 14th International Conference on Integrated Optics and Optical Fibre Communication held in Rimini, Italy between the 21-25 September 2003;

(E)     A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(F)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of

Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(G)     JP 07-277890A published on 24 October 1995;

(H)     WO 01/96634 published on 20 December 2001;

(I)     A paper entitled: '*Chemical Vapor Deposited Diamond Maturity and Diversity* ' – James E. Butler; The Electrochemical Society Interface, pp. 22-26, published in Spring 2003;

(J)     WO 01/96633 published on 20 December 2001;

(K)     Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(L)     Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and


(ii)    The following prior users:

(A)     The Plaintiff, who has provided disclosures of diamond etalons on its website on or around 19 September 2003; and

(B)     The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.


35.     The subject matter of each of the documents and prior users stated in paragraphs 34(a)(i) to 34(a)(ii) were at all material times common general knowledge.


**Lack of Inventive Step**

36.     The alleged invention in Claim 41 of the '872 Patent involved no inventive step.

(a)     The alleged invention in Claim 41 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 41 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents and prior users referred to in paragraphs 34(a)(i) to 34(a)(ii) above;

(ii)    The following further documents:

(A)    A paper entitled: *'The characterization of strain, impurity content, and crush strength of synthetic diamond crystals'* – Terri L. McCormick, Journal of Materials Research, Vol. 12 Issue 1, pp.253-263, 1991;

(B)    A paper entitled: *'Very high growth rate chemical vapour deposition of single-crystal diamond'* – Chih-shiue Yan, Yogesh K. Vohra, Ho-kwang Mao & Russell J. Hemley, Proceedings of the National Academy of Sciences of the United States of America, Vol. 99, Issue 20, pp. 12523-12525, 1 October 2002;

(C)    A paper entitled: *'Characterization of single-crystal diamond grown by chemical vapour deposition processes*' – G. Janssen, W.J.P van Enckevort, W. Vollenberg & L.J. Giling, Diamond and Related Materials, Vol. 1, Issue 7, pp. 789-800, 1 May 1992;

(D)    A paper entitled: *'Nitrogen incorporation in diamond films homoepitaxially grown by chemical vapour deposition'* – Konstantin Iakoubovskii, Guy J. Adriaenssens & Yogesh K.

Vohra, Journal of Physics: condensed Matter, Vol. 12, Issue 30, pp. L519-524, 2000;

(E)  A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

(F)  A paper entitled: *'Selective Deposition of Homoepitaxial diamond film'* by S.A. Grot, C.W. Hatfield, G.SH. Gildenblat, A.R. Badzian & T. Badzian, Proc. 2nd Int'l Conf. on Elec. Mats, Material Research Society, published in 1990; and

(iii)  The common general knowledge.

*Claim 42 of the '872 Patent*

37.  The priority date of Claim 42 of the '872 Patent is 20 November 2003.

## **Lack of Novelty**

38.  The alleged invention in Claim 42 of the '872 Patent was not new.

## **Particulars**

(a)  The alleged invention in Claim 42 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 42, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)  Documents published in various scientific publications, journals and patent documents, such as:

(A)    A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(B)    US 5,474,021 grant published on 12 December 1995;

(C)    A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(D)    A paper entitled: *'Diamond Solid Etalons for High-Stability DWDM Wavelength-Lockers'* by E.P. Houwman, H.P. Godfried, C.E. Hall, J. Fraser, L. Daykin, S.J. Pope & K. Mullaney presented at the ECOC-IOOC 2003, 29th European Conference on Optical Communication & 14th International Conference on Integrated Optics and Optical Fibre Communication held in Rimini, Italy between the 21-25 September 2003;

(E)    A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(F)    A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(G)    JP 07-277890A published on 24 October 1995;

(H)     WO 01/96634 published on 20 December 2001

(I)     A paper entitled: '*Chemical Vapor Deposited Diamond Maturity and Diversity* ' – James E. Butler; The Electrochemical Society Interface, pp. 22-26, published in Spring 2003;

(J)     WO 01/96633 published on 20 December 2001;

(K)     Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(L)     Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii)    The following prior users:

(A)     The Plaintiff, who has provided disclosures of diamond etalons on its website on or around 19 September 2003; and

(B)     The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

39.     The subject matter of each of the documents and prior users stated in paragraphs 38(a)(i) to 38(a)(ii) were at all material times common general knowledge.

## Lack of Inventive Step

40.     The alleged invention in Claim 42 of the '872 Patent involved no inventive step.

## Particulars

(a)     The alleged invention in Claim 42 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter

which formed part of the state of the art before the priority date of the alleged invention in Claim 42 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i) All the documents and prior users referred to in paragraphs 38(a)(i) to 38(a)(ii) above;

(ii) The following further documents:

   (A) A paper entitled: *'Homoepitaxial diamond film deposition on a brilliant cut diamond anvil'* – Thomas S. McCauley & Yogesh K. Vohra, Applied Physics Letters, Vol. 66, Issue 12, pp. 1486-1488, March 1995;

   (B) A paper entitled: *'The characterization of strain, impurity content, and crush strength of synthetic diamond crystals'* – Terri L. McCormick, Journal of Materials Research, Vol. 12 Issue 1, pp.253-263, 1991;

   (C) A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

   (D) A paper entitled: *'Selective Deposition of Homoepitaxial diamond film'* by S.A. Grot, C.W. Hatfield, G.SH. Gildenblat, A.R. Badzian & T. Badzian, Proc. 2nd Int'l Conf. on Elec. Mats, Material Research Society, published in 1990; and

(iii) The common general knowledge.

41.    The priority date of Claim 43 of the '872 Patent is 20 November 2003.


## Lack of Novelty

42.    The alleged invention in Claim 43 of the '872 Patent was not new.


## Particulars

(a)    The alleged invention in Claim 43 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 43, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:


(i)    Documents published in various scientific publications, journals and patent documents, such as:

    (A)    A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

    (B)    US 5,474,021 grant published on 12 December 1995;

    (C)    A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

    (D)    A paper entitled: *'Diamond Solid Etalons for High-Stability DWDM Wavelength-Lockers'* by E.P. Houwman, H.P. Godfried, C.E. Hall, J. Fraser, L. Daykin, S.J. Pope & K. Mullaney

presented at the ECOC-IOOC 2003, 29th European Conference on Optical Communication & 14th International Conference on Integrated Optics and Optical Fibre Communication held in Rimini, Italy between the 21-25 September 2003;

(E)     A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(F)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(G)     JP 07-277890A published on 24 October 1995

(H)     WO 01/96634 published on 20 December 2001

(I)      A paper entitled: '*Chemical Vapor Deposited Diamond Maturity and Diversity* ' – James E. Butler; The Electrochemical Society Interface, pp. 22-26, published in Spring 2003;

(J)     WO 01/96633 published on 20 December 2001;

(K)     Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(L)     Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and


(ii)     The following prior users:

(A)     The Plaintiff, who has provided disclosures of diamond etalons on its website on or around 19 September 2003; and

(B)     The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

43.     The subject matter of each of the documents and prior users stated in paragraphs 42(a)(i) to 42(a)(ii) were at all material times common general knowledge.

## Lack of Inventive Step

44.     The alleged invention in Claim 43 of the '872 Patent involved no inventive step.

## Particulars

(a)     The alleged invention in Claim 43 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 43 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents and prior users referred to in paragraphs 42(a)(i) to 42(a)(ii) above;

(ii)    The following further documents:

(A)     A paper entitled: *'The characterization of strain, impurity content, and crush strength of synthetic diamond crystals'* – Terri L. McCormick,   Journal of Materials Research, Vol. 12 Issue 1, pp.253-263, 1991;

(B)    A paper entitled: *'Homoepitaxial diamond film deposition on a brilliant cut diamond anvil'* – Thomas S. McCauley & Yogesh K. Vohra, Applied Physics Letters, Vol. 66, Issue 12, pp. 1486-1488, March 1995;

(C)    A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

(D)    A paper entitled: *'Selective Deposition of Homoepitaxial diamond film'* by S.A. Grot, C.W. Hatfield, G.SH. Gildenblat, A.R. Badzian & T. Badzian, Proc. 2nd Int'l Conf. on Elec. Mats, Material Research Society, published in 1990; and

(iii)   The common general knowledge.

*Claim 47 of the '872 Patent*

45.    The priority date of Claim 47 of the '872 Patent is 20 November 2003.

**Lack of Novelty**

46.    The alleged invention in Claim 47 of the '872 Patent was not new.

**Particulars**

(a)    The alleged invention in Claim 47 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 47, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents, such as:

(A)     US 5,474,021 grant published on 12 December 1995;

(B)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(C)     A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(D)     A paper entitled: *'Diamond Solid Etalons for High-Stability DWDM Wavelength-Lockers'* by E.P. Houwman, H.P. Godfried, C.E. Hall, J. Fraser, L. Daykin, S.J. Pope & K. Mullaney presented at the ECOC-IOOC 2003, 29th European Conference on Optical Communication & 14th International Conference on Integrated Optics and Optical Fibre Communication held in Rimini, Italy between the 21-25 September 2003;

(E)     A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

(F)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(G)     JP 07-277890A published on 24 October 1995;

(H)     US 5,451,430 grant published on 19 September 1995;

(I)     WO 01/96634 published on 20 December 2001;

(J)     WO 01/96633 published on 20 December 2001;

(K)     Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(L)     Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and


(ii)    The following prior users:

(A)     The Plaintiff, who has provided disclosures of diamond etalons on its website on or around 19 September 2003; and

(B)     The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.


47.     The subject matter of each of the documents and prior users stated in paragraphs 46(a)(i) to 46(a)(ii) were at all material times common general knowledge.


**Lack of Inventive Step**

48.     The alleged invention in Claim 47 of the '872 Patent involved no inventive step.


**Particulars**

(a)     The alleged invention in Claim 47 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged

invention in Claim 47 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i) All the documents and prior users referred to in paragraphs 46(a)(i) to 46(a)(ii) above;

(ii) The following further documents:

    (A) A paper entitled: *'Very high growth rate chemical vapour deposition of single-crystal diamond'* – Chih-shiue Yan, Yogesh K. Vohra, Ho-kwang Mao & Russell J. Hemley, Proceedings of the National Academy of Sciences of the United States of America, Vol. 99, Issue 20, pp. 12523-12525, 1 October 2002;

    (B) A paper entitled: *'Nitrogen incorporation in diamond films homoepitaxially grown by chemical vapour deposition'* – Konstantin Iakoubovskii, Guy J. Adriaenssens & Yogesh K. Vohra, Journal of Physics: condensed Matter, Vol. 12, Issue 30, pp. L519-524, 2000;

    (C) A presentation entitled: *'Characterisation of HPHT Annealed Single Crystal CVD Diamond'* by JE Butler, S. Charles, BN Feygelson, CH Yan, HK Mao and R Hemley, presented at the annual Diamond Physics Meeting, sponsored by DeBeers, July 2003;

    (D) A paper entitled: *'Chemical Vapor Deposited Diamond Maturity and Diversity'* – James E. Butler; The Electrochemical Society Interface, pp. 22-26, published in Spring 2003; and

(iii) The common general knowledge.

*Claim 48 of the '872 Patent*

49.     The priority date of Claim 48 of the '872 Patent is 20 November 2003.


**Lack of Novelty**

50.     The alleged invention in Claim 48 of the '872 Patent was not new.


**Particulars**

(a)     The alleged invention in Claim 48 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 48, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:


(i)     Documents published in various scientific publications, journals and patent documents, such as:

        (A)     EP0671482 published on 13 September 1995;

        (B)     US 5,451,430 grant published on 19 September 1995;

        (C)     US 5,474,021 grant published on 12 December 1995;

        (D)     A presentation entitled: '*Characterisation of HPHT Annealed Single Crystal CVD Diamond'* by JE Butler, S. Charles, BN Feygelson, CH Yan, HK Mao and R Hemley, presented at the annual Diamond Physics Meeting, sponsored by DeBeers, July 2003;

        (E)     A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(F)     A paper entitled: *'Diamond Solid Etalons for High-Stability DWDM Wavelength-Lockers'* by E.P. Houwman, H.P. Godfried, C.E. Hall, J. Fraser,  L. Daykin, S.J. Pope & K. Mullaney presented at the ECOC-IOOC 2003, 29th European Conference on Optical Communication & 14th International Conference on Integrated Optics and Optical Fibre Communication held in Rimini, Italy between the 21-25 September 2003;

(G)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(H)     WO 01/96634 published on 20 December 2001;

(I)     WO 01/72406 published on the 4 October 2001;

(J)     WO 01/96633 published on 20 December 2001;

(K)     Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(L)     Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and


(ii)    The following prior users:

(A)     The Plaintiff, who has provided disclosures of diamond etalons on its website on or around 19 September 2003; and

(B)     The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

51.    The subject matter of each of the documents and prior users stated in paragraphs 50(a)(i) to 50(a)(ii) were at all material times common general knowledge.

## Lack of Inventive Step

52.    The alleged invention in Claim 48 of the '872 Patent involved no inventive step.

## Particulars

(a)    The alleged invention in Claim 48 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 48 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents and prior users referred to in paragraphs 50(a)(i) to 50(a)(ii) above;

(ii)    The following further documents:

(A)    A paper entitled: *'Very high growth rate chemical vapour deposition of single-crystal diamond'* – Chih-shiue Yan, Yogesh K. Vohra, Ho-kwang Mao & Russell J. Hemley, Proceedings of the National Academy of Sciences of the United States of America, Vol. 99, Issue 20, pp. 12523-12525, 1 October 2002;

(B)    A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(C) A paper entitled: *'Nitrogen incorporation in diamond films homoepitaxially grown by chemical vapour deposition'* – Konstantin Iakoubovskii, Guy J. Adriaenssens & Yogesh K. Vohra, Journal of Physics: condensed Matter, Vol. 12, Issue 30, pp. L519-524, 2000; and

(iii) The common general knowledge.

## Lack of Clear and Complete Disclosure

52A. The alleged invention in claims 47 and 48 of the '872 Patent lacks clear and complete disclosure.

(a) The specification of the '872 Patent does not disclose the invention clearly and completely enough for it to be performed by a person skilled in the art.

## Particulars

(i) The description "…*its preparation…*" in claims 47 and 48 is unclear.

(ii) The description "…*annealed…*" in claims 47 and 48 does not disclose the invention clearly and completely. Even the supporting specification for this description of the '872 patent lacks sufficient disclosure to explain the invention clearly and completely.

53.     If the invention claimed in Claim 49 of the '872 Patent is directly or indirectly dependent upon Claim 1(ii) not Claim 1(iii), the priority date of Claim 49 of the '872 Patent is 21 November 2002.

54.     If the invention claimed in Claim 49 of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) not Claim 1(ii), or a combination of Claim 1(ii) and Claim 1(iii), the priority date of Claim 49 of the '872 Patent is 20 November 2003.

## Lack of Novelty

55.     The alleged invention in Claim 49 of the '872 Patent was not new on 21 November 2002 and/or 20 November 2003.

## Particulars

(a)     The alleged invention in Claim 49 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 49, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

        (i)     Documents published in various scientific publications, journals and patent documents, such as:

                (A)     US 5,474,021 grant published on 12 December 1995;

                (B)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

                (C)     JP 07-277890A published on 24 October 1995;

(D) A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000; and

(E) A paper entitled: '*Development of large size diamond synthesis process*' by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000.

(F) WO 01/96634 published on 20 December 2001;

(G) A paper entitled: '*High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(H) WO 01/96633 published on 20 December 2001;

(I) Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(J) Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii) The following prior users:

(A) The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

56. The subject matter of each of the documents and prior users stated in paragraph 55(a)(i) and 55(a)(ii) were at all material times common general knowledge.

## Lack of Inventive Step

57.     The alleged invention in Claim 49 of the '872 Patent involved no inventive step on 21 November 2002 and/or 20 November 2003.


## Particulars

(a)     The alleged invention in Claim 49 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 49 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents and prior users referred to in paragraphs 55(a)(i) and 55(a)(ii) above;

(ii)     The following further documents:

(A)     A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(B)     A paper entitled: *'Diamond homoepitaxy by chemical vapour deposition'* – Andrzej Badzian & Teresa Badzian; Diamond and Related Materials, Vol. 2, Issues 2-4, pp. 147-157, 31 March 1993;

(C)     A paper entitled: *'Very high growth rate chemical vapour deposition of single-crystal diamond'* – Chih-shiue Yan, Yogesh K. Vohra, Ho-kwang Mao & Russell J. Hemley, Proceedings of

the National Academy of Sciences of the United States of America, Vol. 99, Issue 20, pp. 12523-12525, 1 October 2002;

    (D)      US 5,451,430 grant published on 19 September 1995;

    (E)      EP0671482 published on 13 September 1995;

    (F)      US 5,335,245 grant published on 2 August 1994; and

    (iii)      The common general knowledge.

*Claim 50 of the '872 Patent*

58.     If the invention claimed in Claim 50 of the '872 Patent is directly or indirectly dependent upon Claim 1(ii) not Claim 1(iii), the priority date of Claim 50 of the '872 Patent is 21 November 2002.

59.     If the invention claimed in Claim 50 of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) not Claim 1(ii), or a combination of Claim 1(ii) and Claim 1(iii), the priority date of Claim 50 of the '872 Patent is 20 November 2003.

## Lack of Novelty

60.     The alleged invention in Claim 50 of the '872 Patent was not new on 21 November 2002 and/or 20 November 2003.

## Particulars

(a)     The alleged invention in Claim 50 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 50, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i) Documents published in various scientific publications, journals and patent documents, such as:

(A) A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(B) WO 01/96634 published on 20 December 2001;

(C) WO 01/96633 published on 20 December 2001;

(D) Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(E) Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii) The following prior users:

(A) The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

61. The subject matter of each of the documents and prior users stated in paragraph 60(a)(i) and 60(a)(ii) were at all material times common general knowledge.

**Lack of Inventive Step**

62. The alleged invention in Claim 50 of the '872 Patent involved no inventive step on 21 November 2002 and/or 20 November 2003.

(a)  The alleged invention in Claim 50 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 50 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)  All the documents and prior users referred to in paragraphs 60(a)(i) and 60(a)(ii) above;

(ii)  The following further documents:

(A)  A paper entitled: *'Diamond homoepitaxy by chemical vapour deposition'* – Andrzej Badzian & Teresa Badzian; Diamond and Related Materials, Vol. 2, Issues 2-4, pp. 147-157, 31 March 1993;

(B)  US 5,474,021 grant published on 12 December 1995;

(C)  A paper entitled: *'Very high growth rate chemical vapour deposition of single-crystal diamond'* – Chih-shiue Yan, Yogesh K. Vohra, Ho-kwang Mao & Russell J. Hemley, Proceedings of the National Academy of Sciences of the United States of America, Vol. 99, Issue 20, pp. 12523-12525, 1 October 2002;

(D)  JP 07-277890A published on 24 October 1995;

(E)  A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000; and

(F)  A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik

Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(G)      EP0671482 published on 13 September 1995;

(H)      US 5,451,430 grant published on 19 September 1995; and

(iii)      The common general knowledge.

### *Claim 52 of the '872 Patent*

63.      If the invention claimed in Claim 52 of the '872 Patent is directly or indirectly dependent upon Claim 1(ii) not Claim 1(iii), the priority date of Claim 52 of the '872 Patent is 21 November 2002.

64.      If the invention claimed in Claim 52 of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) not Claim 1(ii), or a combination of Claim 1(ii) and Claim 1(iii), the priority date of Claim 52 of the '872 Patent is 20 November 2003.

## **Lack of Novelty**

65.      The alleged invention in Claim 52 of the '872 Patent was not new on 21 November 2002 and/or 20 November 2003.

## **Particulars**

(a)      The alleged invention in Claim 52 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 52, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)    Documents published in various scientific publications, journals and patent documents, such as:

    (A)    US 5,474,021 grant published on 12 December 1995;

    (B)    A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

    (C)    WO 01/96634 published on 20 December 2001;

    (D)    A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

    (E)    WO 01/96633 published on 20 December 2001;

    (F)    Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

    (G)    Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii)    The following prior users:

    (A)    The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

66.    The subject matter of each of the documents and prior users stated in paragraph 65(a)(i) and 65(a)(ii) were at all material times common general knowledge.

## Lack of Inventive Step

67.     The alleged invention in Claim 52 of the '872 Patent involved no inventive step on 21 November 2002 and/or 20 November 2003.

## Particulars

(a)     The alleged invention in Claim 52 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 52 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents and prior users referred to in paragraphs 65(a)(i) and 65(a)(ii) above;

(ii)    The following further documents:

(A)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000);

(B)     A paper entitled: *'Very high growth rate chemical vapour deposition of single-crystal diamond'* – Chih-shiue Yan, Yogesh K. Vohra, Ho-kwang Mao & Russell J. Hemley, Proceedings of the National Academy of Sciences of the United States of America, Vol. 99, Issue 20, pp. 12523-12525, 1 October 2002;

(C)     EP0671482 published on 13 September 1995;

(D)     US 5,451,430 grant published on 19 September 1995;

(E)     A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamond'* – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(F)     US 5,127,983, published on July 7, 1992;

(G)     JP 07-277890A published on 24 October 1995;

(H)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000; and

(iii)    The common general knowledge.

<u>Claim 53 of the '872 Patent</u>

68.    If the invention claimed in Claim 53 of the '872 Patent is directly or indirectly dependent upon Claim 1(ii) not Claim 1(iii), the priority date of Claim 53 of the '872 Patent is 21 November 2002.

69.    If the invention claimed in Claim 53 of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) not Claim 1(ii), or a combination of Claim 1(ii) and Claim 1(iii), the priority date of Claim 53 of the '872 Patent is 20 November 2003.

**Lack of Novelty**

70.    The alleged invention in Claim 53 of the '872 Patent was not new on 21 November 2002 and/or 20 November 2003.

**<u>Particulars</u>**

(a)     The alleged invention in Claim 53 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 53, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

      (i)      Documents published in various scientific publications, journals and patent documents, such as:

          (A)    US 5,474,021 grant published on 12 December 1995; and

          (B)    A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

          (C)    EP0671482 published on 13 September 1995;

          (D)    US 5,451,430 grant published on 19 September 1995;

          (E)    JP 07-277890A published on 24 October 1995;

          (F)    WO 01/96634 published on 20 December 2001;

          (G)    WO 01/96633 published on 20 December 2001;

          (H)    Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

          (I)    Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

      (ii)     The following prior users:

          (A)    The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including

but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

71.    The subject matter of each of the documents and prior users stated in paragraph 70(a)(i) and 70(a)(ii) were at all material times common general knowledge.

## Lack of Inventive Step

72.    The alleged invention in Claim 53 of the '872 Patent involved no inventive step on 21 November 2002 and/or 20 November 2003.

## Particulars

(a)    The alleged invention in Claim 53 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 53 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)    All the documents and prior users referred to in paragraphs 70(a)(i) and 70(a)(ii) above;

(ii)    The following further documents:

(A)    A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(B)    A paper entitled: *'Diamond homoepitaxy by chemical vapour deposition'* – Andrzej Badzian & Teresa Badzian; Diamond and

Related Materials, Vol. 2, Issues 2-4, pp. 147-157, 31 March 1993;

(C)     A paper entitled: *'Very high growth rate chemical vapour deposition of single-crystal diamond'* – Chih-shiue Yan, Yogesh K. Vohra, Ho-kwang Mao & Russell J. Hemley, Proceedings of the National Academy of Sciences of the United States of America, Vol. 99, Issue 20, pp. 12523-12525, 1 October 2002;

(D)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(E)     A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(F)     US6096129 published Aug 1, 2000; and


(iii)    The common general knowledge.


*Claim 57 of the '872 Patent*

73.     The priority date of Claim 57 of the '872 Patent is 20 November 2003.


**Lack of Novelty**

74.     The alleged invention in Claim 57 of the '872 Patent was not new.

**<u>Particulars</u>**

(a)    The alleged invention in Claim 57 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 57, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

      (i)    Documents published in various scientific publications, journals and patent documents, such as:

            (A)    A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

            (B)    US 5,474,021 grant published on 12 December 1995;

            (C)    JP 07-277890A published on 24 October 1995;

            (D)    A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

            (E)    A paper entitled: *'Diamond Solid Etalons for High-Stability DWDM Wavelength-Lockers'* by E.P. Houwman, H.P. Godfried, C.E. Hall, J. Fraser, L. Daykin, S.J. Pope & K. Mullaney presented at the ECOC-IOOC 2003, 29th European Conference on Optical Communication & 14th International Conference on Integrated Optics and Optical Fibre Communication held in Rimini, Italy between the 21-25 September 2003;

(F)     A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

(G)     A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(H)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(I)     WO 01/96634 published on 20 December 2001;

(J)     WO 01/96633 published on 20 December 2001;

(K)     Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(L)     Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii)    The following prior users:

(A)     The Plaintiff, who has provided disclosures of diamond etalons on its website on or around 19 September 2003; and

(B)     The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

75. The subject matter of each of the documents and prior users stated in paragraphs 74(a)(i) to 74(a)(ii) were at all material times common general knowledge.

## Lack of Inventive Step

76. The alleged invention in Claim 57 of the '872 Patent involved no inventive step.

## Particulars

(a) The alleged invention in Claim 57 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 57 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

 (i) All the documents and prior users referred to in paragraphs 74(a)(i) to 74(a)(ii) above;

 (ii) The following further documents:

  (A) A paper entitled: *'Characterization and lattice location of nitrogen and boron in homoepitaxial CVD diamond'* – R. Samlenski, C. Haug, R. Brenn, C. Wild, R. Locher & P. Koidl; Diamond and Related Materials, Vol. 5, Issues 9, pp. 947-951, July 1996;

  (B) US 5,451,430 grant published on 19 September 1995;

  (C) EP0671482 published on 13 September 1995;

  (D) A paper entitled: *'Single-Qubit Operations with the Nitrogen-Vacancy Center in Diamond'* – T.A. Kennedy, F.T. Charnock, J.S. Colton, J.E. Butler, R.C. Linares & P.J. Doering, Physica Status Solidi (B), Vol. 233, Issue 3, pp. 416-426, October 2002;

(E)      A presentation entitled: *'Characterisation of HPHT Annealed Single Crystal CVD Diamond'* by JE Butler, S. Charles, BN Feygelson, CH Yan, HK Mao and R Hemley, presented at the annual Diamond Physics Meeting, sponsored by DeBeers, July 2003;

(F)      US 5,335,245 grant published on 2 August 1994; and

(iii)      The common general knowledge.

<u>Claim 58 of the '872 Patent</u>

77.      The priority date of Claim 58 of the '872 Patent is 20 November 2003.

## Lack of Novelty

78.      The alleged invention in Claim 58 of the '872 Patent was not new.

## Particulars

(a)      The alleged invention in Claim 58 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 58, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)      Documents published in various scientific publications, journals and patent documents, such as:

(A)      A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(B)    US 5,474,021 grant published on 12 December 1995;

(C)    JP 07-277890A published on 24 October 1995;

(D)    A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002

(E)    A paper entitled: *'Diamond Solid Etalons for High-Stability DWDM Wavelength-Lockers'* by E.P. Houwman, H.P. Godfried, C.E. Hall, J. Fraser,  L. Daykin, S.J. Pope & K. Mullaney presented at the ECOC-IOOC 2003, 29th European Conference on Optical Communication & 14th International Conference on Integrated Optics and Optical Fibre Communication held in Rimini, Italy between the 21-25 September 2003;

(F)    A paper entitled: *'Development of large size diamond synthesis process*' by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

(G)    A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(H)    A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(I)    WO 01/96634 published on 20 December 2001;

(J)     WO 01/96633 published on 20 December 2001;

(K)     Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(L)     Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii)    The following prior users:

(A)     The Plaintiff, who has provided disclosures of diamond etalons on its website on or around 19 September 2003; and

(B)     The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

79.     The subject matter of each of the documents and prior users stated in paragraphs 78(a)(i) to 78(a)(ii) were at all material times common general knowledge.

**Lack of Inventive Step**

80.     The alleged invention in Claim 58 of the '872 Patent involved no inventive step.

**Particulars**

(a)     The alleged invention in Claim 58 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 58 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents and prior users referred to in paragraphs 78(a)(i) to 78(a)(ii) above;

(ii)    The following further documents:

    (A)    A paper entitled: *'Characterization and lattice location of nitrogen and boron in homoepitaxial CVD diamond'* – R. Samlenski, C. Haug, R. Brenn, C. Wild, R. Locher & P. Koidl; Diamond and Related Materials, Vol. 5, Issues 9, pp. 947-951, July 1996;

    (B)    US 5,451,430 grant published on 19 September 1995;

    (C)    EP0671482 published on 13 September 1995;

    (D)    A paper entitled: *'Single-Qubit Operations with the Nitrogen-Vacancy Center in Diamond'* – T.A. Kennedy, F.T. Charnock, J.S. Colton, J.E. Butler, R.C. Linares & P.J. Doering, Physica Status Solidi (B), Vol. 233, Issue 3, pp. 416-426, October 2002;

    (E)    A presentation entitled: *'Characterisation of HPHT Annealed Single Crystal CVD Diamond'* by JE Butler, S. Charles, BN Feygelson, CH Yan, HK Mao and R Hemley, presented at the annual Diamond Physics Meeting, sponsored by DeBeers, July 2003;

    (F)    US 5,335,245 grant published on 2 August 1994; and

(iii)   The common general knowledge.


*Claim 59 of the '872 Patent*

81.    The priority date of Claim 59 of the '872 Patent is 20 November 2003.

**<u>Lack of Novelty</u>**

82.     The alleged invention in Claim 59 of the '872 Patent was not new.


**<u>Particulars</u>**

(a)     The alleged invention in Claim 59 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 59, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

   (i)      Documents published in various scientific publications, journals and patent documents, such as:

   (A)      A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

   (B)      US 5,474,021 grant published on 12 December 1995;

   (C)      JP 07-277890A published on 24 October 1995;

   (D)      A paper entitled: *'Diamond Solid Etalons for High-Stability DWDM Wavelength-Lockers'* by E.P. Houwman, H.P. Godfried, C.E. Hall, J. Fraser, L. Daykin, S.J. Pope & K. Mullaney presented at the ECOC-IOOC 2003, 29th European Conference on Optical Communication & 14th International Conference on Integrated Optics and Optical Fibre Communication held in Rimini, Italy between the 21-25 September 2003;

   (E)      A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D

on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

(F) A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(G) WO 01/96634 published on 20 December 2001;

(H) WO 01/96633 published on 20 December 2001;

(I) Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(J) Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii) The following prior users:

(A) The Plaintiff, who has provided disclosures of diamond etalons on its website on or around 19 September 2003; and

(B) The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

83. The subject matter of each of the documents and prior users stated in paragraphs 82(a)(i) to 82(a)(ii) were at all material times common general knowledge.

84.     The alleged invention in Claim 59 of the '872 Patent involved no inventive step.

**Particulars**

(a)     The alleged invention in Claim 59 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 59 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents and prior users referred to in paragraphs 82(a)(i) to 82(a)(ii) above;

(ii)    The following further documents:

(A)     A paper entitled: *'Characterization and lattice location of nitrogen and boron in homoepitaxial CVD diamond'* – R. Samlenski, C. Haug, R. Brenn, C. Wild, R. Locher & P. Koidl; Diamond and Related Materials, Vol. 5, Issues 9, pp. 947-951, July 1996;

(B)     A paper entitled: *'Single-Qubit Operations with the Nitrogen-Vacancy Center in Diamond'* – T.A. Kennedy, F.T. Charnock, J.S. Colton, J.E. Butler, R.C. Linares & P.J. Doering, Physica Status Solidi (B), Vol. 233, Issue 3, pp. 416-426, October 2002;

(C)     US 5,451,430 grant published on 19 September 1995;

(D)     EP0671482 published on 13 September 1995;

(E)     A presentation entitled: *'Characterisation of HPHT Annealed Single Crystal CVD Diamond'* by JE Butler, S. Charles, BN Feygelson, CH Yan, HK Mao and R Hemley, presented at the

annual Diamond Physics Meeting, sponsored by DeBeers, July 2003;

(F)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(G)     A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(H)     US 5,335,245 grant published on 2 August 1994; and


(iii)   The common general knowledge.


*Claim 60 of the '872 Patent*

85.     The priority date of Claim 60 of the '872 Patent is 20 November 2003.


## Lack of Novelty

86.     The alleged invention in Claim 60 of the '872 Patent was not new.


## Particulars

(a)     The alleged invention in Claim 60 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 60, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents, such as:

(A)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(B)     US 5,474,021 grant published on 12 December 1995;

(C)     JP 07-277890A published on 24 October 1995;

(D)     A paper entitled: *'Diamond Solid Etalons for High-Stability DWDM Wavelength-Lockers'* by E.P. Houwman, H.P. Godfried, C.E. Hall, J. Fraser, L. Daykin, S.J. Pope & K. Mullaney presented at the ECOC-IOOC 2003, 29th European Conference on Optical Communication & 14th International Conference on Integrated Optics and Optical Fibre Communication held in Rimini, Italy between the 21-25 September 2003;

(E)     A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

(F)     WO 01/96634 published on 20 December 2001;

(G)     WO 01/96633 published on 20 December 2001;

(H)     Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(I)     Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii)    The following prior users:

(A)     The Plaintiff, who has provided disclosures of diamond etalons on its website on or around 19 September 2003; and

(B) The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

87. The subject matter of each of the documents and prior users stated in paragraphs 86(a)(i) to 86(a)(ii) were at all material times common general knowledge.

## **Lack of Inventive Step**

88. The alleged invention in Claim 60 of the '872 Patent involved no inventive step.

## **Particulars**

(a) The alleged invention in Claim 60 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 60 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i) All the documents and prior users referred to in paragraphs 86(a)(i) to 86(a)(ii) above;

(ii) The following further documents:

(A) A paper entitled: *'Characterization and lattice location of nitrogen and boron in homoepitaxial CVD diamond'* – R. Samlenski, C. Haug, R. Brenn, C. Wild, R. Locher & P. Koidl; Diamond and Related Materials, Vol. 5, Issues 9, pp. 947-951, July 1996;

(B) US 5,451,430 grant published on the 19 September 1995;

(C)     EP0671482 published on 13 September 1995;

(D)     A presentation entitled: '*Characterisation of HPHT Annealed Single Crystal CVD Diamond'* by JE Butler, S. Charles, BN Feygelson, CH Yan, HK Mao and R Hemley, presented at the annual Diamond Physics Meeting, sponsored by DeBeers, July 2003;

(E)     A paper entitled: '*High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(F)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(G)     A paper entitled: '*Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(H)     US 5,335,245 grant published on 2 August 1994; and


(iii)   The common general knowledge.

89.    If the invention claimed in Claim 62 of the '872 Patent is directly or indirectly dependent upon Claim 1(ii) not Claim 1(iii), the priority date of Claim 62 of the '872 Patent is 21 November 2002.

90.    If the invention claimed in Claim 62 of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) not Claim 1(ii), or a combination of Claim 1(ii) and Claim 1(iii), the priority date of Claim 62 of the '872 Patent is 20 November 2003.

## **Lack of Novelty**

91.    The alleged invention in Claim 62 of the '872 Patent was not new on 21 November 2002 and/or 20 November 2003.

## **Particulars**

(a)    The alleged invention in Claim 62 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 62, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)    Documents published in various scientific publications, journals and patent documents, such as:

(A)    US 5,474,021 grant published on 12 December 1995;

(B)    WO 01/96634 published on 20 December 2001;

(C)    A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(D)    JP 07-277890A published on 24 October 1995;

(E)      A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(F)      WO 01/96633 published on 20 December 2001;

(G)      Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(H)      Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii)      The following prior users:

(A)      The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

92.      The subject matter of each of the documents and prior users stated in paragraph 91(a)(i) and 91(a)(ii) were at all material times common general knowledge.

## **Lack of Inventive Step**

93.      The alleged invention in Claim 62 of the '872 Patent involved no inventive step on 21 November 2002 and/or 20 November 2003.

## **Particulars**

(a)      The alleged invention in Claim 62 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged

invention in Claim 62 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)    All the documents and prior users referred to in paragraphs 91(a)(i) and 91(a)(ii) above;

(ii)   The following further documents:

(A)   A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(B)   A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(C)   US 5,451,430 grant published on 19 September 1995;

(D)   US 6,162,412 grant published on 19 December 2000;

(E)   EP 0 594 994 published on 10 March 1999;

(F)   A paper entitled: '*Nitrogen stabilized 100 texture in Chemical Vapor deposited diamond films.*' R. Locher, C. Wild, N. Herres, D. Behr and P Koidl, Applied Physics Letters, Vol 65, No. 1, 30 April 1994;

(G)   A paper entitled: *'A Study of Surface morphologies of (001) homoepitaxial diamond films'*, Naesung Lee, Andrzej Badzian, Diamond and Related Materials, 6 (1997) 130-145;

(H)     A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

(I)     A paper entitled: 'Dislocation of epitaxial CVD diamond and the characterization by Raman spectroscopy' – Masahiko Mitsuhashi, Shiro Karasawa, Seishiro Ohya & Fumitaka Togashi; Applied Surface Science, Vol. 60/61, pp 565-572,1992;

(J)     A paper entitled *'Growth and characterization of hillock-free high quality homoepitaxial diamond films'* – Chunlei Wang, Masatake Irie & Toshimichi Ito; Diamond and Related Materials, Vol: 9, Issues 9-10, pp. 1650-1654, September-October 2000; and

(iii)    The common general knowledge.


**Lack of Clear and Complete Disclosure**

94.    The alleged invention in Claim 62 of the '872 Patent lacks clear and complete disclosure.

(a)    The specification of the '872 Patent does not disclose the invention clearly and completely enough for it to be performed by a person skilled in the art.


**Particulars**

(Ai)    The Defendant repeats and adopts paragraphs 5(c) to 5(e) of the Amended DCC and each and every particular pleaded therein.

(i)     The material part of Claim 62 of the '872 Patent recites:

"*A method of producing a CVD diamond material suitable for optical applications and according to any one of the preceding claims, which method includes the steps of:*

*-providing a substrate substantially free of crystal defects,*

*-providing a source gas,*

*-dissociating the source gas to produce a synthesis atmosphere which contains 300 ppb to 5 ppm nitrogen…*

*…*"

(ii)     The term *"…CVD diamond material…"* is very broad and can be interpreted as referring to both single crystal CVD diamond material as well as poly-crystalline CVD diamond material.

(iii)    The phrase *"A method of producing a CVD diamond material…"* does not sufficiently define the method of invention. It is known to the person skilled in art that there are several methods to grow CVD diamonds. Further, the specification and examples fail to how and/or whether the '872 Patent applies to all known CVD methods.

(iv)    It is clear from the specification that it is essential to the invention that the CVD process be conducted on a diamond substrate, see page 16, third and fourth paragraphs:

"***It is important for the production of a diamond optical layer of the invention that growth of a layer of single crystal CVD diamond takes place on a diamond surface which is substantially free of crystal defects***. *In this context, defects primarily mean dislocations and micro cracks, but also include twin boundaries, point defects not intrinsically associated with the*

*dopant N atoms, low angle boundaries and any other extended disruption to the crystal lattice. Preferably the substrate is a low birefringence type Ia natural, Ib or IIa high pressure/high temperature synthetic diamond or a CVD synthesised single crystal diamond.*

*The quality of **growth on a substrate which is not substantially free of defects rapidly degrades as the layer grows thicker and the defect structures multiply**, causing general crystal degradation, twinning and renucleation. **Defects of this type are particularly deleterious to the present application**, causing local variations in many of the key properties*".

(v)     This is also made clear in the prior art.  US 5,474,021 (grant published on 12 December 1995) discusses the importance of homoepitaxial growth (i.e. using a defect free diamond substrate) in producing diamonds suitable for optical applications.  Column 2, lines 9 to 23 states:

"*In general, epitaxial growth is classified into homoepitaxial growth of growing a target material on the same type of materials [as] a substrate, and heteroepitaxial growth of growing a target material on different types of substrates. A single-crystalline substrate of a relatively large area can easily be obtained for heteroepitaxial growth. At present, however, **heteroepitaxial growth of diamond tends to cause a defect or distortion in the crystal, and it is thus unsuitable as a method of obtaining a large-area diamond single crystal to be [is] applied to an optical component** or a semiconductor substrate. Therefore, it is still*

*important to study homoepitaxial growth in order to produce a large-area diamond single crystal*".

(vi)     Furthermore, it is noted that all the examples provided in the '872 Patent relate to the method of example 1 which uses "type 1a natural stones and type 1b HPHT stones" i.e. diamond substrates. There are no examples where the process has been conducted using non-diamond substrates or diamond substrates of different types and origins.

(vii)    As this method claim simply states, "*providing a substrate substantially free of defects*" there is no restriction of the substrate to purely diamond materials. Furthermore, the patent fails to disclose detailed steps to achieve a "*substrate substantially free of defects*".

(viii)   Accordingly, the claim covers embodiments which are not sufficiently described in the '872 Patent.

(ix)     Page 15 of the specification of the '872 Patent renders doubt over the claimed upper limit of 5 ppm for nitrogen in source gas by stating that even "*…small excursions…*" above 1.8 ppm of $N_2$ in source gas can adversely affect the optical absorption of the CVD diamond of the invention.
         Page 15, paragraph 1, states:

         "…. *In the presence of these steps nitrogen incorporation increases substantially and is generally non-uniform on a microscopic scale. **The concentration of nitrogen at which this transition occurs is a sensitive function of the growth conditions, including temperature***

*and pressure, but is typically around 1.8 ppm (of total gas concentration, when using $N_2$) for the processes described herein. For small excursions above this limit, some of the benefits of the method of the invention may still be realised, particularly for example the mechanical strength or the surface processing, but properties such as optical absorption are adversely affected by significant nitrogen incorporation, which easily occurs once <100> steps are present."*

(x)     The claim by stating, *"… wherein the level of nitrogen is controlled with an error of less than 300 ppb (molecular fraction of the total gas volume) or 10% of the target value in the gas phase whichever is the larger…"*, renders the scope of the invention uncertain by casting doubt on the extent of the range. The implication could be that the presence of nitrogen is not necessary as zero nitrogen lies within error bounds of the lower limit.

(xi)    The '872 Patent fails to disclose specific combinations of defect density on the substrate surface and nitrogen concentration (calculated as molecular nitrogen) in synthesis atmosphere to grow diamonds which satisfy each combination of claims 1 to 61.

(xii)   Furthermore, the '872 Patent fails to disclose the growth of a CVD diamond material that is meeting the requirement of the claims 1 to 61 on surface other than {100} surface.

(xiii)  The '872 Patent fails to disclose the growth of a CVD diamond material that is meeting the requirement of the claims 1 to 61 by using the non *in situ* plasma etching.

95.     If the invention claimed in Claim 63 of the '872 Patent is directly or indirectly dependent upon Claim 1(ii) not Claim 1(iii), the priority date of Claim 63 of the '872 Patent is 21 November 2002.

96.     If the invention claimed in Claim 63 of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) not Claim 1(ii), or a combination of Claim 1(ii) and Claim 1(iii), the priority date of Claim 63 of the '872 Patent is 20 November 2003.

## Lack of Novelty

97.     The alleged invention in Claim 63 of the '872 Patent was not new on 21 November 2002 and/or 20 November 2003.

## Particulars

(a)     The alleged invention in Claim 63 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 63, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents, such as:

    (A)     US 5,474,021 grant published on 12 December 1995;

    (B)     WO 01/96634 published on 20 December 2001;

    (C)     JP 07-277890A published on 24 October 1995;

    (D)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(E)     A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamond'* – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(F)     WO 01/96633 published on 20 December 2001;

(G)     Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(H)     Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii)    The following prior users:

(A)     The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

98.     The subject matter of each of the documents and prior users stated in paragraph 97(a)(i) and 97(a)(ii) were at all material times common general knowledge.

**Lack of Inventive Step**

99.     The alleged invention in Claim 63 of the '872 Patent involved no inventive step on 21 November 2002 and/or 20 November 2003.

**Particulars**

(a)     The alleged invention in Claim 63 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged

invention in Claim 63 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents and prior users referred to in paragraphs 97(a)(i) and 97(a)(ii) above;

(ii)    The following further documents:

    (A)     A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

    (B)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

    (C)     A paper entitled: '*Nitrogen stabilized 100 texture in Chemical Vapor deposited diamond films.*' R. Locher, C. Wild, N. Herres, D. Behr and P Koidl, Appl Phy Let, Vol 65, No. 1,  30 April 1994;

    (D)     US 5,451,430 grant published on 19 September 1995;

    (E)     US 6,162,412 grant published on 19 December 2000;

    (F)     EP 0 594 994  published on 10 March 1999;

    (G)     A paper entitled: *'Development of large size diamond synthesis process*' by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000; and

(iii)    The common general knowledge.

<u>Claim 64 of the '872 Patent</u>

100.    If the invention claimed in Claim 64 of the '872 Patent is directly or indirectly dependent upon Claim 1(ii) not Claim 1(iii), the priority date of Claim 64 of the '872 Patent is 21 November 2002.

101.    If the invention claimed in Claim 64 of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) not Claim 1(ii), or a combination of Claim 1(ii) and Claim 1(iii), the priority date of Claim 64 of the '872 Patent is 20 November 2003.

**Lack of Novelty**

102.    The alleged invention in Claim 64 of the '872 Patent was not new on 21 November 2002 and/or 20 November 2003.

**Particulars**

(a)    The alleged invention in Claim 64 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 64, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)    Documents published in various scientific publications, journals and patent documents, such as:

(A)    US 5,474,021 grant published on 12 December 1995;

(B)    WO 01/96634 published on 20 December 2001;

(C)    JP 07-277890A published on 24 October 1995;

(D)    A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of

Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(E)    A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(F)    WO 01/96633 published on 20 December 2001;

(G)    Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(H)    Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii)    The following prior users:

(A)    The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

103.    The subject matter of each of the documents and prior users stated in paragraph 102(a)(i) and 102(a)(ii) were at all material times common general knowledge.


## Lack of Inventive Step

104.    The alleged invention in Claim 64 of the '872 Patent involved no inventive step on 21 November 2002 and/or 20 November 2003.

(a)     The alleged invention in Claim 64 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 64 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents and prior users referred to in paragraphs 102(a)(i) and 102(a)(ii) above;

(ii)    The following further documents:

(A)    A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(B)    A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(C)    A paper entitled: '*Nitrogen stabilized 100 texture in Chemical Vapor deposited diamond films.*' R. Locher, C. Wild, N. Herres, D. Behr and P Koidl, Appl Phy Let, Vol 65, No. 1, 30 April 1994;

(D)    US 5,451,430 grant published on 19 September 1995;

(E)    US 6,162,412 grant published on 19 December 2000;

(F)    EP 0 594 994  published on 10 March 1999;

        (G)      A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000; and

    (iii)     The common general knowledge.

*Claim 65 of the '872 Patent*

105.    If the invention claimed in Claim 65 of the '872 Patent is directly or indirectly dependent upon Claim 1(ii) not Claim 1(iii), the priority date of Claim 65 of the '872 Patent is 21 November 2002.

106.    If the invention claimed in Claim 65 of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) not Claim 1(ii), or a combination of Claim 1(ii) and Claim 1(iii), the priority date of Claim 65 of the '872 Patent is 20 November 2003.

**Lack of Novelty**

107.    The alleged invention in Claim 65 of the '872 Patent was not new on 21 November 2002 and/or 20 November 2003.

**Particulars**

(a)    The alleged invention in Claim 65 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 65, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

    (i)      Documents published in various scientific publications, journals and patent documents, such as:

(A)     WO 01/96634 published on 20 December 2001;

(B)     JP 07-277890A published on 24 October 1995;

(C)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(D)     A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(E)     WO 01/96633 published on 20 December 2001;

(F)     Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(G)     Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii)    The following prior users:

(A)     The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

108.    The subject matter of each of the documents and prior users stated in paragraph 107(a)(i) and 107(a)(ii) were at all material times common general knowledge.

## Lack of Inventive Step

109.    The alleged invention in Claim 65 of the '872 Patent involved no inventive step on 21 November 2002 and/or 20 November 2003.


## Particulars

(a)    The alleged invention in Claim 65 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 65 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:


   (i)    All the documents and prior users referred to in paragraphs 107(a)(i) and 107(a)(ii) above;


   (ii)    The following further documents:

      (A)    A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

      (B)    US 5,451,430 grant published on 19 September 1995;

      (C)    EP 0 594 994  published on 10 March 1999;

      (D)    A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

      (E)    A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P.

Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000; and

(iii)    The common general knowledge.

*Claim 66 of the '872 Patent*

110.    If the invention claimed in Claim 66 of the '872 Patent is directly or indirectly dependent upon Claim 1(ii) not Claim 1(iii), the priority date of Claim 66 of the '872 Patent is 21 November 2002.

111.    If the invention claimed in Claim 66 of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) not Claim 1(ii), or a combination of Claim 1(ii) and Claim 1(iii), the priority date of Claim 66 of the '872 Patent is 20 November 2003.

**Lack of Novelty**

112.    The alleged invention in Claim 66 of the '872 Patent was not new on 21 November 2002 and/or 20 November 2003.

**Particulars**

(a)    The alleged invention in Claim 66 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 66, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)    Documents published in various scientific publications, journals and patent documents, such as:

(A)    WO 01/96634 published on 20 December 2001;

(B) JP 07-277890A published on 24 October 1995;

(C) A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(D) A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(E) WO 01/96633 published on 20 December 2001;

(F) Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(G) Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii) The following prior users:

(A) The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

113. The subject matter of each of the documents and prior users stated in paragraph 112(a)(i) and 112(a)(ii) were at all material times common general knowledge.

**Lack of Inventive Step**

114. The alleged invention in Claim 66 of the '872 Patent involved no inventive step on 21 November 2002 and/or 20 November 2003.

## Particulars

(a)　The alleged invention in Claim 66 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 66 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)　All the documents and prior users referred to in paragraphs 112(a)(i) and 112(a)(ii) above;

(ii)　The following further documents:

(A)　A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(B)　US 5,451,430 grant published on 19 September 1995;

(C)　EP 0 594 994 published on 10 March 1999;

(D)　A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

(E)　A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000; and

(iii)     The common general knowledge.

<u>Claim 67 of the '872 Patent</u>

115.    If the invention claimed in Claim 67 of the '872 Patent is directly or indirectly dependent upon Claim 1(ii) not Claim 1(iii), the priority date of Claim 67 of the '872 Patent is 21 November 2002.

116.    If the invention claimed in Claim 67 of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) not Claim 1(ii), or a combination of Claim 1(ii) and Claim 1(iii), the priority date of Claim 67 of the '872 Patent is 20 November 2003.

**Lack of Novelty**

117.    The alleged invention in Claim 67 of the '872 Patent was not new on 21 November 2002 and/or 20 November 2003.

**Particulars**

(a)     The alleged invention in Claim 67 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 67, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents, such as:

(A)     US 5,474,021 grant published on 12 December 1995;

(B)     WO 01/96634 published on 20 December 2001;

(C)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of

Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(D)     A paper entitled: '*High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(E)     WO 01/96633 published on 20 December 2001;

(F)     Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(G)     Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii)    The following prior users:

(A)     The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

118.    The subject matter of each of the documents and prior users stated in paragraph 117(a)(i) and 117(a)(ii) were at all material times common general knowledge.

## Lack of Inventive Step

119.    The alleged invention in Claim 67 of the '872 Patent involved no inventive step on 21 November 2002 and/or 20 November 2003.

**Particulars**

(a)     The alleged invention in Claim 67 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 67 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

      (i)     All the documents and prior users referred to in paragraphs 117(a)(i) and 117(a)(ii) above;

      (ii)     The following documents:

            (A)     A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

            (B)     US 5,451,430 grant published on 19 September 1995;

            (C)     JP 07-277890A published on 24 October 1995;

            (D)     A paper entitled *'Growth and characterization of hillock-free high quality homoepitaxial diamond films'* – Chunlei Wang, Masatake Irie & Toshimichi Ito; Diamond and Related Materials, Vol: 9, Issues 9-10, pp. 1650-1654, September-October 2000;

            (E)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(F) A paper entitled: *'A Study of Surface morphologies of (001) homoepitaxial diamond films'*, Naesung Lee, Andrzej Badzian, Diamond and Related Materials, 6 (1997) 130-145;

(G) A paper entitled: 'Dislocation of epitaxial CVD diamond and the characterization by Raman spectroscopy' – Masahiko Mitsuhashi, Shiro Karasawa, Seishiro Ohya & Fumitaka Togashi; Applied Surface Science, Vol. 60/61, pp 565-572,1992; and

(iii) The common general knowledge.

*Claim 68 of the '872 Patent*

120. If the invention claimed in Claim 68 of the '872 Patent is directly or indirectly dependent upon Claim 1(ii) not Claim 1(iii), the priority date of Claim 68 of the '872 Patent is 21 November 2002.

121. If the invention claimed in Claim 68 of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) and not Claim 1(ii), or a combination of Claim 1(ii) and Claim 1(iii), the priority date of Claim 68 of the '872 Patent is 20 November 2003.

**Lack of Novelty**

122. The alleged invention in Claim 68 of the '872 Patent was not new on 21 November 2002 and/or 20 November 2003.

**Particulars**

(a) The alleged invention in Claim 68 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 68,

been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents, such as:

(A)     US 5,474,021 grant published on 12 December 1995;

(B)     WO 01/96634 published on 20 December 2001;

(C)     JP 07-277890A published on 24 October 1995;

(D)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(E)     A paper entitled: '*High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(F)     WO 01/96633 published on 20 December 2001;

(G)     Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(H)     Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii)    The following prior users:

(A)     The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

123. The subject matter of each of the documents and prior users stated in paragraph 122(a)(i) and 122(a)(ii) were at all material times common general knowledge.

**Lack of Inventive Step**

124. The alleged invention in Claim 68 of the '872 Patent involved no inventive step on 21 November 2002 and/or 20 November 2003.

**Particulars**

(a)  The alleged invention in Claim 68 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 68 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

  (i)  All the documents and prior users referred to in paragraphs 122(a)(i) and 112(a)(ii) above;

  (ii)  The following further documents:

     (A)  A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

     (B)  A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

     (C)  A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P.

Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000

(D)    A paper entitled: *'A Study of Surface morphologies of (001) homoepitaxial diamond films'*, Naesung Lee, Andrzej Badzian, Diamond and Related Materials, 6 (1997) 130-145;

(E)    A paper entitled *'Growth and characterization of hillock-free high quality homoepitaxial diamond films'* – Chunlei Wang, Masatake Irie & Toshimichi Ito; Diamond and Related Materials, Vol: 9, Issues 9-10, pp. 1650-1654, September-October 2000;

(F)    A paper entitled: '*Dislocation of epitaxial CVD diamond and the characterization by Raman spectroscopy*' – Masahiko Mitsuhashi, Shiro Karasawa, Seishiro Ohya & Fumitaka Togashi; Applied Surface Science, Vol. 60/61, pp 565-572,1992; and

(iii)    The common general knowledge.

*Claim 69 of the '872 Patent*

125.    If the invention claimed in Claim 69 of the '872 Patent is directly or indirectly dependent upon Claim 1(ii) and not Claim 1(iii), the priority date of Claim 69 of the '872 Patent is 21 November 2002.

126.    If the invention claimed in Claim 69 of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) and not Claim 1(ii), or a combination of Claim 1(ii) and Claim 1(iii), the priority date of Claim 69 of the '872 Patent is 20 November 2003.

**Lack of Novelty**

127.   The alleged invention in Claim 69 of the '872 Patent was not new on 21 November 2002 and/or 20 November 2003.

**Particulars**

(a)   The alleged invention in Claim 69 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 69, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

   (i)   Documents published in various scientific publications, journals and patent documents, such as:

      (A)   US 5,474,021 grant published on 12 December 1995;

      (B)   WO 01/96634 published on 20 December 2001;

      (C)   JP 07-277890A published on 24 October 1995;

      (D)   A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

      (E)   A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

      (F)   WO 01/96633 published on 20 December 2001;

      (G)   Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(H)     Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii)    The following prior users:

(A)     The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

128.    The subject matter of each of the documents and prior users stated in paragraph 127(a)(i) and 127(a)(ii) were at all material times common general knowledge.

**Lack of Inventive Step**

129.    The alleged invention in Claim 69 of the '872 Patent involved no inventive step on 21 November 2002 and/or 20 November 2003.

**Particulars**

(a)     The alleged invention in Claim 69 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 69 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents and prior users referred to in paragraphs 127(a)(i) and 127(a)(ii) above;

(ii) The following further documents:

(A) A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(B) A paper entitled: *'Characterization and lattice location of nitrogen and boron in homoepitaxial CVD diamond'* – R. Samlenski, C. Haug, R. Brenn, C. Wild, R. Locher & P. Koidl; Diamond and Related Materials, Vol. 5, Issues 9, pp. 947-951, July 1996;

(C) A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000; and

(iii) The common general knowledge.

*Claim 70 of the '872 Patent*

130. If the invention claimed in Claim 70 of the '872 Patent is directly or indirectly dependent upon Claim 1(ii) and not Claim 1(iii), the priority date of Claim 70 of the '872 Patent is 21 November 2002.

131. If the invention claimed in Claim 70 of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) and not Claim 1(ii), or a combination of Claim 1(ii) and Claim 1(iii), the priority date of Claim 70 of the '872 Patent is 20 November 2003.

**Lack of Novelty**

132.    The alleged invention in Claim 70 of the '872 Patent was not new on 21 November 2002 and/or 20 November 2003.

**Particulars**

(a)    The alleged invention in Claim 70 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 70, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

   (i)    Documents published in various scientific publications, journals and patent documents, such as:

      (A)    US 5,474,021 grant published on 12 December 1995;

      (B)    WO 01/96634 published on 20 December 2001;

      (C)    JP 07-277890A published on 24 October 1995;

      (D)    A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

      (E)    A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

      (F)    WO 01/96633 published on 20 December 2001;

      (G)    Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(H)     Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii)    The following prior users:

(A)     The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

133.    The subject matter of each of the documents and prior users stated in paragraph 132(a)(i) and 132(a)(ii) were at all material times common general knowledge.

**Lack of Inventive Step**

134.    The alleged invention in Claim 70 of the '872 Patent involved no inventive step on 21 November 2002 and/or 20 November 2003.

**Particulars**

(a)     The alleged invention in Claim 70 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 70 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents and prior users referred to in paragraphs 132(a)(i) and 132(a)(ii) above;

(ii) The following further documents:

(A) A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(B) A paper entitled: *'Characterization and lattice location of nitrogen and boron in homoepitaxial CVD diamond'* – R. Samlenski, C. Haug, R. Brenn, C. Wild, R. Locher & P. Koidl; Diamond and Related Materials, Vol. 5, Issues 9, pp. 947-951, July 1996;

(C) A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000; and

(iii) The common general knowledge.

<u>*Claim 71 of the '872 Patent*</u>

135. The priority date of Claim 71 of the '872 Patent is 20 November 2003.

## **Lack of Novelty**

136. The alleged invention in Claim 71 of the '872 Patent was not new.

## **Particulars**

(a) The alleged invention in Claim 71 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 71,

been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents, such as:

    (A)     US 5,451,430 grant published on 19 September 1995;

    (B)      EP0671482 published on 13 September 1995;

    (C)     WO 01/96634 published on 20 December 2001;

    (D)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

    (E)     A paper entitled: '*High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

    (F)     A paper entitled: '*Diamond Solid Etalons for High-Stability DWDM Wavelength-Lockers'* by E.P. Houwman, H.P. Godfried, C.E. Hall, J. Fraser,  L. Daykin, S.J. Pope & K. Mullaney presented at the ECOC-IOOC 2003, 29th European Conference on Optical Communication & 14th International Conference on Integrated Optics and Optical Fibre Communication held in Rimini, Italy between the 21-25 September 2003;

    (G)     WO 01/72406 published on the 4 October 2001;

    (H)     WO 01/96633 published on 20 December 2001;

    (I)     Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(J)    Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii)    The following prior users:

(A)    The Plaintiff, who has provided disclosures of diamond etalons on its website on or around 19 September 2003; and

(B)    The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

137.    The subject matter of each of the documents and prior users stated in paragraphs 136(a)(i) to 136(a)(ii) were at all material times common general knowledge.

**Lack of Inventive Step**

138.    The alleged invention in Claim 71 of the '872 Patent involved no inventive step.

**Particulars**

(a)    The alleged invention in Claim 71 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 71 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)    All the documents and prior users referred to in paragraphs 136(a)(i) to 136(a)(ii) above;

(ii)    The following further documents:

(A)    US 5,474,021 grant published on 12 December 1995;

(B)    A paper entitled: *'Nitrogen incorporation in diamond films homoepitaxially grown by chemical vapour deposition'* – Konstantin Iakoubovskii, Guy J. Adriaenssens & Yogesh K. Vohra, Journal of Physics: condensed Matter, Vol. 12, Issue 30, pp. L519-524, 2000;

(C)    A presentation entitled: 'Characterisation of HPHT Annealed Single Crystal CVD Diamond' by JE Butler, BN Feygelson, CH Yan, HK Mao and R Hemley, presented at the annual Diamond Physics Meeting, sponsored by DeBeers, July 2003;

(D)    A paper entitled: *'Very high growth rate chemical vapour deposition of single-crystal diamond'* – Chih-shiue Yan, Yogesh K. Vohra, Ho-kwang Mao & Russell J. Hemley, Proceedings of the National Academy of Sciences of the United States of America, Vol. 99, Issue 20, pp. 12523-12525, 1 October 2002;

(E)    A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(F)    A paper entitled: '*Chemical Vapor Deposited Diamond Maturity and Diversity* ' – James E. Butler; The Electrochemical Society Interface, pp. 22-26, published in Spring 2003; and

(iii)    The common general knowledge.

**Lack of Clear and Complete Disclosure**

138A.   The alleged invention in Claim 71 of the '872 Patent lacks clear and complete disclosure.

(a)     The specification of the '872 Patent does not disclose the invention clearly and completely enough for it to be performed by a person skilled in the art.

**Particulars**

(i)     The claim is unclear through the use of the relative and subjective phrase '*further enhanced*'.

(ii)    The description "*…annealing…*" in claim 71 does not disclose the invention clearly and completely. Even the supporting specification for this description of the '872 patent lacks sufficient disclosure to explain the invention clearly and completely.

*Claim 72 of the '872 Patent*

139.    If the invention claimed in Claim 72 of the '872 Patent is directly or indirectly dependent upon Claim 1(ii) only, the priority date of Claim 72 of the '872 Patent is 21 November 2002.

140.    If the invention claimed in Claim 72 of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) only, or a combination of Claim 1(ii) and Claim 1(iii), the priority date of Claim 72 of the '872 Patent is 20 November 2003.

**Lack of Novelty**

141.    The alleged invention in Claim 72 of the '872 Patent was not new on 21 November 2002 and/or 20 November 2003.

**Particulars**

(a)     The alleged invention in Claim 72 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 72, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents, such as:

(A)     US 5,474,021 grant published on 12 December 1995;

(B)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(C)     WO 01/96634 published on 20 December 2001;

(D)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(E)     JP 07-277890A published on 24 October 1995;

(F)     A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;US 5,451,430 grant published on 19 September 1995;

(G)     A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik

Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(H) WO 01/96633 published on 20 December 2001;

(I) Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(J) Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(iA) The following prior users:

(A) The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

(ii) If the invention claimed in Claim 72 of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) only, or a combination of Claim 1(ii) and Claim 1(iii) (i.e. priority date of 20 November 2003), the following further documents are relied on:

(A) A paper entitled: *'Diamond Solid Etalons for High-Stability DWDM Wavelength-Lockers'* by E.P. Houwman, H.P. Godfried, C.E. Hall, J. Fraser, L. Daykin, S.J. Pope & K. Mullaney presented at the ECOC-IOOC 2003, 29th European Conference on Optical Communication & 14th International Conference on Integrated Optics and Optical Fibre Communication held in Rimini, Italy between the 21-25 September 2003; and

(B) A paper entitled: '*Chemical Vapor Deposited Diamond Maturity and Diversity* ' – James E. Butler; The Electrochemical Society Interface, pp. 22-26, published in Spring 2003.

142. The subject matter of each of the documents and prior users stated in paragraphs 141(a)(i), 141(a)(iA) and 141(a)(ii) were at all material times common general knowledge.


**Lack of Inventive Step**

143. The alleged invention in Claim 72 of the '872 Patent involved no inventive step on 21 November 2002 and/or 20 November 2003.


**Particulars**

(a) The alleged invention in Claim 72 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 72 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i) All the documents and prior users referred to in in paragraphs 141(a)(i), 141(a)(iA) and 141(a)(ii) above;

(ii) The following further documents:

(A) A paper entitled: '*Very high growth rate chemical vapour deposition of single-crystal diamond*' – Chih-shiue Yan, Yogesh K. Vohra, Ho-kwang Mao & Russell J. Hemley, Proceedings of the National Academy of Sciences of the United States of

America, Vol. 99, Issue 20, pp. 12523-12525, 1 October 2002; and

(B)     A paper entitled: *'Nitrogen incorporation in diamond films homoepitaxially grown by chemical vapour deposition'* – Konstantin Iakoubovskii, Guy J. Adriaenssens & Yogesh K. Vohra, Journal of Physics: condensed Matter, Vol. 12, Issue 30, pp. L519-524, 2000.

(iiA)   If the invention claimed in Claim 72 of the '872 Patent is directly or indirectly dependent upon Claim 1(iii) only, or a combination of Claim 1(ii) and Claim 1(iii) (i.e. priority date of 20 November 2003), the following further document is relied on:

(A)     A presentation entitled: '*Characterisation of HPHT Annealed Single Crystal CVD Diamond'* by JE Butler, S. Charles, BN Feygelson, CH Yan, HK Mao and R Hemley, presented at the annual Diamond Physics Meeting, sponsored by DeBeers, July 2003; and

(iii)    The common general knowledge.

*Claim 75 of the '872 Patent*

144.    The priority date of Claim 75 of the '872 Patent is 20 November 2003.

**Lack of Novelty**

145.    The alleged invention in Claim 75 of the '872 Patent was not new.

**Particulars**

(a)     The alleged invention in Claim 75 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 75, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents, such as:

(A)     A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(B)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(C)     A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamond'* – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(D)     A paper entitled: *'Diamond Solid Etalons for High-Stability DWDM Wavelength-Lockers'* by E.P. Houwman, H.P. Godfried, C.E. Hall, J. Fraser, L. Daykin, S.J. Pope & K. Mullaney presented at the ECOC-IOOC 2003, 29th European Conference on Optical Communication & 14th International Conference on

Integrated Optics and Optical Fibre Communication held in Rimini, Italy between the 21-25 September 2003;

(E)  WO 01/96634 published on 20 December 2001;

(F)  JP 07-277890A published on 24 October 1995;

(G)  A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(H)  A paper entitled: '*Chemical Vapor Deposited Diamond Maturity and Diversity* ' – James E. Butler; The Electrochemical Society Interface, pp. 22-26, published in Spring 2003;

(I)  WO 01/72406 published on the 4 October 2001;

(J)  WO 01/96633 published on 20 December 2001;

(K)  Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(L)  Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii)  The following prior users:

(A)  The Plaintiff, who has provided disclosures of diamond etalons on its website on or around 19 September 2003; and

(B)  The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

146.    The subject matter of each of the documents and prior users stated in paragraphs 145(a)(i) to 145(a)(ii) were at all material times common general knowledge.

## Lack of Inventive Step

147.    The alleged invention in Claim 75 of the '872 Patent involved no inventive step.

## Particulars

(a)    The alleged invention in Claim 75 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 75 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)    All the documents and prior users referred to in paragraphs 145(a)(i) to 145(a)(ii) above;

(ii)    The following further documents:

(A)    US 5,451,430 grant published on 19 September 1995;

(B)    A paper entitled: *'Diamond homoepitaxy by chemical vapour deposition'* – Andrzej Badzian & Teresa Badzian; Diamond and Related Materials, Vol. 2, Issues 2-4, pp. 147-157, 31 March 1993;

(C)    A paper entitled: *'Very high growth rate chemical vapour deposition of single-crystal diamond'* – Chih-shiue Yan, Yogesh K. Vohra, Ho-kwang Mao & Russell J. Hemley, Proceedings of the National Academy of Sciences of the United States of America, Vol. 99, Issue 20, pp. 12523-12525, 1 October 2002;

(D)     A presentation entitled: '*Characterisation of HPHT Annealed Single Crystal CVD Diamond*' by JE Butler, BN Feygelson, CH Yan, HK Mao and R Hemley, presented at the annual Diamond Physics Meeting, sponsored by DeBeers, July 2003; and

(iii)     The common general knowledge.

### Lack of Clear and Complete Disclosure

147A.   The alleged invention in Claim 75 of the '872 Patent lacks clear and complete disclosure.

(a)     The specification of the '872 Patent does not disclose the invention clearly and completely enough for it to be performed by a person skilled in the art.

### Particulars

(i)     The claim by stating, *"… or after processing by annealing…"* renders the scope of the invention uncertain by casting doubt on the extent of the range of nitrogen in source gas as defined in Claims 62-66. The implication could be that the presence of nitrogen beyond ranges claimed can also lead to "*CVD single crystal diamond material according to any one of claims 1 to 61…*", if the diamond is subjected to annealing. See page 21, second paragraph of the '872 Patent:

" *A further important element is that annealing the diamond, and particularly the diamond of the invention, reduces the luminescence observed from the diamond under certain conditions. …… A particular non-limiting example is the luminescence from the 575 nm and 637 nm centres.* **CVD synthetic diamond grown with significant nitrogen**

*concentrations in the starting gases or otherwise present in the process will show luminescence from nitrogen-vacancy centres. …… The intensity of nitrogen- vacancy luminescence can be significantly reduced by annealing treatment that dissociates the nitrogen-vacancy centres,* for example by annealing at temperatures around and above 1800°C, using high pressure high temperature annealing for higher annealing temperatures. ***By way of example, it has been found that high pressure high temperature annealing at 1800°C and 75 kBars for 24 hours can substantially reduce the luminescence at 575 nm and 637 nm.***"

(ii)     Further, Page 15 of the specification of the '872 Patent renders doubt over the claimed upper limit of 5 ppm for nitrogen in source gas by stating that even "…*small excursions*…" above 1.8 ppm of N2 in source gas can adversely affect the optical absorption of the CVD diamond of the invention. See Page 15, paragraph 1 of the '872 Patent:

"…. *In the presence of these steps nitrogen incorporation increases substantially and is generally non-uniform on a microscopic scale. **The concentration of nitrogen at which this transition occurs is a sensitive function of the growth conditions, including temperature and pressure, but is typically around 1.8 ppm (of total gas concentration, when using $N_2$) for the processes described herein**. **For small excursions above this limit**, some of the benefits of the method of the invention may still be realised, particularly for example the mechanical strength or the surface processing, **but properties such as optical absorption are adversely affected by significant nitrogen incorporation**,* which easily occurs once <100> steps are present.*"

(iii)    Finally, the description "…*annealing.*" in claim 75 does not disclose the invention clearly and completely. Even the supporting specification for this description of the '872 patent lacks sufficient disclosure to explain the invention clearly and completely.

<u>Claim 76 of the '872 Patent</u>

148.    The priority date of Claim 76 of the '872 Patent is 20 November 2003.

## **Lack of Novelty**

149.    The alleged invention in Claim 76 of the '872 Patent was not new.

## **Particulars**

(a)    The alleged invention in Claim 76 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 76, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)    Documents published in various scientific publications, journals and patent documents, such as:

(A)    A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(B)    A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at

the United States Naval Research Academy was presented on 22 July 2000;

(C)     A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(D)     A paper entitled: *'Diamond Solid Etalons for High-Stability DWDM Wavelength-Lockers'* by E.P. Houwman, H.P. Godfried, C.E. Hall, J. Fraser,  L. Daykin, S.J. Pope & K. Mullaney presented at the ECOC-IOOC 2003, 29th European Conference on Optical Communication & 14th International Conference on Integrated Optics and Optical Fibre Communication held in Rimini, Italy between the 21-25 September 2003;

(E)     WO 01/96634 published on 20 December 2001;

(F)     JP 07-277890A published on 24 October 1995;

(G)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(H)     A paper entitled: '*Chemical Vapor Deposited Diamond Maturity and Diversity* ' – James E. Butler; The Electrochemical Society Interface, pp. 22-26, published in Spring 2003;

(I)     WO 01/96633 published on 20 December 2001;

(J)     Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(K)     Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and

(ii)    The following prior users:

(A)    The Plaintiff, who has provided disclosures of diamond etalons on its website on or around 19 September 2003; and

(B)    The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

150.    The subject matter of each of the documents and prior users stated in paragraphs 149(a)(i) to 149(a)(ii) were at all material times common general knowledge.

**Lack of Inventive Step**

151.    The alleged invention in Claim 76 of the '872 Patent involved no inventive step.

**Particulars**

(a)    The alleged invention in Claim 76 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 76 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)    All the documents and prior users referred to in paragraphs 149(a)(i) to 149(a)(ii) above;

(ii)    The following further documents:

(A)    US 5,451,430 grant published on 19 September 1995;

(B)     A paper entitled: *'Diamond homoepitaxy by chemical vapour deposition'* – Andrzej Badzian & Teresa Badzian; Diamond and Related Materials, Vol. 2, Issues 2-4, pp. 147-157, 31 March 1993;

(C)     A paper entitled: *'Very high growth rate chemical vapour deposition of single-crystal diamond'* – Chih-shiue Yan, Yogesh K. Vohra, Ho-kwang Mao & Russell J. Hemley, Proceedings of the National Academy of Sciences of the United States of America, Vol. 99, Issue 20, pp. 12523-12525, 1 October 2002;

(D)     A presentation entitled: '*Characterisation of HPHT Annealed Single Crystal CVD Diamond'* by JE Butler, S. Charles, BN Feygelson, CH Yan, HK Mao and R Hemley, presented at the annual Diamond Physics Meeting, sponsored by DeBeers, July 2003; and

(iii)     The common general knowledge.

### Claim 77 of the '872 Patent

152.    The priority date of Claim 77 of the '872 Patent is 20 November 2003.

### Lack of Novelty

153.    The alleged invention in Claim 77 of the '872 Patent was not new.

### Particulars

(a)     The alleged invention in Claim 77 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 77, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents, such as:

(A)     A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

(B)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(C)     A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(D)     A paper entitled: *'Diamond Solid Etalons for High-Stability DWDM Wavelength-Lockers'* by E.P. Houwman, H.P. Godfried, C.E. Hall, J. Fraser, L. Daykin, S.J. Pope & K. Mullaney presented at the ECOC-IOOC 2003, 29th European Conference on Optical Communication & 14th International Conference on Integrated Optics and Optical Fibre Communication held in Rimini, Italy between the 21-25 September 2003;

(E)     WO 01/96634 published on 20 December 2001;

(F)     JP 07-277890A published on 24 October 1995;

(G)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of

Diamond from the Gas Phase by Andrzej Badzian, page 347 –
368, published in 2000

(H)    A paper entitled: '*Chemical Vapor Deposited Diamond Maturity
and Diversity* ' – James E. Butler; The Electrochemical Society
Interface, pp. 22-26, published in Spring 2003;

(I)    WO 01/96633 published on 20 December 2001;

(J)    Singapore Patent No. 110506 published on 30 May 2005
claiming a priority date of 20 September 2002;

(K)    Singapore Patent No. 110508 published on 30 May 2005
claiming the earliest priority date of 6 September 2002; and

(ii)    The following prior users:

(A)    The Plaintiff, who has provided disclosures of diamond etalons
on its website on or around 19 September 2003; and

(B)    The Plaintiff and/or its related entities, who provided and/or sold
diamonds to third parties prior to 21 November 2002, including
but not limited to the RD42 Collaboration and/or ABB Group
Services Centre.

154.    The subject matter of each of the documents and prior users stated in
paragraphs 153(a)(i) to 153(a)(ii) were at all material times common general
knowledge.

## Lack of Inventive Step

155.    The alleged invention in Claim 77 of the '872 Patent involved no inventive step.


## Particulars

(a)    The alleged invention in Claim 77 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 77 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

     (i)    All the documents and prior users referred to paragraphs 153(a)(i) to 153(a)(ii) above;

     (ii)    The following further documents:

          (A)    US 5,451,430 grant published on 19 September 1995;

          (B)    A paper entitled: *'Diamond homoepitaxy by chemical vapour deposition'* – Andrzej Badzian & Teresa Badzian; Diamond and Related Materials, Vol. 2, Issues 2-4, pp. 147-157, 31 March 1993;

          (C)    A paper entitled: *'Very high growth rate chemical vapour deposition of single-crystal diamond'* – Chih-shiue Yan, Yogesh K. Vohra, Ho-kwang Mao & Russell J. Hemley, Proceedings of the National Academy of Sciences of the United States of America, Vol. 99, Issue 20, pp. 12523-12525, 1 October 2002;

          (D)    A presentation entitled: *'Characterisation of HPHT Annealed Single Crystal CVD Diamond'* by JE Butler, S. Charles, BN Feygelson, CH Yan, HK Mao and R Hemley, presented at the

annual Diamond Physics Meeting, sponsored by DeBeers, July 2003; and

(iii)     The common general knowledge.

<u>Claim 78 of the '872 Patent</u>

156.     The priority date of Claim 78 of the '872 Patent is 20 November 2003.

## Lack of Novelty

157.     The alleged invention in Claim 78 of the '872 Patent was not new.

## Particulars

(a)     The alleged invention in Claim 78 of the '872 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 78, been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents such as:

(A)     US 5,451,430 grant published on 19 September 1995;

(B)     EP0671482 published on 13 September 1995;

(C)     A paper entitled: *'High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(D)     A paper entitled: *'Diamond Solid Etalons for High-Stability DWDM Wavelength-Lockers'* by E.P. Houwman, H.P. Godfried, C.E. Hall, J. Fraser,  L. Daykin, S.J. Pope & K. Mullaney presented at the ECOC-IOOC 2003, 29th European Conference on Optical Communication & 14th International Conference on Integrated Optics and Optical Fibre Communication held in Rimini, Italy between the 21-25 September 2003;

(E)     WO 01/96634 published on 20 December 2001;

(F)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(G)     WO 01/72406 published on the 4 October 2001;

(H)     WO 01/96633 published on 20 December 2001;

(I)     Singapore Patent No. 110506 published on 30 May 2005 claiming a priority date of 20 September 2002;

(J)     Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002; and


(ii)    The following prior users:

(A)     The Plaintiff, who has provided disclosures of diamond etalons on its website on or around 19 September 2003; and

(B)     The Plaintiff and/or its related entities, who provided and/or sold diamonds to third parties prior to 21 November 2002, including but not limited to the RD42 Collaboration and/or ABB Group Services Centre.

158. The subject matter of each of the documents and prior users stated in paragraphs 157(a)(i) to 157(a)(ii) were at all material times common general knowledge.

## Lack of Inventive Step

159. The alleged invention in Claim 78 of the '872 Patent involved no inventive step.

## Particulars

(a) The alleged invention in Claim 78 of the '872 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 78 of the '872 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i) All the documents and prior users referred to in paragraphs 157(a)(i) to 157(a)(ii) above;

(ii) The following further documents:

(A) A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(B) A presentation entitled: *'Characterisation of HPHT Annealed Single Crystal CVD Diamond'* by JE Butler, S. Charles, BN Feygelson, CH Yan, HK Mao and R Hemley, presented at the annual Diamond Physics Meeting, sponsored by DeBeers, July 2003;

(C)     A paper entitled: *'Nitrogen incorporation in diamond films homoepitaxially grown by chemical vapour deposition'* – Konstantin Iakoubovskii, Guy J. Adriaenssens & Yogesh K. Vohra, Journal of Physics: condensed Matter, Vol. 12, Issue 30, pp. L519-524, 2000; and

(D)     A paper entitled: *'Very high growth rate chemical vapour deposition of single-crystal diamond'* – Chih-shiue Yan, Yogesh K. Vohra, Ho-kwang Mao & Russell J. Hemley, Proceedings of the National Academy of Sciences of the United States of America, Vol. 99, Issue 20, pp. 12523-12525, 1 October 2002;

(E)     JP 07-277890A published on 24 October 1995;

(F)     A paper entitled: *'Chemical Vapor Deposited Diamond Maturity and Diversity '* – James E. Butler; The Electrochemical Society Interface, pp. 22-26, published in Spring 2003; and

(iii)   The common general knowledge.


## Lack of Clear and Complete Disclosure

159A.   The alleged invention in Claim 78 of the '872 Patent lacks clear and complete disclosure.


(a)     The specification of the '872 Patent does not disclose the invention clearly and completely enough for it to be performed by a person skilled in the art.


## Particulars

(i)     The claim by stating, *"… after processing by annealing…"* renders the scope of the invention uncertain by casting doubt on the extent of the range of nitrogen in source gas as defined in Claims 62-66. The implication could be that the presence of nitrogen beyond ranges claimed

can also lead to "CVD single crystal diamond a materials according to any one of claims 1 to 61…", if the diamond is subjected to annealing, see page 21, second paragraph of the '872 Patent:

" *A further important element is that annealing the diamond, and particularly the diamond of the invention, reduces the luminescence observed from the diamond under certain conditions. …… A particular non-limiting example is the luminescence from the 575 nm and 637 nm centres.* **CVD synthetic diamond grown with significant nitrogen concentrations in the starting gases or otherwise present in the process will show luminescence from nitrogen-vacancy centres.** …… **The intensity of nitrogen- vacancy luminescence can be significantly reduced by annealing treatment that dissociates the nitrogen-vacancy centres,** *for example by annealing at temperatures around and above 1800°C, using high pressure high temperature annealing for higher annealing temperatures.* **By way of example, it has been found that high pressure high temperature annealing at 1800°C and 75 kBars for 24 hours can substantially reduce the luminescence at 575 nm and 637 nm.** "

(iv)     Further, Page 15 of the specification of the '872 Patent renders doubt over the claimed upper limit of 5 ppm for nitrogen in source gas by stating that even "…*small excursions…*" above 1.8 ppm of N2 in source gas can adversely affect the optical absorption of the CVD diamond of the invention. See Page 15, paragraph 1 of the '872 Patent:

"…. *In the presence of these steps nitrogen incorporation increases substantially and is generally non-uniform on a microscopic scale.* **The concentration of nitrogen at which this transition occurs is a**

127

*sensitive function of the growth conditions, including temperature and pressure, but is typically around 1.8 ppm (of total gas concentration, when using $N_2$) for the processes described herein. For small excursions above this limit, some of the benefits of the method of the invention may still be realised, particularly for example the mechanical strength or the surface processing, but properties such as optical absorption are adversely affected by significant nitrogen incorporation, which easily occurs once <100> steps are present."*

(ii)     Finally, the description "…annealing." in claims 78 does not disclose the invention clearly and completely. Even the supporting specification for this description of the '872 patent lacks sufficient disclosure to explain the invention clearly and completely.

159B.   For the avoidance of doubt, given the manner in which the asserted claims of the '872 Patent are drafted such that every subsequent claim must be read with any one of the preceding claims (whether expressly identified in the claim or not), and given the Plaintiff's pleading at paragraph 1 of the Particulars of Infringement (Amendment No. 1), the Defendant relies on each and every prior art pleaded for the preceding claim, to invalidate any of the subsequent asserted claims of the '872 Patent which is read with the preceding claim.

159C.   For the avoidance of doubt, the Defendant only intends to rely on the Singapore Patent No. 110508 published on 30 May 2005 claiming the earliest priority date of 6 September 2002 as a prior art for the purposes of lack of novelty for the asserted claims of the '872 Patent.

**B. Substantial Amendments made to the Plaintiff's patents before the European, United Kingdom and Japan Patent Offices**

160.    The Plaintiff is the proprietor of corresponding patents of the '872 Patent in Europe, the United Kingdom and Japan ("**Corresponding Patents**") which originate from International PCT Application No. PCT/IB2003/005281 ("**PCT Application '5281**"), pursuant to assignments of the corresponding patents by Element Six Limited to the Plaintiff. Element Six Limited is and was at all material times related to the Plaintiff, being part of the Element Six Group of companies. In or around 2006 – 2013, Element Six Limited made substantial amendments to the Corresponding Patents in response to questions and/or objections on the respective Corresponding Patents from the Europe, United Kingdom and Japan Patent Offices ("**Foreign Amendments**"). The result of the Foreign Amendments was that it narrowed the scope of the Corresponding Patents significantly. The Plaintiff made post-grant amendments to the '872 Patent on 13 August 2015 and these were accepted by the Intellectual Property Office of Singapore ("**IPOS**") on 1 December 2015. However, these post-grant amendments to the '872 Patent were minor and do not correspond with the Foreign Amendments and as such, amounts to an admission by the Plaintiff that the '872 Patent is invalid. For the avoidance of doubt, the Defendant does not allege nor admit that the said Corresponding Patents are valid and/or patentable in their current form, nor that the '872 Patent is valid and/or patentable if amendments that correspond to the Foreign Amendments were made to the '872 Patent. The following are the best particulars that the Defendant is able to provide pending further discovery and/or interrogatories.

## **Particulars**

(a)    As maintained on the register of the World Intellectual Property Office ("**WIPO**"):

      (i)    Element Six Limited was the applicant of the PCT Application '5281.

      (ii)    On 31 August 2004, an International Preliminary Examination Report ("**IPER**") against the PCT Application '5281 was issued by the International Preliminary Examining Authority. The IPER highlighted, *inter alia*, a lack of clarity in Claim 62 of the aforesaid PCT Application '5281, insofar as it failed to define the matter for which protection was sought.

            (A)    Claim 62 of PCT Application '5281 recited:

                  *62.    A method of producing a CVD diamond material suitable for optical applications includes the steps of providing a substrate substantially free of crystal defects, providing a source gas, dissociating the source gas to produce a synthesis atmosphere which contains 300 ppb to 5 ppm nitrogen, calculated as molecular nitrogen, and allowing homoepitaxial diamond growth on the surface which is substantially free of crystal defects.*

            (B)    As regards Claim 62 of PCT Application, the aforesaid IPER stated as follows:

                  "*The subject matter of independent method claim 62 is not clearly defined and thus does not meet the requirements of Article 6 PCT. The expression "*…substrate substantially free of

130

crystal defects…" *employed in claim 62 does not clearly define the matter for which protection is sought. From the reading of pages 16-17 of the description it would appear that the exact state of the substrate prior to CVD is an essential feature of the claimed method.*

"*From this lack of clarity in the method claim ensues a lack of clarity in the product claims. Moreover, given the multiplicity of independent product claims defining the products in terms of a multitude of different possibilities for the optical (claims 1 and 16) or mechanical properties (claim 23) of the CVD single crystal diamond, there is a lack of clarity and conciseness as to which features are essential to the product for which protection is sought. For this reason, the subject matter of claims 1, 16, 23, 75-77 do not fulfill the requirements of Article 6 PCT.*"

(b)     As maintained on the register of the European Patent Office ("**EPO**"):

(i)      Element Six Limited was the applicant of European Patent Application No. 03772484.6.

(ii)     On 20 June 2005, the agents acting for Element Six Limited filed EPO Form 1200 with the EPO to request for entry of the PCT Application '5281 into the European regional phase. The PCT Application '5281 entered the corresponding European regional phase with the same claims as those at the time the IPER was issued.

(iii)    The resulting European Patent Application No. 03772484.6 was examined by the Examining Division at the EPO. On 9 February 2007, the Examining Division issued a communication to Element Six Limited. Similar to the IPER (as pleaded in paragraph 160(a)(ii)(B) herein), the aforesaid communication (and the annex thereto) declared, *inter alia*, that Claim 62 lacked clarity. It stated as follows:

"*4. The subject matter of independent method claim 62 is not clear and thus does not meet the requirements of Article 84 EPC. The expression "… substantially free of crystal defects…" does not clearly define the matter for which protection is sought and is open to different interpretations. From the reading of the description pages 16-17 of the present application, it would appear that the exact state of the substrate prior to CVD is an essential feature. This state as defined in dependent claim 68 should be included in any independent method claim.*"

(iv)    On 8 June 2007, the agents acting for Element Six Limited filed a response to the communication from the Examining Division dated 9 February 2007.

(A)    In the response, the agents acting for Element Six Limited purported to disagree with the Examining Division's opinion on the lack of clarity in Claim 62. Nonetheless, amendments were made to overcome the lack of clarity, by way of incorporating the subject matter of Claim 68 into Claim 62 (which was amended to become the new Claim 1).

(B)    In particular, the response stated:

"*Original claim 62 has been renumbered as claim 1. By a further amendment, original claim 62 has been amended to specify that the concentration of nitrogen in the synthesis atmosphere is 800ppb to 2ppm. Basis for this amendment can be found at page 15, second paragraph of the application as originally filed.*

*New claim 1 has also been amended to incorporate the subject matter of former claim 68.*

*…*

*In response to section 4 of the communication, in the context of the specification as a whole, the phrase to which the Examining Division refers is perfectly clear. Pages 16 and 17 of the description provide a clear indication of what is meant by this term. The skilled person would easily be able to determine whether or not a given piece of single crystal CVD diamond satisfied this requirement by means of a simple revealing plasma etch. Contrary to the Examining Division's assertion, the ordinarily skilled person in the art would perform such analysis routinely and accordingly, based on their experience, would immediately know whether or not the surface under analysis was "substantially free of crystal defects" or not. Incorporation of the subject matter of former claim 68 into new claim 1 is therefore not necessary.*"

(C)     The new Claim 1, as granted and marked up against the original
        Claim 62 (as pleaded in paragraph 160(a)(ii)(A) above), recited:

> *1.      A method of producing a CVD diamond material suitable*
> *for optical applications includes the steps of providing a substrate*
> *substantially free of crystal defects, providing a source gas,*
> *dissociating the source gas to produce a synthesis atmosphere*
> *which contains 800 ppb to ~~5~~ 2 ppm nitrogen, calculated as*
> *molecular nitrogen, and allowing homoepitaxial diamond growth*
> *on the surface which is substantially free of crystal defects*
> *wherein the density of defects is such that surface etch features*
> *related to defects is below 5 x 10$^3$/mm$^2$.*

(v)     On 14 December 2010, the agents acting for Element Six Limited filed
        voluntary amendments to the claims of European Patent Application No.
        03772484.6.

(A)     In the cover letter, the agents acting for Element Six Limited
        explained the voluntary amendment to, *inter alia*, Claim 1 of
        European Patent Application No. 03772484.6 as follows:

> "*In particular, the claims have been amended in order to further*
> *distinguish the claimed subject matter from that disclosed in D1,*
> *and thus to expedite the prosecution. …*
>
> *More specifically, claim 1 has been amended to incorporate the*
> *subject matter of former claim 6. An analogous amendment has*
> *been made to claim 8. As a consequence of this amendment,*

*former claims 3 and 6 have been deleted and the remaining claims re-numbered accordingly.*

*…*

*As amended, claim 1 now requires that the synthesis atmosphere contains 800 ppb to 2 ppm nitrogen, and that the level of nitrogen is controlled within an error of less than 300 ppb, as a molecular fraction of the total gas volume, or 10% of the target value in the gas phase, whichever is the largest so as to achieve the product as recited in claim 8. The invention lies in the realisation that, for optical applications, the diamond material must be made with a low strain in order to achieve the optical parameters recited in the product claims. The present inventors have found that this can be achieved not only by selecting a nitrogen concentration in the range from 800 ppb to 2 ppm, but also by careful monitoring and adjustment of the nitrogen concentration and synthesis atmosphere during CVD diamond growth, such that the nitrogen concentration is maintained with an error of less than 300 ppb, as a molecular fraction of the total gas volume, or 10% of the target value in the gas phase, whichever is the larger. Variations in nitrogen concentration during CVD diamond growth can result in strain being incorporated into the CVD diamond matrix, which adversely affects the optical properties of the resultant material. There is no suggestion in the cited prior art of exercising this level of control of the nitrogen concentration in a synthesis atmosphere.*

*Accordingly, it is clear that the claimed subject matter involves an inventive step.*"

(B)     The new Claim 1, as granted and marked up against its last amended form (as set out in paragraph 160(b)(iv)(C) herein), recited:

*1.     A method of producing a CVD diamond material suitable for optical applications includes the steps of providing a substrate substantially free of crystal defects, providing a source gas, dissociating the source gas to produce a synthesis atmosphere which contains 800 ppb to 2 ppm nitrogen, calculated as molecular nitrogen, and allowing homoepitaxial diamond growth on the surface which is substantially free of crystal defects wherein the density of defects is such that surface etch features related to defects is below 5 x 10$^3$/mm$^2$, wherein the level of nitrogen is controlled with an error of less than 300 ppb (as a molecular fraction of the total gas volume) or 10% of the target value in the gas phase, whichever is the larger and wherein the CVD diamond material contains more than 3 x 10$^{15}$ atoms/cm$^3$ and less than 5 x 10$^{17}$ atoms/cm$^3$ N in single substitutional form as measured by electron paramagnetic resonance (EPR) and which shows at least one of the following characteristics, when measured at room temperature (nominally 20C˚);*

*i)      a high optical homogeneity, with the transmitted wavefront differing from the expected geometrical wavefront during transmission through diamond of a*

*specified thickness of at least 0.5 mm, processed to an appropriate flatness and measured over a specified area of at least 1.3 mm x 1.3 mm, by less than 2 fringes, where 1 fringe corresponds to a difference in optical path length equal to ½ of the measurement wavelength of 633 nm;*

ii)     *a low optical birefringence, indicative of low strain, such that in a sample of a specified thickness of at least 0.5 mm and measured in a manner described herein over a specified area of at least 1.3 mm x 1.3m, the modulus of the sine of the phase shift, |sin δ|, for at least 98% of the analysed area of the sample remains in first order (δ does not exceed π/2) and the |sin δ| does not exceed 0.9;*

iii)    *a low optical birefringence, indicative of low strain, such that in a sample of a specified thickness of at least 0.5 mm and measured in a manner described herein over a specified area of at least 1.3 mm x 1.3 mm, for 100% of the area analysed, the sample remains in first order (δ does not exceed π/2), and the maximum value of Δn[average],the average value of the difference between the refractive index for light polarised parallel to the slow and fast axes averaged over the sample thickness, does not exceed $1.5 \times 10^{-4}$;*

iv) *an effective refractive index in a sample of a specified thickness of at least 0.5 mm, measured in a manner described herein over a specified area of at least 1.3 mm x 1.3 mm, which has a value of 2.3964 to within an accuracy of +/-0.002;*

v) *a variation in refractive index over a volume of interest, said volume comprising a layer of a specified thickness of at least 0.5 mm, measured in a manner described herein over a specified area of at least 1.3 mm x 1.3 mm, which is less than 0.002.*

(vi)    On 3 September 2013, the Examining Division issued a communication to Element Six Limited. The communication highlighted a further lack of clarity in Claim 1 of European Patent Application No. 03772484.6. It stated, *inter alia*, as follows:

"*2.1 Contrary to the requirements of Article 84 EPC independent method claim 1 is not clear and concise. There is no necessity to include all the parameter features i) –v) which amount to the result to be achieved as opposed to specific method steps. They only introduce confusion as to the scope of the subject matter and make the said claim inconcise. These features should be deleted.*"

(vii)   On 28 October 2013, Element Six Limited filed a response to the communication from the Examining Division dated 3 September 2013.

(A)     Element Six Limited acknowledged the Examining Division's opinion on lack of clarity in Claim 1 of European Patent Application No. 03772484.6, stating in its response that "*With reference to item 2.1 of the examination report, claim 1 has been amended as suggested by the Examiner to delete the optical parameters recited therein*".

(B)     Element Six Limited further identified another issue of clarity that gave rise to a need to amend Claim 1. In its response, it stated as follows: "*It was also noted that claim 1 refers to "the target value" but does not provide antecedent basis for "the target value". Accordingly, claim 1 has been further amended to refer to "a target" value rather than "the target value"*."

(C)     The new Claim 1, as granted and marked up against its last amended form (as set out in paragraph 160(b)(v)(B) herein), recited:

> *1.      A method of producing a CVD diamond material suitable for optical applications includes the steps of providing a substrate substantially free of crystal defects, providing a source gas, dissociating the source gas to produce a synthesis atmosphere which contains 800 ppb to 2 ppm nitrogen, calculated as molecular nitrogen, and allowing homoepitaxial diamond growth on the surface which is substantially free of crystal defects wherein the density of defects is such that surface etch features related to defects is below 5 x $10^3/mm^2$, wherein the level of nitrogen is controlled with an error of less than 300 ppb (as a*

molecular fraction of the total gas volume) or 10% of ~~the~~ a target value in the gas phase, whichever is the larger and wherein the CVD diamond material contains more than 3 x $10^{15}$ atoms/$cm^3$ and less than 5 x $10^{17}$ atoms/$cm^3$ N in single substitutional form as measured by electron paramagnetic resonance (EPR), ~~and which shows at least one of the following characteristics, when measured at room temperature (nominally 20C°);~~

vi) ~~a high optical homogeneity, with the transmitted wavefront differing from the expected geometrical wavefront during transmission through diamond of a specified thickness of at least 0.5 mm, processed to an appropriate flatness and measured over a specified area of at least 1.3 mm x 1.3 mm, by less than 2 fringes, where 1 fringe corresponds to a difference in optical path length equal to ½ of the measurement wavelength of 633 nm;~~

vii) ~~a low optical birefringence, indicative of low strain, such that in a sample of a specified thickness of at least 0.5 mm and measured in a manner described herein over a specified area of at least 1.3 mm x 1.3m, the modulus of the sine of the phase shift, |sin δ|, for at least 98% of the analysed area of the sample remains in first order (δ does not exceed π/2) and the |sin δ| does not exceed 0.9;~~

viii) ~~a low optical birefringence, indicative of low strain, such that in a sample of a specified thickness of at least 0.5 mm and measured in a manner described herein over a specified area of at least 1.3 mm x 1.3 mm, for 100% of the area analysed, the sample remains in first order (δ does not exceed π/2), and the maximum value of~~ $\Delta n_{[average]}$, ~~the average value of the difference between the refractive index for light polarised parallel to the slow and fast axes averaged over the sample thickness, does not exceed 1.5 x 10⁻⁴;~~

ix) ~~an effective refractive index in a sample of a specified thickness of at least 0.5 mm, measured in a manner described herein over a specified area of at least 1.3 mm x 1.3 mm, which has a value of 2.3964 to within an accuracy of +/-0.002;~~

x) ~~a variation in refractive index over a volume of interest, said volume comprising a layer of a specified thickness of at least 0.5 mm, measured in a manner described herein over a specified area of at least 1.3 mm x 1.3 mm, which is less than 0.002.~~

(viii)    On 7 July 2014, Element Six Limited filed EPO Form 1037 to register the assignment of, *inter alia*, European Patent Application No. 03772484.6 to the Plaintiff.

(ix)     On 15 October 2014, Claim 1 of European Patent Application No. 03772484.6 (as set out in paragraph 160(b)(vii)(C) herein) went through to grant as Claim 1 of European Patent EP1565598.

(bA)    As maintained on the register of the UK Patent Office ("**UK-IPO**"):

(i)      Element Six Limited was the applicant of UK Patent Application No. GB0512114.0.

(ii)     On 14 June 2005, the PCT Application '5281 entered the corresponding United Kingdom regional phase with the same claims as those at the time the IPER was issued.

(iii)    The resulting UK Patent Application No. GB0512114.0 was examined by the Examining Division at the UK-IPO. On 13 October 2005, the Examining Division issued a communication to Element Six Limited, questioning, *inter alia*, the clarity of claims. It stated as follows:

"*2. …There is also no obvious inventive connection between the product claims and the method claim.*"

(iv)    On 13 April 2006, the agents acting for Element Six Limited filed a response to the communication from the Examining Division dated 13 October 2005.

(A)    In the response, the agents acting for Element Six Limited purported to disagree with the Examining Division's opinion on the lack of clarity in claims.

(B)    In particular, the response stated:

"…*upon a thorough review of the specification, it should be evident that the method of the invention provides the range of benefits of the product claims, and that a clear inventive connection exists between the product claims and the method claims.*
*In addition, and contrary to the Examiner's view, it is submitted that the claims are clear and concise. The inventive method is clearly defined, and all product claims relate to benefits arising directly from this method…*"

(v)    On 2 June 2006, the Examining Division issued a communication to Element Six Limited. The communication highlighted the absence of any unifying new/inventive feature in the claims of UK Patent Application No. GB0512114.0. It stated, *inter alia*, as follows:

"*2. …. The Agent's letter puts forward the case that the alternatives within the claims are all dependent on a key feature of the invention. However this key feature does not form a part of the claims and hence there is no unifying new/inventive feature. The common matter of claims 1, 16 and 23 as they stand is a CVD single crystal diamond which is clearly known. The common matter with the method claim 62 is broader still, namely a CVD diamond material.*

*You will need to amend your claims, so that they relate to only one invention or inventive concept.*

*…*

*3. You may wish to consider filing divisional applications…*"

(vi)    On 2 October 2006, Element Six Limited filed a response to the communication from the Examining Division dated 2 June 2006.

(A)    Element Six Limited acknowledged the Examining Division's opinion on lack of clarity and unifying new/inventive feature in the claims of UK Patent Application No. GB0512114.0, stating in its response that:

"*We enclose an amended set of claims to replace the set of claims presently on file in its entirety.*

*Claim 1 has been amended by specifying that the CVD single crystal diamond material must have a low optical birefringence, indicative of low strain…*

*The definitions of low optical birefringence specified in amended claim 1 have been further amended by removing the words "at least" between "thickness of" and "0.5 mm".*

*….*

*Furthermore, the definition of low optical birefringence in terms of $\Delta n_{[average]}$ has been amended by replacing the phrase "for 100% of the area analysed" with "for at least 98% of the area analysed".*

*…*

*New dependent claim 2 specifies further preferred characteristics of the CVD single crystal diamond …*

*…*

*In view of the amendment to claim 1 and the introduction of new dependent claim 2, former claim 16 has been removed.*

*…*

*Former claim 62 (present claim 65) has been amended by limiting the concentration range of nitrogen to 300 ppb to 2 ppm…*

*In view of this amendment, former claim 65 has been removed.*

*…*

*In paragraph 2 of the examination report, the Examiner requested that Example 1 of WO 03/052177 be taken into account when amending the claims of this application. Consequently, method claim 65 (former claim 62) has been amended by specifying that the concentration of nitrogen in the synthesis atmosphere is 300 ppb to 2 ppm."*

(B)     The new Claim 1 recited:

*1.      A CVD single crystal diamond material which, when measured at room temperature (nominally 20°C). has a low optical birefringence, indicative of low strain, such that in a sample of a specified thickness of 0.5 mm and measured in a manner described herein over a specified area of at least 1.3 mm x 1.3 mm, (a) the modulus of the sine of the phase shift, |sin δ|, for at least 98% of the analysed area of the sample remains in first order (δ does not exceed π/2) and the |sin δ| does not*

*exceed 0.9 and/or (b) for at least 98% of the area analysed, the sample remains in first order ($\delta$ does not exceed $\pi/2$), and the maximum value of $\Delta n_{[average]}$, the average value of the difference between the refractive index for light polarised parallel to the slow and fast axes averaged over the sample thickness, does not exceed 1.5 x 10$^{-4}$.*

(C)    The method Claim 65 (former claim 62) recited:

*65.    A method of producing a CVD diamond material suitable for optical applications includes the steps of providing a substrate substantially free of crystal defects, providing a source gas, dissociating the source gas to produce a synthesis atmosphere which contains 300 ppb to 2 ppm nitrogen, calculated as molecular nitrogen, and allowing homoepitaxial diamond growth on the surface which is substantially free of crystal defects.*

(vii)    On 5 December 2006, the Examining Division issued a communication to Element Six Limited. The communication questioned the lack of clarity in the claims of UK Patent Application No. GB0512114.0 again. It stated, *inter alia*, as follows:

*"2. Your claims define two separate inventions not forming a single inventive concept. The inventions are:*
  *a) A CVD single crystal material having low optical birefringence; claim 1*
  *b) A method of producing a CVD diamond; claim 65*

*There is no clear, direct linkage between the method and the material. The description does not disclose that the conditions specified in the method claim will necessarily result in the properties of the CVD diamond defined in claim 1. Hence the claims have to be treated as separate inventions.*

*…*

*9. Claim 73 renders the scope of the invention uncertain by casting doubt on the extent of the range. The implication could be that the presence of nitrogen is not necessary as zero nitrogen lies within the error bounds of the lower limit.*

*10. Claim 76 is unclear through the use of the relative and subjective phrase 'further enhanced'.*

*11. Claim 77 is a product-by-process claim which, following Kirin Amgen, must be interpreted as a claim to the product per se. This product is clearly not novel."*

(viii)    On 5 February 2007, Element Six Limited filed a response to the communication from the Examining Division dated 5 December 2006.

    (A)    Element Six Limited acknowledged the Examining Division's opinion by deleting Claims 65 to 79 of UK Patent Application No. GB0512114.0 and intending to file divisional patents, stating in its response that:

        *"Claims 65 to 79 have been deleted from the application.*

        *…*

        *…the applicant intends to file one or more divisional applications relating to the subject matter of claim 65 as excised from the*

*present application in addition to one or more of former independent claims 1, 16 and 23.*

…

*The objections raised in sections 8 to 12 of the Examination Report are rendered moot by virtue of deletion of the claims with respect to which the objections were raised."*

(ix)    On 21 February 2007, Element Six Limited filed 3 divisional Patent Applications under the parent UK Patent Application No. GB0512114.0:- (i) GB0703371.5, (ii) GB0703372.3; and (iii) GB0703373.1.

(x)    The divisional Patent GB0703371.5 was filed with the same claims as those of the PCT Application '5281 but with a changed order. Claims 1-61 of the PCT Application '5281 were numbered as Claims 14-74 in GB0703371.5 and Claims 62-74 of the PCT Application '5281 were numbered as Claims 1-13 in GB0703371.5. The order of Claims 75-77 remained same in both the PCT Application '5281 and GB0703371.5.

(xi)    On 21 March 2007, the Examining Division issued a communication to Element Six Limited. The communication questioned conflict in claims across the three divisional patents, Novelty of invention, the lack of clarity in the claims of UK Patent Application No. GB0703371.5, again. It stated, *inter alia*, as follows:

*"6. The invention as defined in claims 1-5, 7-11 is not new because it has already been disclosed in each of the following documents:*

        *WO 03/052174 A* (ELEMENT SIX) see esp. examples 3 and 4*

        *WO 03/052177 A * (ELEMENT SIX) see esp. example 1*

    *…*

*8. Claim 1 is unclear through the use of the phrase 'substantially free of crystal defects' which is uncertain in scope.*

*…*

*10. Claim 13 is unclear through the use of the phrase 'properties ..... are further enhanced' which is uncertain in scope."*

(xii)     On 16 April 2007, Element Six Limited filed a response to the communication from the Examining Division dated 21 March 2007 for UK Patent Application No. GB0703371.5.

(A)     Element Six Limited acknowledged the Examining Division's opinion by amending the Claims of UK Patent Application No. GB0703371.5, stating in its response that:

*"Claim 1 has been amended to specify that the synthesis atmosphere contains 800ppb to 2ppm nitrogen, calculated as molecular nitrogen. Support for this amendment can be found in claims 3 and 4 as originally filed.*

*By a further amendment, claim 1 has been revised to clarify the terminology "substantially free of crystal defects" by further incorporating the subject matter of previous claim 7.*

*As a consequence of these amendments, claims 2 to 4 and 7 have been deleted.*

*Claim 6 has been deleted.*

*Claim 13 has been clarified to specify that the method comprises a further step of annealing the diamond material.*

*Claims 14 to 77 have been deleted."*

(B)     The new Claim 1 recited:

> 1.      *A method of producing a CVD diamond material suitable for optical applications includes the steps of providing a substrate substantially free of crystal defects, providing a source gas, dissociating the source gas to produce a synthesis· atmosphere which contains 800 ppb to 2 ppm nitrogen, calculated as molecular nitrogen, and allowing homoepitaxial diamond growth on the surface which is substantially free of crystal defects wherein the density of defects is such that surface etch features related to defects is below $5 \times 10^3 /mm^2$.*

(xiii)  On 22 May 2007, Claim 1 of UK Patent Application No. GB0512114.0 went through to grant as Claim 1 of UK Patent GB2411895.

(xiv)   On 12 June 2007, Claim 1 of UK Patent Application No. GB0703371.5 went through to grant as Claim 1 of UK Patent GB2432592.

(xv)    On 10 July 2014, Element Six Limited filed Form 21 to register the assignments of UK Patent GB2411895 and UK Patent GB2432592 to the Plaintiff.

(bB)    As maintained on the register of the Japan Patent Office ("**JPO**"):

(i)     Element Six Limited was the applicant of Japan Patent Application No. JPA2004-553030.

(ii)     On 26 April 2005, the PCT Application '5281 entered the corresponding Japan regional phase with the same claims as those at the time the IPER was issued.

(iii)    The Japan Patent Application No. JPA2004-553030 was examined by the Examining Division at the JPO. On 26 May 2009, the Examining Division issued a communication to Element Six Limited, questioning, *inter alia*, the clarity of claims. It stated as follows (translated from Japanese):

*"Claims 1 to 22, 30 to 33, 35 to 38 and 41 to 77*

*(1) The description "measured in a manner described herein" described in claims 1, 10 and 16 is unclear,*

*…*

*(4) The description "in each of the satisfied characteristics" in claims 36 to 38 is unclear.*

*(5) The description "its preparation" in claims 47 and 48 is unclear.…*

*…*

*(For claim 74)*

*It is known technology to improve the property by annealing in the technical field of diamond material. (Refer to Reference 3 if necessary)*

*(For claims 1 to 22, 30 to 33, 35 to 38 and 41 to 77)*

*As mentioned above, a method for producing a diamond material of the invention is something that the skilled person could have conceived of from References 1 to 3, consequently something obtained thereby is also something that the skilled person could have conceived of.*

*Presenting a diamond material by measured results with known measurement means for physical properties would not have involved any particular difficulty for the skilled person.*

*List of References*

*1. JPA H07-277890 Publication*

*2. W0A01/96633 Document*

*3. JPA H02-088498 Publication"*

(iv) On 29 October 2009, Element Six Limited filed a response to the communication from the Examining Division dated 26 May 2009 for Japan Patent Application No. JPA2004-553030.

(A) Element Six Limited acknowledged the Examining Division's opinion by amending the claims of Japan Patent Application No. JPA2004-553030, stating in its response that:

*"(1) Claim 1 after amended is original claim 62, and the nitrogen concentration in a synthesis atmosphere described in original claim 62 was limited to 800 ppb to 2 ppm according to original claims 64 and 65 and the density of defect was restricted according to original claim 68.*

*…*

*Claims 63 to 65 and 68 were cancelled accordingly.*

*Further, each of original claims 66 to 75 were renumbered to claims 2 to 10. Consequently, claims 1 to 61 were shifted down to claims after amended 11 to 71 and original claims 76 and 77 were shifted up to claims after amended 72 and 73."*

(B) The new Claim 1 recited:

"*A method of producing a CVD diamond material suitable for optical applications includes the steps of providing a substrate substantially free of crystal defects, providing a source gas, dissociating the source gas to produce a synthesis atmosphere which contains 800 ppb to 2 ppm nitrogen, calculated as molecular nitrogen, and allowing homoepitaxial diamond growth on a surface which is substantially free of crystal defects, wherein density of the crystal defects is such that surface etch features related to defects is below $10^2/mm^2$.*"

(C) Consequently, Claim 1 of Japan Patent Application No. JPA2004-553030 (which is also claim 1 of the '872 Patent) became the new Claim 11 pursuant to Element Six Limited's amendment, and was made a dependent claim where it claims "*A CVD single crystal diamond produced by a method according to claim 1*".

(v)     On 1 June 2011, Claim 1 of Japan Patent Application No. JPA2004-553030 went through to grant as Claim 1 of Japan Patent 4768267.

(vi)    On 24 September 2014, Element Six Limited transferred the rights of the JP 4768267 B to the Plaintiff by specific succession.

(c)     As maintained on the register of IPOS:

(i)     Element Six Limited was the applicant of Singapore Patent Application No. 200501619-1. Singapore Patent Application No. 200501619-1 was subsequently granted as the '872 Patent.

(ii)    On 31 December 2013, Element Six Limited assigned the '872 Patent to the Plaintiff. On 1 July 2014, a request in Form CM8 to register the aforesaid assignment was filed with IPOS. On 2 October 2014, the aforesaid assignment was recorded on the register.

(iii)   On 13 August 2015, by way of filing Patents Form 17, the Plaintiff filed for post-grant amendments to be made to the '872 Patent.

(A)     In particular, an amendment was made, *inter alia*, to incorporate the subject matter of former Claims 67, 68 and 71 into Claim 62. (Claim 62 was also amended to rely on "*any one of the preceding claims*".)

(B)     The reasons for the amendment to Claim 62 were given as follows:

"*The independent method Claim 62 has also been made dependent on producing the material of any of Claim 1 and the dependent product claims. Additional method steps have been introduced into method Claim 62 to clarify the steps required to produce the claimed material suitable for optical applications that*

*has both reduced deleterious absorptions and crystal degradation.*"

(C) The amended Claim 62, as allowed and marked up against the former Claim 62, recited:

*62. A method of producing a CVD diamond material suitable for optical applications* <u>*and according to any one of the preceding claims, which method*</u> *includes the steps of*<u>*:*</u>

<u>*-*</u> *providing a substrate substantially free of crystal defects,*

<u>*-*</u> *providing a source gas,*

<u>*-*</u> *dissociating the source gas to produce a synthesis atmosphere which contains 300 ppb to 5 ppm nitrogen, calculated as molecular nitrogen, and*

<u>*-*</u> *allowing homoepitaxial diamond growth on the surface which is substantially free of crystal defects*

<u>*wherein the surface damage of the substrate is minimised by including a plasma etch on the surface on which homoepitaxial diamond growth is to occur, whereby a density of defects at the surface of the substrate is such that surface etch features related to the defects is below 5 x $10^3$/$mm^2$,*</u>

<u>*wherein the level of nitrogen is controlled with an error of less than 300 ppb (as a molecular fraction of the total gas volume) or*</u>

*10% of the target value in the gas phase, whichever is the larger, and*

*wherein the level of nitrogen is selected to be sufficient to prevent or reduce local strain generating defects whilst being low enough to prevent or reduce deleterious absorptions and crystal quality degradation, thereby producing a CVD single crystal diamond material meeting the requirements of one or more of claims 1 to 61.*

…

67. A method according to claim 62, wherein the level of nitrogen is selected to be sufficient to prevent or reduce local strain generating defects whilst being low enough to prevent or reduce deleterious absorptions and crystal quality degradation.

68. A method according to any one of claims 62 to 67, wherein the density of defects is such that surface etch features related to defects is below $5 \times 10^3/mm^2$.

…

71. A method according to any one of claims 62 to 70, wherein the level of nitrogen is controlled with an error of less than 300 ppb (as a molecular fraction of the total gas volume) or 10% of the target value in the gas phase, whichever is the larger.

(iv)     On 1 December 2015, the post-grant amendments were accepted by
         IPOS.

(d)      Based on the aforesaid events in the prosecution history of European Patent
         EP1565598, UK Patent GB2411895, UK GB 2432592 and Japanese Patent JP
         4768267  (as pleaded in paragraphs 160(b)(i) to 160(bB)(vi) herein), including the
         amendments in fact made, the Plaintiff and Element Six Limited knew or ought to
         have known that the '872 Patent as filed was invalid and/or that at least Claim 62
         of the '872 Patent lacked clarity such that a skilled addressee would not have
         been able to determine its scope.

(e)      Element Six Limited knew or ought to have known of the need to amend the '872
         Patent expeditiously to reflect the same or similar amendments made to the
         European Patent Application No. 03772484.6, the UK Patent Application No.
         GB0512114.0, the UK Patent Application No. GB0703371.5 and the Japan
         Patent Application No. JPA2004-553030 (as pleaded in paragraphs 160(b)(i) to
         160(bB)(vi) herein).

(f)      However, Element Six Limited did not make the aforesaid amendments to the
         '872 Patent.

(g)      As pleaded in paragraphs 160(b)(viii), 160(bA)(xv), 160(bB)(vi) and 160(c)(ii)
         herein, by way of assignment, the Plaintiff became the owner of Corresponding
         Patents.

(h)      In filing the necessary amendments only on 13 August 2015, several years after
         the amendments were first made to the European Patent Application No.
         03772484.6, the UK Patent Application No. GB0512114.0, the UK Patent

Application No. GB0703317.5 and the Japan Patent Application No. JPA2004-553030, the Plaintiff is guilty of undue and unreasonable delay. The Plaintiff knew or ought to have known of the need to amend the '872 Patent expeditiously to reflect the same or similar amendments made to the aforementioned patent applications abroad.

(i)     In light of the above, the amendments made to the '872 Patent should not have been allowed and accordingly, the '872 Patent is invalid and/or should be revoked pursuant to section 80(1)(e) read with section 82(3) of the Patents Act (Cap 221).

(j)     Further and/or in the alternative, the amended '872 Patent was obtained on the basis of misrepresentation insofar as the Plaintiff failed to amend the '872 Patent to reflect the same or similar amendments made to the aforementioned patent applications abroad. By failing to disclose these substantial amendments made to the patent applications abroad and/or failing to amend the '872 Patent in the same or similar manner as was done abroad, the Plaintiff misrepresented to IPOS the validity of the proposed amendments, which IPOS relied on to grant the amendments. Accordingly, the amended '872 Patent is invalid and/or should be revoked pursuant to section 80(1)(f) read with section 82(3) of the Patents Act (Cap 221).

**THE '508 PATENT**

**A.  The alleged inventions in the '508 Patent are not patentable inventions**

161.    The alleged inventions in Claims 1 to 3, 5 to 10, 12 to 18, 24, 25, 38 to 41, 44 and 45 of the '508 Patent are not patentable inventions. Particulars for these Claims are as follows:

   **1)    CLAIMS 1, 2, 3, 5, 6 AND 7 OF THE '508 PATENT**

*Claim 1 of the '508 Patent*

162.    The priority date of Claim 1 of the '508 Patent is 6 September 2002.

**Lack of Novelty**

163.    The alleged invention in Claim 1 of the '508 Patent was not new.

**Particulars**

(a)    The alleged invention in Claim 1 of the '508 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 1 of the '508 Patent been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

   (i)    Documents published in various scientific publications, journals and patent documents such as:

      (A)    US 5,451,430 grant published on 19 September 1995;

      (B)    A paper entitled: *'Clues to the process used by General Electric to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems & Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

      (C)    WO 01/72406 published on the 4 October 2001;

(D)    EP0671482 published on 13 September 1995;

(E)    A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

(F)    A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

164.    The subject matter of each of the documents stated in paragraph 163(a)(i) were at all material times common general knowledge.

## Lack of Inventive Step

165.    The alleged invention in Claim 1 of the '508 Patent involved no inventive step.

## Particulars

(a)    The alleged invention in Claim 1 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 1 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)    All the documents referred to in paragraph 163(a)(i) above;

(ii)    The following further documents:

(A)    US 4,124,690 grant published on 7 November 1978;

(B)    US 4,174,380 grant published on 13 November 1979;

(C)    WO 02/13958 published on 21 February 2002;

(D)    WO 01/72404 published on 4 October 2001;

(E)     US 2002/0081260 published on 27 June 2002;

(F)     WO 01/14050 published on 1 March 2001;

(G)     A paper entitled: "Nitrogen incorporation in CVD diamond", K. Iakoubovskii, et al.; *Diamond and Related Materials*, 10 (2001) 485 – 489;

(H)     An article entitled; "L.K.I. Co., "The American Trader making process of changing the colour and gloss of natural diamond", Jayantilal Shah, Maniratna, 13 April 1999 based on a press release from Pegasus Overseas Limited, Lazare Kaplan International and General Electric Company published on 25 March 1999;

(I)     An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and

(iii)   The common general knowledge.


**Lack of Clear and Complete Disclosure**

166.    The alleged invention in Claim 1 of the '508 Patent lacks clear and complete disclosure.


(a)     The specification of the '508 Patent does not disclose the invention clearly and completely enough for it to be performed by a person skilled in the art.

(Ai)    The Defendant repeats and adopts paragraph 5(g) of the Amended DCC and each and every particular pleaded therein.

(i)     The material part of Claim 1 of the '508 Patent recites:

*A method of producing single crystal CVD diamond of a desired colour includes the steps of providing single crystal CVD diamond which is coloured and heat treating the diamond under conditions suitable to produce the desired colour.*

(ii)    The skilled person is provided with no information regarding the boundaries of these conditions. Neither is the skilled person provided with any idea as to how the physical parameters of the process need to be calibrated to bring about any one of the desired colours encompassed by Claim 1.

(iii)   Claim 1 of the patent relates to a method of making "*single crystal CVD diamond of a desired colour*".   Based on the specification of the '508 Patent, this term is interpreted as meaning "any colour including colourless". Page 5, third paragraph of the '508 Patent states:

*"Under suitable conditions of heat treatment, the brown colour can be converted into **any one of a number of desirable colours including colourless and near colourless, and particularly fancy colours**. The term "fancy" refers to a gem trade classification of more saturated and more desirable colours in diamond. More particularly, the heat treatment*

162

*may be such as to produce a range of fancy green and fancy pink*
*colours in the diamond."*

(iv)     Claims 15 – 17 requires the CVD diamond to be produced *"…in a*
*synthesis method using a gas phase in which the nitrogen concentration*
*is in the range 0.5ppm – 500ppm."* Claims 8 – 14 describe a single
crystal CVD diamond as having *"… a concentration of nitrogen in the*
*solid diamond of 0.05 – 50 ppm.*" Page 7, second paragraph states:

"*In order to achieve reproducible results and **tailor the final product** the*
*N in the process needs to be controlled.*"

Although very wide ranges of nitrogen concentration in the gas phase
and nitrogen in solid diamonds are mentioned, the claims of the '508
Patent and its specification are unclear on how much nitrogen
concentration in the gas phase will lead to the amount of nitrogen in a
solid diamond, such that the process can be tailored through heat
treatment to achieve a certain specific colour from "*… any one of a*
*number of desirable colours*" as quoted in paragraph 166(a)(iii) above.

(v)      In addition, the last sentence of Page 7, paragraph 2 of the '508 Patent
further casts doubt over the invention and the applicability or validity of
the claimed range of nitrogen concentrate in the gas phase. Page 7,
paragraph 2 of the '508 Patent states:

*"Typical concentrations in the gas phase (all nitrogen gas phase*
*concentration in this specification are based on the $N_2$ equivalent, for*
*example one $N_2$ molecule is equivalent to 2 $NH_3$ molecules) are 0.5 ppm*

– 500 ppm, more preferably 1 ppm – 100pm, and more preferably 2 ppm – 30 ppm, **but those skilled in the art will understand that the uptake of nitrogen is very sensitive to the process conditions such as temperature, pressure and gas phase composition, so the invention is not confined to these limits**."

If the invention is not confined to these limits, then the claimed range of nitrogen in solid diamonds as per Claims 8 – 14 becomes irrelevant.

(vi)     Claim 21 states that the desired colour is preferably "fancy pink". The term "fancy pink" is well established in the art.   See for instance, '*Characterisation and Grading of Natural-Colour Pink Diamonds*' by John M King, James E Shigley, Scott S Guhin, Thomas H Gelb and Matthew Hall, Gems & Gemology, Vol 38, No. 2, page 128 to 147, Summer 2002. It was also well known at the time of the invention that, in order to create diamonds with a fancy pink colour, a specific radiation exposure step was essential (See EP 0 615 954, published on 21 September 1994: '*Red diamond, pink diamond and method of producing the same*').   Claim 23 encompasses CVD diamond which, "after heating is fancy pink". Therefore, as claim 1 is broader than Claim 21, claim 1 must encompass at least "fancy pink" diamonds as a "desired colour".

(vii)    None of the examples provided in the application as originally filed, disclose a process according to Claim 1 for making fancy pink diamonds or a process wherein a radiation exposure step is included.   Accordingly, the patent lacks clear and complete disclosure as the proprietor has failed to demonstrate that the invention works across the full scope of the claims.

(viii) The term "*under conditions suitable to produce the desired colour*" is vague and unclear.

<u>*Claim 2 of the '508 Patent*</u>

167. The priority date of Claim 2 of the '508 Patent is 6 September 2002.

**<u>Lack of Novelty</u>**

168. The alleged invention in Claim 2 of the '508 Patent was not new.

**<u>Particulars</u>**

(a) The alleged invention in Claim 2 of the '508 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 2 of the '508 Patent been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i) Documents published in various scientific publications, journals and patent documents such as:

(A) US 5,451,430 grant published on 19 September 1995;

(B) A paper entitled: *'Clues to the process used by General Electric to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems & Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

(C) WO 01/72406 published on the 4 October 2001;

(D) EP0671482 published on 13 September 1995;

(E) A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

(F)     A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

169.    The subject matter of each of the documents stated in paragraph 168(a)(i) were at all material times common general knowledge.


**Lack of Inventive Step**

170.    The alleged invention in Claim 2 of the '508 Patent involved no inventive step.


**Particulars**

(a)     The alleged invention in Claim 2 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 2 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents referred to in paragraph 168(a)(i) above;

(ii)    The following further documents:

(A)     A paper entitled: *'Characterization and lattice location of nitrogen and boron in homoepitaxial CVD diamond'* – R. Samlenski, C. Haug, R. Brenn, C. Wild, R. Locher & P. Koidl; Diamond and Related Materials, Vol. 5, Issues 9, pp. 947-951, July 1996;

(B)     A paper entitled: '*High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J.

166

Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(C)     A paper entitled: *'Rapid growth of single-crystal diamond on diamond substrates'* – G. Janssen, W. Vollenberg, L.J. Giling, W.J.P. van Enckervort, J.J.D. Schamineé & M. Seal, Surface and coatings Technology, Vol. 47, Issues 1–3, pp. 113-126, August 1991;

(D)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July  2000;

(E)     US 5,474,021 grant published on 12 December 1995;

(F)     JP 07-277890A published on 24 October 1995;

(G)     WO 01/96634 published on 20 December 2001;

(H)     An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and

(iii)    The common general knowledge.

*Claim 3 of the '508 Patent*

171.    The priority date of Claim 3 of the '508 Patent is 6 September 2002.

**Lack of Novelty**

172.    The alleged invention in Claim 3 of the '508 Patent was not new.


**Particulars**

(a)    The alleged invention in Claim 3 of the '508 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 3 of the '508 Patent been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

   (i)    Documents published in various scientific publications, journals and patent documents such as:

      (A)    US 5,451,430 grant published on 19 September 1995;

      (B)    A paper entitled: *'Clues to the process used by General Electric to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems & Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

      (C)    WO 01/72406 published on the 4 October 2001;

      (D)    EP0671482 published on 13 September 1995;

      (E)    A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

      (F)    A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.


173.    The subject matter of each of the documents stated in paragraph 172(a)(i) were at all material times common general knowledge.

**Lack of Inventive Step**

174.    The alleged invention in Claim 3 of the '508 Patent involved no inventive step.

**Particulars**

(a)     The alleged invention in Claim 3 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 3 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents referred to in paragraph 172(a)(i) above;

(ii)    The following further documents:

(A)     US 5,474,021 published on 12 December 1995;

(B)     WO 01/72404 published on the 4 October 2001;

(C)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(D)     JP 07-277890A published on 24 October 1995;

(E)     WO 01/96634 published on 20 December 2001;

(F)     An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and

(iii)   The common general knowledge.

175.     The priority date of Claim 5 of the '508 Patent is 6 September 2002.


# **Lack of Novelty**

176.     The alleged invention in Claim 5 of the '508 Patent was not new.


# **Particulars**

(a)     The alleged invention in Claim 5 of the '508 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 5 of the '508 Patent been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents such as:

　　(A)     US 5,451,430 grant published on 19 September 1995;

　　(B)     A paper entitled: *'Clues to the process used by General Electric to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems & Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

　　(C)     WO 01/72406 published on the 4 October 2001;

　　(D)     EP0671482 published on 13 September 1995;

　　(E)     A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

　　(F)     A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

177. The subject matter of each of the documents stated in paragraph 176(a)(i) were at all material times common general knowledge.

## Lack of Inventive Step

178. The alleged invention in Claim 5 of the '508 Patent involved no inventive step.

## Particulars

(a) The alleged invention in Claim 5 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 5 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i) All the documents referred to in paragraph 176(a)(i) above;

(ii) The following further documents:

(A) US 5,474,021 published on 12 December 1995;

(B) A paper entitled: *'Characterization and lattice location of nitrogen and boron in homoepitaxial CVD diamond'* – R. Samlenski, C. Haug, R. Brenn, C. Wild, R. Locher & P. Koidl; Diamond and Related Materials, Vol. 5, Issues 9, pp. 947-951, July 1996;

(C) A paper entitled: '*High Carrier Mobility in Single-Crystal Plasma-Deposited Diamon*d' – Jan Isberg, Johan Hammersberg, Erik Johansson, Tobias Wikström, Daniel J. Twitchen, Andrew J. Whitehead, Steven E. Coe & Geoffrey A. Scarsbrook; *Science*, Vol. 297, Issue 5587, pp. 1670-1672, 6 September 2002;

(D) A paper entitled: *'Rapid growth of single-crystal diamond on diamond substrates'* – G. Janssen, W. Vollenberg, L.J. Giling,

W.J.P. van Enckervort, J.J.D. Schamineé & M. Seal, Surface and coatings Technology, Vol. 47, Issues 1–3, pp. 113-126, August 1991;

(E) A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(F) JP 07-277890A published on 24 October 1995;

(G) WO 01/96634 published on 20 December 2001;

(H) An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and

(iii) The common general knowledge.

*Claim 6 of the '508 Patent*

179. The priority date of Claim 6 of the '508 Patent is 6 September 2002.

**Lack of Novelty**

180. The alleged invention in Claim 6 of the '508 Patent was not new.

**Particulars**

(a) The alleged invention in Claim 6 of the '508 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 6 of the '508 Patent been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents such as:

(A)     US 5,451,430 grant published on 19 September 1995;

(B)     A paper entitled: *'Clues to the process used by General Electric to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems & Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

(C)     WO 01/72406 published on the 4 October 2001;

(D)     EP0671482 published on 13 September 1995;

(E)     A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

(F)     A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

181.    The subject matter of each of the documents stated in paragraph 180(a)(i) were at all material times common general knowledge.


**Lack of Inventive Step**

182.    The alleged invention in Claim 6 of the '508 Patent involved no inventive step.


**Particulars**

(a)     The alleged invention in Claim 6 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 6 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents referred to in paragraph 180(a)(i) above;

(ii)    The following further documents:

    (A)     A paper entitled: *'Diamond homoepitaxy by chemical vapour deposition'* – Andrzej Badzian & Teresa Badzian; Diamond and Related Materials, Vol. 2, Issues 2-4, pp. 147-157, 31 March 1993;

    (B)     US 5,474,021 grant published on 12 December 1995;

    (C)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

    (D)     JP 07-277890A published on 24 October 1995;

    (E)     WO 01/96634 published on 20 December 2001;

    (F)     A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

    (G)     An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and

(iii)   The common general knowledge.

183.     The priority date of Claim 7 of the '508 Patent is 5 September 2003.


## Lack of Novelty

184.     The alleged invention in Claim 7 of the '508 Patent was not new.


## Particulars

(a)     The alleged invention in Claim 7 of the '508 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 7 of the '508 Patent been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents such as:

(A)     US 5,451,430 grant published on 19 September 1995;

(B)     A paper entitled: *'Clues to the process used by General Electric to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems & Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

(C)     WO 01/72406 published on the 4 October 2001;

(D)     EP0671482 published on 13 September 1995;

(E)     A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

(F)     A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

185.    The subject matter of each of the documents stated in paragraph 184(a)(i) were at all material times common general knowledge.


## Lack of Inventive Step

186.    The alleged invention in Claim 7 of the '508 Patent involved no inventive step.


## Particulars

(a)     The alleged invention in Claim 7 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 7 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents referred to in paragraph 184(a)(i) above;

(ii)    The following further documents:

    (A)     A paper entitled: *'Diamond homoepitaxy by chemical vapour deposition'* – Andrzej Badzian & Teresa Badzian; Diamond and Related Materials, Vol. 2, Issues 2-4, pp. 147-157, 31 March 1993;

    (B)     US 5,474,021 grant published on 12 December 1995;

    (C)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

    (D)     JP 07-277890A published on 24 October 1995;

(E)      WO 01/96634 published on 20 December 2001;

(F)      A chapter in the textbook entitled: '*Electric Refractory Materials*' edited by Yukinobu Kumashiro, Chapter 15: Synthesis of Diamond from the Gas Phase by Andrzej Badzian, page 347 – 368, published in 2000;

(G)      An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and

(iii)    The common general knowledge.

**2)      CLAIMS 8 TO 10, 12 TO 18, 24, 25, 38 TO 41, 44 AND 45 THAT ARE NOT DEPENDENT ON CLAIM 7, WHERE THE AFORESAID CLAIMS HAVE A PRIORITY DATE OF 6 SEPTEMBER 2002**

*Claim 8 of the '508 Patent*

187.    If Claim 8 of the '508 Patent is not dependent on Claim 7 of the '508 Patent, the priority date of Claim 8 of the '508 Patent is 6 September 2002.

**Lack of Novelty**

188.    The alleged invention in Claim 8 of the '508 Patent was not new.

**Particulars**

(a)      The alleged invention in Claim 8 of the '508 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 8 of the '508 Patent been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)    Documents published in various scientific publications, journals and patent documents such as:

(A)    US 5,451,430 grant published on 19 September 1995;

(B)    A paper entitled: *'Clues to the process used by General Electric to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems & Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

(C)    WO 01/72406 published on 4 October 2001;

(D)    EP0671482 published on 13 September 1995;

(E)    A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

(F)    A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

189.    The subject matter of each of the documents stated in paragraphs 188(a)(i) were at all material times common general knowledge.

**Lack of Inventive Step**

190.    The alleged invention in Claim 8 of the '508 Patent involved no inventive step.

**Particulars**

(a)    The alleged invention in Claim 8 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 8 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents referred to in paragraph 188(a)(i) above;

(ii)    The following further documents:

(A)     A paper entitled: *'Characterization and lattice location of nitrogen and boron in homoepitaxial CVD diamond'* – R. Samlenski, C. Haug, R. Brenn, C. Wild, R. Locher & P. Koidl; Diamond and Related Materials, Vol. 5, Issues 9, pp. 947-951, July 1996;

(B)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(C)     A paper entitled: *'Nitrogen incorporation in diamond films homoepitaxially grown by chemical vapour deposition'* – Konstantin Iakoubovskii, Guy J. Adriaenssens & Yogesh K. Vohra, Journal of Physics: condensed Matter, Vol. 12, Issue 30, pp. L519-524, 2000;

(D)     JP 07-277890A published on 24 October 1995;

(E)     A paper entitled: '*Multiple twinning and nitrogen defect center in CVD homoepitaxial diamond'* by  Chih-Shiue Yan and Yogesh K. Vohra, Diamond and Related Materials 8 (1999) page 2022-2031, Nov 1999;

(F)     EP 0 594 994 published on 10 March 1999;

(G)     A paper entitled: *'Development of large size diamond synthesis process*' by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

(H)     An article entitled "*NovaDiamond Introduces New Enhancement*"

– Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1;

pp 1, 29-30; 7 January 2000; and

(iii)     The common general knowledge.

*Claim 9 of the '508 Patent*

191.    If Claim 9 of the '508 Patent is not dependent on Claim 7 of the '508 Patent, the

priority date of Claim 9 of the '508 Patent is 6 September 2002.

**Lack of Novelty**

192.    The alleged invention in Claim 9 of the '508 Patent was not new.

**Particulars**

(a)     The alleged invention in Claim 9 of the '508 Patent formed part of the state of the

art in that it had, before the priority date of the alleged invention in Claim 9 of the

'508 Patent been made available to the public. Hereunder the Defendant will rely

upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and

patent documents such as:

(A)     US 5,451,430 grant published on 19 September 1995;

(B)     A paper entitled: *'Clues to the process used by General Electric

to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems &

Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

(C)     WO 01/72406 published on the 4 October 2001;

(D)     EP0671482 published on 13 September 1995;

| | (E) | A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and |
|---|---|---|
| | (F) | A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999. |

193.    The subject matter of each of the documents stated in paragraphs 192(a)(i) were at all material times common general knowledge.


## Lack of Inventive Step

194.    The alleged invention in Claim 9 of the '508 Patent involved no inventive step.


## Particulars

(a)    The alleged invention in Claim 9 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 9 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)    All the documents referred to in paragraph 192(a)(i) above;

(ii)    The following further documents:

    (A)    JP 07-277890A published on 24 October 1995;

    (B)    EP 0 594 994 published on 10 March 1999;

    (C)    A paper entitled: '*Characterization and lattice location of nitrogen and boron in homoepitaxial CVD diamond*' – R. Samlenski, C.

Haug, R. Brenn, C. Wild, R. Locher & P. Koidl; Diamond and Related Materials, Vol. 5, Issues 9, pp. 947-951, July 1996;

(D)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(E)     A paper entitled: *'Nitrogen incorporation in diamond films homoepitaxially grown by chemical vapour deposition'* – Konstantin Iakoubovskii, Guy J. Adriaenssens & Yogesh K. Vohra, Journal of Physics: condensed Matter, Vol. 12, Issue 30, pp. L519-524, 2000;

(F)     A paper entitled: '*Multiple twinning and nitrogen defect center in CVD homeoepitaxial diamond'* by Chih-Shiue Yan and Yogesh K. Vohra, Diamond and Related Materials 8 (1999) page 2022-2031, Nov 1999;

(G)     A paper entitled: *'Development of large size diamond synthesis process*' by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

(H)     An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and

(iii)    The common general knowledge.

195.    If Claim 10 of the '508 Patent is not dependent on Claim 7 of the '508 Patent, the priority date of Claim 10 of the '508 Patent is 6 September 2002.

## Lack of Novelty

196.    The alleged invention in Claim 10 of the '508 Patent was not new.

## Particulars

(a)    The alleged invention in Claim 10 of the '508 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 10 of the '508 Patent been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)    Documents published in various scientific publications, journals and patent documents such as:

(A)    US 5,451,430 grant published on 19 September 1995;

(B)    A paper entitled: *'Clues to the process used by General Electric to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems & Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

(C)    WO 01/72406 published on the 4 October 2001;

(D)    EP0671482 published on 13 September 1995;

(E)    A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

(F)    A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

197.     The subject matter of each of the documents stated in paragraphs 196(a)(i) were at all material times common general knowledge.

**Lack of Inventive Step**

198.     The alleged invention in Claim 10 of the '508 Patent involved no inventive step.

**Particulars**

(a)     The alleged invention in Claim 10 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 10 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents referred to in paragraph 196(a)(i) above;

(ii)     The following further documents:

(A)     JP 07-277890A published on 24 October 1995;

(B)     EP 0 594 994 published on 10 March 1999;

(C)     A paper entitled: *'Characterization and lattice location of nitrogen and boron in homoepitaxial CVD diamond'* – R. Samlenski, C. Haug, R. Brenn, C. Wild, R. Locher & P. Koidl; Diamond and Related Materials, Vol. 5, Issues 9, pp. 947-951, July 1996;

(D)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(E)     A paper entitled: *'Nitrogen incorporation in diamond films homoepitaxially grown by chemical vapour deposition'* – Konstantin Iakoubovskii, Guy J. Adriaenssens & Yogesh K. Vohra, Journal of Physics: condensed Matter, Vol. 12, Issue 30, pp. L519-524, 2000;

(F)     A paper entitled: '*Multiple twinning and nitrogen defect center in CVD homoepitaxial diamond'* by Chih-Shiue Yan and Yogesh K. Vohra, Diamond and Related Materials 8 (1999) page 2022-2031, Nov 1999;

(G)     A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

(H)     An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and

(iii)   The common general knowledge.


*Claim 12 of the '508 Patent*

199.    If Claim 12 of the '508 Patent is not dependent on Claim 7 of the '508 Patent, the priority date of Claim 12 of the '508 Patent is 6 September 2002.

## **Lack of Novelty**

200.     The alleged invention in Claim 12 of the '508 Patent was not new.


## **Particulars**

(a)      The alleged invention in Claim 12 of the '508 Patent formed part of the state of

the art in that it had, before the priority date of the alleged invention in Claim 12

of the '508 Patent been made available to the public. Hereunder the Defendant

will rely upon the following, including but not limited to:

(i)      Documents published in various scientific publications, journals and

patent documents such as:

(A)      US 5,451,430 grant published on 19 September 1995;

(B)      A paper entitled: *'Clues to the process used by General Electric

to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems &

Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

(C)      WO 01/72406 published on 4 October 2001;

(D)      EP0671482 published on 13 September 1995;

(E)      A paper entitled: 'The colour of diamond and how it may be

changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6,

341-359; and

(F)      A paper entitled: "*Diamond: Natural, Treated or Synthetic?*

*Identification at the start of the new millennium*" - J. Van Royen et

al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.


201.     The subject matter of each of the documents stated in paragraphs 200(a)(i) were

at all material times common general knowledge.

## Lack of Inventive Step

202.     The alleged invention in Claim 12 of the '508 Patent involved no inventive step.

## Particulars

(a)     The alleged invention in Claim 12 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 12 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents referred to in paragraph 200(a)(i) above;

(ii)     The following further documents:

(A)     A paper entitled: *'Nitrogen incorporation in diamond films homoepitaxially grown by chemical vapour deposition'* – Konstantin Iakoubovskii, Guy J. Adriaenssens & Yogesh K. Vohra, Journal of Physics: condensed Matter, Vol. 12, Issue 30, pp. L519-524, 2000;

(B)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(C)     A paper entitled: *'Characterization and lattice location of nitrogen and boron in homoepitaxial CVD diamond'* – R. Samlenski, C. Haug, R. Brenn, C. Wild, R. Locher & P. Koidl; Diamond and Related Materials, Vol. 5, Issues 9, pp. 947-951, July 1996;

(D)   A paper entitled: '*Multiple twinning and nitrogen defect center in CVD homoeopitaxial diamond'* by Chih-Shiue Yan and Yogesh K. Vohra, Diamond and Related Materials 8 (1999) page 2022-2031, Nov 1999;

(E)   EP 0 594 994 published on 10 March 1999;

(F)   JP 07-277890A published on 24 October 1995;

(G)   A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

(H)   An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and

(iii)   The common general knowledge.

*Claim 13 of the '508 Patent*

203.   If Claim 13 of the '508 Patent is not dependent on Claim 7 of the '508 Patent, the priority date of Claim 13 of the '508 Patent is 6 September 2002.

**Lack of Novelty**

204.   The alleged invention in Claim 13 of the '508 Patent was not new.

**Particulars**

(a)   The alleged invention in Claim 13 of the '508 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 13 of the '508 Patent been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i) Documents published in various scientific publications, journals and patent documents such as:

(A) US 5,451,430 grant published on 19 September 1995;

(B) A paper entitled: *'Clues to the process used by General Electric to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems & Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

(C) WO 01/72406 published on the 4 October 2001;

(D) EP0671482 published on 13 September 1995;

(E) A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

(F) A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

205. The subject matter of each of the documents stated in paragraphs 204(a)(i) were at all material times common general knowledge.

## Lack of Inventive Step

206. The alleged invention in Claim 13 of the '508 Patent involved no inventive step.

## Particulars

(a) The alleged invention in Claim 13 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 13 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents referred to in paragraph 204(a)(i) above;

(ii)    The following further documents:

(A)     A paper entitled: *'Nitrogen incorporation in diamond films homoepitaxially grown by chemical vapour deposition'* – Konstantin Iakoubovskii, Guy J. Adriaenssens & Yogesh K. Vohra, Journal of Physics: condensed Matter, Vol. 12, Issue 30, pp. L519-524, 2000;

(B)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(C)     A paper entitled: *'Characterization and lattice location of nitrogen and boron in homoepitaxial CVD diamond'* – R. Samlenski, C. Haug, R. Brenn, C. Wild, R. Locher & P. Koidl; Diamond and Related Materials, Vol. 5, Issues 9, pp. 947-951, July 1996;

(D)     A paper entitled: '*Multiple twinning and nitrogen defect center in CVD homoepitaxial diamond'* by  Chih-Shiue Yan and Yogesh K. Vohra, Diamond and Related Materials 8 (1999) page 2022-2031, Nov 1999;

(E)     EP 0 594 994 published on 10 March 1999;

(F)     JP 07-277890A published on 24 October 1995;

(G)     A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

(H)     An article entitled "*NovaDiamond Introduces New Enhancement*"

– Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1;

pp 1, 29-30; 7 January 2000; and

(iii)     The common general knowledge.

*Claim 14 of the '508 Patent*

207.    If Claim 14 of the '508 Patent is not dependent on Claim 7 of the '508 Patent, the

priority date of Claim 14 of the '508 Patent is 6 September 2002.

**Lack of Novelty**

208.    The alleged invention in Claim 14 of the '508 Patent was not new.

**Particulars**

(a)     The alleged invention in Claim 14 of the '508 Patent formed part of the state of

the art in that it had, before the priority date of the alleged invention in Claim 14

of the '508 Patent been made available to the public. Hereunder the Defendant

will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and

patent documents such as:

(A)     US 5,451,430 grant published on 19 September 1995;

(B)     A paper entitled: *'Clues to the process used by General Electric*

*to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems &*

*Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

(C)     WO 01/72406 published on the 4 October 2001;

(D)     EP0671482 published on 13 September 1995;

(E) A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

(F) A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

209. The subject matter of each of the documents stated in paragraph 208(a)(i) were at all material times common general knowledge.


**Lack of Inventive Step**

210. The alleged invention in Claim 14 of the '508 Patent involved no inventive step.


**Particulars**

(a) The alleged invention in Claim 14 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 14 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:


(i) All the documents referred to in paragraph 208(a)(i) above;


(ii) The following further documents:

(A) A paper entitled: *'Nitrogen incorporation in diamond films homoepitaxially grown by chemical vapour deposition'* – Konstantin Iakoubovskii, Guy J. Adriaenssens & Yogesh K. Vohra, Journal of Physics: condensed Matter, Vol. 12, Issue 30, pp. L519-524, 2000;

(B)     A paper entitled *'Analysis of Large Single Crystal CVD Diamond'* – J.E. Butler, T.A. Kennedy, J.S. Colton, S. Qadri, R. Linares, P. Doering, M. Newton, C. Glover, H. Smith & A. Collins given at the United States Naval Research Academy was presented on 22 July 2000;

(C)     A paper entitled: *'Characterization and lattice location of nitrogen and boron in homoepitaxial CVD diamond'* – R. Samlenski, C. Haug, R. Brenn, C. Wild, R. Locher & P. Koidl; Diamond and Related Materials, Vol. 5, Issues 9, pp. 947-951, July 1996;

(D)     A paper entitled: '*Multiple twinning and nitrogen defect center in CVD homeoepitaxial diamond'* by Chih-Shiue Yan and Yogesh K. Vohra, Diamond and Related Materials 8 (1999) page 2022-2031, Nov 1999;

(E)     EP 0 594 994 published on 10 March 1999;

(F)     JP 07-277890A published on 24 October 1995;

(G)     A paper entitled: *'Development of large size diamond synthesis process'* by Sumitomo Electric Industrial Co. Ltd., Report on R&D on "Frontier Carbon Technology" (FCT) project by New Energy Development Organisation (NEDO), published in 2000;

(H)     An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and

(iii)   The common general knowledge.

*Claim 15 of the '508 Patent*

211.    If Claim 15 of the '508 Patent is not dependent on Claim 7 of the '508 Patent, the priority date of Claim 15 of the '508 Patent is 6 September 2002.

## Lack of Novelty

211A.   The alleged invention in Claim 15 of the '508 Patent was not new.

## Particulars

(a)     The alleged invention in Claim 15 of the '508 Patent formed part of the state of
the art in that it had, before the priority date of the alleged invention in Claim 15
of the '508 Patent been made available to the public. Hereunder the Defendant
will rely upon the following, including but not limited to:

 (i)     Documents published in various scientific publications, journals and
patent documents such as:

 (A)     US 5,451,430 grant published on 19 September 1995;

 (B)     A paper entitled: *'Clues to the process used by General Electric
to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems &
Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

 (C)     WO 01/72406 published on the 4 October 2001;

 (D)     EP0671482 published on 13 September 1995;

 (E)     A paper entitled: 'The colour of diamond and how it may be
changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6,
341-359; and

 (F)     A paper entitled: "*Diamond: Natural, Treated or Synthetic?
Identification at the start of the new millennium*" - J. Van Royen et
al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

211B.   The subject matter of each of the documents stated in paragraph 211A(a)(i) were
at all material times common general knowledge.

## Lack of Inventive Step

212.    The alleged invention in Claim 15 of the '508 Patent involved no inventive step.

## Particulars

(a)    The alleged invention in Claim 15 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 15 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(Ai)    All the documents referred to in paragraph 211A(a)(i) above;

(i)    Documents published in various scientific publications, journals and patent documents such as:

(A)    US 5,474,021 grant published on 12 December 1995;

(B)    US 6,162,412 grant published on 19 December 2000;

(C)    JP 07-277890A published on 24 October 1995;

(D)    A paper entitled: *'Characterization and lattice location of nitrogen and boron in homoepitaxial CVD diamond'* – R. Samlenski, C. Haug, R. Brenn, C. Wild, R. Locher & P. Koidl; Diamond and Related Materials, Vol. 5, Issues 9, pp. 947-951, July 1996;

(E)    EP 0 594 994 published on 10 March 1999;

(F)    WO 01/96634 published on 20 December 2001;

(H)    An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and

(ii)    The common general knowledge.

**<u>Lack of Clear and Complete Disclosure</u>**

212A.  The alleged invention in Claim 15 of the '508 Patent lacks clear and complete disclosure.

<u>(a)</u>    The specification of the '508 Patent does not disclose the invention clearly and completely enough for it to be performed by a person skilled in the art.

**<u>Particulars</u>**

(i)     The material part of Claim 15 of the '508 Patent recites:

*A method according to any one of the preceding claims wherein the CVD diamond is produced in a synthesis method using a gas phase in which the nitrogen concentration is in the range 0.5 ppm - 500 ppm.*

(ii)    The description *"…the CVD diamond is produced in a synthesis method…"* does not specify which method of CVD growth the claim is referring to. It is known to the person skilled in art that there are several methods to grow CVD diamonds and the specification and examples fail to disclose the name of any specific CVD method.

(iii)   It is also not clear from the claims and the specification which particular method of growing CVD single crystal diamonds the claimed range of nitrogen concentration in the gas phase is applicable to or valid for.

(iv)    The term *"…CVD diamond…"* is very broad and can be interpreted as both single crystal CVD diamond material as well as poly-crystalline CVD diamond.

213.    If Claim 16 of the '508 Patent is not dependent on Claim 7 of the '508 Patent, the priority date of Claim 16 of the '508 Patent is 6 September 2002.

## **Lack of Novelty**

213A.   The alleged invention in Claim 16 of the '508 Patent was not new.

## **Particulars**

(a)    The alleged invention in Claim 16 of the '508 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 16 of the '508 Patent been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

    (i)    Documents published in various scientific publications, journals and patent documents such as:

        (A)    US 5,451,430 grant published on 19 September 1995;

        (B)    A paper entitled: *'Clues to the process used by General Electric to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems & Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

        (C)    WO 01/72406 published on the 4 October 2001;

        (D)    EP0671482 published on 13 September 1995;

        (E)    A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

        (F)    A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

213B.   The subject matter of each of the documents stated in paragraph 213A(a)(i) were at all material times common general knowledge.

**Lack of Inventive Step**

214.   The alleged invention in Claim 16 of the '508 Patent involved no inventive step.

**Particulars**

(a)   The alleged invention in Claim 16 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 16 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(Ai)   All the documents referred to in paragraph 213A(a)(i) above;

(i)   Documents published in various scientific publications, journals and patent documents such as:

    (A)   US 5,474,021 grant published on 12 December 1995;

    (B)   US 6,162,412 grant published on 19 December 2000;

    (C)   JP 07-277890A published on 24 October 1995;

    (D)   A paper entitled: *'Characterization and lattice location of nitrogen and boron in homoepitaxial CVD diamond'* – R. Samlenski, C. Haug, R. Brenn, C. Wild, R. Locher & P. Koidl; Diamond and Related Materials, Vol. 5, Issues 9, pp. 947-951, July 1996;

    (E)   EP 0 594 994 published on 10 March 1999;

    (F)   WO 01/96634 published on 20 December 2001;

(G)       An article entitled "*NovaDiamond Introduces New Enhancement*"

               – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1;

               pp 1, 29-30; 7 January 2000; and

(ii)       The common general knowledge.

### *Claim 17 of the '508 Patent*

215.      If Claim 17 of the '508 Patent is not dependent on Claim 7 of the '508 Patent, the priority date of Claim 17 of the '508 Patent is 6 September 2002.

### **Lack of Novelty**

215A.    The alleged invention in Claim 17 of the '508 Patent was not new.

### **Particulars**

(a)      The alleged invention in Claim 17 of the '508 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 17 of the '508 Patent been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)       Documents published in various scientific publications, journals and patent documents such as:

      (A)      US 5,451,430 grant published on 19 September 1995;

      (B)      A paper entitled: *'Clues to the process used by General Electric to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems & Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

      (C)      WO 01/72406 published on the 4 October 2001;

      (D)      EP0671482 published on 13 September 1995;

(E) A paper entitled: ‘The colour of diamond and how it may be changed’ – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

(F) A paper entitled: “*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*” - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

215B. The subject matter of each of the documents stated in paragraph 215A(a)(i) were at all material times common general knowledge.

**Lack of Inventive Step**

216. The alleged invention in Claim 17 of the ‘508 Patent involved no inventive step.

**Particulars**

(a) The alleged invention in Claim 17 of the ‘508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 17 of the ‘508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(Ai) All the documents referred to in paragraph 215A(a)(i) above;

(i) Documents published in various scientific publications, journals and patent documents such as:

(A) US 5,474,021 grant published on 12 December 1995;

(B) US 6,162,412 grant published on 19 December 2000;

(C) JP 07-277890A published on 24 October 1995;

(D)     A paper entitled: *'Characterization and lattice location of nitrogen and boron in homoepitaxial CVD diamond'* – R. Samlenski, C. Haug, R. Brenn, C. Wild, R. Locher & P. Koidl; Diamond and Related Materials, Vol. 5, Issues 9, pp. 947-951, July 1996;

(E)     EP 0 594 994 published on 10 March 1999;

(F)     WO 01/96634 published on 20 December 2001;

(G)     An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and

(ii)     The common general knowledge.

## *Claim 18 of the '508 Patent*

217.     If Claim 18 of the '508 Patent is not dependent on Claim 7 of the '508 Patent, the priority date of Claim 18 of the '508 Patent is 6 September 2002.

## **Lack of Novelty**

218.     The alleged invention in Claim 18 of the '508 Patent was not new.

## **Particulars**

(a)     The alleged invention in Claim 18 of the '508 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 18 of the '508 Patent been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents such as:

(A)     US 5,451,430 grant published on 19 September 1995;

(B)     A paper entitled: *'Clues to the process used by General Electric to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems & Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

(C)     WO 01/72406 published on the 4 October 2001;

(D)     EP0671482 published on 13 September 1995;

(E)     A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

(F)     A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.


219.    The subject matter of each of the documents stated in paragraph 218(a)(i) were at all material times common general knowledge.


**Lack of Inventive Step**

220.    The alleged invention in Claim 18 of the '508 Patent involved no inventive step.


**Particulars**

(a)     The alleged invention in Claim 18 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 18 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents referred to in paragraph 218(a)(i) above;


(ii)    The following further documents:

(A)     US 2002/0081260 published on 27 June 2002;

(B) US 4,124,690 grant published on 7 November 1978;

(C) US 4,174,380 grant published on 13 November 1979;

(D) WO 02/13958 published on 21 February 2002;

(E) WO 01/14050 published on 1 March 2001

(F) WO 01/72404 published on 4 October 2001;

(G) An article entitled; "L.K.I. Co., "The American Trader making process of changing the colour and gloss of natural diamond", Jayantilal Shah, Maniratna, 13 April 1999 based on a press release from Pegasus Overseas Limited, Lazare Kaplan International and General Electric Company published on 25 March 1999;

(H) An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and

(iii) The common general knowledge.

**<u>Lack of Clear and Complete Disclosure</u>**

220A. The alleged invention in Claim 18 of the '508 Patent lacks clear and complete disclosure.

(a) The specification of the '508 Patent does not disclose the invention clearly and completely enough for it to be performed by a person skilled in the art.

**<u>Particulars</u>**

(i) The term *"…CVD diamond…"* is very broad and can be interpreted as both single crystal CVD diamond material as well as poly-crystalline CVD diamond material.

221. If Claim 24 of the '508 Patent is not dependent on Claim 7 of the '508 Patent, the priority date of Claim 24 of the '508 Patent is 6 September 2002.

**Lack of Novelty**

222. The alleged invention in Claim 24 of the '508 Patent was not new.

**Particulars**

(a) The alleged invention in Claim 24 of the '508 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 24 of the '508 Patent been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

 (i) Documents published in various scientific publications, journals and patent documents such as:

 (A) US 5,451,430 grant published on 19 September 1995;

 (B) A paper entitled: *'Clues to the process used by General Electric to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems & Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

 (C) WO 01/72406 published on 4 October 2001;

 (D) EP0671482 published on 13 September 1995;

 (E) A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

 (F) A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

223.  The subject matter of each of the documents stated in paragraph 222(a)(i) were at all material times common general knowledge.

**Lack of Inventive Step**

224.  The alleged invention in Claim 24 of the '508 Patent involved no inventive step.

**Particulars**

(a)  The alleged invention in Claim 24 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 24 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)  All the documents referred to in paragraph 222(a)(i) above;

(ii)  The following further documents:

  (A)  US 2001/0031237 published on 18 October 2001;

  (B)  WO 02/13958 published on 21 February 2002;

  (C)  WO 01/72404 published on 4 October 2001;

  (D)  US 2002/0081260 published on 27 June 2002;

  (E)  An article entitled; "L.K.I. Co., "The American Trader making process of changing the colour and gloss of natural diamond", Jayantilal Shah, Maniratna, 13 April 1999 based on a press release from Pegasus Overseas Limited, Lazare Kaplan International and General Electric Company published on 25 March 1999;

(F)     An article entitled "*NovaDiamond Introduces New Enhancement*"
        – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1;
        pp 1, 29-30; 7 January 2000; and

(iii)   The common general knowledge.

*Claim 25 of the '508 Patent*

225.    If Claim 25 of the '508 Patent is not dependent on Claim 7 of the '508 Patent, the
        priority date of Claim 25 of the '508 Patent is 6 September 2002.

**Lack of Novelty**

226.    The alleged invention in Claim 25 of the '508 Patent was not new.

**Particulars**

(a)     The alleged invention in Claim 25 of the '508 Patent formed part of the state of
        the art in that it had, before the priority date of the alleged invention in Claim 25
        of the '508 Patent been made available to the public. Hereunder the Defendant
        will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and
        patent documents such as:

        (A)     US 5,451,430 grant published on 19 September 1995;

        (B)     A paper entitled: *'Clues to the process used by General Electric
                to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems &
                Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

        (C)     WO 01/72406 published on 4 October 2001;

        (D)     EP0671482 published on 13 September 1995;

    (E)  A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

    (F)  A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

227. The subject matter of each of the documents stated in paragraph 226(a)(i) were at all material times common general knowledge.

## Lack of Inventive Step

228. The alleged invention in Claim 25 of the '508 Patent involved no inventive step.

## Particulars

(a) The alleged invention in Claim 25 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 25 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

  (i)  All the documents referred to in paragraph 226(a)(i) above;

  (ii)  The following further documents:

    (A)  US 2001/0031237 published on 18 October 2001;

    (B)  WO 02/13958 published on 21 February 2002;

    (C)  WO 01/72404 published on 4 October 2001;

    (D)  US 2002/0081260 published on 27 June 2002;

(E)     An article entitled; "L.K.I. Co., "The American Trader making process of changing the colour and gloss of natural diamond", Jayantilal Shah, Maniratna, 13 April 1999 based on a press release from Pegasus Overseas Limited, Lazare Kaplan International and General Electric Company published on 25 March 1999;

(F)     An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and

(iii)     The common general knowledge.

**Lack of Clear and Complete Disclosure**

228A.   The alleged invention in Claim 24 and 25 of the '508 Patent lacks clear and complete disclosure.

(a)     The specification of the '508 Patent does not disclose the invention clearly and completely enough for it to be performed by a person skilled in the art.

**Particulars**

(i)     The term *"…CVD diamond…"* is very broad and can be interpreted as both single crystal CVD diamond material as well as poly-crystalline CVD diamond.

*Claim 38 of the '508 Patent*

229.    If Claim 38 of the '508 Patent is not dependent on Claim 7 of the '508 Patent, the priority date of Claim 38 of the '508 Patent is 6 September 2002.

## Lack of Novelty

230.    The alleged invention in Claim 38 of the '508 Patent was not new.


## Particulars

(a)    The alleged invention in Claim 38 of the '508 Patent formed part of the state of

the art in that it had, before the priority date of the alleged invention in Claim 38

of the '508 Patent been made available to the public. Hereunder the Defendant

will rely upon the following, including but not limited to:


(i)    Documents published in various scientific publications, journals and

patent documents such as:

(A)    US 5,451,430 grant published on 19 September 1995;

(B)    A paper entitled: *'Clues to the process used by General Electric

to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems &

Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

(C)    WO 01/72404 published on 4 October 2001;

(D)    EP0671482 published on 13 September 1995;

(E)    WO 01/72406 published on 4 October 2001;

(F)    A paper entitled: 'The colour of diamond and how it may be

changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6,

341-359; and

(G)    A paper entitled: "*Diamond: Natural, Treated or Synthetic?

Identification at the start of the new millennium*" - J. Van Royen et

al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.


231.    The subject matter of each of the documents stated in paragraph 230(a)(i) were

at all material times common general knowledge.

**Lack of Inventive Step**

232.    The alleged invention in Claim 38 of the '508 Patent involved no inventive step.


**Particulars**

(a)    The alleged invention in Claim 38 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 38 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:


    (i)    All the documents referred to in paragraph 230(a)(i) above;


    (ii)    The following further documents:

        (A)    A paper entitled: '*Spectroscopic evidence of GE POL HPHT-treated natural type IIa diamonds*' by David Fisher and Raymond A Spits, Gems & Gemology, Vol 36, No. 1, page 42-49, Spring 2000;

        (B)    US 4,950,625 published on August 21, 1990;

        (C)    A paper entitled: *'GE POL Diamonds:Before and After'* – Christopher P. Smith, George Bosshart, Johann Ponahlo, Vera M. F. Hammer, Helmut Klapper and Karl Schmetzer, *Gems & Gemology*, Vol. 36 Issue 3, pp. 192-215, fall 2000;

        (D)    An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and


    (iii)    The common general knowledge.

233.    If Claim 39 of the '508 Patent is not dependent on Claim 7 of the '508 Patent, the priority date of Claim 39 of the '508 Patent is 6 September 2002.

## Lack of Novelty

234.    The alleged invention in Claim 39 of the '508 Patent was not new.

## Particulars

(a)    The alleged invention in Claim 39 of the '508 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 39 of the '508 Patent been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

   (i)    Documents published in various scientific publications, journals and patent documents such as:

      (A)    US 5,451,430 grant published on 19 September 1995;

      (B)    A paper entitled: *'Clues to the process used by General Electric to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems & Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

      (C)    WO 01/72406 published on 4 October 2001;

      (D)    EP0671482 published on 13 September 1995;

      (E)    A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

      (F)    A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

235. The subject matter of each of the documents stated in paragraph 234(a)(i) were at all material times common general knowledge.

## **Lack of Inventive Step**

236. The alleged invention in Claim 39 of the '508 Patent involved no inventive step.

## **Particulars**

(a) The alleged invention in Claim 39 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 39 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i) All the documents referred to in paragraph 234(a)(i) above;

(ii) The following further documents:

(A) A paper entitled: *'Rapid growth of single-crystal diamond on diamond substrates'* – G. Janssen, W. Vollenberg, L.J. Giling, W.J.P. van Enckervort, J.J.D. Schamineé & M. Seal, Surface and coatings Technology, Vol. 47, Issues 1–3, pp. 113-126, August 1991;

(B) A paper entitled: *'Characterization of Thick Homoepitaxial Film on Diamond (001) Substrate II'* – T.Tsuno JNDF 9th Diamond Symposium, no. p09, 1995

(C) A paper entitled*: 'The kinetics of the aggregation of nitrogen atoms in diamond'* – T. Evans, Zengdu Qi, Proceedings Royal Society London, A381, 159-178, 1982;

(D)     A paper entitled: 'High-pressure synthesis of high-purity diamond crystal' – Sumiya et al., Diamond and Related Materials 5 (1996) 1359-1365

(E)     WO 01/72404 published on 4 October 2001;

(F)     A chapter in the textbook entitled: '*Optical Properties of Diamond A Data Handbook*' – Dr. Sc. Alexander M. Zaitsev, Chapter 5: '*Optical Electronic Transition*', page 125 – 372, published in 2000;

(G)     An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and

(iii)    The common general knowledge.


*Claim 40 of the '508 Patent*

237.    If Claim 40 of the '508 Patent is not dependent on Claim 7 of the '508 Patent, the priority date of Claim 40 of the '508 Patent is 6 September 2002.


**Lack of Novelty**

238.    The alleged invention in Claim 40 of the '508 Patent was not new.


**Particulars**

(a)     The alleged invention in Claim 40 of the '508 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 40 of the '508 Patent been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents such as:

(A)     US 5,451,430 grant published on 19 September 1995;

(B)     A paper entitled: *'Clues to the process used by General Electric to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems & Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

(C)     WO 01/72406 published on 4 October 2001;

(D)     EP0671482 published on 13 September 1995;

(E)     A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

(F)     A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

239.    The subject matter of each of the documents stated in paragraph 238(a)(i) were at all material times common general knowledge.

## Lack of Inventive Step

240.    The alleged invention in Claim 40 of the '508 Patent involved no inventive step.

## Particulars

(a)     The alleged invention in Claim 40 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 40 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents referred to in paragraph 238(a)(i) above;

(ii)    The following further documents:

  (A)    A chapter in the textbook entitled: '*Optical Properties of Diamond A Data Handbook*' – Dr. Sc. Alexander M. Zaitsev, Chapter 5: '*Optical Electronic Transition*', page 125 – 372, published in 2000;

  (B)    An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and

(iii)   The common general knowledge.

## Lack of Clear and Complete Disclosure

240A.  The alleged invention in Claim 39 and 40 of the '508 Patent lacks clear and complete disclosure.

(a)    The specification of the '508 Patent does not disclose the invention clearly and completely enough for it to be performed by a person skilled in the art.

## Particulars

(i)     The material part of Claim 39 of the '508 Patent recites:

*A method according to any one of the preceding claims wherein the single crystal CVD diamond has an **absorption band centred at about 350 nm** and the heat treatment is carried out under conditions suitable to alter the absorption band in a way that the colour of the diamond is enhanced.*

(ii)     The material part of Claim 40 of the '508 Patent recites:

*A method according to any one of the preceding claims wherein the single crystal CVD diamond has an* **absorption band centred at about 510 nm** *and the heat treatment is carried out under conditions suitable to alter the absorption band in a way that the colour of the diamond is enhanced*

(iii)    Page 20-21, Table 1 of the specification of the '508 Patent lists 7 cases of "…*absorption bands that can be found in as-grown single crystal CVD diamond…*" Of these 7 cases, 3 cases do not show presence of absorption band centred at about 350 nm and 510 nm. The specification therefore creates a doubt over presence of 350 nm and 510 nm band in CVD diamonds.

*Claim 41 of the '508 Patent*

241.    If Claim 41 of the '508 Patent is not dependent on Claim 7 of the '508 Patent, the priority date of Claim 41 of the '508 Patent is 6 September 2002.

## Lack of Novelty

242.    The alleged invention in Claim 41 of the '508 Patent was not new.

## Particulars

(a)     The alleged invention in Claim 41 of the '508 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 41 of the '508 Patent been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents such as:

(A)     US 5,451,430 grant published on 19 September 1995;

(B)     WO 01/72406 published on 4 October 2001;

(C)     A paper entitled: *'Clues to the process used by General Electric to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems & Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

(D)     WO 01/72404 published on 4 October 2001;

(E)     EP0671482 published on 13 September 1995;

(F)     A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

(G)     A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

243.    The subject matter of each of the documents stated in paragraph 242(a)(i) were at all material times common general knowledge.

## Lack of Inventive Step

244.    The alleged invention in Claim 41 of the '508 Patent involved no inventive step.

## Particulars

(a)     The alleged invention in Claim 41 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 41 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i) All the documents referred to in paragraph 242(a)(i) above;

(iA) The following further documents:

    (A) US 4,950,625 published on August 21, 1990;

    (B) A paper entitled: *'GE POL Diamonds:Before and After'* – Christopher P. Smith, George Bosshart, Johann Ponahlo, Vera M. F. Hammer, Helmut Klapper and Karl Schmetzer, *Gems & Gemology*, Vol. 36 Issue 3, pp. 192-215, fall 2000;

    (C) An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and

(ii) The common general knowledge.

*Claim 44 of the '508 Patent*

245. If Claim 44 of the '508 Patent is not dependent on Claim 7 of the '508 Patent, the priority date of Claim 44 of the '508 Patent is 6 September 2002.

**Lack of Novelty**

246. The alleged invention in Claim 44 of the '508 Patent was not new.

**Particulars**

(a) The alleged invention in Claim 44 of the '508 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 44 of the '508 Patent been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i) Documents published in various scientific publications, journals and patent documents such as:

(A) US 5,451,430 grant published on 19 September 1995;

(B) A paper entitled: *'Clues to the process used by General Electric to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems & Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

(C) WO 01/72406 published on 4 October 2001;

(D) EP0671482 published on 13 September 1995;

(E) A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

(F) A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

247. The subject matter of each of the documents stated in paragraph 246(a)(i) were at all material times common general knowledge.

## Lack of Inventive Step

248. The alleged invention in Claim 44 of the '508 Patent involved no inventive step.

## Particulars

(a) The alleged invention in Claim 44 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 44 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     All the documents referred to in paragraph 246(a)(i) above;

(ii)    The following further documents:

    (A)     US 2002/0081260 published on 27 June 2002;

    (B)     WO 01/72404 published on 4 October 2001;

    (C)     WO 02/13958 published on 21 February 2002;

    (D)     An article entitled "*NovaDiamond Introduces New Enhancement*"

        – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1;

        pp 1, 29-30; 7 January 2000; and

(iii)   The common general knowledge.

*Claim 45 of the '508 Patent*

249.    If Claim 45 of the '508 Patent is not dependent on Claim 7 of the '508 Patent, the priority date of Claim 45 of the '508 Patent is 6 September 2002.

**Lack of Novelty**

250.    The alleged invention in Claim 45 of the '508 Patent was not new.

**Particulars**

(a)    The alleged invention in Claim 45 of the '508 Patent formed part of the state of the art in that it had, before the priority date of the alleged invention in Claim 45 of the '508 Patent been made available to the public. Hereunder the Defendant will rely upon the following, including but not limited to:

(i)     Documents published in various scientific publications, journals and patent documents such as:

    (A)     US 5,451,430 grant published on 19 September 1995;

(B)     A paper entitled: *'Clues to the process used by General Electric to enhance the GE POL diamonds'* – Karl Schmetzer, *Gems & Gemology*, Vol. 35 Issue 4, pp. 186-190, winter 1999;

(C)     WO 01/72406 published on 4 October 2001;

(D)     EP0671482 published on 13 September 1995;

(E)     A paper entitled: 'The colour of diamond and how it may be changed' – Alan T. Collins, Journal of Gemmology, 2001, 27, 6, 341-359; and

(F)     A paper entitled: "*Diamond: Natural, Treated or Synthetic? Identification at the start of the new millennium*" - J. Van Royen et al; Antwerp Facets; Vol 32, pp 6 – 15; September 1999.

251.    The subject matter of each of the documents stated in paragraph 250(a)(i) were at all material times common general knowledge.


**Lack of Inventive Step**

252.    The alleged invention in Claim 45 of the '508 Patent involved no inventive step.


**Particulars**

(a)    The alleged invention in Claim 45 of the '508 Patent involved no inventive step in that it was obvious to a person skilled in the art, having regard to the matter which formed part of the state of the art before the priority date of the alleged invention in Claim 45 of the '508 Patent. Hereunder the Defendant will rely upon the following, including but not limited to:


(i)     All the documents referred to in paragraph 250(a)(i)(A) above;

(ii)    The following further documents:

    (A)    US 2002/0081260 published on 27 June 2002;

    (B)    WO 01/72404 published on 4 October 2001

    (C)    WO 02/13958 published on 21 February 2002;

    (D)    An article entitled "*NovaDiamond Introduces New Enhancement*" – Tzipora Templeman; Rapaport Diamond Report; Vol 23 No. 1; pp 1, 29-30; 7 January 2000; and

(iii)   The common general knowledge.

## 3)    CLAIMS 8 TO 10, 12 TO 18, 24, 25, 38 TO 41, 44 AND 45 THAT ARE DIRECTLY OR INDIRECTLY DEPENDENT ON CLAIM 7, WHERE CLAIM 7 HAS A PRIORITY DATE OF 5 SEPTEMBER 2003

253.    If Claims 8 to 10, 12 to 18, 24, 25, 38 to 41, 44, 45 of the '508 Patent are directly or indirectly dependent on Claim 7, they do not form a patentable invention. Particulars are as follows:

*Claim 8 of the '508 Patent*

254.    If Claim 8 of the '508 Patent is directly or indirectly dependent on Claim 7 of the '508 Patent, Claim 8 will have a priority date of 5 September 2003.

**Lack of Novelty**

255.    The alleged invention in Claim 8 of the '508 Patent was not new. The particulars in paragraphs 188(a) to 189 are repeated and adopted.

**Lack of Inventive Step**

256.    The alleged invention in Claim 8 of the '508 Patent involved no inventive step. The particulars in paragraphs 190(a)(i) to 190(a)(iii) are repeated and adopted, with the addition of the following documents:

(a)    A paper entitled: *'Single-Qubit Operations with the Nitrogen-Vacancy Center in Diamond'* – T.A. Kennedy, F.T. Charnock, J.S. Colton, J.E. Butler, R.C. Linares & P.J. Doering, Physica Status Solidi (B), Vol. 233, Issue 3, pp. 416-426, October 2002; and

(b)    A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002.

*Claim 9 of the '508 Patent*

257.    If Claim 9 of the '508 Patent is directly or indirectly dependent on Claim 7 of the '508 Patent, Claim 9 will have a priority date of 5 September 2003.

**Lack of Novelty**

258.    The alleged invention in Claim 9 of the '508 Patent was not new. The particulars in paragraphs 192(a)(i) and 193 are repeated and adopted.

**Lack of Inventive Step**

259.    The alleged invention in Claim 9 of the '508 Patent involved no inventive step. The particulars in paragraph 194(a)(i) to 194(a)(iii) are repeated and adopted, with the addition of the following document:

(a)     A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002;

*Claim 10 of the '508 Patent*

260.    If Claim 10 of the '508 Patent is directly or indirectly dependent on Claim 7 of the '508 Patent, Claim 10 will have a priority date of 5 September 2003.

## Lack of Novelty

261.    The alleged invention in Claim 10 of the '508 Patent was not new. The particulars in paragraphs 196(a)(i) to 197 are repeated and adopted.

## Lack of Inventive Step

262.    The alleged invention in Claim 10 of the '508 Patent involved no inventive step. The particulars in paragraphs 198(a)(i) to 198(a)(iii) are repeated and adopted, with the addition of the following document:

(a)     A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002.

*Claim 12 of the '508 Patent*

263.    If Claim 12 of the '508 Patent is directly or indirectly dependent on Claim 7 of the '508 Patent, Claim 12 will have a priority date of 5 September 2003.

264. The alleged invention in Claim 12 of the '508 Patent was not new. The particulars in paragraphs 200(a)(i) to 201 are repeated and adopted.

**Lack of Inventive Step**

265. The alleged invention in Claim 12 of the '508 Patent involved no inventive step. The particulars in paragraphs 202(a)(i) to 202(a)(iii) are repeated and adopted, with the addition of the following documents:

(a) A paper entitled: *'Single-Qubit Operations with the Nitrogen-Vacancy Center in Diamond'* – T.A. Kennedy, F.T. Charnock, J.S. Colton, J.E. Butler, R.C. Linares & P.J. Doering, Physica Status Solidi (B), Vol. 233, Issue 3, pp. 416-426, October 2002; and

(b) A paper entitled: *'Status of the R&Ds on Diamond Particle Detectors'* – Mara Bruzzi; given at the 11th International Workshop on Vertex Detectors at the Ohana Keauhou Beach Resort 78-6740, Alii Drive, Kailua-Kona, Hawaii was presented between the 4 - 8 November 2002.

*Claim 13 of the '508 Patent*

266. If Claim 13 of the '508 Patent is directly or indirectly dependent on Claim 7 of the '508 Patent, Claim 13 will have a priority date of 5 September 2003.

**Lack of Novelty**

267. The alleged invention in Claim 13 of the '508 Patent was not new. The particulars in paragraphs 204(a)(i) to 205 are repeated and adopted.

268.    The alleged invention in Claim 13 of the '508 Patent involved no inventive step. The particulars in paragraphs 206(a)(i) to 206(a)(iii) are repeated and adopted, with the addition of the following document:

(a)     A paper entitled: *'Single-Qubit Operations with the Nitrogen-Vacancy Center in Diamond'* – T.A. Kennedy, F.T. Charnock, J.S. Colton, J.E. Butler, R.C. Linares & P.J. Doering, Physica Status Solidi (B), Vol. 233, Issue 3, pp. 416-426, October 2002.

*Claim 14 of the '508 Patent*

269.    If Claim 14 of the '508 Patent is directly or indirectly dependent on Claim 7 of the '508 Patent, Claim 14 will have a priority date of 5 September 2003.

**Lack of Novelty**

270.    The alleged invention in Claim 14 of the '508 Patent was not new. The particulars in paragraphs 208(a)(i) to 209 are repeated and adopted.

**Lack of Inventive Step**

271.    The alleged invention in Claim 14 of the '508 Patent involved no inventive step. The particulars in paragraphs 210(a)(i) to 210(a)(iii) are repeated and adopted, with the addition of the following document:

(a)     A paper entitled: *'Single-Qubit Operations with the Nitrogen-Vacancy Center in Diamond'* – T.A. Kennedy, F.T. Charnock, J.S. Colton, J.E. Butler, R.C. Linares & P.J. Doering, Physica Status Solidi (B), Vol. 233, Issue 3, pp. 416-426, October 2002.

272.    If Claim 15 of the '508 Patent is directly or indirectly dependent on Claim 7 of the
        '508 Patent, Claim 15 will have a priority date of 5 September 2003.


## Lack of Novelty

272A.   The alleged invention in Claim 15 of the '508 Patent was not new. The particulars
        in paragraphs 211A(a)(i) to 211B are repeated and adopted.


## Lack of Inventive Step

273.    The alleged invention in Claim 15 of the '508 Patent involved no inventive step.
        The particulars in paragraphs 212(a)(Ai) to 212(a)(ii) are repeated and adopted.


*Claim 16 of the '508 Patent*

274.    If Claim 16 of the '508 Patent is directly or indirectly dependent on Claim 7 of the
        '508 Patent, Claim 16 will have a priority date of 5 September 2003.


## Lack of Novelty

274A.   The alleged invention in Claim 16 of the '508 Patent was not new. The particulars
        in paragraphs 213A(a)(i) to 213B are repeated and adopted.


## Lack of Inventive Step

275.    The alleged invention in Claim 16 of the '508 Patent involved no inventive step.
        The particulars in paragraphs 214(a)(Ai) to 214(a)(ii) are repeated and adopted.


*Claim 17 of the '508 Patent*

276.    If Claim 17 of the '508 Patent is directly or indirectly dependent on Claim 7 of the
        '508 Patent, Claim 17 will have a priority date of 5 September 2003.

276A.   The alleged invention in Claim 17 of the '508 Patent was not new. The particulars in paragraphs 215A(a)(i) to 215B are repeated and adopted.

**Lack of Inventive Step**

277.    The alleged invention in Claim 17 of the '508 Patent involved no inventive step. The particulars in paragraphs 216(a)(Ai) and 216(a)(ii) are repeated and adopted.

*Claim 18 of the '508 Patent*

278.    If Claim 18 of the '508 Patent is directly or indirectly dependent on Claim 7 of the '508 Patent, Claim 18 will have a priority date of 5 September 2003.

**Lack of Novelty**

279.    The alleged invention in Claim 18 of the '508 Patent was not new. The particulars in paragraphs 218(a)(i) to 219 are repeated and adopted.

**Lack of Inventive Step**

280.    The alleged invention in Claim 18 of the '508 Patent involved no inventive step. The particulars in paragraphs 220(a)(i) to 220(a)(iii) are repeated and adopted.

*Claim 24 of the '508 Patent*

281.    If Claim 24 of the '508 Patent is directly or indirectly dependent on Claim 7 of the '508 Patent, Claim 24 will have a priority date of 5 September 2003.

**Lack of Novelty**

282.    The alleged invention in Claim 24 of the '508 Patent was not new. The particulars in paragraphs 222(a)(i) to 223 are repeated and adopted.

**Lack of Inventive Step**

283.    The alleged invention in Claim 24 of the '508 Patent involved no inventive step. The particulars in paragraphs 224(a)(i) to 224(a)(iii) are repeated and adopted, with the addition of the following document:

(a)    US 2002/0172638 published on 21 November 2002.

*Claim 25 of the '508 Patent*

284.    If Claim 25 of the '508 Patent is directly or indirectly dependent on Claim 7 of the '508 Patent, Claim 25 will have a priority date of 5 September 2003.

**Lack of Novelty**

285.    The alleged invention in Claim 25 of the '508 Patent was not new. The particulars in paragraphs 226(a)(i) to 227 are repeated and adopted.

**Lack of Inventive Step**

286.    The alleged invention in Claim 25 of the '508 Patent involved no inventive step. The particulars in paragraphs 228(a)(i) to 228(a)(iii) are repeated and adopted.

*Claim 38 of the '508 Patent*

287.    If Claim 38 of the '508 Patent is directly or indirectly dependent on Claim 7 of the '508 Patent, Claim 38 will have a priority date of 5 September 2003.

**Lack of Novelty**

288.    The alleged invention in Claim 38 of the '508 Patent was not new. The particulars in paragraphs 230(a)(i) to 230(a)(i)(E) are repeated and adopted.

**Lack of Inventive Step**

289.    The alleged invention in Claim 38 of the '508 Patent involved no inventive step. The particulars in paragraphs 232(a)(i) to 0 are repeated and adopted, with the addition of the following document:

(a)     A paper entitled: '*High pressure-high temperature treatment of natural diamonds*' by J van Royen and Yu Pal'yanov; Journal of Physics: Condensed Mater, 14 (2002) 10953 – 10956; (Published 25 October 2002).

*Claim 39 of the '508 Patent*

290.    If Claim 39 of the '508 Patent is directly or indirectly dependent on Claim 7 of the '508 Patent, Claim 39 will have a priority date of 5 September 2003.

**Lack of Novelty**

291.    The alleged invention in Claim 39 of the '508 Patent was not new. The particulars in paragraphs 234(a)(i) to 235 are repeated and adopted.

**Lack of Inventive Step**

292.    The alleged invention in Claim 39 of the '508 Patent involved no inventive step. The particulars in paragraphs 236(a)(i) to 236(a)(iii) are repeated and adopted.

*Claim 40 of the '508 Patent*

293.    If Claim 40 of the '508 Patent is directly or indirectly dependent on Claim 7 of the '508 Patent, Claim 40 will have a priority date of 5 September 2003.

**Lack of Novelty**

294.    The alleged invention in Claim 40 of the '508 Patent was not new. The particulars in paragraphs 238(a)(i) to 239 are repeated and adopted.

**Lack of Inventive Step**

295.    The alleged invention in Claim 40 of the '508 Patent involved no inventive step. The particulars in paragraphs 240(a)(i) to 240(a)(iii) are repeated and adopted.

*Claim 41 of the '508 Patent*

296.    If Claim 41 of the '508 Patent is directly or indirectly dependent on Claim 7 of the '508 Patent, Claim 41 will have a priority date of 5 September 2003.

**Lack of Novelty**

297.    The alleged invention in Claim 41 of the '508 Patent was not new. The particulars in paragraphs 242(a)(i) to 243 are repeated and adopted.

**Lack of Inventive Step**

298.    The alleged invention in Claim 41 of the '508 Patent involved no inventive step. The particulars in paragraphs 244(a)(i) to 244(a)(ii) are repeated and adopted, with the addition of the following document:

(a)    A paper entitled: '*High pressure-high temperature treatment of natural diamonds*' by J van Royen and Yu Pal'yanov; Journal of Physics: Condensed Mater, 14 (2002) 10953 – 10956; (Published 25 October 2002).

*Claim 44 of the '508 Patent*

299.    If Claim 44 of the '508 Patent is directly or indirectly dependent on Claim 7 of the '508 Patent, Claim 44 will have a priority date of 5 September 2003.

**Lack of Novelty**

300.    The alleged invention in Claim 44 of the '508 Patent was not new. The particulars in paragraphs 246(a)(i) to 247 are repeated and adopted.

## Lack of Inventive Step

301. The alleged invention in Claim 44 of the '508 Patent involved no inventive step. The particulars in paragraphs 248(a)(i) to 248(a)(iii) are repeated and adopted.

*Claim 45 of the '508 Patent*

302. If Claim 45 of the '508 Patent is directly or indirectly dependent on Claim 7 of the '508 Patent, Claim 45 will have a priority date of 5 September 2003.

## Lack of Novelty

303. The alleged invention in Claim 45 of the '508 Patent was not new. The particulars in paragraphs 250(a)(i) to 251 are repeated and adopted.

## Lack of Inventive Step

304. The alleged invention in Claim 45 of the '508 Patent involved no inventive step. The particulars in paragraphs 252(a)(i) to 252(a)(iii) are repeated and adopted.

304A. For the avoidance of doubt, given the manner in which the asserted claims of the '508 Patent are drafted such that every subsequent claim must be read with any one of the preceding claims (whether expressly identified in the claim or not), and given the Plaintiff's pleading at paragraph 2 of the Particulars of Infringement (Amendment No. 1), the Defendant relies on each and every prior art pleaded for the preceding claim, to invalidate any of the subsequent asserted claims of the '508 Patent which is read with the preceding claim.

**B. Substantial Amendments made to the Plaintiff's patents before the European, United Kingdom and Japan Patent Offices**

305.     The '508 Patent was obtained on the basis of misrepresentations. The following are the best particulars that the Defendant is able to provide pending further discovery and/or interrogatories

**Particulars**

(a)     The '508 Patent was obtained on a misrepresentation as to the patentability of, *inter alia*, Claim 1.

    (i)     As maintained on the register of WIPO:

        (A)     Element Six Limited was the applicant of International PCT Application PCT/IB2003/003783 ("**PCT Application '3783**").

        (B)     On 27 September 2004 an IPER against the PCT Application '3783 was issued by the International Preliminary Examining Authority. The IPER raised, *inter alia*, inventive step objections as to Claims 1 to 7 and 18 to 43 of the PCT Application '3783.

            (I)     Claim 1 of PCT Application '3783 recited:

                *1.     A method of producing single crystal CVD diamond of a desired colour includes the steps of providing single crystal CVD diamond which is coloured and heat treating the diamond under conditions suitable to produce the desired colour. …*

(II)    In the IPER, the following inventive step objection to Claim 1 was raised:

"*No inventive step can be recognized in the subject matter of independent claim 1 and the dependent claims 2-7, 18-43. The subject matter of these claims does not meet the requirements of Article 33(3) PCT. The reasons are the following. Changing the colour of natural diamond by heat treatment is taught in D1. For the skilled person aware of D1, heat treating CVD diamond "under conditions suitable to produce the desired colour" as stated in claim 1 is an obvious route for investigation when solving the problem of how to change the colour of CVD diamond. The broadly worded subject matter of claim 1 defining the method in terms of a subjective result (desired colour) to be achieved contains no technical feature/result which the skilled person would find non-obvious/surprising. …*"

(ii)    As maintained on the register of the EPO:

(A)    Element Six Limited was the applicant of European Patent Application No. 03793979.0.

(B)    On 6 April 2005, the EPO received EPO Form 1200 filed by the agents acting for Element Six Limited to request for entry of PCT Application '3783 into the European regional phase. The PCT Application '3783 entered the corresponding European regional

phase with the same claims as those at the time the IPER was issued.

(C)     The resulting European Patent Application No. 03793979.0 was examined by the Examining Division at the EPO. On 25 July 2005, the Examining Division issued a communication to Element Six Limited, wherein it raised the same objections as those raised in the IPER. The communication (and the annex thereto) stated as follows:

"*The examination of the above-identified application has revealed that it does not meet the requirements of the European Patent Convention for the reasons enclosed herewith. If the deficiencies indicated are not rectified the application may be refused pursuant to Article 97(1) EPC.*

*…*

*1. An international preliminary examination report has already been drawn up for the present application in accordance with the PCT. The deficiencies mentioned in that report give rise to objections under the corresponding provisions of the EPC.*

*2. The applicant is requested to file new claims which take account of the above comments.*"

(D)   On 2 December 2005, the agents acting for Element Six Limited filed a response to the communication from the Examining Division dated 25 July 2005.

(I)   In order to overcome the objections of the Examining Division, Element Six Limited made several amendments to the claims of European Patent Application No. 03793979.0. In particular, Claim 1 of European Patent Application No. 03793979.0 was amended to incorporate the subject matter of Claim 44.

(II)   The aforesaid response stated as follows:

"*Claim 1 has been amended by specifying heat treating conditions suitable to produce the desired colour, that is, by incorporating the subject matter of former dependent claim 44. In view of this amendment, former claim 44 has been removed. Former claims 45 to 61 have been renumbered as 44 to 60, respectively, and their dependencies have been amended accordingly.*

*…*

*In its communication, the Examining Division has referred to the International Preliminary Examination Report (IPER) that was drawn up for the present application under the PCT. In the IPER, the Examiner raised a lack of inventive step objection against the*

*subject matter of claims 1 to 7 and 18 to 43 of this application. However, the Examiner acknowledged that claim 44 of this application has an inventive step over the cited prior art. Therefore, in order to expedite the prosecution of this application, claim 1 has been amended by introducing the subject matter of former dependent claim 44. Consequently, the claims of this application are novel and have an inventive step over the cited prior art.*

*In section "Item V" of the IPER, the Examiner raised an objection against the phrase "under suitable conditions to produce the desired colour" in claim 1 of this application (under the paragraph labelled "Further remarks"). This objection has been overcome by the replacement of this term by the specific heat treatment details of former dependent claim 44.*"

(III)     Claim 1 of European Patent Application No. 03793979.0, as amended and marked up against Claim 1 of PCT Application '3783, recited:

*A method of producing single crystal CVD diamond of a desired colour includes the steps of providing single crystal CVD diamond which is coloured and heat treating the diamond under conditions suitable to produce the desired colour <u>in a temperature range of 1200°C-2500°C</u>*

(E)     Claim 1 of European Patent Application No. 03793979.0 was further amended. On 24 November 2010, European Patent EP1537259 was granted. Claim 1 of European Patent EP1537259, as granted and marked up against Claim 1 as set out in paragraph 305(a)(i)(B)(I) herein, recited:

A method for altering the colour of ~~producing~~ a single crystal CVD diamond ~~of a desired colour includes~~ comprising the steps of providing a brown single crystal CVD diamond ~~which is coloured~~ wherein the single crystal CVD diamond has a concentration of nitrogen in the solid diamond of 0.05 to 50 ppm and heat treating the diamond ~~under conditions suitable to produce the desired colour~~ in a temperature range of 1200°C to 2500°C under diamond stabilising pressure or in an inert or stabilising atmosphere to produce another and desirable colour in the single crystal CVD diamond.

(iiA)   As maintained on the register of the UK-IPO:

(A)     Element Six Limited was the applicant of UK Patent Application No. 0506804.4.

(B)     On 5 April 2005, the agents acting for Element Six Limited filed request for entry of PCT Application '3783 into the UK regional phase. PCT Application '3783 entered the corresponding UK

regional phase with the same claims as those at the time the IPER was issued.

(C)     The resulting UK Patent Application No. 0506804.4 was examined by the Examining Division at the UK-IPO. On 25 August 2005, the Examining Division issued a communication to Element Six Limited, wherein it raised the objections with respect to Inventive Step and Clarity of the application. The communication (and the annex thereto) stated as follows:

"2. The invention as defined in claims 1-7, 18-43, 52-61 is obvious in view of what has already been disclosed in the following documents:

WO 01/72404 A (DE BEERS) see esp. abstract

WO 01/72406 A (DE BEERS) see esp. abstract

US 2001/0031237 A (VAGARALI) see esp. abstract

Collins A.T. et al. 'Colour changes produced in natural brown diamonds by high-pressure, high-temperature treatment' Diamond and Related Materials 9 (2000) 113-122

The documents disclose methods for changing of colour of natural diamonds by heat treatment. It would be obvious to apply the disclosed methods to the problem of changing the colour of synthetic diamonds. The above claims are cited against on the basis that they merely specify the desired end result or commonplace features of the starting material, namely a single crystal CVD diamond.

…

*3. Claim 1 is unclear through the use of the phrases 'a desired colour' and 'under conditions suitable to produce the desired colour' which seeks to define the method by result rather than by features of the method, and where even that end result is undefined being subjective.*"

(D)  On 19 December 2005, the agents acting for Element Six Limited filed a response to the communication from the Examining Division dated 25 August 2005.

    (I)  In order to overcome the objections of the Examining Division, Element Six Limited amended claim 1 of UK Patent Application No. 0506804.4 to incorporate the subject matter of Claim 44, admitting that claim 44 is not obvious in view of the prior art.

    (II)  The aforesaid response stated as follows:

"*In order to expedite prosecution of this application, claim 1 has been amended by introducing the subject matter of former claim 44. **The Examiner has already acknowledged that the subject matter of claim 44 is not obvious in view of the prior art.** Therefore, by incorporating the subject matter of claim 44 into claim 1, the lack of inventive step objection is overcome.*

*In section 3 of the examination report the Examiner raised a lack of clarity objection against the phrases "under conditions suitable to produce the desired colour"*

*and "a* desired colour" in claim 1 of this application. Claim 1 has now been amended to include the specific operating conditions. Therefore, the Applicant believes that faced with a CVD diamond that is coloured, it is clear that the colour can be modified to a desired *colour (or another desired colour) using the specified conditions. Thus, the Applicant believes that this claim is clear to a person skilled in the art.*"

(III)  Claim 1 of UK Patent Application No. 0506804.4, as amended and marked up against Claim 1 of PCT Application '3783, recited:

*A method of producing single crystal CVD diamond of a desired colour includes the steps of providing single crystal CVD diamond which is coloured and heat treating the diamond ~~under conditions suitable to produce the desired colour~~ in a temperature range of 1200°C-2500°C under diamond stabilising pressure or in an inert or stabilising atmosphere.*

(E)  On 30 November 2006, the Examining Division issued a communication to Element Six Limited. The communication questioned the clarity of Claim 1 and scope of invention UK Patent Application No. GB0506804.4. It stated, *inter alia*, as follows:

*"2. On reflection Claim 1 does not clearly define the invention by not linking the heat treatment step to a change in colour of the diamond. Thus, whilst the previous form of claim which constituted definition by result was unacceptable, the modification of colour is an essential part of the invention and should be included.*

*3. The description at page 1 lines 1-4 casts doubt on the scope of the invention which is directed to modifying the colour of diamond.*

*4. The summary of the invention at page 4 should be brought into correspondence with claim 1.*

*5. The description renders the scope of the claims unclear through the use of the phrase 'the diamond of the invention ..... ' at page 27 lines 10-11."*

(F)     On 21 December 2006, the agents acting for Element Six Limited filed a response to the communication from the Examining Division dated 25 August 2005.

  (I)  In order to overcome the objections of the Examining Division, Element Six Limited further amended claim 1 and few sections of UK Patent Application No. 0506804.4.

  (II)  The aforesaid response stated as follows:

    *"Claim 1 has been amended to clarify that the invention relates to a method of converting coloured single crystal diamond to a desired colour. Basis for this amendment*

*can be found at page 13, lines 4 to 6 of the application as originally filed.*"

        (III)     Claim 1 of UK Patent Application No. 0506804.4, as amended and marked up against Claim 1 of International PCT Application '3783, now recited:

*A method of ~~producing~~ converting <u>coloured</u> single crystal ~~CVD~~ diamond ~~of~~ to a desired colour includes the steps of providing single crystal CVD diamond which is coloured and heat treating the diamond ~~under conditions suitable to produce the desired colour~~ <u>in a temperature range of 1200°C-2500°C under diamond stabilising pressure or in an inert or stabilising atmosphere</u>.*

    (G)    On 27 March 2007, UK Patent Application No. GB0506804.4 went through to grant as UK Patent GB2409675.

(iiB)    As maintained on the register of the JPO:

    (A)    Element Six Limited was the applicant of Japan Patent Application No. JPA2005-538018.

    (B)    On 4 March 2005, the PCT Application '3783 entered the corresponding Japan regional phase with the same claims as those at the time the IPER was issued.

(C)     The Japan Patent Application No. JPA2005-538018 was examined by the Examining Division at the JPO. On 25 August 2009, the Examining Division issued a communication notifying Element Six Limited of its reasons for the refusal of the application.

(D)     On 25 December 2009, Element Six Limited filed an amendment in response to the communication from the Examining Division dated 31 August 2009 for Japan Patent Application No. JPA2005-538018.

(E)     On 12 February 2010 the Examining Division issued a communication to Element Six Limited, notifying about the reasons for refusal of Japan Patent Application No. JPA2005-538018.

(F)     On 20 August 2010 the Examining Division issued a communication to Element Six Limited, giving decision of refusal of Japan Patent Application No. JPA2005-538018.

(G)     On 17 December 2010, Element Six Limited filed an amendment in response to the communication from the Examining Division dated 25 August 2010 for Japan Patent Application No. JPA2005-538018.

(I)     The new Claim 1 recited:

        "*A method of changing colors of single crystal CVD diamond including the steps of providing brown single*

244

*crystal CVD diamond which has a nitrogen concentration in the solid diamond of 0.05 - 50 ppm and subjecting to heat treatment in a temperature range of 1200°C - 2500°C under diamond stabilizing pressure or in an inert or stabilizing atmosphere in a way that produces another color in the single crystal CVD diamond.*"

(H)     On 28 February 2011, Claim 1 of Japan Patent Application No. JPA2005-538018 went through to grant as Claim 1 of Japan Patent 4711677.

(I)     On 17 December 2015 Element Six Limited transferred the rights of the JP 4711677 B to the Plaintiff by specific succession.

(iii)   As maintained on the register of IPOS:

(A)     Element Six Limited was the applicant of Singapore Patent Application No. 200500965-9.

(B)     On 18 February 2005, the agents acting for Element Six Limited filed Patents Form 37 ("**PF37**") (for entry into national phase) with IPOS. The PCT Application '3783 entered the national phase in Singapore with the claims identical to those at the time the IPER was issued.

(C)     On 1 June 2007, the agents acting for Element Six Limited filed Patents Form 14 ("**PF14**") (indicating payment of the grant fee) with IPOS.

(D)     The claims that went through to grant in Singapore were the unamended claims of PCT Application '3783. In particular, Claim 1 of the '508 Patent (which is the broadest claim) recites:

> 1.     *A method of producing single crystal CVD diamond of a desired colour includes the steps of providing single crystal CVD diamond which is coloured and heat treating the diamond under conditions suitable to produce the desired colour. …*

(E)     On 31 December 2013, Element Six Limited assigned the '508 Patent to the Plaintiff. On 22 July 2014, a request in Form CM8 to register the aforesaid assignment was filed with IPOS. On 12 November 2014, the aforesaid assignment was recorded on the register.

(iv)     In the circumstances set out in paragraphs 305(a)(i)(B)(II) and 305(a)(ii)(C) to 305(a)(iiB)(K) herein, Element Six Limited knew or ought reasonably to have known that the claimed invention in, *inter alia*, Claim 1 of the PCT Application '3783 was not a patentable invention for lack of inventive step.

(v)     On 1 June 2007, at the time of filing PF14 for Singapore Patent Application No. 200500965-9 (as pleaded in paragraph 305(a)(iii)(C) herein), Element Six Limited knew or ought reasonably to have known of the need to amend, *inter alia*, Claim 1 of Singapore Patent Application No. 200500965-9 (and consequently Claim 1 of the '508 Patent).

(vi)     However, no amendments were made to Singapore Patent Application No. 200500965-9 or the '508 Patent to overcome the inventive step objections within the aforesaid IPER.

(vii)    For the reasons pleaded above, the '508 Patent was knowingly obtained on the misrepresentation that, *inter alia*, Claim 1 of the '508 Patent was patentable on its unamended broad scope.

(b)    The '508 Patent was obtained on misrepresentations which induced the examiner in the PCT international phase to accept the patentability of Claims 8 to 17 and 44 to 61 of PCT Application '3783.

(i)     During the International Phase of the PCT Application '3783, the agents acting for the applicant, Element Six Limited, received a Written Opinion dated 18 May 2004 by the EPO acting as the International Preliminary Examining Authority ("**IPEA**") which, *inter alia*, stated that all of the claims 1-61 lacked an inventive step.

(ii)    On 17 August 2004, the agents acting for Element Six Limited filed a response to the aforesaid Written Opinion.

(iii)   To address the allegation of lack of inventive step regarding claims 1-61 raised in the Written Opinion, the Agents acting for Element Six Limited, in the response, made comparisons between non-type IIa natural/HPHT diamonds and CVD type IIa diamonds. The comparison should have been between the same type of diamonds, i.e. type IIa natural/HPHT diamonds and CVD type IIa diamonds with identical nitrogen content and identical defect centers. Both brown type IIa natural diamond and brown

type IIa CVD diamond become colourless or near colourless under HPHT annealing conditions. This could not take place unless they have similar nitrogen content and defect centres.

(iv)     Although the response admitted that type IIa natural diamond existed, it failed to mention that CVD diamonds are type IIa, which otherwise would have alerted the Examiner to the fact that the arguments put forward by the agents acting for Element Six Limited, were not comparing the same types of diamond.

(v)      The above was intended to lead the Examiner to believe that there is a difference between CVD diamond and natural/HPHT diamond, which is a misrepresentation.

(vi)     On 18 February 2005, the agents acting for Element Six Limited filed Patents Form 38 (for entry into national phase) with IPOS. The PCT Application '3783 entered the national phase in Singapore as Singapore Patent Application No. 200500965-9.

(vii)    On 1 June 2007, PF14 (indicating payment of the grant fee) was filed and received at IPOS. No further amendments were made to the claims which resulted in the issuance of the '508 Patent to Element Six Limited.

(viii)   By proceeding to grant of the '508 Patent with unamended claims (which were misrepresented in the international phase to be patentable), there was a further misrepresentation that Claims 8 to 17 and 44 to 61 were patentable in Singapore.

## THE '872 PATENT AND/OR THE '508 PATENT

### A. Overlapping Parameters Resulting in Different Outcomes

306.    Either the '872 Patent and/or the '508 Patent lack clarity as a result of overlapping ranges of nitrogen in the gas phase and the product of the respective patent. The following are the best particulars that the Defendant is able to provide pending further discovery and/or interrogatories.

### Particulars

(a)     The '872 Patent and the '508 Patent are owned by the Plaintiff. The Plaintiff also owns UK Patent No. GB 2400115 (the "**115 Patent**").

(b)     The range of nitrogen in the gas phase ("source gas") converted to ppm in claim 62 of the '872 Patent is 0.3 ppm – 5 ppm.

(c)     The range of nitrogen in the gas phase ("source gas") converted to ppm in claim 15 of the '508 Patent is 0.5 ppm – 500 ppm.

(cA)    The range of nitrogen in the gas phase ("source gas") converted to ppm in claim 30 of the '115 Patent is also 0.5ppm – 500ppm.

(d)     Claim 8 of the '508 Patent is directed towards "*A method according to any one of the preceding claims wherein the single crystal CVD diamond has a concentration of nitrogen in the solid diamond of 0.05 – 50ppm*".

(e)     It can be determined that the concentration of nitrogen in the solid diamond of the '872 Patent is between 0.017 ppm and 2.83 ppm.

(eA)     The method of growing a CVD diamond according to Claim 62 and Claim 67 of the '872 Patent requires *"providing a diamond substrate having a surface which is substantially free of crystal defects"* such that *"the density of surface etch features related to defects"* to be below *"5 X $10^3/mm^2$"* and *"$10^2/mm^2$"*, respectively.

(eB)     The method of growing a CVD diamond according to Claim 33 and Claim 34 of the '115 Patent requires *"providing a diamond substrate having a surface which is substantially free of crystal defects"* such that *"the density of surface etch features related to defects"* to be below *"5 X $10^3/mm^2$"* and *"$10^2/mm^2$"*, respectively.

(eC)     Claim 68 of '872 Patent requires *"the surface of the diamond substrate on which CVD diamond growth occurs is the {100} surface.*

(eD)     Claim 32 and 35 of '115 Patent requires *"the surface of the diamond substrate on which CVD diamond growth occurs is the selected from {100}, {110}… surfaces".*

(f)     The '872 Patent and the "508 Patent possess claims with overlapping ranges of nitrogen in the gas phase and also possess values of nitrogen in the diamond that overlap. However, the '508 Patent concerns the growth of coloured or brown diamond implying lower optical qualities than diamond specified in the '872 Patent. The '872 Patent concerns the growth of diamond with excellent optical qualities.

(g)     In as much as it is not possible for overlapping ranges in nitrogen in both the diamond and the gas phase to provide both excellent (as claimed in the '872 Patent) and lower optical diamond qualities (as claimed in the '508 Patent), the

nitrogen range in either the '872 Patent and/or the 508 Patent lacks clarity in that a person skilled in the art would not be able to achieve the claimed product of the respective patent.

(h) Further, both the '872 Patent and the '115 Patent possess claims with overlapping ranges of nitrogen in gas phase, identical requirements for density of defects on substrates and identical substrate orientation for growth. However, the '115 Patent concerns the growth of coloured or fancy coloured diamond, implying lower optical qualities than diamond specified in the '872 Patent. The '872 Patent concerns the growth of diamond with excellent optical qualities as claimed in the '872 Patent.

(i) In as much as it is not possible for overlapping ranges in nitrogen in the gas phase and substrates with similar defect density to provide both excellent (as claimed in the '872 Patent) and lower optical diamond qualities (as claimed in the '115 Patent), the nitrogen ranges in at least the '872 Patent lacks clarity in that a person skilled in the art would not be able to achieve the claimed product of the respective patent.

Dated this 25th day of April 2018

*Drew&Napier*

**DREW & NAPIER LLC**
**Solicitors for the Defendant**

## IN THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

HC/S 26/2016

Between

**ELEMENT SIX TECHNOLOGIES LIMITED
(REG NO. 08206603)**

...Plaintiff

And

**IIa TECHNOLOGIES PTE. LTD.
(REG. NO. 200516961K)**

...Defendant

Amended as deleted and underlined in black pursuant to Order 20 Rule 3(1) of the Rules of Court.

Dated this 3rd day of June 2016.



Solicitors for the Plaintiff
Amica Law LLC

Amended as deleted and underlined in red pursuant to Order 20 Rule 3(3) of the Rules of Court.

Dated this 6th day of December 2016.



Solicitors for the Plaintiff
Amica Law LLC

Amended as deleted and underlined in green pursuant to Order of Court dated 14 June 2017

Dated this 7th day of July 2017



Solicitors for the Plaintiff
Amica Law LLC

Amended as deleted and underlined in blue pursuant to Order 20 Rule 3(3) of the Rules of Court and Order of Court dated 18 April 2018

Dated this 21st day of May 2018

Solicitors for the Plaintiff
Amica Law LLC

## REPLY AND DEFENCE TO COUNTERCLAIM

## (AMENDMENT NO.4)

## Reply

1.  The Plaintiff joins issue with the Defendant's Defence and Counterclaim (Amendment No.4) ("**DC**") and Particulars of Objections (Amendment No.4) ("**PO**"), both filed on 25 April 2018, save insofar as the same consists of admissions, or otherwise as stated herein.

2.  References in this Reply and Defence to Counterclaim (Amendment No.4) ("**Reply**") shall bear the same meaning as those defined in the Statement of Claim (Amendment No.1) (the "**SOC**") and Particulars of Infringement (Amendment No.1) ("**POI**") filed in the action herein on 12 April 2016.

3.  This Reply is filed without prejudice to the Plaintiff's right to apply for further and better particulars and/or to serve interrogatories against the Defendant.

4.  Regarding paragraph 4(f)(i) of the DC, the Plaintiff avers that the Defendant's denial that it deals in the manufacture and growth of CVD diamonds which are used in the aerospace industry is inconsistent with its own profile set out on its website at www.2atechnologies.com/history/ wherein it states that:

    *"Rough diamonds grown by IIa Technologies are used in the commercial sector (mechanical, manufacturing, **aerospace** industries), scientific and medical instrumentation as well as in the luxury sector." [Emphasis added.]*

5. Regarding paragraph 4(eA) of the DC, the Plaintiff avers that Pure Grown Diamonds, Inc., The Gemesis Corporation (now known as Gemesis Diamond Company) and the Defendant are all related companies in a supply chain dealing with the manufacture (including synthesis and post-synthesis processing), distribution and eventual sale of CVD diamonds.

6. Pending further discovery and/or interrogatories, the best particulars of the corporate relationship and history shared between Pure Grown Diamonds, Inc., Gemesis Diamond Company and the Defendant which the Plaintiff is able to provide are set out as follows:

   a) The Gemesis Corporation was incorporated in the US in the State of Delaware (File No 2672225) on 9 October 1996;

   b) On 26 August 1998, The Gemesis Corporation was registered to transact business in the State of Florida as a foreign corporation (Doc No F98000004848);

   c) In January 2010, members of the Mehta family, amongst others, acquired 50.1% of The Gemesis Corporation;

   d) On 1 December 2011, The Gemesis Corporation's name was changed to Gemesis Diamond Company in the State of Florida;

e) At least until in or around April 2012, Gemesis Diamond Company was involved in the offer for sale and/or sale of CVD gemstone diamonds through its website at www.gemesis.com;

f) On 13 September 2012, Gemesis Acquisition Corporation was incorporated in the State of Delaware (File No 5212499);

g) On 21 September 2012, Gemesis Acquisition Company merged with and into Gemesis Diamond Company – at the time of the merger, Gemesis Acquisition Corporation owned 99% of the outstanding shares of Gemesis Diamond Company;

h) From 16 April 2013 or earlier to at least 24 March 2016, the website of the Defendant stated that "*Jewellery using diamonds grown by Ila Technologies are available through our partner Gemesis at www.gemesis.com.*";

i) As pleaded by the Defendant, on 30 April 2013, Gem Company was incorporated in the State of Delaware (File No 5327015);

j) On 10 May 2013, Gem Company was registered to transact business in the State of New York as a foreign corporation (DOS ID 4401481);

k) On 10 May 2013, Gemesis Diamond Company was registered in the State of New York as a 'fictitious' name for Gem Company. As stated on the relevant register of the New York State Department of State Division of Corporations extract, a fictitious name is used when the actual name of a foreign entity is unavailable for use in New York State;

l) As pleaded by the Defendant, on 15 May 2013, Gem Company changed its corporate name to Gemesis, Inc.;

m) As of 15 May 2013 and up to as late as 28 July 2015, Suraj Mehta was President of Gemesis, Inc.;

n) On 23 May 2013, Gemesis, Inc. was registered to transact business in the State of Florida as a foreign corporation (Doc No F13000002247);

o) On 7 Jun 2013, Gem Company changed its registered name in the State of New York to Gemesis, Inc.;

p) From 26 February 2014 or earlier up to as late as 6 January 2015, Suraj Mehta was the sole Director of Gemesis, Inc.;

q) As pleaded by the Defendant, on 28 July 2015, Gemesis, Inc. changed its corporate name to Pure Grown Diamonds, Inc.;

r) On 25 Jan 2016, Gemesis, Inc. changed its registered name in the State of Florida to Pure Grown Diamonds, Inc.;

s) There are several other indicators that demonstrate the connection between Gemesis Diamond Company (formerly known as The Gemesis Corporation) and Pure Grown Diamonds, Inc., including but not limited to:

    i. At least as of 21 March 2016, www.gemesis.com redirects to www.puregrowndiamonds.com. The former is the website of Gemesis Diamond Company and the latter is the website of Pure Grown Diamonds, Inc.;

    ii. As of 2 January 2014, the privacy policy stated on www.gemesis.com/privacy is identical to the privacy policy stated on www.puregrowndiamonds.com/privacy as on 21 March 2016; and

    iii. As of 9 January 2014, the contact number listed on www.gemesis.com/about/contact is the same contact number

listed for www.puregrowndiamonds.com, namely, 866-799-8885, as of 21 March 2016.

7. Paragraphs 5(a)(iii)-(xi) of the DC are denied. It is obvious from the POI that, unless otherwise expressly asserted in the Plaintiff's pleadings, any of the dependent claims of the '872 Patent the Defendant is alleged to infringe relies on each and every possible permutation of the preceding claims as enumerated in paragraph 1 of the POI. For example, the reference to Claim 16(ii) of the '872 Patent is to be read with 1(ii), 1(iii), or 1(ii) and 1(iii) together and not with any of Claims 1(i), 1(iv)-(viii) and 2 to 15 which are not asserted in the POI. The Plaintiff further avers that it would be unnecessary to specify each and every possible permutation of the relevant preceding claims it is relying on, as sufficient particulars have already been provided in the Plaintiff's pleadings.

8. Regarding paragraph 5(a)(viii)(A) of the DC, the Plaintiff avers that it is not alleging infringement of Claim 51 or 52 of the '872 Patent in isolation, but rather infringement of Claim 52 read with Claim 51.

9. Regarding paragraph 5(a)(viii)(B) of the DC, the Plaintiff avers that it is alleging infringement of Claim 53 of the '872 Patent read together with Claims 51 and/or 52.

10. Paragraphs 5(b)(ii)-(vii) of the DC is denied. It is obvious from the POI that, unless expressly asserted in the Plaintiff's pleadings, any of the dependent claims of the '508 Patent the Defendant is alleged to infringe rely on each and every possible permutation of the preceding claims as enumerated in paragraph 2 of the POI. For example, the reference to Claim 5 of the '508 Patent is to be read with Claims 2, 3, or 2 and 3 together and not with Claim 4, which is not asserted in the POI. The Plaintiff further avers that it would be unnecessary to specify each and every possible permutation of the relevant preceding claims it is relying on, as sufficient particulars have already been provided in the Plaintiff's pleadings. Regarding paragraph 5(b)(vii)(B) of the DC, the Plaintiff further avers that it would be unnecessary to specify each and every possible permutation of Claims 62-71 of the '872 Patent and Claims 1-3, 5-10, 12-18, 24-25, 38-41 and 44-45 of the '508 Patent as sufficient particulars have already been provided in the Plaintiff's pleadings.

11. Regarding paragraph 5(b)(viii), the Plaintiff avers that Sample 1 was purchased from Gemesis Diamond Company at the material time from its website at www.gemesis.com. The Plaintiff further avers that Gemesis Diamond Company is related to the Defendant through the Mehta family and repeats paragraph 6 of this Reply. Pending further discovery and/or interrogatories, the Plaintiff is unable to provide further particulars on the relationship between Gemesis Diamond Company and the Defendant.

12.     Paragraph 5(b)(viii)(B)(III) of the DC is denied. The Plaintiff avers that Gemesis Diamond Company and Pure Grown Diamonds, Inc. are related or affiliated companies, as particularized in paragraph 6 of the Reply.

13.     Regarding paragraph 5(b)(viii)(B)(V) of the DC, the Plaintiff avers that the Plaintiff did not make any material change to the condition and/or characteristics of Sample 1 from the time it left the Defendant's possession, power and/or custody

14.     Paragraph 5(b)(ix) of the DC is denied. The Plaintiff avers that reference to the Mehta family is not scandalous, frivolous or vexatious. The Plaintiff shall seek to prove at trial that Pure Grown Diamonds, Inc., Gemesis Diamond Company and the Defendant are related companies involved in the manufacture (including synthesis and post-synthesis processing), distribution and sale of CVD diamonds. Paragraph 6 of the Reply is repeated.

15.     Paragraph 5(b)(x) of the DC is not admitted and the Defendant is put to strict proof thereof. The Plaintiff clarifies that the statement referred to in 4(a)(i)(B) of the POI was published from 16 April 2013 or earlier to at least 24 March 2016. The Plaintiff further avers that whether or not www.gemesis.com is controlled by the Defendant is irrelevant to whether the Defendant was supplying CVD diamond material to the Gemesis Diamond Company.

16.     Save that the Defendant admits the details that appear on Invoice number INV-REF/01-JAN-12/31, paragraph 5(b)(xA) of the DC is not admitted. The Plaintiff avers that Gemesis Diamond Company and Pure Grown Diamonds, Inc. are related or affiliated companies, as particularized in paragraph 6 of the Reply.

17.     Paragraph 5(b)(xB) of the DC is not admitted. The Plaintiff avers that Gemesis Diamond Company and Pure Grown Diamonds, Inc. are related or affiliated companies, as particularized in paragraph 6 of the Reply. The Plaintiff further avers that the redirection of the website of Gemesis Diamond Company, www.gemesis.com, to the website of Pure Grown Diamonds, Inc., www.puregrowndiamonds.com, is relevant because it supports the Plaintiff's assertion that Pure Grown Diamonds, Inc., Gemesis Diamond Company and the Defendant are all related companies in a supply chain dealing with the manufacture (including synthesis and post-synthesis processing), distribution and eventual sale of CVD diamonds.

18.     Paragraph 5(b)(xC) of the DC is not admitted. The Plaintiff avers that Gemesis Diamond Company and Pure Grown Diamonds, Inc. are related or affiliated companies, as particularized in paragraph 6 of the Reply.

19.     Regarding paragraph 5(b)(xi) of the DC, it is denied that the Defendant had no knowledge of Sample 2 or of invoice number 3086 dated 12 May 2014. The Plaintiff further avers that the Plaintiff did not make any material change

to the condition and/or characteristics of Sample 2 from the time it left the Defendant's possession, power and/or custody.

20.    Paragraph 5(b)(xiiiB) of the DC is not admitted. That the Defendant uses a similar product code format to ME's product codes is indicative of at least a commercial relationship between the Defendant and ME, which supports the Plaintiff's assertion that Sample 2 was made from CVD diamond material synthesized by the Defendant in Singapore.

21.    Regarding paragraph 5(b)(xiv) of the DC, it is denied that the Defendant had no knowledge of Sample 3 or of invoice number SA-1510-00178 dated 27 October 2015. The Plaintiff further avers that the Plaintiff did not make any material change to the condition and/or characteristics of Sample 3 from the time it left the Defendant's possession, power and/or custody.

22.    Paragraph 5(b)(xv) of the DC is denied. The Plaintiff avers that reference to the Mehta family is not scandalous, frivolous or vexatious. The Plaintiff shall seek to prove at trial that Pure Grown Diamonds, Inc., Gemesis Diamond Company and the Defendant are related companies involved in the manufacture (including synthesis and post-synthesis processing), distribution and sale of CVD diamonds. Paragraph 6 of the Reply is repeated.

23.    Regarding paragraph 5(b)(xvA) of the DC, the Plaintiff avers that the fact that both the Defendant and Pure Grown Diamonds, Inc. are part of the IIa

Holdings Group is relevant to the Plaintiff's assertion that Pure Grown Diamonds, Inc., Gemesis Diamond Company and the Defendant are all related companies in a supply chain dealing with the manufacture (including synthesis and post-synthesis processing), distribution and eventual sale of CVD diamonds.

24. Save that the Defendant admits the details that appear on Quotation number IIa/QT/1516-124, paragraph 5(b)(xviA) of the DC is not admitted. The Plaintiff avers that the Plaintiff did not make any material change to the condition and/or characteristics of Sample 4 from the time it left the Defendant's possession, power and/or custody.

25. Paragraph 5(b)(xvii)(B) is denied. The first sentence under paragraph 4(b) of the POI is clear. It is obvious from the POI that, unless otherwise expressly asserted in the Plaintiff's pleadings, any of the dependent claims of the '508 Patent or '872 Patent the Defendant is alleged to infringe relies on each and every possible permutation of the preceding claims as enumerated in paragraphs 1 and 2 of the POI. For example, the reference to Claim 5 of the '508 Patent is to be read with 2, 3, or 2 and 3 together and not with Claim 4, which is not asserted in the POI. The Plaintiff further avers that it would be unnecessary to specify each and every possible permutation of Claims 62-71 of the '872 Patent and Claims 1-3, 5-10, 12-18, 24-25, 38-41 and 44-45 of

the '508 Patent as sufficient particulars have already been provided in the Plaintiff's pleadings.

26.     [This paragraph is intentionally left blank.]

27.     Save that the Defendant alleges that the Patents were not valid and subsisting for the reasons set out in paragraphs 1 to 159B and 161 to 306 of the Amended Particulars of Objections, which the Plaintiff denies, paragraph 5(b)(xviii) of the DC is not admitted. There are several indicators showing that the Defendant knew or ought to have known of the Plaintiff's Patents, including but not limited to the following:

   a)  The Defendant claimed that it has spent the first six years from its establishment in Singapore in 2005 "purely on research", has "the largest MPCVD diamond research facility in the world", and has Dr Devi Shanker Misra, "an expert with several decades of diamond growth experience" as part of its executive team, as seen at www.2atechnologies.com/history at least as of 1 April 2013; and

   b)  The Defendant has filed at least ten (10) patent applications for subject matter relating to methods of growing and/or producing diamonds in Singapore, *viz.* Patent Application Nos. 2010070589, 2010070191, 2008046377, 11201501091R, 11201406391Y,

10201505413V, 10201505042X, 10201500553V, 10201500278Y, 10201408352X.

Based on the foregoing, the Plaintiff avers that a company such as the Defendant, which claimed to have invested heavily into research and development and spends significant resources on patent filings, would likely have undertaken due diligence and prior art searches and, consequently, knew or ought reasonably to have known of the existence of the Patents.

28. Paragraph 5(c)-(f) of the DC is denied. Claims 1(ii), 1(iii), 16(ii), 47, 58, 62, 71, 75 – 77 and 78 of the '872 Patent do not lack clarity as the skilled person would be able to determine the scope of such claims by reading them in conjunction with the description of the '872 Patent. Paragraph 5(c)-(f) is also embarrassing because it does not particularize how the issue of clarity is relevant to the instant suit.

29. Paragraph 5(g) of the DC is denied. Claim 1 of the '508 Patent does not lack clarity as the skilled person would be able to determine the scope of Claim 1 by reading it in conjunction with the description of the '508 Patent. Paragraph 5(g) is also embarrassing because it does not particularize how the issue of clarity is relevant to the instant suit.

30. Paragraph 6 of the DC is denied. The Plaintiff avers that the '508 and '872 Patents were valid at all material times.

31.     [This paragraph is intentionally left blank.]

32.     Paragraphs 9 and 10 are admitted only insofar as the facts pleaded match those maintained on the Intellectual Property of Singapore ("**IPOS**") register.

33.     Paragraph 11 is admitted only insofar as the facts pleaded match those maintained on the IPOS register.

34.     Paragraph 13 of the DC is denied. The Plaintiff avers that the '872 Patent was framed in good faith and with reasonable skill and knowledge.

35.     Paragraph 14 of the DC is denied. The Plaintiff avers that the '508 Patent was framed in good faith and with reasonable skill and knowledge.

**<u>Defence To Counter-Claim</u>**

36.     Paragraphs 15 and 16 of the DC are denied and the Defendant is put to strict proof thereof.

37.     Regarding the prior art and/or prior users cited by the Defendant in the PO, these pleadings are embarrassing because:

  a) the Defendant has not specified the portions of the prior art it is seeking to rely on in its case alleging lack of novelty and lack of inventive step; and

b) the Defendant has not specified the combinations of the prior art and/or prior users it is seeking to rely on in its case alleging lack of inventive step.

38. Paragraphs 1 to 159B of the PO are denied. The Plaintiff also does not admit that any of the prior art and/or prior users cited by the Defendant in the PO constitutes relevant prior art and puts the Defendant to strict proof that the cited prior art and/or users were made available to the public before the priority date of the Patents.

39. The Plaintiff avers that Claims 1(ii) read with 1(iii), 1(iii), 41, 42, 43, 47, 48, 57, 58, 59, 60, 71, 75, 76, 77 and 78 of the '872 Patent are entitled to claim a priority date of 21 November 2002. The skilled person would be able to derive these claims from priority document GB 0227261.5. The Plaintiff further avers that any dependent claim relying, directly or indirectly, on such claims also has a priority date of 21 November 2002.

40. With respect to paragraphs 9-11, 34-36, 38-40, 42-44, 46-48, 50-52, 74-76, 78-80, 82-84, 86-88, 136-138, 145-147, 149-151, 153-155 and 157-159 of the PO, the Plaintiff puts the Defendant to strict proof that the Plaintiff had provided diamond etalons for sale on its website since around 19 September 2003.

41.     Further, the Plaintiff denies that any diamond etalons provided for sale on or around 19 September 2003 (which is not admitted) had anticipated and/or rendered obvious Claims 1(iii), 41, 42, 43, 47, 48, 57, 58, 59, 60, 71, 75, 76, 77 and 78 of the '872 Patent.

41A.    With respect to paragraphs 4-6, 9-11, 20-22, 25-27, 30-32, 34-36, 38-40, 42-44, 46-48, 50-52, 55-57, 60-62, 65-67, 70-72, 74-76, 78-80, 82-84, 86-88, 91-93, 97-99, 102-104, 107-109, 112-114, 117-119, 122-124, 127-129, 132-134, 136-138, 141-143, 145-147, 149-151, 153-155 and 157-159 of the PO and paragraph 1 of the Further and Better Particulars to the Particulars of Objection (Amendment No.2) dated 22 November 2016 ("**FNBPs of PO**"), the Plaintiff puts the Defendant to strict proof that the Plaintiff and/or its related entities had provided and/or sold diamonds to third parties prior to 21 November 2002, namely to the RD42 Collaboration, the ABB Group Services Centre and/or Bookham Technology Plc. The Defendant is further put to strict proof that the alleged provision and/or sale of diamonds to these third parties involved diamonds embodying the invention in the '872 Patent.

41B.    Further or in the alternative, the Plaintiff avers that any provision or sale of diamonds to third parties prior to 21 November 2002 (which is not admitted):

        (i)     did not anticipate and/or render obvious any of the asserted claims of the '872 Patent; and/or

(ii)     did not enable the notional skilled person to perform the invention.

41C.   Further or in the alternative, pending the provision of further particulars by the Defendant on the alleged provision and/or sale of diamonds by the Plaintiff to such third parties, the Plaintiff avers that in the normal course of dealings or business with RD42 Collaboration, the ABB Group Services Centre and/or Bookham Technology Plc at the material time, such provision and/or sale would have been conducted under obligations of confidentiality and/or did not amount to disclosure to the public.

42.   The Plaintiff avers that the '872 Patent's inventiveness is evidenced, *inter alia*, by the commercial success of the Plaintiff's single crystal CVD diamond products which are used in optical and mechanical applications. Such products include, but are not limited to, attenuated total reflection prisms and blanks for high precision cutting applications.

## Particulars

a)  After the filing of the '872 Patent and with the production of the single crystal CVD diamond material made in accordance with the invention disclosed in the '872 Patent, the Plaintiff acquired a global market share of greater than 80% for single crystal CVD diamond material for use in optical products.

b) The market share for single crystal CVD diamond material for use in optical products sold by the Plaintiff is currently around 50% of total global sales.

c) The invention of the '872 Patent allowed the production of a single crystal CVD diamond material that had low optical birefringence. This product material was found to be advantageous for optical applications such as etalons and ATR prisms when compared with prior art single crystal CVD diamond material.

43. Regarding paragraphs 7, 12, 16, 52A, 94, 138A, 147A and 159A of the PO, the Plaintiff avers that Claims 1(ii), 1(iii), Claim 1(ii) with 1(iii), 47, 48, 62, 71, 75 and 78 of the '872 Patent are sufficiently disclosed so as to enable the skilled person to perform the invention.

44. Paragraph 160 of the PO is only admitted insofar as the facts pleaded match those maintained on the World Intellectual Property Organization ("**WIPO**"), European Patent Office ("**EPO**"), the UK Patent Office ("**UKIPO**"), the Japan Patent Office ("**JPO**") and/or IPOS registers. The Plaintiff denies that any dissimilarity between its post-grand amendments to the '872 Patent and the amendments to corresponding patents in Europe, the United Kingdom and Japan ("**Corresponding Patents**") amounts to an admission that the '872 Patent is invalid. The Plaintiff further denies that it is guilty of undue and

unreasonable delay or that there was any need to amend the '872 Patent to reflect the amendments made to the Corresponding Patents.

44A.    Regarding paragraph 160(i) of the PO, the Plaintiff denies that the amendments made to the '872 Patent should not have been allowed and that the '872 Patent is invalid and/or should be revoked pursuant to section 80(1)(e) read with section 82(3) of the Patents Act (Cap 221). The Plaintiff further avers the following:

(i)     Pursuant to Order of Court HC/ORC 7211/2017 issued in respect of the Plaintiff's application for further and better particulars in HC/SUM 2929/2017, the Defendant had to delete paragraphs 7 and 12 and prayer 4 of the DC because the Defendant admitted at paragraph 17 of the 16th affidavit of Mehta Vishal Jatin dated 14 July 2017 that "…*the Defendant does not intend to put in issue the validity of the post-grant amendments made by the Plaintiff to SG '872 [i.e. the '872 Patent]*". The Defendant qualified at paragraph 18 of the same affidavit that "*the Defendant reserves its right to put in issue the validity of the post-grant amendments of SG '872, subject to further discovery and/or interrogatories*".

(ii)    However, despite the aforesaid deletion, the Defendant has sought to put into issue the validity of the '872 Patent again, by claiming, at paragraph 21(f) of the 20th affidavit of Mehta Vishal Jatin, that "*the

*additional paragraph 160(i) clarifies the Defendant's pleading at paragraph 160(h) that as a result of the Plaintiffs undue and unreasonable delay in amending SG '872, the post-grant amendments should not have been allowed and accordingly, SG '872 is invalid and/or should be revoked*".

(iii)    The Plaintiff avers that the Defendant is being vexatious or abusing the process of Court by putting in issue the validity of the post-grant amendments of SG '872 again that were not necessitated by any discovery and/or interrogatories.

44B.    Regarding paragraph 160(j) of the PO, the Plaintiff denies that the amended '872 Patent was obtained on the basis of misrepresentation and that the amended '872 Patent is invalid and/or should be revoked pursuant to section 80(1)(f) read with section 82(3) of the Patents Act (Cap 221). The Plaintiff further avers the following:

(i)    Pursuant to Order of Court HC/ORC 7211/2017 issued in respect of the Plaintiff's application for further and better particulars in HC/SUM 2929/2017, the Defendant had to delete paragraphs 7 and 12 and prayer 4 of the DC because the Defendant admitted at paragraph 17 of the 16th affidavit of Mehta Vishal Jatin dated 14 July 2017 that "*…the Defendant does not intend to put in issue the validity of the post-grant amendments made by the Plaintiff to SG '872 [i.e. the '872*

*Patent]*". The Defendant qualified at paragraph 18 of the same affidavit that "*the Defendant reserves its right to put in issue the validity of the post-grant amendments of SG '872, subject to further discovery and/or interrogatories*".

(ii)     However, despite the deletion, the Defendant has sought to put into issue the validity of the '872 Patent again, by claiming by claiming at paragraph 21(g) of the 20th affidavit of Mehta Vishal Jatin, that "*With respect to the new paragraph 160(j), the Defendant is relying on the same particulars as pleaded in paragraph 160 to plead a further basis for the revocation and/or invalidation of SG '872, namely, under section 80(1)(f) read with section 82(3) of the Patents Act (Cap 221)*".

(iii)    The Plaintiff avers that the Defendant is being vexatious or abusing the process of Court by putting in issue the validity of the post-grant amendments of SG '872 again that were not necessitated by any discovery and/or interrogatories.

45.    The Plaintiff further avers that the Defendant's objection to the amendment of the '872 Patent is brought after undue and unreasonable delay given that it should have been raised when the amended claims were first published for opposition by IPOS.

46.    As maintained on the IPOS register and/or records:

a)  On 13 August 2015, IPOS received the application for amendment of the '872 Patent.

b)  The amendment was published on 29 September 2015.

c)  For a two month period beginning on 29 September 2015 and ending on 29 November 2015, any person wishing to oppose the amendment could file a notice to the Registrar on Patents Form 58.

d)  No such notice was filed by the Defendant or any other party.

e)  The application for amendment was approved by the Registrar on 1 December 2015.

47.  Paragraphs 161 to 304A of the PO are denied. The Plaintiff avers that Claim 7 of the '508 Patent is entitled to claim a priority date of 6 September 2002. The skilled person would be able to derive this claim from priority document GB 0220772.8. The Plaintiff further avers that any dependent claim relying, directly or indirectly, on Claim 7 also has a priority date of 6 September 2002.

48.  Regarding paragraphs 166, 212A, 220A, 228A and 240A of the PO, the Plaintiff avers that Claims 1, 15, 18, 24, 25, 39 and 40 of the '508 Patent is sufficiently disclosed so as to enable the skilled person to perform the

invention. Further, the specifications of the '508 Patent provides sufficient disclosure as to the physical parameters necessary to produce diamonds of varying colours.

49. The Plaintiff denies that the '508 Patent was obtained on the basis of misrepresentation. Paragraph 305 of the PO is only admitted insofar as the facts pleaded match those maintained on the WIPO, EPO, UKIPO, JPO and/or IPOS registers.

50. Paragraph 306 of the PO is denied. This paragraph is embarrassing because it does not particularize how the issue of clarity is relevant to the instant suit. Further or in the alternative, the Plaintiff avers that, whilst nitrogen concentration and substrate preparation are essential features in the method of synthesising the diamond material of the invention claimed in the '872 Patent, the precise optical qualities of the material depend upon the desired application of the material, and can be influenced by a number of factors readily determinable and adjustable by the skilled person. Examples of such variable factors include reactor pressure, source gas composition, flow rate of carbon source (typically methane), and the substrate temperature during the growth process.

51. For the reasons above, the Defendant is not entitled to the relief sought in the DC, or any relief at all.

52.     Save as is expressly admitted or not admitted herein, each and every allegation in the DC and PO is denied, as if the same has been set out and traversed specifically.

Dated this 21st day of May 2018

**AMICA LAW LLC**

<u>**SOLICITORS FOR THE PLAINTIFF**</u>