# Exhibit 7

IN THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

Case No.: HC/S 26/2016
Sub Case No.: HC/SUM 1478/2018
Filed: 28-March-2018 05:47 PM
Hearing Date : 13-April-2018
Hearing Time : 9:00 AM
Hearing Type : OS & Summons - General
Attend Before: Registrar



Between

ELEMENT SIX TECHNOLOGIES LIMITED
(United Kingdom Registration No. 08206603)

...Plaintiff(s)

And

IIa TECHNOLOGIES PTE. LTD.
(Singapore UEN No. 200516961K)

...Defendant(s)

And

IIa TECHNOLOGIES PTE. LTD.
(Singapore UEN No. 200516961K)

...Plaintiff(s) in Counterclaim

And

ELEMENT SIX TECHNOLOGIES LIMITED
(United Kingdom Registration No. 08206603)

...Defendant(s) in Counterclaim

**SUMMONS FOR DISCOVERY**

To:  Solicitor(s) for the Defendant(s) and Plaintiff in Counterclaim(s)
Drew & Napier LLC
10 Collyer Quay #10-01 Ocean Financial Centre
Singapore 049315
Tel No.: 65350733
Fax No.: 65354906
Email: mail@drewnapier.com
File Ref No.: TY/MKJN/JYO 375178
Solicitor in charge: 1. MERYL KOH JUNNING,
2. TONY YEO SOO MONG,
3. YEO JAVIER

Let all parties concerned attend before the Court on the date and time to be assigned for a hearing of an application by the Plaintiff for the following order(s):

1. That the Defendant shall, within 14 days from the date of the order to be made herein, file and serve on the Plaintiff a further list of documents verified by an affidavit stating whether the documents set out in Annex 1 annexed hereto are, or have at any time been, in its possession, custody or power, and if not now in its possession, custody or power, when it parted with the documents and what has become of the documents;

2. That the Defendant shall, within 14 days from the date of the order to be made herein, provide copies to the Plaintiff of all documents specified in the further list of documents filed pursuant to paragraph 1 above;

3. That the parties comply with the electronic discovery protocol annexed hereto as Annex 2;

4. That the Plaintiff be at liberty to apply for further orders;

5. That the costs of this application be paid by the Defendant to the Plaintiff; and

6. Such further or other order as this Honourable Court deems fit and just.

The grounds of the application are:

1. This application is made pursuant to Part V of the Supreme Court Practice Directions and/or Order 24 Rules 1 and/or 5 of the Rules of Court (Cap 322, 2014 Rev Ed). The grounds of the application are further set out in the 14th Affidavit of Susan Fletcher Watts dated 27 March 2018 and filed herein.

1. Annex 1

    | Annex 1.pdf |
    | --- |
    | 186.39 KB |

2. Annex 2

    | Annex 2.pdf |
    | --- |
    | 87.61 KB |

Issued by :

| |
| --- |
| Solicitor(s) for the Plaintiff(s) and Defendant in Counterclaim(s)<br><br>AMICA LAW LLC<br>30 Raffles Place #14-01 Chevron House<br>Singapore 048622<br>Tel No.: 63036210<br>Fax No.: 63036222<br>Email: jason.chan@amicalaw.com<br>File Ref No.: JC/MP/NIC/20120280<br>Solicitor in charge: 1. CHAN KWOK CHUAN JASON,<br>2. NICHOLAS ONG WEI LUN,<br>3. PANG SZE RAY, MELVIN |



HC/S26/2016:HC/SUM1478/2018:HC/S26/2016:HC/SUM1478/2018:HC/S26/2016:HC/SUM1478/2018
VINCENT HOONG
REGISTRAR
SUPREME COURT
SINGAPORE

Close   Print

# Annex 1

1. All R&D reports, material characterization analyses and quality control records which relate to the measurement of birefringence for single crystal CVD diamond material in any form, including as-grown, gemstone and diamond plate, wherein:

    a. the measured material has dimensions of at least 1.3 mm x 1.3 mm x 0.5 mm;

    b. the measured material was made, at least in part, by the Defendant in Singapore in the period of 2012 to date; and

    c. the measured material has an optical birefringence such that the modulus of the sine of the phase shift, $|\sin \delta|$, for at least 98% of the analysed area of the sample remains in the first order ($\delta$ does not exceed $\pi/2$) and the $|\sin \delta|$ does not exceed 0.9.

2. All R&D reports, material characterization analyses and quality control records which relate to the measurement of birefringence for single crystal CVD diamond material in any form, including as - grown, gemstone and diamond plate, wherein:

    a. the measured material has dimensions of at least 1.3 mm x 1.3 mm x 0.5 mm;

    b. the measured material was made, at least in part, by the Defendant in Singapore in the period of 2012 to date; and

    c. the measured material has an optical birefringence such that, for 100% of the area analysed, the sample remains in the first order ($\delta$ does not exceed $\pi/2$) and the maximum value of $\Delta n_{[average]}$, the average value of the difference between the refractive index for light polarised parallel to the slow and fast axes averaged over the sample thickness, does not exceed $1.5 \times 10^{-4}$.

3. All R&D reports, material characterization analyses and quality control records relating to the measurement of optical absorption for the single crystal CVD diamond material identified in Categories 1 or 2 above wherein:

    a. the measured material has dimensions of at least 1.3 mm x 1.3 mm x 0.5 mm;

    b. the measured material was made, at least in part, by the Defendant in Singapore in the period of 2012 to date;

    c. the measurement was made at a wavelength of 1.06 µm; and

    d. the measured material has an optical absorption coefficient of less than 0.09 $cm^{-1}$.

4. All R&D reports, material characterization analyses and quality control records relating to the measurement of nitrogen concentration in single substitutional form for the single crystal CVD diamond material identified in Categories 1 or 2 above wherein:

    a. the measured material has dimensions of at least 1.3 mm x 1.3 mm x 0.5 mm;

    b. the measured material was made, at least in part, by the Defendant in Singapore in the period of 2012 to date; and

    c. the measured material contains more than $3 \times 10^{15}$ atoms/$cm^3$ N but less than $5 \times 10^{17}$ atoms/$cm^3$ N in single substitutional form as measured by EPR.

5. Documents in the period 2012 to date relating to the Defendant's method(s) of heat treating single crystal CVD diamond material in any form, including as-grown, gemstone and diamond plate, at or above 1200°C, limited to:

    a. process specification documents,

    b. material characterization analyses,

    c. diamond grading reports/certificates, and

    d. product specification documents.

6. Documents relating to the research, development, conceptualisation and/or design of the method(s) disclosed pursuant to Category 5, limited to:

    a. laboratory notebooks,

    b. project proposals,

    c. project reports,

    d. product development reviews,

    e. correspondence (e.g. emails) between management and researchers and correspondence between researchers, and

    f. process revision documents.

7. 7. Documents relating to the single crystal CVD diamond material in any form, including as-grown, gemstone and diamond plate, made by the Defendant in the period 16 October 2010 to 16 April 2012 and supplied by the Defendant directly or indirectly to Gemesis Diamond Company, Inc. in the period 16 October 2010 to 16 April 2012, and from which it may have been possible to make a gemstone having a weight of 0.40 ct, F colour and a VS2 clarity grade, limited to:

    a. sales invoices,

    b. purchase orders,

    c. quotations,

    d. marketing materials,

    e. product specification documents,

    f. material characterization analyses, and

    g. diamond grading reports/certificates.

8. Documents relating to the optical grade single crystal CVD diamond plates which are the subject of Ila quote no. 1314-121, limited to:

    a. [intentionally left blank]

    b. [intentionally left blank]

    c. [intentionally left blank]

    d.  marketing materials,

    e.  product specification documents, and

    f.  material characterization analyses.

9. Documents relating to the single crystal CVD diamond material in any form, including as-grown, gemstone and diamond plate, made by the Defendant in the period 27 April 2014 to 27 October 2015 and supplied by the Defendant directly or indirectly to Pure Grown Diamonds, Inc. in the period 27 April 2014 to 27 October 2015, and from which it may have been possible to make a gemstone having a weight of 0.38 ct, K colour and a VS1 clarity grade, limited to:

    a.  sales invoices,

    b.  purchase orders,

    c.  quotations,

    d.  marketing materials,

    e.  product specification documents,

    f.  material characterization analyses, and

    g.  diamond grading reports/certificates.

10. All documents relating to the making, disposal or offer to dispose of, importing, use and/or keeping whether for disposal or otherwise by the Defendant in Singapore of the diamond material having product code no. 2PCVD505005N and which was sold pursuant to IIa invoice no. IIa/INV/1516-0241, limited to:

    a.  product specification documents;

    b.  material characterization analyses,

    c.  sales invoices, quotations and marketing materials provided by the Defendant to third parties,

    d.  importation documentation, and

    e.  inventory lists.

11. Documents in the period 2012 to date relating to the Defendant's method(s) of manufacturing the diamond material having product code no. 2PCVD505005N and which was sold pursuant to IIa invoice no. 11a/INV/1516-0241, including but not limited to:

    a.  process specification documents,

    b.  CVD synthesis run sheets,

    c.  quality control records,

    d.  documents specifying surface preparation of substrates pre-synthesis, and any subsequent charaterisation (by selection or otherwise), and

    e.  documents specifying the level of nitrogen in the synthesis atmosphere and the method by which this is controlled.

12. Documents relating to the research, development, conceptualisation and/or design of the method(s) disclosed pursuant to Category 11 above, limited to:

    a. laboratory notebooks,

    b. project proposals,

    c. project reports,

    d. product development reviews,

    e. correspondence (e.g. emails) between management and researchers and correspondence between researchers, and

    f. process revision documents.

13. All official documents relating to the incorporation of "Ila Holdings Group" and/or "Ila Holdings Group Limited" as issued by the relevant regulatory authority, including but not limited to certificates of incorporation.

# Annex 2

## *ELECTRONIC DISCOVERY PROTOCOL*

1. **Service Provider**

   Litigation Edge Pte Ltd ("**Service Provider**") will be appointed to execute the searches referred to in paragraph 4 using the search engine and parameters specified in paragraph 2 below. Parties will bear Service Provider's costs equally.

2. **Search Engine**

   Nuix ("**Software**") is to be used to conduct the aforementioned keyword searches. The preparation of the Software prior to conducting the searches (e.g. updating the search index or causing a fresh search index to be made) and any other search parameters not specified and agreed to herein are subject to further agreement between the parties, pending discussions between the parties and Service Provider.

3. **Scope of electronic discovery**

   a. Discovery of the following class or classes of electronically stored documents shall be given ("**Repositories**"):

      i. All email servers, cloud servers and network drives currently in the Defendant's custody, power, control and/or possession.

   b. The Defendant shall take reasonable steps to decrypt encrypted files or encrypted storage locations, media or devices in order to identify discoverable electronically stored documents. This may include taking reasonable steps to obtain the decryption code and/or using reasonable technical means to perform decryption of the encrypted files or encrypted storage locations, media or devices.

   c. For the avoidance of doubt, electronically stored documents residing in folders or directories in storage locations, media or devices, including folders or directories where temporarily deleted files are located (for example the Recycle Bin folder or Trash folder) are within the scope of discovery. Electronically stored documents that are (i) not reasonably accessible, for example deleted files or file fragments containing information which are recoverable through the use of computer forensic tools or techniques during a forensic inspection of the unallocated file space or file slack, (ii) files and folders which are not known to the party giving discovery to be hidden in the file system, and (iii) documents archived using backup software and stored off-line on backup tapes or other storage media are not within the scope of discovery.

4. **Process for electronic discovery**

   a. The Defendant shall transfer all electronically stored documents in the Repositories to Service Provider for indexing by the Software within 2 weeks of the Court order imposing this protocol.

   b. **Reasonable search**. The search terms or phrases specified in the second column will be used by Service Provider in the conduct of a reasonable search of the Repositories for

relevant electronically stored documents. The reasonable search will be limited by the scope described in the third column.

| Search No. | Search Terms | Scope |
|---|---|---|
| 1 | "LG*10061905" | Documents that were created in the period 16 April 2010 and 16 April 2013 |
| 2 | "INV*REF*01*JAN*12*31" | Documents that were created in the period 16 March 2012 and 16 March 2013 |
| 3 | "100005382" | Documents that were created in the period 16 March 2012 and 16 March 2013 |
| 4 | "2*PCVD*303004N" | Documents that were created in the period 12 May 2013 and 12 May 2015 |
| 5 | "3086" | Documents that were created in the period 12 April 2014 and 12 April 2015 |
| 6 | "13*2051" | Documents that were created in the period 24 January 2014 and 24 January 2015 |
| 7 | "1314*121" | Documents that were created in the 24 February 2013 and 24 February 2015 |
| 8 | "LG*10226420" | Documents that were created in the period 27 October 2014 to 27 October 2016 |
| 9 | "1510*00178" | Documents that were created in the period 27 September 2015 to 27 September 2016 |

Under the Search Terms column in the above table, '*' means a single wildcard character. For example, LG*10061905 will match with *inter alia* LG10061905, LG 10061905, LG-10061905, and LG/10061905 etc.

c. **Data sampling**. The Plaintiff shall review the search results within seven (7) days of being provided with the same; and within a further seven (7) days, parties shall meet to discuss

whether the keywords and/or the Repositories need to be revised. Data sampling in accordance with the terms of this sub-paragraph shall be performed no more than twice.

    d. After the final revisions of the keywords and/or the Repositories (if any), the Defendant will disclose the documents disclosed by the final search in a supplementary list of documents in accordance with paragraph 5.

5. **Format of list**

The supplementary list of documents shall categorise and list electronically stored documents separately from documents in printed or other form. The list of documents enumerating electronically stored documents shall include the following columns: *[contents of table for illustration]*

| Date Created | Description | File name & location | File format | Search No. |
|---|---|---|---|---|
| 12 October 2013 | Distribution agreement with Microwave Enterprises Inc. | //Contract Documents/Contract_ME.doc | Microsoft Word 2007 | 5 |

An index of documents enumerated in the list of documents shall be provided in an electronic spreadsheet in the Excel Workbook (.xlsx) file format.

6. **Review for privileged material**

The Defendant's obligation to conduct a reasonable search is fulfilled upon the Defendant carrying out the search to the extent agreed in this protocol; the Defendant shall not be required to review the search results for relevance.

Nothing in this protocol shall prevent the Defendant from reviewing the documents in any list provided hereunder for the purpose of claiming privilege. If the Defendant claims privilege over any document or record, it shall list the electronic documents or class of electronic documents over which privilege is claimed in the list of documents.

7. **Inspection and copies**

    a. **Arrangements for inspection**. The place for inspection of discoverable electronic documents should be stated separately if it is different from the place for inspection of other discoverable documents. If the Plaintiff intends to inspect through or with the assistance of its appointed computer expert, such computer expert shall provide an undertaking of confidentiality to the party giving inspection before he commences his inspection.

    b. **Supply of copies**. During inspection, copies shall not be taken. If copies are required, a request should be made. Electronic copies of discoverable documents will be supplied in their native format in a searchable form and in read-only optical discs upon request. Electronic copies of discoverable documents where privilege is claimed only with respect to their internally stored metadata information will be supplied in the Tagged Image File Format (or TIFF) with privileged metadata information removed. For each of the read-only optical discs supplied, a further list stating the storage format version of the optical disc and enumerating the list of electronic documents stored therein shall be provided.

8. **Inadvertent disclosure of privileged documents**

   Notwithstanding compliance with the procedures in this protocol, nothing in this protocol is intended to be or shall be taken to amount to a waiver of privilege.

9. **Discovery and production only if necessary**

   For the avoidance of doubt, nothing in this protocol shall compel any party to give discovery of any document or produce any document for inspection which is not otherwise discoverable under Order 24, Rules 7 or 13 of the Rules of Court (Cap 322, R5).