# EXHIBIT G

## IN THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

1    HC/S 26/2016
2    HC/SUM 862/2018

                                      Between

ELEMENT SIX TECHNOLOGIES LIMITED
                                                                     ...Plaintiff

                                      And

IIa TECHNOLOGIES PTE. LTD.
                                                                       ...Defendant

                                      And

IIa TECHNOLOGIES PTE. LTD
                                                         ...Plaintiff in Counterclaim

                                      And

ELEMENT SIX TECHNOLOGIES LIMITED
                                                          ...Defendant in Counterclaim

### 7 June 2018
### Interrogatories

Coram: Justin Yeo, Assistant Registrar

*Mr Jason Chan ("Chan"), Mr Melvin Pang ("Pang") and Mr Nicholas Tong ("Tong") (Amica Law LLC)* for the Plaintiff
*Mr Tony Yeo ("TY"), Ms Meryl Koh ("Koh") and Mr Javier Yeo ("JY") (Drew & Napier LLC)* for the Defendant

*0900 hrs*

Ct  :  This is a continuation of the hearing on HC/SUM 862/2018 on 4 June 2018.

       Mr Chan was halfway through his reply at that time. As a matter of time management, since we also have a lengthy discovery application to get through by the end of today, could Mr Chan keep the remainder of his reply to no more than 1 hour? Mr Yeo will thereafter have about half an

HC/S 26/2016
HC/SUM 862/2018          2          7 June 2018

| | | |
|---|---|---|
| 1 | | hour to respond. As I have gone through the written submissions in detail, |
| 2 | | please be assured that your arguments will be considered. |
| 3 | | |
| 4 | | But before Mr Chan starts on his reply, I thought I would ask 2 questions. |
| 5 | | |
| 6 | | The first question is this: At the first hearing, it transpired that many of |
| 7 | | the interrogatories appear aimed to provide additional arguments for the |
| 8 | | Trial Judge to infer that the Samples originated from the Defendant. I |
| 9 | | have not formed a view on this, but I am thinking that there would be a |
| 10 | | limit to how much *circumstantial evidence* one may legitimately collect |
| 11 | | in the *interlocutory* process (and, of particular relevance to us, in the |
| 12 | | process of interrogatories). At points, Mr Chan seems to be collecting |
| 13 | | what I may loosely call "circumstantial evidence arrows" to add to his |
| 14 | | quiver for submissions at trial. Can the interrogatory process be used in |
| 15 | | this way? |
| 16 | | |
| 17 | | The second question is this: is there any significance to the fact that O 24 |
| 18 | | provides for "train of inquiry" type documents, but O 26 does not? |
| 19 | | |
| 20 | Chan : | I will, in the course of responding to my learned friend, be touching on |
| 21 | | these two issues. |
| 22 | | |
| 23 | | We have a Defendant here who has denied that the samples come from |
| 24 | | them. This is a positive averment – they say that "these are not my |
| 25 | | diamonds"; they say "I do not know anything about them"; and they say |
| 26 | | "even if it comes from me, they may be tampered with". They did not |
| 27 | | say, for example, that they have no dealings with any of the third parties |
| 28 | | before. They didn't say that they had dealings before, but these are not |
| 29 | | the type of diamonds supplied. They have gone for the most fundamental |
| 30 | | – "these are not mine", "I don't know anything". |
| 31 | | |
| 32 | | I refer to *Prudential Assurance Co Singapore Pte Ltd v Tan Shou Yi Peter* |
| 33 | | [2018] SGHCR 4 ("*Prudential*") at [10]. Your Honour went through the |

1  rationale for the interrogatory process (*reads*). At [24], your Honour
2  referred to "potentially dispose of entire lines of questioning and expert
3  inquiry" (*reads to the end of the paragraph*). The fact in issue in that case
4  was whether there were acts of solicitation. The Audio Recordings were
5  one of the many pieces of evidence that the defendant was going to use
6  at trial.

8  We argue that interrogatories extend beyond facts in issue. Nothing in
9  [13] of your Honour's judgment says that interrogatories would only be
10 allowed in relation to the critical issues. See also *OCBC v Wright Norman*
11 at [7].

13 Necessary for fair disposal does not mean "singularly critical". I tender
14 the authority of *UMCI v Tokio Marine* [2006] 4 SLR(R) 95, a decision
15 of Menon JC. What is useful appears at [94] of the case, dealing with
16 "necessity" in discovery. Menon JC relied on a UK case which said that
17 necessary should be treated "in a reasonable sense". It would go too far
18 to state that "as a matter of rule the evidence which is sought to be
19 obtained must be evidence without which the party seeking an order for
20 inspection cannot succeed". The essential thing is that in O 24 r 7, where
21 there is reference to "necessary", it doesn't mean that it is of "critical
22 importance". As long as it is "likely to yield evidence which is relevant
23 to the proof", that would be sufficient.

25 The Defendant, in the last 2.5 years, has remained completely silent on
26 its relationship with the third parties. They have remained completely
27 silent as to how they can be sure that the diamonds did not originate from
28 them. All we have is a bare denial. We can only build up a case through
29 the answers given to interrogatories.

31 For Sample 2, we got documents about that. For Sample 4, this was
32 provided from the Defendant; we have not seen any documents.

| | | |
|---|---|---|
| 1 | Ct : | You have asked for this in your specific discovery application. |
| 3 | Chan : | Yes, we have. |

For Sample 2, they previously said that they don't have documents. But we subsequently found documents.

We say that just as in *Prudential*, where Audio Recordings only formed part of the body of evidence, here we need this evidence in order to mount our attack in due course. It is because the Defendant has not provided *any* clarity on its relationship with the third parties. We say that it beggars belief that the Defendant who says that it has been wrongly accused, refuses to say *why* it has been wrongly accused.

This brings us back to [25] of *Prudential* where the Defendant consistently avoided taking any position at all, saying that it should be left to trial.

Look at the Answers to Interrogatories, Question 1. They said that they did not use the "format of identification". (*Goes through the rest of the Answers*) This shows how difficult it is for us to obtain any answers from the Defendant.

Mr Yeo says that for the 2nd question that they asked about the designation, they say that it is unreasonable. We don't understand the objection. The question is whether they had made or sold the diamond to Microwave. They could choose to deny. In fact, at the start, they had denied it; and subsequently there was some sort of admission, even though Mr Yeo said that they were not admitting to anything.

If they did not sell any diamonds to PGD, why didn't they just say "no"? Instead, their answer is vague.

| | | |
|---|---|---|
| 1 | | Mr Yeo says that this is prejudicial, like the moneylenders case. We don't |
| 2 | | see where the prejudice is. Our interrogatories only seek to ascertain |
| 3 | | whether the third parties are related and are involved in the trade of the |
| 4 | | Defendant's diamonds. |
| 6 | | We are seeking questions about the relationship with the third parties. |
| 8 | Ct : | How does the relationship help you? |
| 10 | Chan : | To show that they deal with these people. |
| 12 | Ct : | How does any admission as to the relationship help to prove that the |
| 13 | | Sample came from the Defendant? (*Explains background to Prudential* |
| 14 | | *case, where there would otherwise be a need to have expert evidence in* |
| 15 | | *relation to voice recognition.*) |
| 17 | Chan : | I agree that the relationship doesn't prove that the Sample came from the |
| 18 | | Defendant. |
| 20 | Ct : | Why can't you ask about the relationship in cross-examination? On the |
| 21 | | stand, if the Defendant says they are related, you can make your |
| 22 | | arguments; if the Defendant says that they are not related, then you prove |
| 23 | | the relation. |
| 25 | Chan : | We need to know beforehand, otherwise, he may explain on the stand |
| 26 | | that they are related but there is some explanation as to why the Samples |
| 27 | | didn't originate from the Defendant. |
| 29 | Ct : | So you are saying that the fact of a relationship shifts the evidential |
| 30 | | burden to the Defendant? |
| 32 | Chan : | It may not be entirely. We have to look at what other arguments we can |
| 33 | | raise. This is not the be all and end all, but it will certainly help us. |

|    |      |   |                                                                          |
|----|------|---|--------------------------------------------------------------------------|
| 2  |      |   | Furthermore, it is not oppressive. We're not asking of information of all related parties. We are just asking if these related parties are cited in the Financial Reports. Besides, the information is bound by the *Riddick* principle – we cannot use it for other purposes. |
| 7  |      |   | Defendant asked about the relevance of the "exclusive agreement". If the Defendant wants to say that the diamonds came from some third party in breach of the "exclusive agreement", then they can say so; it is not a reason to avoid answering the question on whether there is "exclusive agreement". |
| 13 |      |   | Mr Yeo repeatedly asked why we didn't write to the third parties. We say that the fact that information can be obtained from the US doesn't mean that the interrogatories here are not necessary. We have a ready and available means in Singapore to get answers. This helps to save costs. |
| 18 |      |   | In [26] of *Prudential*, your Honour pointed out that answers from third parties have a different weight. I emphasise that answers from a third party in the US would not be subject to contempt. |
| 22 |      |   | So this point on oppressiveness, we don't understand. In the *Osram* case – one could have asked why the Plaintiff didn't go to the Paris firm to ask if they had supplied the lamps. |
| 26 | Ct   | : | In that case, the plaintiff was asking the entity in possession of the lamps. The present case appears to be the opposite. |
| 29 | Chan | : | The point is that in *Osram*, the question was asked of the party in the proceedings. We are doing the same. In this case, the Defendant is the one who is being sued for infringement. Why haven't they shown any evidence that the Samples are not from them? |

Having exhausted all avenues, we are equally justified in availing ourselves of the local process.

In relation to the Direct Supply Interrogatories, here the query is completely direct. We are not asking for particulars on what they have sold; we are just asking whether they have sold anything to the Third Parties. We are just seeking to establish a business relationship and whether that relationship precluded the sale of other companies' diamonds.

Mr Yeo talked about the company being set up in 2005, and that limitation cannot stretch to events 12 years ago. We are not talking about causes of action, we are only finding out facts.

My learned friend says that we never pleaded that the Defendant is related to any party in the Financial Statements; but then he conceded that we couldn't have pleaded that since we didn't have the Financial Statements at that time. We had already pleaded that the Defendant is *related* to those third parties, and this general pleading is already there. It is not the position that every minutiae must be pleaded before we can get interrogatories.

Indirect supply interrogatories – my learned friend says that they cannot state what intermediaries have done to the diamonds. But we are not asking them to speculate what the intermediary might have done. We are asking them who they send their diamonds to for cutting, polishing and treatment. All we want to know is whether that was done. We are not expecting them to know what the intermediary had done. We are simply asking about their supply chain.

So let's look at Interrogatory 5(b). We are asking for their own knowledge of their own supply chain.

1  The last portion is the Method Interrogatories. This is the interrogatory of the temperature and pressure. What we are seeking is that the Defendant uses heat treatment of 1200 degrees. We say that we should not pull in the other integers and then enter into a debate on claim construction. We must bear in mind that we have no access to what the Defendant does in its laboratory. So this will go towards saving costs. In *Osram*, the Court found the interrogatory necessary to find out the *substance* of the filaments used.

My learned friend referred to the *Rockwell* case. This relates to our Interrogatory 12(b). In *Rockewell* at page 17. It is stated that the plaintiff can "ask the defendant whether he used the processes described therein". What he cannot do is to ask "If you do not use that process, tell me what you do use". In Interrogatory 12(b), we have asked precisely what the Specs have claimed. The *Rockwell* case says that it is well established that a Plaintiff can ask for this.

Ct  :  I just want to come back to Interrogatory 12(b). This seems to be asking the Defendant "what you do use".

Chan :  I want to look at Claim 44 (*reads*).

Ct  :  If so, wouldn't the question be, "did you do this under diamond stabilising pressure", or "did you use this in an inert or stabilising atmosphere"?

Chan :  I take the point. But we need to have the information, so that an expert can assess whether it falls within the Claim.

Ct  :  So your point is that the terms there require some "construction"?

Chan :  Yes, that is the point.

| | | |
|---|---|---|
| 1 | | I move to Interrogatory 17(b). It goes directly towards infringement of |
| 2 | | SG 508. We are justified in asking whether the process for diamond plate |
| 3 | | is also used for making of gemstones. We didn't ask what method they |
| 4 | | use for gemstones. |
| 5 | | |
| 6 | Ct : | Does it mean that you actually have no evidence that they use the process |
| 7 | | for gemstones, and are hoping that they self-incriminate? |
| 8 | | |
| 9 | Chan : | Yes, we don't have evidence for the process used for gemstones. But we |
| 10 | | have pleaded broadly that all 4 Samples infringe both Patents. So we want |
| 11 | | to narrow down, for the diamond plates, whether they use the same |
| 12 | | process for gemstones. So this will enable our experts to consider |
| 13 | | whether they need to consider only one process, or other processes for |
| 14 | | gemstones. |
| 15 | | |
| 16 | | My learned friend asked about the word "intended". That is being overly |
| 17 | | technical. |
| 18 | | |
| 19 | [0953hrs] | |
| 20 | TY : | I want to address what my learned friend said at the outset, asking your |
| 21 | | Honour to look at the Answers to the Interrogatories. |
| 22 | | |
| 23 | | The question to 1(a) is this (reads). The key part is that they are asking |
| 24 | | whether we made any diamond with a specific identifier LG10061905. |
| 25 | | Our answer is a truthful and forthright answer – that we do not use this |
| 26 | | method of identification. We also say that we cannot tell what other |
| 27 | | parties may have done, since the question asked "regardless of when the |
| 28 | | aforesaid designation took place and whether the aforesaid designation |
| 29 | | was by the Defendant or third party?" |
| 30 | | |
| 31 | | I think we have answered truthfully. If he wants us to answer "yes" or |
| 32 | | "no", we have already answered "no", since we said that the Defendant |
| 33 | | does not use this format of identification. |

Answer to interrogatory 6(a). Again, it is a truthful answer – same reasons as the above. Our answers are symptomatic to the question that has been asked.

Answer to interrogatory 11(a) – same. How else do we answer? Are we supposed to say "we don't use this identification, but perhaps we may have sold it"? How can we answer like that, the best we can say is that we don't use the identification.

Answer to 17(a) – the answer is as truthful as it can be in response to the question that has been asked.

What your Honour asked right at the beginning of today's hearing is completely accurate with regard to what I've been trying to say – which is, that what the Plaintiff is trying to do is to collect circumstantial evidence. What my learned friend has submitted to your Honour today does not in any way show that they are not doing that. What he has been saying confirms that he is doing what we say he is doing.

At the last hearing, your Honour asked a few questions of my learned friend. Your Honour had asked "some of the questions you have asked, will they assist you directly?" – this was in relation to *Autogene*. My learned friend said that the answer is not conclusive, but "useful to have". That is not the threshold. The threshold is whether it is "necessary".

Your Honour asked him whether the questions would tend to prove the pleaded case. He admitted that it was not determinative, but it made his task less difficult. He admitted that he would still have to call the witnesses to show that the 4 samples came from the Defendant. This is the series of answers that my learned friend has given; and I think that he is giving honest answers. But it doesn't go to the crux of his case. He is

HC/S 26/2016
HC/SUM 862/2018                                11                                    7 June 2018

1    trying to gather *peripheral* evidence, and all the cases say that he can't
2    do that.
3
4    Let me address some of the points he raised on Monday.
5
6    On the Financial Statements, I say that he didn't plead any exclusive
7    relationship or supply chain. *Autogene* says that he has to go back to the
8    basis and material facts pleaded. My learned friend said he pleaded that
9    they are related companies. It is not the same as that they are part of the
10   supply chain, or that there is exclusive relationship. My learned friend is
11   trying to prove, at best, that there is some commercial relationship. But
12   your Honour rightly asked him, "so what?" – he still has to prove that the
13   diamonds came from the Defendant.
14
15   My learned friend failed to answer my question – why didn't he just write
16   to the third parties to ask where they got it from. He said that they
17   could've done that, but there is no clear answer. In fact, the answer shows
18   that there was no communication with the third parties. He has not
19   explained why he hasn't written. He has skirted around it. In fact, because
20   there was a 4-year gap between trap purchase and the commencement of
21   the suit, even if you say that it may be a tedious process to get discovery,
22   first of all – he didn't write to even try. When he comes as a plaintiff,
23   based on trap purchases, there are two things to show – first, that the trap
24   purchase samples came from the defendant. If he can't show that, he is
25   in trouble. We have evidence that the samples went through many hands;
26   how would the Defendant know what was done with the diamond? Any
27   kind of treatment can be done to the diamond. My learned friend has said
28   it himself. That is why we say that *even if*, in the odd chance that the
29   diamond came from us, did someone do something in the interim?
30
31   Ct  :  What about his point that an admission is of a different juridical nature
32        from any answer from the third parties?
33

| | | |
|---|---|---|
| 1 | TY : | Before he tries to get an admission from us, he must take the earlier step |
| 2 | | to get the answer from the other party. In *Prudential*, it was crucial as to |
| 3 | | who was recorded in the recording. But in our case, he is trying to prove |
| 4 | | that the sample came from the Defendant. Learned friend said that even |
| 5 | | if answers came from someone in the US, he cannot subpoena someone |
| 6 | | in the US. If the third parties in the US had said "it came from the |
| 7 | | Defendant". Then use that piece of evidence, and then plead it, and ask |
| 8 | | us if it is true. If that happened, and he pleaded it, then we have to answer. |
| 9 | | But he didn't go through those steps. He didn't do that, he tried to do a |
| 10 | | "flanking". |
| 11 | | |
| 12 | | My learned friend said that there are some problems with the Diamonds, |
| 13 | | as they have no characteristics, and it is difficult to identify the diamonds. |
| 14 | | Therefore he has to ask peripheral questions. But that is, with respect, |
| 15 | | untrue. Each sample has an identifier or product code. So he has to ask |
| 16 | | the questions in relation to those product codes. We answered those |
| 17 | | questions in Interrogatory 1(a), 6(a), 11(a) and 17(a). Those were in |
| 18 | | relation to the product codes that were pleaded. |
| 19 | | |
| 20 | | Next, my learned friend said that the answers he was seeking was to |
| 21 | | fortify his evidence. It is a "good to have". It doesn't at all pass the |
| 22 | | "necessary" test. In *Hall v Sevalco* and *Prudential*, your Honour said that |
| 23 | | it must be necessary and save time and costs; fortifying evidence is not |
| 24 | | enough to say that it is necessary. |
| 25 | | |
| 26 | | My learned friend said that some of the answers will undermine the |
| 27 | | Defendant's credibility, but in *Singapore Civil Procedure*, it says that an |
| 28 | | interrogatory that relate solely to credit are not allowed. In short, |
| 29 | | *Singapore Civil Procedure* says that if you are asking questions just to |
| 30 | | undermine witness credibility at trial, it is not allowed. |
| 31 | | |
| 32 | | Next, my learned friend has tried to go through a very tedious process of |
| 33 | | asking about our suppliers and our subsidiaries. They asked who our |

1    suppliers are from Hong Kong. He referred to *Trek*, saying that asking
2    about relationships avoided surprise at trial. But *Trek* was at the
3    assessment of damages stage -- where infringement had already been
4    proven. So if questions were asked in relation to who were the suppliers,
5    of course at that stage of the proceedings it is important. But not at this
6    stage.

7

8    Your Honour had pointed out that he had pleaded the relationship and
9    raised evidence, and asked him how would any answer take him by
10   surprise. With respect, when you go into trial at cross-examination, be
11   prepared for surprises -- you ask the questions at trial, and see what the
12   answers are, with your own backup arguments. He already has those
13   arguments, he should just ask at trial.

14

15   Next, my learned friend said from the bar that he believes that a
16   manufacturer will know the supply chain. This is not in evidence. But
17   even if that were the case, so what if it is true that the manufacturer will
18   know what the supply chain is? It doesn't answer the key question of
19   whether Samples 1, 2 and 3 come from the Defendant. He asked for the
20   supply chain for a limited period of time; but what if the diamond came
21   before that? A diamond is not a perishable product, it can last millions of
22   years.

23

24   I need to go back to *Autogene*. *Autogene* is exceedingly clear. See the
25   interrogatories in *Autogene* – at page 69. My learned friend said that the
26   words in interrogatory 2 were disallowed in *Autogene* because the time
27   period was subsequent to the issue of the writ. But that's not true, the
28   pleading actually covers the period for which an interrogatory was asked.
29   But it was still not allowed, as it was of a roving nature. I've already
30   taken your Honour through page 77, relating to "roving interrogatories".
31   The court was well aware that before you even prove the infringement
32   case, you cannot ask this kind of roving questions. That is precisely what

1  happened in *Trek* – in *Trek*, infringement was already proven, so they
2  were allowed to ask questions of what the Defendant was doing.

3

4  Next, my learned friend cited *Osram*. In regard to *Osram*, the question
5  was asked of the defendant, because the samples were trap purchased
6  from the defendant. But our case is the other way round – it was trap
7  purchased from third parties, and the Defendant has already said that it
8  did not use those identifiers. So they really should be asking the third
9  parties, as they had trap purchased from them.

10

11 My learned friend touched on *OCBC, Prudential, Rockwell, etc.* But
12 every single one of those cases says that the interrogatory has to touch on
13 the pleadings. The basis of interrogatories is necessity – and most
14 importantly, to get admissions. If you are just getting answers that are
15 good to have, nice to have, not determinative, not conclusive, but can
16 help to build up a case, or to destroy credibility of witness at trial – then
17 these should not be allowed.

18

19 Next the case of *XACCT*, Choo J's decision. We were all a bit confused
20 as to how come in *XACCT*, he said go for interrogatories first, then
21 discovery; and in *Sharikat*, it was the other way round. But *XACCT* was
22 very specific to the facts of the case – the court was of the very dim view
23 because the parties had gone through a very extensive discovery
24 application, when they could simply ask a few simple questions. This is
25 why Choo J decided the way that he did.

26

27 *Hall v Sevalco* is very clear, if the information is elsewhere, don't ask
28 interrogatories on it. For Sample 2, we have given documents. For
29 Sample 4, we have given documents – I don't know why he said we
30 didn't give any documents – the fact that our documents are the same as
31 what he had.

32

| | | |
|---|---|---|
| 1 | Chan : | I don't believe that we have been given anything for Sample 4, but if we |
| 2 | | have, I stand corrected. My junior is looking after discovery. |
| 4 | TY : | I can confirm that in Jan 2018, we wrote a letter to the Plaintiff to say |
| 5 | | that we have disclosed documents that are relevant to Sample 4. |

Next, in relation to *Ashworth*. This is a case which does not support the Plaintiff whatsoever. Page 627 says that that the Plaintiff had asked whether he used their process "by reference to the claiming part of their specification". Only the part on "the mere plea of secret process does not preclude an answer to interrogatories" was quoted by my learned friend. But if you read the earlier part, it is clear that the interrogatories must be tied to the patent claims.

I have shown that Interrogatories 12(a) and (b) are *subsets* of the Patent Claims. Claims 1 and 44 say that temperature is range from 1200 to 2500, to change to a desired colour. Your Honour asked "what if it was not to change the colour", and my learned friend said that this would not be infringement.

After your Honour's questions, my learned friend said that he needs the information from the interrogatories, to help in claim construction. The Claims come from the Plaintiff. He wants to use our answers to help him to answer what Claims 1 and 44 mean? That is outrageous.

I don't think I need to go into *Mentor Corp*.

In that case, I will go into answering very quickly his points today.

My learned friend referred to *Prudential*, he said that for authenticity, this was part of pieces of evidence that the plaintiff wanted to prove, and your Honour allowed the primary query. But with respect, authenticity in that case was the material part of that case. The answer to the query would

HC/S 26/2016
HC/SUM 862/2018                              16                              7 June 2018

1    help answer that. In our case, provenance and chain of custody is a
2    material part – but it is the way that the question is asked. Interrogatories
3    1(a), 6(a), 11(a) and 17(a) are the primary queries, and we answered
4    them. Everything else are secondary queries. So to say that authenticity
5    is just one of the pieces of evidence, yes, it is true; but it is *how you ask*
6    *the questions,* and what answers you are trying to derive. Here, the
7    answers sought are *peripheral* only.

9    My learned friend said that his questions were direct – on whether we
10   supplied the diamonds in question. Those questions that they asked –
11   Interrogatories 1(a), 6(a), 11(a) and 17(a) – I have already answered. The
12   questions he has now asked are not directed at the 4 Samples. He has
13   asked about the Defendant's supply chain, whether there was commercial
14   relationship, conditions attached, exclusive arrangements, *etc.* These
15   questions are not directed at the samples.

17   He also fished out the *Tokio Marine* case. But that is not an O 26 case.
18   Your Honour quite rightly pointed out that there is a difference between
19   O 24 and O 26. So using *Tokio Marine* doesn't support my learned friend
20   at all.

22   I think you asked my learned friend with regard to Microwave Enterprise
23   on how the commercial relationship would help him. He said that it helps
24   with the steps of building up his case. He admits that by itself it doesn't
25   prove anything, but it will help with his case. So again and again, the
26   Plaintiff admits that these are *peripheral* questions. And he again brought
27   up the issue in *Trek* about being taken by surprise. Every cross-examiner
28   will know that you may or may not be taken by surprise; it is whether
29   you prepare well at trial. How can he ask the court to give him all the
30   ammunition that he needs, even if it is not direct?

32   My learned friend said that they didn't ask any question about product
33   code, because we denied knowledge. With respect, they did ask such

1  questions, and we had already answered them. The other questions
2  skirted around to build up their case.

4  For Interrogatories 12(a) and (b), he said that he asked very pertinent
5  questions, unlike in *Rockwell*. The first point is that the question in 12(a)
6  is not Claims 1 read with 44, even though they say in their affidavit that
7  Question 12(a) is based on Claims 1 read with 44. The point is that
8  questions can be asked of process, but these must be tied to the patent
9  claims.

11  As for Interrogatories 12(b), your Honour pointed out that they were
12  really asking what the method was. They didn't ask whether the
13  Defendant heat treated to change colour, under diamond stabilising
14  pressure, *etc*. If they have issues about defining those terms, it is for them
15  to define what it means. But they have not. They have simply asked us
16  for our method.

18  My learned friend also went into the Indirect Supply Questions, and said
19  that they were reasonable. But if your Honour reads the definition of
20  "Indirect Supply", which is at the back of the interrogatories, there is a
21  reference to regardless of whether the Defendant intended to supply.

23  Lastly, my learned friend's point on Interrogatory 17(b). In relation to
24  Sample 4, they have never pleaded that not only did we sell the diamond
25  in Sample 4, that we had also used the same process for gemstones.
26  That's not the pleading. So on what basis did they ask this question?

28  Ct  :  Mr Chan pointed out that they had a very general pleading on this point.

30  TY  :  He said that he had pleaded that Samples 1 to 4 were infringing. See
31       Bundle of Pleadings Tab 1 page 15, paragraph (b). This is a catch all
32       paragraph, but it must be referring to the acts above. If that's not the case,
33       and they're saying that the catch all paragraph is a standalone paragraph,

1   then I will show to your Honour that this paragraph should be struck out.
2   You cannot have a general paragraph referring to infringement without
3   pleading a specific instance of infringement – O 87A r 2 and 7.
4
5   And further, all *method* claims as claimed by my learned friend are all
6   dependent on the *product* claims. And so we still need to go back to
7   Samples 1, 2, 3 and 4. There is no *general* pleading that we have infringed
8   their process. It is that we have infringed their process because of
9   Samples 1 to 4; not beyond that.
10
11  Your Honour quite rightly asked if they are trying to get the Defendant
12  to "self-incriminate". The purpose of interrogatories is *admission* on its
13  pleaded case. Not to skirt around it and hope to hit something, and try to
14  get the Defendant to self-incriminate. If they can't get it at trial, they
15  shouldn't try luck at interrogatories.
16
17  [*1045hrs*]
18  Chan  :  I just want to clarify that our questions were whether they made and sell
19           diamonds bearing the identifier. The question was not asking whether
20           they use the identifier.
21
22  TY    :  That's not correct. For Samples 2 and 4, we say that we sold the product;
23           we didn't answer just in relation to the format. So we are not in any way
24           in the realm where we have been evasive and refuse to answer questions
25           posed to us.
26
27           *Belegging* makes the point – in that case, the court was faced with a
28           striking out and discovery application. Court struck out pleadings which
29           were general. They struck out the first two, for being too general; and the
30           third, even though there were particulars, because the court found that it
31           was not particular enough. And the court also dealt with – in the event
32           that it wasn't struck out – the court would deal with discovery. That is
33           the way that patent courts anywhere would deal with the claims. Plaintiff

```
HC/S 26/2016
HC/SUM 862/2018                    19                        7 June 2018
```

| | | |
|---|---|---|
| 1 | | cannot be allowed to just plead whatever it wants and then come to court |
| 2 | | and put the Defendant on tremendous oppressive pressure. |
| 3 | | |
| 4 | Ct : | I will reserve judgment and the Registry will notify parties when I am |
| 5 | | ready to render my decision. We can proceed to hear the Plaintiff's |
| 6 | | specific discovery application. |
| 7 | | |
| 8 | Chan : | Could we stand down and come back in about 5 minutes? |
| 9 | | |
| 10 | Ct : | Yes, stand down and reconvene in 5 minutes for the specific discovery |
| 11 | | application. |
| 12 | | |
| 13 | *1050hrs* | |

CERTIFIED TRUE COPY

Asst Registrar,
Supreme Court, Singapore

Signed:  Justin Yeo
         Assistant Registrar
         Supreme Court

22   JY/Kim [150818]