# EXHIBIT I

## IN THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

1   HC/S 26/2016
2   HC/SUM 1478/2018
3   HC/SUM 1654/2018

Between

ELEMENT SIX TECHNOLOGIES LIMITED

...Plaintiff

And

IIa TECHNOLOGIES PTE. LTD.

...Defendant

And

IIa TECHNOLOGIES PTE. LTD

...Plaintiff in Counterclaim

And

ELEMENT SIX TECHNOLOGIES LIMITED

...Defendant in Counterclaim

**27 August 2018**
**Specific Discovery (two applications)**

Coram: Justin Yeo, Assistant Registrar

*Mr Jason Chan ("PC") and Mr Melvin Pang ("Pang") (Amica Law LLC)* for the Plaintiff
*Mr Tony Yeo ("TY"), Ms Meryl Koh ("Koh") and Mr Javier Yeo ("JY") (Drew & Napier LLC)* for the Defendant

*1500 hrs*

**HC/SUM 1478/2018**

Ct   :   I will now render judgment for HC/SUM 1478/2018.

## **Judgment for HC/SUM 1478/2018**

**Introduction**

1   HC/SUM 1478/2018 is an application by the Plaintiff for specific discovery ("the Application"). Even with about 200 pages of written submissions taken as read prior to the hearing, the hearing took 6 hours in all in view of the number of categories and the arguments raised in relation to each category.

2   The Application comprises two large parts.

3   The first part – prayer 1 (read with Annex 1 of the Application) and prayer 2 – concerns what may be called "traditional" specific discovery. There are 13 discovery requests in Annex 1, which may be conveniently categorised under 4 large headings, as follows:

   (a)   Category 1 – Diamond Characterisation Categories (Requests 1 to 4).

   (b)   Category 2 – Process Categories (Requests 5, 6, 11 and 12).

   (c)   Category 3 – Samples Categories (Requests 7 to 10).

   (d)   Category 4 – Miscellaneous (Request 13).

4   The second part – prayer 3 – is a prayer for electronic discovery ("e-discovery"), *ie* prayer 3 read with Annex 2 of the Application. In essence, this prayer seeks the court's approval for an *e-discovery protocol*, appointing Litigation Edge Pte Ltd to execute certain e-discovery searches.

HC/S 26/2016
HC/SUM 1478/2018
HC/SUM 1654/2018                              3                             27 August 2018

**Traditional specific discovery requests**

*Category 1 – Diamond Characterisation Categories (Requests 1 to 4)*

5   Category 1 is not allowed. The Plaintiff's requests in this category extend beyond the Samples in question, requiring the Defendant to disclose *all* documents relating to *all* diamonds with certain specified characteristics that had been "made, at least in part, by the Defendant in Singapore" from 2012 to date. This is a broad-ranging request that appears to be an attempt to fish for more evidence of infringement. It does not seem to be necessary to the Plaintiff's case, which relies only on the Samples to prove infringement.

6   Furthermore, the Defendant has stated on affidavit that it does not have the requisite capability to measure photoluminescence, EPR, *etc*. The Plaintiff has cast doubt on this, and said that – even if true – the Defendant could easily engage in third party institutions to make these measurements. This goes beyond a party's discovery obligations, which require it only to disclose material in its possession, custody or power, rather than to generate fresh reports and disclose those reports or the material identified by those reports.

*Category 2 – Process Categories (Requests 5, 6, 11 and 12)*

7   The Plaintiff's requests in relation to Requests 5 and 6 are not limited to the Samples in question, but extend instead to the entirety of the Defendant's processes. They are therefore overly broad-ranging and should not be allowed. I would raise a number of other points:

   (a)   Request 5 (and, by implication, Request 6) would cover documents relating to non-infringing processes. Contrary to Plaintiff's counsel's argument that it had "reasonably decided to limit" the scope of request in Category 5 to certain integers of its asserted claims, the limitation of the request to certain integers *in fact* broadens the request, since it

would request in a *wider* range of material being disclosed, which would also encompass material about non-infringing processes.

(b)  Request 5 extends to documents "to date". Plaintiff's counsel has explained in written submissions that "it is very possible that even recently created documents would shed light on the Defendant's annealing process", and that having a restrictive upper limit on the documents sought "would create the risk of excluding highly relevant documents". However, setting "to date" as the upper limit would include documents that post-date the manufacture and purchase of the Samples, and there is no basis for such documents to be relevant to the alleged infringing Samples. The request also appears to be speculative in nature.

(c)  Request 6 extends to the process of "research, development, conceptualisation and/or design" of the Defendant's process. While confidentiality issues can be dealt with by way of confidentiality club arrangements, the point is that the issue of *how* the Defendant's process was derived is irrelevant to the pleaded issues. When queried on the relevance of these "conceptualisation-stage" documents, Plaintiff's counsel explained that there may be critical information that was not stated in the process specification. This is entirely speculative in nature, and the Plaintiff should not be permitted discovery on the basis that it would help to either confirm or deny its own speculations.

(d)  I note Plaintiff's counsel's argument that – despite the Defendant's statement that it does not have any documents in Category 2 within its possession, custody or power ("PCP") – there are reasons to believe that documents within the Process Categories are in the Defendant's PCP. The two reasons given were: (i) that it was standard practice in the diamond industry for proper documentation on

process-development to be kept; and (ii) that the Defendant's ISO 9001:2008 certification means that the Defendant must have the required documents in its PCP. The former was a bare allegation and no evidence (other than the Plaintiff's representative's belief) was brought to my attention in relation to such a "standard practice". The latter did not assist the Plaintiff's cause, for the reasons that have been delved into at length in the Defendant's written submissions (paragraphs 250-263). I would add that while Plaintiff's counsel argued that certain ISO-exclusions might have been obtained by the Defendant misinforming the auditor about the Defendant's processes, this allegation was entirely speculative, and there was neither justification nor proper process for me to assess the propriety of the ISO certification.

8    In relation to Request 11, this request is specifically limited to Sample 4. However, the Request itself is still too broad because it extends to documents "to date" (see [7(b)] above). This difficulty may be overcome by limiting Request 11 to the date of manufacture of Sample 4. I allow Request 11, limited from the period 2012 to the date of manufacture of Sample 4. In this regard, I note that the Defendant has confirmed on affidavit that it does not have any documents described in Request 11. If the Defendant does not have the documents within its PCP, the Defendant is to provide an affidavit confirmation on whether the documents requested have at any time been in the Defendant's PCP, and when the Defendant had parted with the documents, or what has become of the documents.

9    Request 12 relates to "conceptualisation-stage" documents, and is disallowed for the same reasons given *vis-à-vis* Request 6 (see [7(c)] above).

HC/S 26/2016
HC/SUM 1478/2018
HC/SUM 1654/2018                              6                          27 August 2018

*Category 3 – Samples Categories (Requests 7 to 10)*

10  I find that the Category 3 requests are relevant and necessary, as they go towards establishing that Samples 1 to 3 from the Defendant (Requests 7 to 9), and also the dealings that the Defendant may have had with Sample 4 (Request 10). The Defendant has not contested the relevance of these Requests, save that the Defendant has taken the position that documents in Request 10 are irrelevant insofar as they include only documents relating to the issue of damages.

11  Instead, the Defendant has stated on affidavit that it does not have any Category 3 documents in its PCP. However, the Defendant has not confirmed whether the documents have at any time been in the Defendant's PCP, and when the Defendant had parted with the documents, or what has become of the documents. As such, I allow Category 3 (Requests 7 to 10). If the Defendant does not have the documents within its PCP, the Defendant is to provide an affidavit confirmation on whether the documents requested have at any time been in the Defendant's PCP, and when the Defendant had parted with the documents, or what has become of the documents.

*Category 4 – Miscellaneous (Request 13)*

12  The Category 4 request is for official documents relating to the incorporation of the "IIa Holdings Group" and/or "IIa Holdings Group Limited". In my view, these documents are relevant and necessary because the Defendant has not furnished detail as to what those terms refer to. Furthermore, these are limited only to the "official documents" that are issued by the "relevant regulatory authority".

13  I note that the Defendant has stated on affidavit that it does not have any Category 4 documents in its PCP. However, the Defendant has not confirmed whether the documents have at any time been in the Defendant's PCP, and

when the Defendant had parted with the documents, or what has become of the documents. As such, I allow Category 4 (Request 13). If the Defendant does not have the documents within its PCP, the Defendant is to provide an affidavit confirmation on whether the documents requested have at any time been in the Defendant's PCP, and when the Defendant had parted with the documents, or what has become of the documents.

*Conclusion on traditional specific discovery requests*

14   In conclusion, I grant Prayer 1, limited to Requests 7 to 10, 11 (limited to the date of manufacture of Sample 4) and 13. For these Requests, the Defendant has taken the position that it does not have any documents in its PCP; if so, the Defendant is to provide an affidavit confirmation on whether the documents requested have at any time been in the Defendant's PCP, and when the Defendant had parted with the documents, or what has become of the documents. I dismiss all other requests.

**E-Discovery**

15   The Plaintiff's e-Discovery request was a prayer for approval of the implementation of an e-Discovery protocol comprising nine highly-targeted search terms. These terms were essentially the product codes, invoice numbers, order numbers and quotation numbers relating to Samples 1, 2 and 3. In terms of repositories, the request was in relation to "[a]ll email servers, cloud servers and network drives currently in the Defendant's custody, power, control and/or possession". The Plaintiff's e-Discovery protocol further provided for the appointment of a third party e-Discovery service provider, *viz* Litigation Edge Pte Ltd, to conduct the search using the specified search parameters.

16   I agree with and reiterate the position in *Invenpro (M) Sdn Bhd v JCD Automation Pte Ltd* [2012] SGHCR 19, where the court held that e-Discovery

cannot be used as a "final sweep" of the evidence to ensure that all relevant documents have been disclosed. The Plaintiff's basis for e-discovery appears to be that the Defendant has failed to disclose documents under Requests 7 to 9, but this is not in itself a sufficient reason to justify instituting an e-discovery protocol akin to that done at the general discovery stage – one which effectively compels the Defendant to turn out its cupboards on nothing more than a mere suspicion (on the part of the Plaintiff) that the Defendant has relevant documents that have been withheld. Furthermore, as I have already made the relevant orders in relation to Requests 7 to 9, it is not necessary for the Plaintiff to additionally have e-Discovery of documents overlapping with those requests.

17   I therefore dismiss prayer 3.

**Conclusion**

18   The summary of orders is as follows:

    (a)   In relation to prayer 1 of the Application:
        (i)   Requests 1, 2, 3, 4, 5, 6 and 12 are not allowed.
        (ii)  Requests 7, 8, 9, 10, 11 (limited from the period 2012 to the date of manufacture of Sample 4) and 13 are allowed.

    (b)   Prayer 2 is allowed for the Requests mentioned above. (Post-script: The timeline was ordered to be extended to 4-weeks, for parity with HC/SUM 1654/2018. See penultimate section of the present minute sheet.)

    (c)   Prayer 3 is not allowed.

19   I will hear parties on costs.

HC/S 26/2016
HC/SUM 1478/2018
HC/SUM 1654/2018                                  9                          27 August 2018

1  **Costs for HC/SUM 1478/2018**

2

3  Pang  :  Based on a brief review of your Honour's judgment, it would appear that
4           almost half of the prayers were allowed. In terms of the quantum of the
5           costs, similar to the previous interrogatories hearing, we are proposing
6           that in view that the hearing took 6 hours, multiple affidavits were filed,
7           costs should be in the region of $12,000. So, since half the requests were
8           allowed, I suggest that costs should be $6,000 plus disbursements.
9           Disbursements are about $2,478 (*tenders*). We submit that costs should
10          be fixed at $8,400 all in.

11

12 JY    :  The Defendant is asking for $10,000 in costs, and for disbursements of
13          $1,400.

14

15          First, a distinction should be drawn for the categories that were not
16          seriously contested and those which were. The categories not allowed,
17          Requests 1, 2, 3, 4, 5, 6 and 12 were substantially fought out. In relation
18          to those which were allowed, the Defendant had already stated that we
19          will be happy to file the affidavit. The Defendant has already said that it
20          would file the affidavit. It was a concession already made by the
21          Defendant. Your Honour had noted at [11] that the Defendant had already
22          stated that it did not have documents within its PCP. With respect to
23          Category 11, this was also not seriously fought out. In fact, the Plaintiff
24          did raise an allegation that Mr Mehta tampered with the ISO document.
25          That was not accepted by your Honour. For Category 13, at [13], your
26          Honour had already noted that these are not in the Defendant's PCP.

27

28          However, for the categories that were disallowed, those were all
29          significantly fought before your Honour.

30

31          In relation to e-Discovery, that was also fought out substantially – in fact,
32          these issues jumped out to your Honour and your Honour addressed it at

| | | |
|---|---|---|
| 1 | | the start. At the hearing, we were caught by surprise where the Plaintiff |
| 2 | | said that the e-Discovery request was to catch a different part of the |
| 3 | | supply chain. The Plaintiff's counsel said that it wanted to do a clean |
| 4 | | sweep. We submit that costs of $10,000 plus $1,400. |
| 5 | | |
| 6 | Pang : | I strongly disagree with my learned friend's submissions. As for the |
| 7 | | points that my learned friend said were not seriously contested, the point |
| 8 | | is that the points were contested. My learned friend *did not* actually put |
| 9 | | in an affidavit. All the way from 18 December 2017, we had requested |
| 10 | | for these affidavits, but they were not filed. Time and again, what the |
| 11 | | Defendant did was to say that it was not necessary to provide the |
| 12 | | affidavits. |
| 13 | | |
| 14 | | Your Honour will remember that Mr Tony Yeo had contested the issues. |
| 15 | | My learned friend had said that since the points were put in issue, there |
| 16 | | was a right for them to contest the categories. |
| 17 | | |
| 18 | JY : | I note that Mr Pang has said that the only reason they included the |
| 19 | | categories was to make sure that the affidavits would be filed. I refer to |
| 20 | | the 13 March 2018 letter, where Defendant's counsel said that there was |
| 21 | | no urgency for the affidavit to be filed. |
| 22 | | |
| 23 | Pang : | Just 2 points. First, in relation to the urgency of the request, what we |
| 24 | | wanted to avoid was a situation where we wait until late August for the |
| 25 | | affidavit. If this had not been made the subject of the application, we |
| 26 | | would be left scrambling if we have to take out the application when the |
| 27 | | affidavit is found to be inadequate. We needed to review and save time |
| 28 | | and costs. The arguments made by my learned friend dealt with these |
| 29 | | categories. They didn't come in and just say that they conceded the |
| 30 | | categories, and would only argue on them in relation to costs. |
| 31 | | |

```
HC/S 26/2016
HC/SUM 1478/2018
HC/SUM 1654/2018                    11                      27 August 2018
```

| | | |
|---|---|---|
| 1  TY | : | In [10], your Honour had noted that the Defendant had not contested the relevance of these Requests. Your Honour has stated what my position was at the hearing. |
| 5  Ct | : | In my view, this is a matter where each of the categories were fiercely fought, but on balance, I am of the view that the Defendant had succeeded on resisting the more substantial requests, as well as prayer 3 (e-Discovery). |
|    |   | As such, I make an order of costs to the Defendant, of $2,000 all in. |

**HC/SUM 1654/2018**

| | | |
|---|---|---|
| 14 Ct | : | I will now render judgment for HC/SUM 1654/2018. I have prepared a written decision limited to the categories relating to experiments, and will provide you with a copy as well. However, this is a draft copy of the judgment, and is subject to further editorial amendment. Please apply in the usual manner for the official copies. I am providing the printouts to you only to facilitate your preparation of the draft order. |

HC/S 26/2016
HC/SUM 1478/2018
HC/SUM 1654/2018            12            27 August 2018

## Judgment for HC/SUM 1654/2018

**Introduction**

1  HC/SUM 1654/2018 is an application by the Defendant for specific discovery ("the Application"). About 200 pages of written submissions (including 20 pages of further written submissions) were taken as read prior to the various hearings of this matter. However, due to the number of requests and the arguments surrounding each request, hearing of the application spanned about 12 hours over three days.

2  The Application has a total of 12 requests, which may be conveniently categorised under 3 large headings, as follows:

   (a)  Category 1 – Documents relating to chain of custody and provenance of the Samples (Request 1)

   (b)  Category 2 – Documents relating to experiments conducted on the Samples (Requests 2 to 6)

   (c)  Category 3 – Documents relating to the prior sale and/or disclosure of the diamond material claimed in SG 872 prior to its priority date (Requests 7 to 12).

3  I now render my decision on the application. As the requests in Category 2 relate to a point of law that has not hitherto been dealt with in published Singapore jurisprudence, I have set out my grounds for those requests in greater detail by way of a written judgment.

**Category 1 – Documents relating to chain of custody and provenance of the Samples (Request 1)**

4     Category 1 comprises documents relating to chain of custody and provenance of the Samples. There are four sub-requests within this Category, as follows:

    (a)    Request 1(i) – all documents relating to and leading up to the purchase of the Samples;

    (b)    Request 1(ii) – all documents relating to the handling, transfer of possession and/or custody of the Samples before they came into the Plaintiff's possession;

    (c)    Request 1(iii) – unredacted copies of documents relating to the handling, transfer of possession and/or custody of the Samples pursuant to the Plaintiff's alleged "robust system"; and

    (d)    Request 1(iv) – all documents relating to the handling, transfer of possession and/or custody of the Samples that would reveal or tend to reveal the purpose of the handling, transfer of possession and/or custody of the Samples. In particular, all documents relating to the transfer of possession of the Samples from the Plaintiff to third party facilities.

5     In relation to Request 1(i), I note that the Plaintiff has disclosed some documents leading up to the various trap purchases of the Samples. The bone of contention between the parties is in relation to the term "material transfer paperwork", which the Plaintiff claims to have disclosed entirely. In this regard, the Defendant argued that it was not aware of what was meant by the requirement of "materiality". However, the Plaintiff's representative has explained on affidavit that the word "material" simply meant "relevant to the Suit", and gave the example that documents with "only a passing/peripheral

HC/S 26/2016
HC/SUM 1478/2018
HC/SUM 1654/2018                    14                        27 August 2018

reference to a transfer without any details" would not be regarded as "material". With the Plaintiff's explanation that it has disclosed all relevant documents in relation to the transfers, and in the absence of any reason to believe that there are further relevant documents that have been withheld from discovery, I disallow Request 1(i).

6    I disallow Request 1(ii), as the Plaintiff has provided sufficient explanation on oath that it has disclosed the full extent of the relevant material. However, (a) Daniel Twitchen is to affirm an affidavit explaining the matters in para 23 of the 15th Affidavit of Susan Fletcher Watts; and (b) Dr Simon Lawson and Dr Brad Cann are to affirm affidavits explaining how Sample 3 was brought into the Maidenhead facility of De Beers UK Ltd. The Defendant has not been able to identify with any specificity any other material that has been withheld from disclosure, or that there remains other relevant material that ought – of necessity – to be disclosed. As such, I disallow Request 1(ii). Of course, it remains open to the Defendant to argue at trial that certain inferences ought to be drawn from the absence of certain documentary evidence as part of the documentary trail in relation to the chain of custody. For instance, if the Defendant is of the view that it is inherently unbelievable that Andrey Jarmola of UC Berkeley had informed Daniel Twitchen "by way of a phone call" that Sample 2 was received from Microwave Enterprises, the Defendant is free to mount an argument in relation to this point at trial.

7    In relation to Request 1(iii), I am satisfied with the explanation provided by the Plaintiff for the redaction of documents and as such disallow Request 1(iii).

8    In relation to Request 1(iv), I am of the view that the request as presently phrased is too broad. It is not limited to documents that show changes to the Samples that are relevant for the purposes of the Suit, and the phrase "tend to reveal the purpose" itself further broadens the request. As such, this request is limited to documents relating to the handling, transfer of possession and/or