IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

*In re* Ex Parte Application of

ELEMENT SIX TECHNOLOGIES LIMITED,

    *Applicant,*

For an Order Pursuant to 28 U.S.C. § 1782

Case No. 1:18-mc-00418

**PETITIONER ELEMENT SIX TECHNOLOGIES LIMITED'S REPLY
TO PURE GROWN DIAMOND, INC.'S OPPOSITION TO ELEMENT SIX
TECHNOLOGIES LIMITED'S APPLICATION PURSUANT TO 28 U.S.C. § 1782**

Although Pure Grown Diamonds, Inc. ("PGD") opposes the application under 28 U.S.C. § 1782 filed by Element Six Technologies Limited ("Element Six"), PGD cannot contest the factual bases that support granting the application.

- Element Six is seeking discovery related to a critical issue in the Singapore patent infringement case – the chain of custody of infringing diamond material from PGD's sister company, IIa, through to PGD's ultimate sale of the finished gemstones. The requested discovery is directed to documents and testimony regarding the provenance of infringing materials (including Sample 3) that PGD received from IIa, as well as the admissibility of those documents. PGD admits the relevance of this discovery.

- The requested discovery is not available in the Singapore case because PGD is neither a party to the case nor subject to the Singapore court's jurisdiction. In fact, IIa convinced the Singapore court that it should not compel responses to interrogatories on the provenance of Sample 3 in part because it would be better to obtain the discovery directly from PGD in the United States.

1

- The Singapore court is receptive to this discovery, having suggested it in the first place.

Thus, Element Six's application should be granted.

A.     **Statutory Factor 2: The Requested Discovery Is "For Use" in the Singapore Case**[1]

PGD makes three arguments against Element Six's clear showing that discovery related to the provenance of Sample 3 would be useful in the Singapore case. None has any merit.

First, PGD cites cases that stand for the unsurprising proposition that irrelevant information is not discoverable pursuant to § 1782. But those cases have no bearing here because Element Six is seeking relevant information, as expressly admitted by PGD in its opposition. PGD admits that a "relevant issue is the provenance of the Samples" and that "[i]n court orders, the Singapore court has expressly ruled that [a] relevant issue concerning the diamond sample from PGD, 'Sample 3,' is whether it came from IIa." D.I. 20, p. 11 and 1, respectively; *see also id.*, p. 10 ("the only applicable issue: the provenance of Sample 3"). Although PGD characterizes those issues too narrowly – as the only relevant issues – it still admits that they are relevant, and that related discovery could be "for use" in the Singapore litigation. (Incredibly, PGD then feigns ignorance of how such documents could be relevant to the Singapore litigation.) *Id.*, p. 12. PGD's admissions show that the requested discovery is relevant to, and important for use in, the Singapore litigation.

Second, PGD argues that Element Six's evidence regarding the Singapore court's suggestion that Element Six obtain the relevant discovery is insufficiently reliable. But once again, PGD itself provides the best evidence to undercut its own argument. PGD submitted the Singapore court's transcripts of notes of evidence of the discovery hearings[2] that show that Element Six's declarant's characterization of the Singapore court's proceedings was completely

---

[1] PGD does not dispute that Element Six's application satisfies threshold statutory factors 1 and 3.

[2] These transcripts had not been received when Mr. Pang executed his declaration on September 6, 2018.

accurate. In December 2017, Element Six served interrogatories upon IIa regarding the provenance of all of the samples accused in the Singapore case; IIa then sought to quash the interrogatories. As those transcripts show, at the insistence of IIa (PGD's sister company and the defendant in the Singapore case), the Singapore court suggested that Element Six obtain the discovery directly from PGD instead. For example, during a June 4, 2018 hearing, IIa's counsel argued:

> The issue before this Court is more in relation to Samples 1 to 3. The three samples were purchased from entities in the US – Gemesis, Microwave, and Pure Grown Diamonds. If the Plaintiff has purchased the diamonds from these entities, have they written to the entities to ask where they got the diamonds from? Wouldn't that have been the most direct way of asking? They can always ask where the diamonds are from.
>
> . . .
>
> If you look at these questions, wouldn't it have been more direct if the Plaintiff were to just write to Gemesis and ask 'did you get LG10061905 from the Defendant'? Isn't that the most straightforward and simplest thing to do? . . . [I]f they trap purchased it, then they should ask the entity that they purchased from.

D.I. 21, Ex. F-1, p. 5 and 11.

> The Singapore court concurred, stating:
>
> Here, [IIa's counsel] Mr Yeo has said that it would make more sense for the Plaintiff to ask questions on chain of custody and provenance from the entities from whom it purchased Samples 1 to 3. Intuitively, it does seem that that would provide a more direct answer.
>
> . . .
>
> [C]an you say that it is *necessary* for the Defendant to answer the questions (which might go towards showing the 'likelihood' of how unmarked diamonds have moved), rather than to go straight to the entity in question, in the United States?

DI. 21, Ex. F-2, p. 9 (emphasis in original). The Singapore court therefore refused to compel IIa to respond to the interrogatories in part based on its conclusion that the discovery could – and should – be obtained from PGD in the United States. Thus, Mr. Pang accurately characterized

3

that the Singapore court "express[ed] the view that it would be more direct and effective for Element Six to obtain discovery from these third party retailers." D.I. 5, p. 8, ¶ 27; *see also* D.I. 20, p. 9.

Third, PGD asserts that Element Six's narrow discovery requests directed specifically to the accused samples are not relevant to the Singapore litigation. In view of the Singapore hearing transcript (excerpted above), this position is not sustainable.[3] Nevertheless, on October 16, 2018 (promptly after PGD filed its opposition), Element Six reached out to PGD to meet and confer, seeking to ensure that it obtains the needed discovery without unnecessarily burdening PGD. Rich Decl. Exs. 1, 3. PGD has rebuffed those efforts. Rich Decl. Exs. 2, 3. Regardless, Element Six remains willing to confirm that it will use the information exclusively in relation to the Singapore litigation, not for business purposes, and work with PGD to reach more focused discovery requests based on discovery PGD has already admitted is relevant in the Singapore

---

[3] Though the requested discovery is unquestionably relevant and important to the Singapore case, PGD nonetheless casts unsupported aspersions on Element Six's intent in requesting it. PGD argues, "The only use that most of this discovery could possibly have for Element Six is to give it—and, by extension, De Beers—an insider understanding of PGD's products and confidential business practices and a leg up in the grown diamond market." D.I. 20, p. 13. That is not only unfounded and incorrect, it improperly categorizes the entire point of this proceeding: The discovery will go to prove up Element Six's case of patent infringement in the Singapore court.

Throughout the rest of its brief, PGD makes a number of other unsupported, irrelevant, and/or incorrect statements concerning Element Six and De Beers (not a party to this proceeding) and the marketplace for synthetic diamonds that are similarly irrelevant and/or incorrect. For all of its bluster, however, PGD provides no support for any of these statements, none.

The uncontested facts in this case are simple. Element Six designs, develops, and produces synthetic diamond supermaterials. Element Six currently owns over 1000 granted patents and approximately 500 pending patent applications worldwide, covering all of its businesses, including Singapore Patent Nos. 115872 and 110508, both of which relate to synthetic diamond material for various uses. On January 12, 2016, Element Six sued IIa based on these patents and several product samples purchased through U.S. retailers. Element Six sought discovery from IIa before the Singapore court concerning the provenance of these samples and, *to date*, IIa has argued that it did not make these samples and has no knowledge, documents, or things that go the provenance of these samples. Both IIa and the Singapore court (in denying those discovery requests) encouraged Element Six to obtain this discovery from the relevant retailers in the United States. Element Six is currently before this Court doing exactly that.

litigation.  Thus, there should be no doubt that Element Six is seeking the requested discovery *only* for use in the Singapore litigation.

B.     *Intel* Discretionary Factor 1: The Requested Discovery Could Not be Obtained in the Foreign Proceedings

In identifying the first discretionary factor, the *Intel* Court stated: "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding ..., the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence." *Intel*, 542 U.S. at 264.  Here Element Six is seeking discovery from PGD.  PGD is not a party to the Singapore litigation and is not subject to the jurisdiction of the Singapore court.  The Singapore court cannot compel it to produce documents or provide testimony.  Thus, the first discretionary factor identified by the Supreme Court supports granting Element Six's application.

PGD seeks to obfuscate this straightforward conclusion by submitting an expert declaration from a Singapore lawyer, Mr. Rajah.  Mr. Rajah argues that the same discovery could possibly be obtained using Letters Rogatory.  However, that does not aid PGD's argument.  Letters Rogatory are an alternative, but not essential, method for starting the discovery process under 28 U.S.C. § 1782(a).[4]  The statute establishes no preference for one route over the other. [5]

---

[4] "The order may be made *pursuant to a letter rogatory* issued, or request made, by a foreign or international tribunal *or upon the application of any interested person* and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement." 28 U.S.C. § 1782(a) (emphasis added).

[5] Indeed, this Court has granted requests for discovery under § 1782 without the issuance of letters rogatory.  *See, e.g.*, *In re Application of Gorsoan Ltd. & Gazprombank OJSC for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 13 MISC. 397 PGG, 2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014) (J. Gardephe), *aff'd sub nom. Gorsoan Ltd. v. Bullock*, 652 F. App'x 7 (2d Cir. 2016).

More fundamentally, however, the discovery that Element Six seeks could not be obtained directly in the Singapore case. As described above, IIa told the Singapore court that it did not have the relevant documents and argued that it should not have to respond to interrogatories because Element Six could get the information directly from PGD in the United States. The Singapore court refused to compel IIa to respond to interrogatories in large part based on its conclusion that the discovery should be obtained from PGD in the United States. PGD and IIa should not be allowed to play one Court off against the other.

C.  *Intel* Discretionary Factor 2: The Singapore Court Is Receptive to U.S. Judicial Assistance

PGD does not dispute that the Singapore court would be receptive to receiving assistance obtaining PGD's documents. As discussed above, the Singapore court encouraged this and PGD's expert admits it. Thus, the second *Intel* factor supports the production of PGD's requested documents. Instead, PGD argues that the requested deposition testimony would not be admissible at trial. But it never argues that the Singapore court would refuse to consider the deposition testimony in determining the weight to give the documents to be produced or in deciding whether to allow more discovery from IIa. In other words, although PGD goes to great lengths seeking to undermine the credibility of Element Six's expert declarant on Singapore law, it has no basis to argue (and does not argue) that his analysis is incorrect.

The declarations submitted by Mr. Rajah and Mr. Pang are consistent: both experts recognize that deposition testimony may be admissible for interlocutory issues (such as consideration of whether to compel further discovery from IIa), whether it is admissible at trial or not. *Compare* D.I. 5, at p. 12-14 (citing Exs. 12-14) *to* D.I. 22, at p. 14, ¶¶ 37-41. Here, the deposition testimony sought by Element Six relates to four key topics: (1) information regarding Sample 3 including its manufacture, procurement, storage, and sale (Topic Nos. 1, 29);

(2) admissibility of documents related to Sample 3 (Topic Nos. 2-7, 9-10, 11-12, 14-16, 18-20, 22-24, and 26-28); (3) communications concerning the infringing samples and the Singapore litigation (Topic Nos. 8, 11, 30-31); and (4) to the extent that there is no information specific to Sample 3, PGD's general practices and protocols related to manufacture, purchase, storage, and sale of CVD diamond material at the time of provenance of Sample 3 (Topic Nos. 13, 17, 21, and 25).  D.I. 3, Ex. B.  All of these topics would provide information relevant to various interlocutory issues, in particular, whether there are additional documents for IIa to produce, whether IIa should provide further interrogatory responses, and/or whether documents produced by PGD would be admissible.  Thus, these topics are not barred from consideration by the Singapore court under either Mr. Pang's or Mr. Rajah's analysis, and PGD should provide testimony on them (in addition to the requested documents).

**D.    *Intel* Discretionary Factor 3: Element Six Is Seeking to Follow the Singapore Court's Discovery Orders, Not Circumvent Them**

Element Six's discovery requests are narrowly limited to the diamond samples at issue in the Singapore litigation, as PGD admits.  Furthermore, Element Six is doing exactly what the Singapore court suggested – pursuing this admittedly relevant discovery directly from PGD in the United States.  Thus, the third *Intel* discretionary factor supports granting Element Six's application.

PGD argues that Element Six's requests are overbroad because the Singapore court refused earlier discovery based solely on a lack of temporal limitations in Element Six's requests to IIa.  That is not what the Singapore court did. The Assistant Registrar granted some requests and denied others; requests similar to the subject matter requested here were allowed.  *See, e.g.*, D.I. 21, Ex. I-1, p. 7.  In the cited paragraph, it refused to compel certain other discovery because the lack of a temporal limitation meant that the request would not have been tied to the Samples:

> Request 5 extends to documents "to date". Plaintiff's counsel has explained in written submissions that "it is very possible that even recently created documents would shed light on the Defendant's annealing process", and that having a restrictive upper limit on the documents sought "would create the risk of excluding highly relevant documents". However, ***setting "to date" as the upper limit would include documents that post-date the manufacture and purchase of the Samples, and there is no basis for such documents to be relevant to the alleged infringing Samples***. The request also appears to be speculative in nature.

Ex. I, p. 5, ¶ 7(b) (cited in D.I. 20, p. 17; emphasis added). That is, the Singapore court's concern was not based on when a document was created, it was based on whether such a document would relate to the infringing Samples. Here, all of the discovery requests are expressly tied to the infringing Samples, which satisfies the overbreadth concern expressed by the Singapore court.[6] *See* D.I. 3, Ex. B.

PGD also raises a cryptic argument asserting that "Element Six knew of Sample 3's origin in 2016 and did nothing for two years" to support an argument that Element Six should have sought this discovery earlier from the Singapore court. D.I. 20, p. 18. The factual statement is demonstrably untrue – PGD itself submitted transcripts that showed Element Six was diligently seeking the discovery in the Singapore court. *See, e.g.*, D.I. 21, Ex. F-1, p. 2-6. Furthermore, Element Six did exactly what it should have done according to the cases that PGD cites: it sought the discovery first in the foreign court and only invoked § 1782 when it was unable to obtain satisfaction there. *See* D.I. 20, p. 18-19 (collecting cases standing for proposition that courts may deny § 1782 requests when a party has not first sought production in the foreign forum). That is, according to the cases PGD cites, Element Six has done exactly

---

[6] As PGD points out, there was one typographical error that led to the omission of the term "during the provenance period for Sample 3" from Request No. 21. D.I. 20, p. 17. That request should be limited in that manner (as Request Nos. 19, 20, 22, and 23 are). Element Six appreciates PGD noting the error and giving Element Six the opportunity to clarify and correct it.

what it should have done by exhausting the possibility of discovery from IIa in Singapore first. *Intel* discretionary factor 3 supports granting its current application.

E.     ***Intel* Discretionary Factor 4: Element Six Is Seeking Narrowly Tailored Discovery**

PGD's final argument on the *Intel* factors is that the discovery that Element Six seeks would be overly burdensome. While Element Six doubts that the narrow discovery it served would be especially burdensome because it is focused only on the infringing Samples in the Singapore litigation, it reached out to PGD to meet and confer in order to make sure the discovery would not be too onerous.[7] Rich Decl. Exs. 1, 3. But PGD refuses to cooperate in narrowing the discovery in a manner that would get Element Six the discovery it needs, while minimizing the burden on PGD. Rich Decl. Exs. 2, 3. Given these circumstances, PGD should not be heard to complain that Element Six's requested discovery would be too burdensome. Nonetheless, Element Six remains willing to narrow the requested discovery to the documents and testimony related to only Sample 3 (rather than all three of the infringing Samples) or, if there are no documents sufficient to show the provenance of Sample 3 specifically, to documents sufficient to show how PGD obtained its CVD diamonds in the time period relevant to Sample 3. *See* Rich Decl. Ex. 1. Under these circumstances, *Intel* discretionary factor 4 favors granting the application.

Finally, PGD asks to be allowed to object to the subpoena. D.I. 20, p. 23. Had Element Six's application been considered by this Court *ex parte*, a request to be heard on the scope of the subpoena would make sense. But because PGD has opposed the application, its request is a

---

[7] PGD also complains that discovery would be onerous for it to respond to because it is a "small business" with limited resources at its disposal." D.I. 20, p. 20. On the other hand, it asserts that it is a "market leader in the manufacture and sale of [lab] grown diamonds." *Id.* at p. 4. Furthermore, PGD is part of the greater IIa Holdings Group, which also includes IIa, the defendant in the Singapore case. *See* D.I. 21, Ex. J-2, p. 13 ("The Defendant [IIa] has admitted that PGD and itself are part of the IIa Holdings Group."). And more fundamentally, PGD voluntarily responded to an *ex parte* application with extensive briefing, exhibits, and declarations.

transparent attempt to delay production of its documents.  PGD no doubt hopes to run out the clock in aid of its sister company, IIa, knowing full well that factual witness statements must be submitted by December 28, 2018 in the Singapore litigation.  D.I. 16, p. 1.  PGD has had its opportunity to address the scope of the subpoena and should not be allowed to reargue that issue.

## CONCLUSION

Element Six respectfully requests that this Court grant its application for discovery pursuant to 28 U.S.C. § 1782 and issue the subpoena included in Element Six's opening papers.

Dated:      October 29, 2018
            New York, New York

Respectfully submitted,

**PROSKAUER ROSE LLP**

/s/ *Russell T. Gorkin*
Steven M. Bauer, Esq.
Russell T. Gorkin, Esq.
Eleven Times Square
New York, NY 10036-8299
Tel: (212) 969-3000
Fax: (212) 969-2900
sbauer@proskauer.com
rgorkin@proskauer.com

*Attorneys for Element Six Technologies Limited*

**MCDONNELL BOEHNEN
HULBERT & BERGHOFF LLP**

Paul H. Berghoff, Esq. (*pro hac vice*)
Joshua R. Rich, Esq. (*pro hac vice*)
George T. Lyons III, Esq. (*pro hac vice*)
300 South Wacker Drive
Chicago, Illinois 60606-6709
Tel: (312) 913-0001
Fax: (312) 913-0002
berghoff@mbhb.com
rich@mbhb.com
lyons@mbhb.com