UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/2/19_

In Re Application of ELEMENT SIX
TECHNOLOGIES LIMITED for an Order Pursuant to
28 U.S.C. § 1782,

Petitioner,

- against -

PURE GROWN DIAMONDS, INC.,

Respondent.

**ORDER**

18 Misc. 418 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

This is a proceeding pursuant to 28 U.S.C. § 1782 for discovery in aid of a civil

lawsuit pending in Singapore against Ila Technologies Pte. Ltd ("Ila"). On September 7, 2018,

Petitioner Element Six Technologies Ltd. filed an application to issue subpoenas directing

Respondent Pure Grown Diamonds, Inc. ("PGD") to produce documents and provide testimony

for the Singapore action.[1] (Dkt. Nos. 1, 3-5) On October 12, 2018, Respondent filed an

opposition to the application. (Dkt. Nos. 20-23) On October 29, 2018, Petitioner filed a reply.

(Dkt. Nos. 24-25) For the reasons stated below, Petitioner's application will be granted in part.

**BACKGROUND**

On January 12, 2016, Petitioner initiated a patent infringement case against Ila in

the High Court of the Republic of Singapore (the "Singapore Court"). (Pang Decl. (Dkt. No. 5) ¶

3) Petitioner alleges that Ila infringed two patents related to the creation of synthetic diamonds.

(Id. ¶ 5) This allegation is based, in part, on diamond samples Petitioner purchased from Ila's

---

[1] Petitioner's application was filed ex parte. (Dkt. No. 1) On September 20, 2018, however,
Respondent's counsel filed a notice of appearance and requested permission to file an opposition
to Petitioner's application. (Dkt. Nos. 14-15) On October 5, 2018, the Court granted
Respondent's request and set a briefing schedule. (Dkt. No. 19)

distributors in the United States. (Id. ¶ 6) One sample – referred to as "Sample 3" – was purchased from Respondent PGD.[2] (Id.) Petitioner alleges that Sample 3 infringes both of the patents at issue, and that Ila manufactured Sample 3. (Id. ¶¶ 8, 14) In support of this claim, Petitioner alleges, inter alia, that Ila and Respondent share common ownership, and cites to news articles stating that PGD's diamonds are manufactured in Singapore. (Id. ¶ 14) Ila maintains that it did not manufacture Sample 3 and has no knowledge of it. (Id. ¶ 16)

Discovery in the Singapore action began in October 2016. (Id. ¶ 17) Ila's initial disclosures did not include any documents related to Sample 3; Petitioner requested further discovery on that topic. (Id. ¶¶ 19-20) On February 19, 2018, Ila moved to quash Petitioner's interrogatories, including five interrogatories concerning the provenance of Sample 3. (Id. ¶¶ 23-25) On March 28, 2018, Petitioner moved to compel Ila to produce documents, including documents related to the provenance of Sample 3. (Id. ¶ 20)

On June 4 and 7, 2018, the Singapore Court conducted hearings on Ila's motion to quash and Petitioner's motion to compel. (Id. ¶ 26) At the June 4, 2018 hearing, Ila contended that Petitioner's inquiries regarding the provenance of Sample 3 should be directed to PGD. (June 4, 2018 Hearing Tr. Pt. 1 (Dkt. No. 21-6) at 5 ("The three samples were purchased from entities in the U.S. . . . If the Plaintiff has purchased diamonds from these entities, have they written to the entities to ask where they got the diamonds from? Wouldn't that have been the most direct way of asking?"))[3] The Singapore Court appeared to agree that Petitioner's inquiries concerning the provenance of Sample 3 should be directed to PDG rather than Ila. (June 4, 2018

---

[2] Petitioner originally sought "information concerning Samples 1 and 3." (Pet. Br. (Dkt. No. 3) at 4) In its reply, however, Petitioner states that it is "willing to narrow the requested discovery to the documents and testimony related to only Sample 3." (Reply (Dkt. No. 24) at 9) Accordingly, this Order addresses only Sample 3.

[3] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing system.

Hearing Tr. Pt. 2 (Dkt. No. 21-7) at 9 ("Here, [Ila] has said that it would make more sense for the Plaintiff to ask questions on chain of custody and provenance from the entities from whom it purchased Samples 1 to 3. Intuitively, it does seem that that would provide a more direct answer."))

On August 14, 2018, the Singapore Court granted Ila's request to quash Petitioner's interrogatories, stating that they were too broadly formulated. (Pang Decl. (Dkt. No. 5) ¶ 28) For example, the Singapore Court concluded that Petitioner's interrogatories related to Ila's supply of diamonds to third parties were overbroad because they did not directly relate to the diamond samples at issue, including Sample 3. (August 14, 2018 Bench Ruling Tr. (Dkt. No. 21-9) ¶¶ 10-16) On August 27, 2018, the Singapore Court granted in part and denied in part Petitioner's motion to compel the production of documents. (Pang Decl. (Dkt. No. 5) ¶ 28) The Singapore Court limited discovery to documents related to the diamond samples at issue in the Singapore proceeding, including Sample 3, and disallowed requests for (1) documents created after the date those diamond samples were manufactured; (2) documents related to non-infringing processes; and (3) e-discovery. (August 27, 2018 Bench Ruling Tr. (Dkt. No. 21-10) ¶¶ 5-17)

On September 7, 2018, Petitioner filed an application in this Court seeking a subpoena directing PGD to produce documents and provide testimony related to Sample 3 for the Singapore proceeding, pursuant to 28 U.S.C. § 1782. (Dkt. Nos. 1, 3-5) Petitioner's application lists 25 document requests and 31 topics for examination. (Proposed Subpoena (Dkt. No. 3-2)) Although many of Petitioner's document requests and topics for examination address the provenance, manufacture, supply, procurement, sale, and purchase of Sample 3, Petitioner's requests go beyond these subjects. For example, Petitioner seeks communications regarding the

3

Singapore litigation, documents concerning the manufacture, purchase, procurement, or sale of "CVD diamond material," and materials concerning PGD's document retention policies.[4] (Id. at 17-18, 20-24)

On October 12, 2018, PGD filed its opposition to Petitioner's application. (Dkt. Nos. 20-23) PGD argues that the petition does not meet the statutory requirements of Section 1782, that the Singapore Court would not be receptive to receiving the sought-after evidence, and that granting this petition would be unduly burdensome to PGD. (Resp. Br. (Dkt. No. 20) at 12-27) While PGD concedes that the provenance of Sample 3 is relevant to the Singapore proceeding, it argues that the petition seeks documents and testimony that go beyond the provenance of Sample 3. (Id. at 5-6) For example, the petition seeks information that post-dates the manufacture and sale of Sample 3. (Id. at 17)

On October 29, 2018, Petitioner filed its reply to Respondent's opposition. (Dkt. Nos. 24-25)

In a December 13, 2018 letter, Petitioner requests an "expedited resolution" of its application, stating that the Singapore Court's deadline for Petitioner to submit its factual affidavits is December 28, 2018.[5] (Pet. Ltr. (Dkt. No. 26) at 2) In a December 18, 2018 response, Respondent states that "[t]here is no basis for the Court to rush to render a decision during the holiday season." (Resp. Ltr. (Dkt. No. 27) at 2)

---

[4] "CVD diamond material" is not defined in Petitioner's proposed subpoenas. The Court understands "CVD diamond material" to refer to synthetic diamonds.

[5] Petitioner's letter states: "As we originally informed the Court, the deadline in the underlying Singapore litigation for submission of factual [a]ffidavits . . . had been set for December 28, 2018." (Id. at 1) This Court cannot find any reference in Petitioner's original 1,402-page application to a December 28, 2018 deadline.

4

**DISCUSSION**

## I.    LEGAL STANDARD

Section 1782(a) provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). "The statute authorizes district courts to grant such relief only where (1) the person from whom discovery is sought resides or is found in the district of the district court where the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by the foreign tribunal or 'any interested person.'" In re OOO Promnefstroy, No. M 19-99 (RJS), 2009 WL 3335608, at *4 (S.D.N.Y. Oct. 15, 2009) (citing Schmitz v. Berstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir. 2004)).

"'[O]nce the statutory requirements are met, a district court is free to grant discovery in its discretion.'" Schmitz, 376 F.3d at 83-84 (quoting In re Metallgesellschaft AG, 121 F.3d 77, 78 (2d Cir. 1997)) (alteration in Schmitz); see In re Edelman, 295 F.3d 171, 181 (2d Cir. 2002) ("Congress planned for district courts to exercise broad discretion over the issuance of discovery orders pursuant to § 1782(a) – both over whether to grant a discovery order and, if so, what limits to place on that discovery.") (citing S.Rep. No. 88–1580, § 9, reprinted in 1964 U.S.C.C.A.N. at 3788). "This discretion, however, is not boundless. Rather, [the Second Circuit

has] held that 'district courts must exercise their discretion under § 1782 in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" Schmitz, 376 F.3d at 84 (quoting In re Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir. 1992)) (internal quotation marks omitted).

In exercising this discretion, courts consider:

(1)     [w]hether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid;

(2)     [t]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;

(3)     [w]hether the § 1782 request conceals a[n] attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and

(4)     [w]hether the subpoena contains unduly intrusive or burdensome requests.

In re Microsoft Corp., 428 F. Supp. 2d 188, 192-93 (S.D.N.Y. 2006) (citing Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004)).

"A court considering a request for discovery under § 1782 must also be mindful of U.S. federal discovery procedures under Rules 26 and 45 of the Federal Rules of Civil Procedure." In re Auto-Guadeloupe Investissement S.A., No. 12 MC 221 (RPP), 2012 WL 4841945, at *4 (S.D.N.Y. Oct. 10, 2012); see In re Gushlak, No. 11 MC 218 (NGG), 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011) ("Section 1782(a) mandates that discovery under the statute be produced 'in accordance with the Federal Rules of Civil Procedure.' Accordingly, the court is guided by Rules 26 and 45, which govern third-party discovery."), aff'd sub nom. Gushlak v. Gushlak, 486 F. App'x 215 (2d Cir. 2012).

## II.    ANALYSIS

### A.    Statutory Factors

There is no dispute here that Petitioner's application satisfies the first and third statutory factors: Respondent is a privately held company based in New York, New York. (See Lyons Decl. (Dkt. No. 4) ¶¶ 3-5) Accordingly, the entity "from whom discovery is sought . . . is found in the district of the district court where the application is made." In re OOO Promnefstroy, 2009 WL 3335608, at *4 (citing Schmitz, 376 F.3d at 83). Moreover, Petitioner is the plaintiff in the Singapore case, and therefore an "interested person" in the foreign proceeding. Intel Corp., 542 U.S. at 256 (an entity with "participation" rights in the underlying foreign proceeding is an "interested person").

With regard to the second statutory factor, Petitioner argues that the requested documents and testimony are "for use" in the Singapore proceeding, in that they will "help demonstrate that [Sample 3 was] made of diamond material manufactured by [PGD's] sister company, Ila, and overcome the denials asserted by Ila." (Pet. Br. (Dkt. No. 3) at 7)

Respondent argues that the requested documents and testimony are not "for use" in the Singapore proceeding, asserting that the Singapore Court "has already denied the vast majority of the requested discovery as irrelevant to the only applicable issue: the provenance of Sample 3." (Resp. Br. (Dkt. No. 20) at 14) Respondent also contends that the Singapore Court did not state that Petitioner should seek discovery directly from Respondent. (Id. at 13)

The Court concludes that the requested documents and testimony are "for use" in the Singapore proceeding. Under Section 1782, evidence can be "for use" in a foreign proceeding even where a foreign court is not likely to admit the evidence at issue. See Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 82 (2d Cir. 2012) (reversing district

court's holding that Section 1782 requirements were not met where foreign court would not be receptive to the evidence sought, stating that district court's decision was based on an "'erroneous view' of § 1782's 'for use' requirement" (quoting In re Sims, 534 F.3d 117, 132 (2d Cir. 2008))). Indeed, the Second Circuit has stated that "a district court should not consider the discoverability [or] admissibility of evidence in the foreign proceeding in ruling on a section 1782 application." Id. at 82. Moreover, the "for use" requirement may be satisfied even where there is no pending or imminent foreign proceeding. Intel Corp., 542 U.S. at 259 ("[W]e reject the view, expressed in In re Ishihara Chemical Co., that § 1782 comes into play only when adjudicative proceedings are 'pending' or 'imminent.'") (reversing In re Ishihara Chemical Co., 251 F.3d 120 (2d Cir. 2001)).

Here, there is a pending case in Singapore, and the Petitioner seeks evidence that goes to a core issue in that case.[6] For purposes of Section 1782, the materials and testimony sought are being requested "for use" in a foreign proceeding.

Accordingly, the statutory requirements of Section 1782 are satisfied, and this Court is "'free to grant discovery in its discretion.'" Schmitz, 376 F.3d at 84 (2d Cir. 2004) (quoting In re Metallgesellschaft, 121 F.3d at 78); see also In re OOO Promnefstroy, 2009 WL 3335608, at *4 (citing Schmitz, 376 F.3d at 83).

---

[6] Moreover – and contrary to Respondent's argument – the Singapore Court clearly suggested that Petitioner should seek evidence directly from PGD. As noted above, the Singapore Court commented at the June 4, 2018 hearing that inquiries to PGD concerning the provenance of Sample 3 "would provide a more direct answer" than posing the same inquiries to Ila. (June 4, 2018 Hearing Tr. Pt. 2 (Dkt. No. 21-7) at 9)

## B.  Discretionary Factors

In determining whether to exercise its discretion to grant Petitioners' motion, this Court must consider the four factors articulated by the Supreme Court in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004).

### 1.  Whether the Evidence Sought is Within the Jurisdictional Reach of the Singapore Court

Under the first Intel factor, courts consider "[w]hether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid." In re Microsoft Corp., 428 F. Supp. 2d at 192 (citing Intel Corp., 542 U.S. at 264-65).

Petitioner argues that it attempted to obtain the sought after evidence through the Singapore Court, but Ila argued – and the Singapore Court agreed – that discovery should be sought directly from PGD in the United States. (Pet. Br. (Dkt. No. 3) at 9 (citing Pang Decl. (Dkt. No. 5) ¶ 27); see also June 4, 2018 Hearing Tr. Pt. 1 (Dkt. No. 21-6) at 5; June 4, 2018 Hearing Tr. Pt. 2 (Dkt. No. 21-7) at 9)  Thus, the evidence is not "accessible" in the Singapore proceedings.

Respondent contends, however, that there is a procedure in Singapore by which Petitioner could request permission to take discovery and depositions from a foreign third party. (Resp. Br. (Dkt. No. 20) at 17 (citing Rajah Decl. (Dkt. No. 22) ¶ 26))  Pursuant to this procedure, the Singapore Court could issue letters rogatory to the United States. (Id. at 17-18)  According to Respondent, granting Petitioner's application here would permit Petitioner to circumvent the letters rogatory process, and would "obviate the Singapore Court's role in policing its own process of third-party foreign discovery." (Id. at 18)

This Court concludes that the evidence sought by Petitioner is not within the jurisdictional reach of the Singapore Court. Evidence is within the jurisdictional reach of a

9

foreign court where that court "can itself order [a party] to produce evidence." Intel Corp., 542 U.S. at 264; see also In re OOO Promnefstroy, 2009 WL 3335608, at *5 ("[I]t is the foreign tribunal's ability to control the evidence and order production" that determines its jurisdictional reach under Intel). The letters rogatory process cited by Respondent is, by definition, a process by which the Singapore Court would seek the assistance of a United States court to accomplish an objective that is outside the Singapore Court's jurisdiction. See Preparation of Letters Rogatory, U.S. Department of State, https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/obtaining-evidence/Preparation-Letters-Rogatory.html (last visited Dec. 30, 2018) ("Letters rogatory are requests from courts in one country to the courts of another country requesting the performance of an act which, if done without the sanction of the foreign court, could constitute a violation of that country's sovereignty.") Accordingly, the evidence at issue is not within the jurisdictional reach of the Singapore Court.

### 2. Whether the Singapore Court Would Be Receptive to Judicial Assistance from this Court

Under the second Intel factor, courts consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court agency abroad to U.S. federal-court judicial assistance." In re Microsoft Corp., 428 F. Supp. 2d at 192-93 (citing Intel Corp., 542 U.S. at 264-65).

Petitioner argues that the evidence sought is relevant to a critical issue in the Singapore litigation: the provenance of Sample 3. (Pet. Br. (Dkt. No. 3) at 10) Petitioner further argues that the Singapore Court has already indicated that it would be receptive to receiving this evidence, noting that the Singapore Court suggested that Petitioner seek discovery directly from PGD. (Id.) Finally, Petitioner notes that Respondents do not dispute that the Singapore Court could consider the documents and testimony sought for purposes other than as

10

evidence at trial – for example, this evidence could be used as a basis for ordering additional discovery from Ila.  (Reply (Dkt. No. 24) at 6)

Respondent contends that the Singapore Court would not be receptive to assistance from this Court, because the evidence sought would not be admissible at trial.  (Resp. Br. (Dkt. No. 20) at 18)  PGD cites the declaration of Vijaya Kumar Rajah, the former attorney general of Singapore and justice of Singapore's Court of Appeals, who states that "only depositions that are obtained through an order of the Singapore Court . . . are admissible at trial." (Id. at 18 (citing Rajah Decl. (Dkt. No. 22) ¶ 35))  Respondent also cites Rajah's assertion that "a Singapore court would not be ordinarily inclined to admit or consider evidence that has been obtained in a matter that effectively sidesteps the procedures and safeguards laid down by [Singapore law]."  (Id. at 21 (citing Rajah Decl. (Dkt. No. 22) ¶ 41))

This Court concludes that the Singapore Court would be receptive to judicial assistance under Section 1782.  "United States courts have neither the competency nor the time to fully understand a foreign legal system or how such a system might respond to § 1782 assistance from a United States court.  For this reason, district courts have been instructed to tread lightly and heed only clear statements by foreign tribunals."  In re OOO Promnefstroy, 2009 WL 3335608, at *7 (citing Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099-1100 (2d Cir. 1995)); see also In re Christen Sveaas, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (ordering discovery pursuant to Section 1782 "where the foreign forums have [not] been expressly unreceptive to an American court's intercession").  Accordingly, where courts have found that a foreign tribunal would not be receptive to judicial assistance pursuant to Section 1782, that finding has been based on explicit evidence demonstrating non-receptiveness.  See, e.g., In re Microsoft Corp., 428 F. Supp. 2d at 194 (finding that the second Intel factor "cut[] sharply"

11

against Microsoft's Section 1782 discovery request, where the European Commission had "explicitly stated that it opposes the discovery sought by Microsoft and is not receptive to U.S. judicial assistance"); Schmitz, 376 F.3d at 84 ("In this case, the German government was obviously unreceptive to the judicial assistance of an American federal court.").

Here, there is no clear statement by the Singapore Court that it would not be receptive to judicial assistance from this Court. To the contrary, as noted above, in a June 4, 2018 hearing, the Singapore Court indicated that it would be open to receiving evidence regarding the provenance of Sample 3 obtained directly from PGD. (June 4, 2018 Hearing Tr. Pt. 2 (Dkt. No. 21-7) at 9)[7] In sum, the second Intel factor weighs in favor of granting Petitioner's application.

### 3. Whether the Petition Constitutes an Attempt to Circumvent Foreign Proof-Gathering Restrictions

Under the third Intel factor, courts "consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." In re Microsoft Corp., 428 F. Supp. 2d at 193 (citing Intel Corp., 542 U.S. at 264-65).

Petitioner contends that it attempted to obtain the sought-after evidence in Singapore, but Ila argued that the discovery should be sought from PGD directly, and the

---

[7] The declaration submitted by Petitioner's counsel, Melvin Pang, indicates that the documents sought by Petitioner would be admissible at trial, and the declaration from Respondent's expert, Rajah, does not dispute that assertion. (Pang Decl. (Dkt. No. 5) ¶¶ 32-36; see generally Rajah Decl. (Dkt. No. 22)) As to testimony, Rajah and Pang agree that it would not be admissible at trial, but Pang asserts that it could be used for other purposes, such as a request for seeking additional discovery from Ila. (Pang Decl. (Dkt. No. 5) ¶¶ 40-46; Rajah Decl. (Dkt. No. 22) ¶¶ 35-36) Rajah states that Pang's "conclusion is contestable," because "a Singapore court would not be ordinarily inclined to . . . consider evidence" obtained by circumventing Singapore law. (Rajah Decl. (Dkt No. 22) ¶¶ 39-41) Here, however, the Singapore Court has expressly indicated that it would consider evidence regarding the provenance of Sample 3 from Respondent. (June 4, 2018 Hearing Tr. Pt. 2 (Dkt. No. 21-7) at 9)

Singapore Court agreed. (Pet. Br. (Dkt. No. 3) at 11) Although acknowledging that the Singapore Court quashed some of its discovery requests as overbroad, Petitioner asserts that its current requests are "substantially narrower." (Id. at 11-12)

Respondent argues that Petitioner seeks to circumvent previous discovery orders issued by the Singapore Court. (Resp. Br. (Dkt. No. 20) at 21) Respondent points out that Petitioner seeks documents related to Sample 3 from the time it was manufactured to the present, even though the Singapore Court rejected similar document requests as overbroad, because they post-date the creation and purchase of Sample 3. (Id.) Respondent further notes that Petitioner seeks "protocol(s) at any time for the shape or surface processing, including cutting, polishing, and/or annealing, of CVD diamond material." (Id. (citing Proposed Subpoena (Dkt. No. 3-2) at 18)) The Singapore Court rejected a "virtually identical" request because it would "cover documents relating to non-infringing processes." (Id. at 22 (citing August 27, 2018 Bench Ruling Tr. (Dkt. No. 21-10) ¶7(a))) Finally, Respondent argues that Petitioner should have sought discovery about the provenance of Sample 3 earlier in the Singapore proceeding. (Id.)

Petitioner contends, however, that its proposed subpoenas are more narrowly tailored than the discovery requests rejected by the Singapore Court. (Reply (Dkt. No. 24) at 7) Petitioner also argues that the Singapore Court did not reject its discovery requests based on time frame. Instead, Petitioner argues, the Singapore Court was concerned that Petitioner's requests were not specifically tied to the diamond samples at issue. (Id. at 8) Here, Petitioner's proposed discovery requests are all tied to Sample 3. (Id.) Finally, Petitioner argues that it has been inquiring into the provenance of Sample 3 throughout the Singapore proceeding. (Id.)

The Court concludes that the proposed subpoenas in their present form constitute an attempt to circumvent discovery restrictions imposed by the Singapore Court. For example,

13

the Singapore Court explicitly ruled that document requests extending to the present day –
including those tied to a specific sample – were overbroad and should be limited to the date of
the sample's manufacture.  (August 27, 2018 Bench Ruling Tr. (Dkt. No. 21-10) ¶ 8 ("In relation
to Request 11, this request is specifically limited to Sample 4.  However, the Request is still too
broad because it extends to documents 'to date' . . . .  This difficulty may be overcome by
limiting Request 11 to the date of manufacture of Sample 4."))  Despite this clear ruling, none of
Petitioner's 25 document requests and 31 topics for testimony are appropriately time-limited.

Moreover, accepting Petitioner's argument that the Singapore Court encouraged
Petitioner to seek information about the provenance of Sample 3 directly from PGD (see June 4,
2018 Hearing Tr. Pt. 2 (Dkt. No. 21-7) at 9), Petitioner's proposed subpoenas go far beyond
inquiring into the provenance of Sample 3.  For example, Petitioner's document requests and
testimonial topics seek extensive information concerning synthetic diamonds generally.
(Proposed Subpoena (Dkt. No. 3-2) at 17-18, 21)  Petitioner also requests information
concerning PGD's document retention policies.  (Id. at 18)

In sum, analysis of the third Intel factor here indicates that if Petitioner's
application is granted, the proposed subpoenas must be substantially narrowed.

### 4. Whether the Subpoena Requests Are Unduly Intrusive or Burdensome

The final Intel factor requires a court to consider "[w]hether the subpoena
contains unduly intrusive or burdensome requests."  In re Microsoft Corp., 428 F. Supp. 2d at
193 (citing Intel Corp., 542 U.S. at 264-65).

Petitioner argues that its application is narrowly focused on Sample 3, and that it
is willing to enter into a protective order to maintain the confidentiality of the evidence it seeks.
(Pet. Br. (Dkt. No. 3) at 12)  Petitioner reiterates that – given Ila's argument to the Singapore

Court that evidence should be sought directly from PGD, its sister company – PGD cannot credibly complain about Petitioner's discovery requests. (Id.) Finally, Petitioner states that it attempted to negotiate a narrowing of the subpoenas with Respondent, but that PGD rebuffed its efforts. (Reply (Dkt. No. 24) at 9 (citing Rich Decl. (Dkt. No. 25)))

Respondent contends that Petitioner's requests are unduly burdensome. (Resp. Br. (Dkt. No. 20) at 23) Respondent states that it is a small business with only twenty-one employees. (Id. at 24 (citing Williams Decl. (Dkt. No. 23) ¶ 3)) Respondent estimates that complying with the proposed subpoenas would require it to hire ten more employees and cost it more than $200,000. (Id. (citing Williams Decl. (Dkt. No. 23) ¶10)) Respondent further contends that the proposed subpoenas are not narrowly tailored, as Section 1782 requires, and are designed to harass Respondent. (Id. at 23, 25-27 (citing In re Kreke Immobilien KG, No. 13 Misc. 110 (NRB), 2013 WL 5966916, at *7 (S.D.N.Y. Nov. 8, 2013)))

The Court concludes that Petitioner's discovery requests are unduly burdensome in their current form, in large part because they are not focused on the provenance of Sample 3.

\*    \*    \*    \*

Analysis of the four Intel factors demonstrates that the proposed subpoenas do not comply with the requirements of Section 1782. However, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." Euromepa S.A., 51 F.3d at 1101.

Accordingly, Petitioner's application is granted only to the following extent: documents and testimony sufficient to establish the provenance of Sample 3, including invoices,

purchase orders, and shipping documents concerning Sample 3, and communications between PGD and the entity that supplied Sample 3 to PGD concerning Sample 3.

## **CONCLUSION**

Petitioner's application is granted to the extent set forth above. Documents that fall within the scope of this Order are to be produced by January 9, 2019, and any necessary testimony is to be taken by January 16, 2019. The Clerk of the Court is directed to terminate the motion (Dkt. No. 1).

Dated: New York, New York
      January 2, 2019

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge