January 18, 2019

<u>**Via CM/ECF**</u>

The Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall
40 Foley Square, Room 705
New York, NY 10007

Re:   In Re Ex Parte Application of Element Six Technologies Limited for
 an Order Pursuant to 28 U.S.C. § 1782, 1:18-mc-00418

Dear Judge Gardephe:

Petitioner Element Six Technologies Limited ("<u>Element Six</u>") and Respondent Pure Grown Diamonds, Inc. ("<u>PGD</u>") submit this joint letter to address Element Six's request for an order compelling PGD to produce documents and testimony that complies with that which this Court ordered on January 2, 2019. (ECF No. 28.) Following a good-faith meet-and-confer on January 16 and 17, 2019, between Joshua Rich and Russell T. Gorkin on behalf of Element Six, and Eric Huang and Brendan Carroll on behalf of PGD, the parties have been unable to reach agreement on this issue.

**ELEMENT SIX'S POSITION:**

As Your Honor is well aware, Element Six initiated this proceeding to obtain discovery for use in patent infringement litigation it brought against IIa Technologies Limited Pte. ("<u>IIa</u>") in Singapore. The claims there arise in part out of IIa's cultivation of synthetic diamond material that was cut, shaped, and polished into a finished diamond gemstone that was sold by PGD to Element Six's agent. For that reason, Element Six defined Sample 3 in its initial § 1782 Application as "the diamond material that forms in whole or in part the subject of product code 2PCVD303004N, which is further evidenced by . . . PGD Invoice No. SA-1510-00178, dated 27 October 2015," and "International Gemological Institute Report No. LG10226420." (ECF No. 3-2 ¶ 9; 5 ¶ 11.) So, as it made clear throughout its Application, Element Six sought evidence regarding the *entire* provenance of Sample 3—*i.e.*, from the cultivation of the synthetic diamond material that was used to create the specific, finished diamond gemstone that PGD sold up to and through its sale to Element Six. (*E.g.*, ECF No. 3 at 2–3.)

Indeed, when adjudicating Element Six's Application, Your Honor recognized that a "core issue" in the underlying Singapore action is whether the synthetic diamond material identified as Sample 3 had been manufactured by IIa, (ECF No. 28 at 7–8), and ordered PGD to produce "documents and testimony sufficient to establish the provenance of Sample 3, including invoices, purchase orders, and shipping documents concerning Sample 3, and communications between PGD and the entity that supplied Sample 3 to PGD concerning Sample 3" (ECF No. 28 at 15–16.)

1

Element Six therefore read the Court's Order as requiring PGD to provide discovery related to the entire provenance of the finished gemstone that Element Six specifically identified in its Application, including the origin of the diamond material used to create that gemstone.

Despite the fact that the Court issued its Order on January 2, PGD did not reveal until two days ago that it instead has been interpreting Your Honor's Order as an instruction to produce documents and testimony related only to the last step in Sample 3's chain of custody—*i.e.*, the sale of the finished diamond gemstone from PGD's immediate predecessor to PGD.  In other words, without telling Element Six as much, ***PGD has construed the Court's Order as allowing it to exclude the very documents and information that necessitated, and are at the heart of, Element Six's Application—i.e., whether IIa cultivated the diamond material used to create the finished gemstone identified by, among other things, number LG10226420***.

Indeed, at PGD's deposition on Wednesday, PGD finally revealed that it never searched for nor intended to produce *any* documents or provide *any* testimony pertaining to the provenance of Sample 3 from cultivation through cutting, polishing, and preparation of the gemstone, except those related to the immediate sale to PGD.  As a result, ***PGD produced only two documents related to Sample 3, constituting a total of three pages, and which relate only to the time after PGD had already obtained physical possession of the finished gemstone***.  In other words, it produced documents also wholly irrelevant to the "core issue" in the underlying Singapore action.[1]  It also failed to prepare its 30(b)(6) witness to testify on whether IIa cultivated Sample 3.

As documents that Element Six located through its own independent investigation reveal, PGD has clear evidence of who cultivated Sample 3: Through press releases and posts made to its social media accounts, PGD repeatedly represented to the public before, during, and after the time that it acquired Sample 3 that "Pure Grown Diamonds are cultivated at IIa (2a) Technologies in Singapore, which is Pure Grown Diamonds' sister company" and that "Pure Grown Diamonds is the exclusive retailer and distributor of diamonds grown by IIa Technologies."  (*See, e.g.*, Exhibit 1; Exhibit 2, pp. 153-59, 173.[2])  In the 30(b)(6) deposition, PGD refused to confirm those facts or authenticate the documents.  Instead, when confronted with those documents at its deposition, PGD's 30(b)(6) representative claimed ignorance as to the truth of the matters contained therein, and even questioned whether PGD maintained the cited social media accounts.  The witness's ignorance is especially troubling given that she admitted after having been designated PGD's 30(6)(6) representative as having spoken to Mr. Vishal Mehta, who is both the owner of PGD and the CEO of IIa, and who is quoted in the documents referenced above.  (*See* Exhibit 2, pp. 8-9, 21-22, 130-31, 153-59, 173-77.)

---

[1] Remarkably, PGD had sought a two-week extension to produce those three pages, even though it has since admitted, based on its interpretation of the Order, that all potentially responsive documents filled no more than a single banker's box, and that it could run two unique search terms to identify the entire universe of potentially responsive electronic documents.  PGD also later produced two additional documents, totaling eight pages, unrelated to Sample 3 "in an effort to show [their] good faith efforts at searching for all responsive documents."

[2] Exhibit 1 refers to a document that Element Six provided to PGD's counsel and marked as an Petitioner's Deposition Exhibit 4 at PGD's 30(b)(6) deposition.  Exhibit 2 refers to the transcript of that deposition.  Exhibits 1 and 2 are not attached to this letter so as to avoid potentially running afoul of Your Honor's Individual Rules of Practice, but Element Six stands ready to submit either or both upon the Court's request.

Thus, the parties' dispute regarding the scope of Your Honor's Order and PGD's obligations thereunder came to light and to a head during the deposition.  Rather than prepare the instant letter for Your Honor's consideration then, PGD requested that Element Six provide it with a letter to set forth additional actions Element Six would like PGD to take to satisfy its obligations before contacting the Court.  Element Six obliged and sent the requested letter prior to business opening the next day, *i.e.*, Thursday, January 17.  Not only did the letter set forth the actions Element Six believes PGD must take to comply with its obligations,[3] it explained why Element Six believed those actions were required for PGD to comply with the Court's Order.[4]  During the subsequent meet and confer, PGD indicated that it was not prepared to take a position with respect to the provision of discovery related to the provenance of Sample 3 from initial cultivation of its diamond material to PGD's sale of the finished gemstone.

In sum, Element Six believes that the Court's Order was clear and required evidence of the *entire* provenance of Sample 3.  PGD's failure to provide discovery regarding that full scope—and its failure to inform Element Six of its cramped reading of the Court's Order—has severely prejudiced Element Six.  As explained in the earlier-filed joint letter related to Element Six's previous request for a two-week extension to comply with its discovery obligations, there is a hearing scheduled for this coming Monday, January 21 in Singapore (Sunday night, local time), at which point the Singapore court may require the parties to submit their Affidavits of Evidence-in-Chief ("AEICs").  (*See* ECF No. 29.)  Element Six will attempt to persuade the Singapore forum to allow the entry of any relevant evidence that may be produced by PGD even if after that date, which of course will only be forthcoming if this Court compels PGD to do so.

For the foregoing reasons, Element Six respectfully requests that PGD be compelled to produce the requested discovery immediately.

**PGD'S POSITION:**

Element Six's request for more discovery exceeds the scope ordered by the Court and seeks discovery the Court has already denied.  PGD has fully complied with the Court's Order*,* which limited discovery to documents and testimony  "sufficient to establish the provenance of Sample 3."  (ECF 28, at 15).  Sample 3 is a diamond stone that Element Six claims was purchased from PGD in October 2015.  PGD, despite diligent searching, has not been able to determine from whom the stone was acquired.  It should not be burdened further with more costs in aid of a foreign proceeding in which it has no interest or involvement.

---

[3] Specifically, Element Six requested that PGD: (1) Produce a witness that is prepared to testify to all of PGD's knowledge regarding the provenance (i.e., the source, chain of custody, etc.) of Sample 3; (2) Produce all public statements and posts made by PGD through social and other digital media platforms (e.g., Facebook, YouTube, Instagram, Twitter, etc.), that could be used to establish the provenance of Sample; (3) Produce all documents (including press releases issued by PGD) that could be used to establish the provenance of Sample 3; and (4) Identify and then contact the bank(s) at which PGD maintained accounts in 2014–15 that it drew upon to pay for the diamonds and/or diamond material that it acquired during that timeframe; request that the bank(s) provide statements or records evincing credits to those accounts; share any records (or portions thereof) that could be used to establish the provenance of Sample 3.

[4] Element Six stands ready to submit this letter upon request.  *See supra* note 2.

*__PGD conducted in good faith a reasonable search for documents responsive to the Order and Element Six's subpoena.__*  PGD searched its inventory database, all the company's own electronic files, hard-copy files in PGD's offices and storage room, and laboriously reviewed thousands of pages of paper documents for any reference to the origin of Sample 3.[5]  Every employee who had worked at the company from 2015 was consulted.  Although no documents fit the Court's ordered scope, PGD produced the earliest documents that referred to Sample 3.  PGD also used a broader search suggested by Element Six – any stone of the same size as Sample 3 – to find any other documents that would shed light on the origins of Sample 3.  No responsive documents were found.  PGD then searched for any information about its diamond suppliers in 2015.  No records of diamond sellers to PGD from 2015 (or earlier) were found.  The lack of information is unsurprising because, since 2015, PGD moved offices twice; it has changed inventory software used to track diamonds twice; and there has been substantial turn-over of employees.

*__PGD's corporate representative was properly prepared to testify on PGD's behalf.__*  On January 16, PGD Executive Vice President Marilyn Williams, the most senior person at the company and the person in charge of operations, testified on PGD's behalf regarding the information reasonably available to PGD regarding the origins of Sample 3.  She led the search for documents and information, with the assistance of counsel.  She testified that (1) she spoke with people knowledgeable about the operations of the company, including all five employees who were at PGD in 2015 (Tr. 27:9-27:19); (2) no documents were found sufficient to establish the origins of Sample 3 (Tr. 47:20-47:24); (3) the documents PGD produced were used to track transfer of stones on consignment and showed Sample 3 (Tr. 90:24-91:14); and (4) there were no persons at PGD who knew where Sample 3 came from (Tr. 30:4-31:17).  Despite this testimony, it became clear that Element Six was not interested in these facts.  Even though PGD sells but does not grow or synthesize the diamonds, (Tr. 27:3-8) Element Six pursued many questions about the manufacture of lab-grown diamonds, a topic that was sought in its original Petition and rejected by the Court.  (*See* ECF 3-2 at 11-12 (Doc. Req. Nos. 19-21).)

*__Element Six's request exceeds the scope of the Court's order.__*  Element Six's request is based on a fundamental misreading of the Court's Order and the meaning of the term "provenance of Sample 3" and its view that all documents that could show the origins of diamonds in 2015 are responsive, rather than documents sufficient to show the provenance of Sample 3.  Element Six now seeks discovery it originally sought but which was already denied by the Court.

Element Six now seeks the information regarding every entity that has ever touched Sample 3 as part of "provenance."  This scope was in their original, "unduly burdensome" subpoenas (ECF 28, at 15) which sought discovery of "any entity that had possession, custody, or control over Sample 3 or the any [sic] material from which Sample 3 was manufactured" (ECF 3-2 at 9) (Doc. Req. 6).  Their original request also demanded information concerning "any supply arrangement for CVD diamonds to Respondent, including but not limited to any exclusive arrangement between PGD and IIa" (*id*. at 12) (Doc. Req. 25).  *__The Court rejected__* these requests in limiting discovery to the "provenance of Sample 3, including" documents relating to "the entity that supplied Sample 3 to PGD."  (ECF 28, at 15.)  Element Six also seeks all documents that relate to the source of any

---

[5]  Element Six defined Sample 3 as "the diamond material that forms in whole or in part the subject of product code 2PCVD303004N."  That product code does not refer to Sample 3.  (*See* ECF 5-2 at 12 (Pang Affidavit)).

4

diamond material used in stones sold in 2015.  Letter at 2 (Item 4).  **The Court rejected** such requests seeking "extensive information concerning synthetic diamonds generally" as "go[ing] far beyond inquiring into the provenance of Sample 3" (ECF 28, at 14).[6]

Element Six further seeks all PGD's bank records from 2014-2015 that "could be used to establish the provenance of Sample 3."  Letter at 2.  In reality, their request is an invasive demand for bank records that likely will not provide information regarding the provenance of Sample 3. . . While PGD is in the process of investigating if this is feasible, PGD believes this exercise is futile.  As the Court already ruled, discovery requests that "go far beyond inquiring into the provenance of Sample 3" should be rejected.  (ECF 28, at 14).

*PGD is willing to voluntarily produce certain public statements.*  Although PGD disagrees that the public statements Element Six seeks are within the scope of the ordered discovery because they do not identify Sample 3, PGD agrees to search social media posts and press releases in its possession, custody, or control for documents that describe the origin, whether supplier or manufacturer, of any diamond from 2015.  PGD will also agree to produce a witness to testify regarding the authenticity of any produced documents.  Although PGD may not be able to confirm the accuracy of statements in these documents, it will confirm them as business records.

*There is no urgency requiring an immediate decision on Element Six's demands.*  As Element Six counsel confirmed, the January 21 hearing in Singapore is administrative; the court will set dates and deadlines for submission of evidence but it is not an evidentiary hearing.  We understand that no date has been set yet for submission of evidence.  Furthermore, to the extent that Element Six is required to inform the court of the evidence from this proceeding, it can do so based on the testimony, documents produced, the public documents it has, and its request for more discovery.  In any event, even if the Court grants this request, PGD cannot comply before the hearing.

PGD respectfully requests the Court deny Element Six's request for more discovery and discharge PGD of further obligations under the pending subpoenas.

| | |
|---|---|
| MCDONNELL BOEHNEN HULBERT& BERGHOFF LLP | QUINN EMANUEL URQUHART  & SULLIVAN LLP |
| By: /s/ *Joshua R. Rich* | By:   /s/ *Tai-Heng Cheng* |
| Joshua R. Rich<br>Attorney for Petitioner | Tai-Heng Cheng<br>Attorney for Respondent |

---

[6]  Furthermore, the origins of Sample 3 beyond the supplier to PGD exceeds PGD's knowledge.  If PGD cannot figure out from whom it acquired the stone, it cannot determine the identities of prior owners.  Such information is not reasonably available to PGD nor within its possession, custody, or control.  PGD believes such information would have been found in its extensive searches.  PGD is not withholding such information.